THOMSON REUTERS
WESTLAW EDGE  ◯

FTX    History    Folders    My links    Community    Notifications          Sign out

All content    | Enter terms, citations, databases, questions, |    All State & Federal          Search Tips

**Podalsky et al v. Bankman-Fried et al**
1:22CV23983    (Approx. 9 pages)

Document    Filings (1)    Related Opinions/Dockets (0)    Timeline (1)

| Go to |                                        | Request Multiple PDFs |

TO ORDER COPIES OF ANY DOCUMENTS LISTED BELOW, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**This docket is current through 02/10/2023**

Today's Date: 2/10/2023
Source: U.S. District Court, Southern District of Florida (Miami)

| Court: | U.S. District Court, Southern District of Florida (Miami) |
| --- | --- |
| **Case Title:** | Podalsky et al v. Bankman-Fried et al |
| **Case:** | 1:22-CV-23983 |
| **Judge:** | Judge K. Michael Moore |
| **Date Filed:** | 12/07/2022 |
| **Date Closed/Terminated:** | 12/09/2022 |
| **Case Status:** | CLOSED, LFL |

## CASE INFORMATION

| Case Number: | 1:22CV23983 |
| --- | --- |
| **Jury Demand:** | Plaintiff |
| **Nature of Suit:** | Torts: Other Fraud (370) |
| **Jurisdiction:** | Diversity |
| **Cause:** | 28 USC 1332 - Diversity: Securities Fraud |
| **Lead Docket:** | 1:22-CV-23753 |

## PARTICIPANT INFORMATION                                        Expand All

1

Gregg Podalsky

Skyler Lindeen

Alexander Chernyavsky

Gary Gallant

David Nicol

Sunil Kavuri

Edwin Garrison

Sam Bankman-Fried

Tom Brady

Gisele Bundchen

Kevin OLeary

Udonis Haslem

David Ortiz

Caroline Ellison

Sam Trabucco

Gary Wang

Nishad Singh

Dan Friedberg

1

Stephen Curry

Golden State Warriors LLC

Shaquille ONeal

William Trevor Lawrence

Shohei Ohtani

Naomi Osaka

Lawrence Gene David

## CALENDAR INFORMATION

View Calendar Information

## DOCKET PROCEEDINGS (16)

| Entry #: | Date: | Description: | | |
|---|---|---|---|---|
| 15 | 01/31/2023 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Susan E. Engel. Filing Fee $ 200.00 Receipt # FLSDC-16282395 by Tom Brady, Gisele Bundchen, Thomas Brady. Responses due by 2/14/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order)Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM(Martinez, Roberto) (Entered: 01/31/2023) | View | Add to request |
| 14 | 01/31/2023 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Marvin Putnam. Filing Fee $ 200.00 Receipt # FLSDC-16282263 by Tom Brady, Gisele Bundchen, Thomas Brady. Responses due by 2/14/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed | View | Add to request |

1

| | | | |
|---|---|---|---|
| | | Order)Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM(Martinez, Roberto) (Entered: 01/31/2023) | |
| 13 | 01/31/2023 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Elizabeth A. Greenman. Filing Fee $ 200.00 Receipt # FLSDC-16282114 by Tom Brady, Gisele Bundchen, Thomas Brady. Responses due by 2/14/2023 Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM(Martinez, Roberto) (Entered: 01/31/2023) | View / Add to request |
| 12 | 01/25/2023 | NOTICE of Attorney Appearance by Zachary Andrew Lipshultz on behalf of Tom Brady, Gisele Bundchen, Thomas Brady. Attorney Zachary Andrew Lipshultz added to party Tom Brady(pty:dft), Attorney Zachary Andrew Lipshultz added to party Gisele Bundchen(pty:dft), Attorney Zachary Andrew Lipshultz added to party Thomas Brady(pty:dft), Attorney Zachary Andrew Lipshultz added to party Gisele Bundchen(pty:dft). Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM (Lipshultz, Zachary) (Entered: 01/25/2023) | View / Add to request |
| 11 | 01/25/2023 | NOTICE of Attorney Appearance by Stephanie Anne Casey on behalf of Tom Brady, Gisele Bundchen, Thomas Brady. Attorney Stephanie Anne Casey added to party Tom Brady(pty:dft), Attorney Stephanie Anne Casey added to party Gisele Bundchen(pty:dft), Attorney Stephanie Anne Casey added to party Thomas Brady(pty:dft), Attorney Stephanie Anne Casey added to party Gisele Bundchen(pty:dft). Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM (Casey, Stephanie) (Entered: 01/25/2023) | View / Add to request |
| 10 | 01/25/2023 | NOTICE of Attorney Appearance by Roberto Martinez on behalf of Tom Brady, Gisele Bundchen. Attorney Roberto Martinez added to party Tom Brady(pty:dft), Attorney Roberto Martinez added to party Gisele Bundchen(pty:dft). Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM (Martinez, Roberto) (Entered: 01/25/2023) | View / Add to request |
| 9 | 01/24/2023 | NOTICE of Attorney Appearance by Katherine Ann Johnson on behalf of David Ortiz. Attorney Katherine Ann Johnson added to party David Ortiz(pty:dft). Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM (Johnson, Katherine) (Entered: 01/24/2023) | View / Add to request |
| 8 | 01/24/2023 | NOTICE of Attorney Appearance by Christopher Stephen Carver on behalf of David Ortiz. Attorney Christopher Stephen Carver added to party David Ortiz(pty:dft). | View / Add to request |

1

| | | Associated Cases: 1:22-cv-23753-KMM, 1:22-cv-23983-KMM (Carver, Christopher) (Entered: 01/24/2023) | |
|---|---|---|---|
| 7 | 12/09/2022 | PAPERLESS ORDER CONSOLIDATING CASES. THIS CAUSE came before the Court upon a sua sponte review of the record. Rule 42(a) of the Federal Rules of Civil Procedure allows the Court to consolidate actions that have common questions of law or fact. Fed. R. Civ. P. 42(a). Here, the Court finds that Case Nos. 1:22-cv-23753-KMM and 1:22-cv-23983-KMM have common questions of fact and consolidation is appropriate. Accordingly, Case No. 1:22-cv-23983-KMM is hereby CONSOLIDATED with Case No. 1:22-cv-23753-KMM for all purposes, including trial. The Clerk of the Court is INSTRUCTED to administratively CLOSE Case No. 1:22-cv-23983-KMM. All future filings MUST be made only in the lead case, Case No. 1:22-cv-23753-KMM. All pending motions, if any, in Case No. 1:22-cv-23983-KMM are DENIED AS MOOT. It is further ORDERED that Plaintiff shall file an amended complaint in Case No. 1:22-cv-23753-KMM within seven (7) days of the entry of this Order. The Court further VACATES the pretrial order entered in Case No. 1:22-cv-23983-KMM. Signed by Judge K. Michael Moore on 12/9/2022. (rfr) (Entered: 12/09/2022) | Send Runner to Court |
| 6 | 12/09/2022 | PAPERLESS PRETRIAL ORDER. This order has been entered upon the filing of the complaint. Plaintiff's counsel is hereby ORDERED to forward to all defendants, upon receipt of a responsive pleading, a copy of this Order. It is further ORDERED that S.D. Fla. L.R. 16.1 shall apply to this case and the parties shall hold a scheduling conference no later than twenty (20) days after the filing of the first responsive pleading by the last responding defendant, or within sixty (60) days after the filing of the complaint, whichever occurs first. However, if all defendants have not been served by the expiration of this deadline, Plaintiff shall move for an enlargement of time to hold the scheduling conference, not to exceed 90 days from the filing of the Complaint. Within ten (10) days of the scheduling conference, counsel shall file a joint scheduling report. Failure of counsel to file a joint scheduling report within the deadlines set forth above may result in dismissal, default, and the imposition of other sanctions including attorney's fees and costs. The parties should note that the time period for filing a joint scheduling report is not tolled by the filing of any other pleading, such as an amended complaint or Rule 12 motion. The scheduling conference may be held via telephone. At the conference, the | Send Runner to Court |

1

parties shall comply with the following agenda that the Court adopts from S.D. Fla. L.R. 16.1: (1) Documents (S.D. Fla. L.R. 16.1.B.1 and 2) - The parties shall determine the procedure for exchanging a copy of, or a description by category and location of, all documents and other evidence that is reasonably available and that a party expects to offer or may offer if the need arises. Fed. R. Civ. P. 26(a)(1)(B). (a) Documents include computations of the nature and extent of any category of damages claimed by the disclosing party unless the computations are privileged or otherwise protected from disclosure. Fed. R. Civ. P. 26(a)(1)(C). (b) Documents include insurance agreements which may be at issue with the satisfaction of the judgment. Fed. R. Civ. P. 26(a)(1)(D). (2) List of Witnesses - The parties shall exchange the name, address and telephone number of each individual known to have knowledge of the facts supporting the material allegations of the pleading filed by the party. Fed. R. Civ. P. 26(a)(1)(A). The parties have a continuing obligation to disclose this information. (3) Discussions and Deadlines (S.D. Fla. L.R. 16.1.B.2) - The parties shall discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case. Failure to comply with this Order or to exchange the information listed above may result in sanctions and/or the exclusion of documents or witnesses at the time of trial. S.D. Fla. L.R. 16.1.I. The parties are hereby on notice that this Court requires all filings to be formatted in 12 point Times New Roman font and double spaced, including any footnotes, with one inch margins on all sides. Failure to follow these formatting guidelines may result in the filing being stricken, any opposing filing being granted by default, and the imposition of other sanctions, including attorney's fees and costs. Multiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position. If conflicts of position exist, parties shall explain the conflicts in their separate motions. Failure to comply with ANY of these procedures may result in the imposition of appropriate sanctions, including but not limited to, the striking of the motion or dismissal of this action. The parties shall seek extensions of time in a timely fashion. "A motion for extension of time is not self-executing.... Yet, by filing these motions on or near the last day, and then sitting idle pending the Court's disposition of the motion, parties essentially grant their own motion. The Court will not

1

| | | | |
|---|---|---|---|
| | | condone this." Compere v. Nusret Miami, LLC, 2020 WL 2844888, at *2 (S.D. Fla. May 7, 2020) (internal citations omitted). Pursuant to Administrative Order 2016-70 of the Southern District of Florida and consistent with the Court of Appeals for the Eleventh Circuit's Local Rules and Internal Operating Procedures, within three (3) days of the conclusion of a trial or other proceeding, parties must file via CM/ECF electronic versions of documentary exhibits admitted into evidence, including photographs of non-documentary physical exhibits. The Parties are directed to comply with each of the requirements set forth in Administrative Order 2016-70 unless directed otherwise by the Court. Telephonic appearances are not permitted for any purpose. Upon reaching a settlement in this matter the parties are instructed to notify the Court by telephone and to file a Notice of Settlement within twenty-four (24) hours. Signed by Judge K. Michael Moore on 12/9/2022. (rfr) (Entered: 12/09/2022) | |
| 5 | 12/09/2022 | ORDER TRANSFERRING CASE to Judge K. Michael Moore for all further proceedings, accepted and signed on 12/8/2022. Judge Beth Bloom no longer assigned to case. Signed by Judge Beth Bloom on 12/8/2022. See attached document for full details. (ls) (Entered: 12/09/2022) | View / Add to request |
| | 12/09/2022 | Cases associated. (ls)(per DE # 7 ) (Entered: 12/09/2022) | Send Runner to Court |
| 4 | 12/08/2022 | AMENDED COMPLAINT and Demand for Jury Trial against All Defendants, filed by Skyler Lindeen, Gregg Podalsky, Alexander Chernyavsky, Gary Gallant, David Nicol, Sunil Kavuri, Edwin Garrison.(Moskowitz, Adam) (Entered: 12/08/2022) | View / Add to request |
| 3 | 12/08/2022 | Bar Letter re: Admissions sent to attorney David Boies and Alex Boies, mailing date December 8, 2022, (pt) (Entered: 12/08/2022) | View / Add to request |
| 2 | 12/07/2022 | Clerks Notice of Judge Assignment to Judge Beth Bloom. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Alicia M. Otazo-Reyes is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (aao) (Entered: 12/08/2022) | Send Runner to Court |
| 1 | 12/07/2022 | COMPLAINT CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL against All Defendants. Filing fees $ 402.00 receipt number AFLSDC-16155270, filed by Skyler Lindeen, | View / Add to request |

1

Gregg Podalsky, Alexander Chernyavsky, Gary Gallant, David
Nicol. (Attachments: # 1 Civil Cover Sheet)(Moskowitz, Adam)
(Entered: 12/07/2022)

TO ORDER COPIES OF ANY DOCUMENTS LISTED ABOVE, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

---

**End of Document**                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Contact us  •  Live chat  •  Training and support  •  Improve Westlaw Edge/Report an error  •  Transfer My Data
•  Pricing guide  •  Sign out



1-800-REF-ATTY (1-800-733-2889)

Westlaw Edge. © 2023 Thomson Reuters    Accessibility  •  Privacy  •  Supplier terms          *Thomson Reuters is not providing professional advice*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 1:22-cv-23983-BB

**GREGG PODALSKY**, *et al.,* on behalf of
themselves and all others similarly situated,

          *Plaintiff,*

*v.*

**SAM BANKMAN-FRIED**, *et al.,*

          *Defendants.*

_____/

**AMENDED CLASS ACTION COMPLAINT**

**JURY DEMAND**

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

"Then there's things that have happened with Voyager *and with FTX now*—that's somebody running a company that's *just dumb as fu\*\* greedy*. So, what does Sam Bankman do? He just, give me more, give me more, give me more, so I'm gonna borrow money, loan it to my affiliated company, and hope and pretend to myself that the FTT tokens that are in there on my balance sheet are gonna sustain their value."[1]

## – Mark Cuban, Nov. 12, 2022



## – Defendant Sam Bankman Fried (Former CEO, FTX)

---

[1] https://www.yahoo.com/video/ftx-twitter-chaos-embarrassing-athletes-195343800.html (accessed December 8, 2022).

Plaintiffs Gregg Podalsky, Skyler Lindeen, Alexander Chernyavsky, Edwin Garrison, Gary Gallant, Sunil Kavuri, and David Nicol ("Plaintiffs") file this class action complaint on behalf of themselves, and all others similarly situated, against Sam Bankman-Fried, Caroline Ellison, Gary Wang, Nishad Singh, Sam Trabucco, Dan Friedberg, Tom Brady, Gisele Bundchen, Stephen Curry, Golden State Warriors, Shaquille O'Neal, Udonis Haslem, David Ortiz, William Trevor Lawrence, Shohei Ohtani, Naomi Osaka, Lawrence Gene David, and Kevin O'Leary (collectively, "Defendants"), all parties who either controlled, promoted, assisted in, or actively participated in FTX Trading LTD d/b/a FTX's ("FTX Trading") and West Realm Shires Services Inc. d/b/a FTX US's ("FTX US") (collectively, the "FTX Entities"), offer and sale of unregistered securities in the form of yield-bearing accounts ("YBAs") to persons and entities residing both inside and outside of the United States, seeking to recover damages, declaratory and/or injunctive relief stemming from the offer and sale of the FTX Entities' yield-bearing cryptocurrency accounts.[2]

## INTRODUCTION

1. Most experts agree that the FTX Collapse Disaster is the largest and greatest financial fraud in history. The new CEO of FTX, who helped wind down the prior Enron fraud, admitted that what he quickly uncovered in FTX to date, is worse than in the Enron Fraud. Almost $14 billion dollars is unaccounted for, and certainly billions of dollars have been stolen from investors across the globe. FTX will be involved in federal bankruptcy proceedings for many years to come and there is no guarantee that the victims will be able to see any recovery from those processes.

2. One common and identical question in this case, and in many other cryptocurrency litigation matters, is simply whether the SEC was correct, in finding that all of these YBAs are (or are not) the sale of "unregistered securities." This question can and should be decided quickly for all of

---

[2] Plaintiffs file this Amended Complaint in order to effectively consolidate the class actions brought by Edwin Garrison, the Plaintiff who filed the first class action in the country against Sam Bankman-Fried and others for these claims on behalf of FTX customers who were United States residents, and Sunil Kavuri, who filed a class action on behalf of FTX's international customers. As this class action is the first one in the country that includes claims against a number of former FTX and Alameda Research insiders on behalf of both United States and International FTX customers, Plaintiffs and their counsel agreed the most expedient and efficient route (particularly because no Defendants have yet been served in any of these federal actions) would be to consolidate these claims through this amended pleading before this Court. This is the similar approach that other FTX investors took with individual Florida state court cases that are now effectively consolidated before the Honorable Michael Hanzman of the Miami-Dade Complex Business Litigation Division, *Michael Norris, et al. v. Thomas Brady, et al.,* No. 2022-022900-CA-01 (Fla. 11th Jud. Cir.).

the parties, so that all cryptocurrency litigation can be quickly advanced and the victims (and alleged co-conspirators) have a clear and expedited path.

3.      Moreover, this question was already practically answered in the affirmative through various regulatory statements, guidance, and actions issued by the Securities and Exchange Commission and other regulatory entities. For example, on November 1, 2017, in the "SEC Statement Urging Caution Around Celebrity Backed ICOs,"[3]

> In the SEC's Report of Investigation concerning The DAO,[4] the Commission warned that virtual tokens or coins sold in ICOs may be securities, and those who offer and sell securities in the United States must comply with the federal securities laws. Any celebrity or other individual who promotes a virtual token or coin that is a security must disclose the nature, scope, and amount of compensation received in exchange for the promotion. A failure to disclose this information is a violation of the anti-touting provisions of the federal securities laws. **Persons making these endorsements may also be liable** for potential violations of the anti-fraud provisions of the federal securities laws, **for participating in an unregistered offer and sale of securities**, and for acting as unregistered brokers. The SEC will continue to focus on these types of promotions to protect investors and to ensure compliance with the securities laws.

4.      Not only that, but the SEC and state securities regulators have also targeted cryptocurrency brokers and exchanges just like FTX for offering almost this exact same type of interest-bearing account, finding that exchanges such as BlockFi,[5] Voyager,[6] and Celsius[7] all offered these same accounts as unregistered securities.

5.      Another narrow issue that is common to the entire class, whose focus is solely objective, is whether these Defendants violated state consumer laws by failing to abide by any of the FTC long established rules and regulations, specifically on what is required for a celebrity endorsement of crypto currency. The answer to just these two, narrow questions will greatly advance litigation

---

[3]      https://www.sec.gov/news/public-statement/statement-potentially-unlawful-promotion-icos (accessed December 8, 2022).

[4] https://www.sec.gov/litigation/investreport/34-81207.pdf (accessed December 8, 2022)

[5] https://www.sec.gov/news/press-release/2022-26 (accessed December 8, 2022).

[6]      https://coingeek.com/6-us-regulators-crackdown-on-voyager-digital-over-interest-bearing-accounts/ (accessed December 8, 2022).

[7]

https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjvjNvg27j7AhWfRTABHfwzDe4QFnoECAsQAQ&url=https%3A%2F%2Fwww.nj.gov%2Foag%2Fnewsreleases21%2FCelsius-Order-9.17.21.pdf&usg=AOvVaw0Zd94fuhFSsOoGKM-vQ3YI (accessed December 8, 2022).

across the globe relating to the FTX Disaster, help determine who may be liable for aiding and abetting this massive fraud, one way or another and may also help advance (for either side) all of the other pending massive litigation, against other cryptocurrency platforms (such as Voyager) that offered similar YBAs.

6.     There can be no dispute that claims in this case must provide for **_strict liability,_** and therefore if these YBAs are found to be "securities," Defendants can simply have no defense to the claims in this action. **The "caveat emptor" defense that Defendants and others are pushing in the press will have no application.**

7.     This is not a case where Plaintiffs made a "risky" investment in stock or cryptocurrency, or that they lost money speculating on various cryptocurrency projects. Plaintiffs' claims arises simply from the purchase of a YBA, an account with FTX that every customer who signed up for the FTX app received by default, and which, as explained below, was guaranteed to generate returns on their significant holdings in the accounts, regardless of whether those assets were held as USD, legal tender or cryptocurrency, and regardless of whether any trades were made with the assets held in the YBA. In other words, the YBA was portrayed to be like a bank account, something that was "very safe" and "protected." That is the narrative that Defendants pushed in promoting the offer and sale of the YBAs, which are unregistered securities. For that, Defendants are liable for Plaintiffs' losses, jointly and severally and to the same extent as if they were themselves the FTX Entities.

8.     Literally overnight, Plaintiffs' assets held in their YBAs on the Deceptive FTX Platform were robbed from them as FTX imploded and former-CEO, Sam Bankman-Fried, filed a Chapter 11 bankruptcy petition in Delaware on an emergency basis. This happened because, as explained by the new CEO of the failed FTX Entities:

> I have over 40 years of legal and restructuring experience. I have been the Chief Restructuring Officer or Chief Executive Officer in several of the largest corporate failures in history. I have supervised situations involving allegations of criminal activity and malfeasance (Enron). I have supervised situations involving novel financial structures (Enron and Residential Capital) and cross-border asset recovery and maximization (Nortel and Overseas Shipholding). Nearly every situation in which I have been involved has been characterized by defects of some sort in internal controls, regulatory compliance, human resources and systems integrity.
>
> **_Never_** in my career have I seen such a complete failure of corporate controls and such a **complete absence of trustworthy financial information** as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced,

**unsophisticated** and **potentially compromised** individuals, **this situation is
<u>unprecedented</u>**.

*See* In re: FTX Trading Ltd, et al., No. 22-11068 (JTD), ECF No. 24, ¶¶ 4–5 (D. Del. Nov. 17, 2022)
(emphasis added).

9.      This should not have happened. Not to Plaintiffs, and not to the thousands of other
FTX customers who now find themselves in the same predicament.

10.     The Cryptocurrency National Disaster is growing by the billions almost every day.
More crypto companies are filing new federal bankruptcy petitions each day, all running for protection
from the billions of dollars of losses they directly caused to thousands of investors here in Florida and
across the globe. This is by far the largest securities national disaster, greatly surpassing the Madoff
Ponzi Scheme, and could very likely become a complex international litigation disaster, similar to how
the hundreds of thousands of asbestos cases swamped all courts across the globe. Unless a workable,
coordinated, and organized structure is established now, at the very onset of these proceedings, here
in Miami, which served as the epicenter for the crypto fraud, the FTX victims will continue to suffer
and the only people to benefit will be the professionals in the bankruptcy and civil courts.

11.     The Deceptive and failed FTX Platform emanated from Miami, Florida and was based
upon false representations and deceptive conduct. FTX's fraudulent scheme was designed to take
advantage of unsophisticated investors from across the globe, who utilize mobile apps to make their
investments. As a result, consumers around the globe collectively sustained billions of dollars in
damages. FTX organized and emanated its fraudulent plan from its worldwide headquarters located
here in Miami, Florida. Miami became the "hot spot" for crypto companies, hosting the most
investments in crypto startups as well as the annual Bitcoin Miami 2022 Global Forum. Several crypto
companies, including crypto exchange Blockchain.com, Ripple and FTX.US, moved their
headquarters to Miami. Others, including fellow exchange eToro, expanded their U.S. presence with
offices in Miami. FTX was already very familiar with Miami, signing a deal worth more than $135
million dollars for the naming rights of the waterfront arena, where 3-time NBA Champions the Miami
Heat play.

**<u>FACTUAL BACKGROUND</u>**

12.     On December 24, 2021, counsel for Plaintiffs and the proposed class members
brought the first (and only) putative nationwide class action complaint against the now-defunct
cryptocurrency trading app, Voyager, styled *Mark Cassidy v. Voyager Digital Ltd., et al.,* Case No. 21-
24441-CIV-ALTONAGA/Torres (the "*Cassidy* Action"), alleging that the platform owned and

operated by Voyager Digital Ltd. ("Voyager") and Voyager Digital LLC ("VDL") was an unregulated and unsustainable fraud. In the *Cassidy* Action, plaintiffs also alleged that Defendant Ehrlich, Voyager's CEO, teamed up with Defendants Cuban and the Dallas Mavericks to promote Voyager, by making false representations and employing other means of deception. As a result, the Voyager plaintiffs and Voyager class members, all sustained losses in excess of $5 billion.

13.    The allegations in the *Cassidy* complaint—and specifically Mark Cuban's role in promoting Voyager—received national attention. *See* https://www.jdsupra.com/legalnews/new-lawsuits-target-cryptocurrency-9604406/ (summarizing the allegations and explaining that "Mark Cuban, owner of the NBA's Dallas Mavericks, is a major stakeholder in Voyager. The complaint alleges that he made comments at a press conference in which he specifically targeted unsophisticated investors 'with false and misleading promises of reaping large profits in the cryptocurrency market.'"); https://www.law.com/dailybusinessreview/2021/12/29/mark-cuban-linked-crypto-platform-hit-with-florida-nationwide-class-action-lawsuit-in-miami-federal-court/?slreturn=20220701214901 (same, in the *Daily Business Review*).

14.    After the *Cassidy* Complaint was filed, the following important actions took place:

(a)    the United States Securities and Exchange Commission (SEC) began an enforcement review focused on whether Voyager's Earn Program Accounts ("EPAs") constitute unregistered securities;

(b)    seven state Attorneys General (New Jersey, Alabama, Kentucky, Oklahoma, Texas, Vermont and Washington) took specific action finding that Voyager was violating their state laws, including issuing "cease and desist" letters to Voyager, finding that the EPA was an unregistered security, prohibiting the crypto-asset broker-dealer from selling any more unregistered securities (finding that Voyager used these EPAs to raise millions of dollars in revenue worldwide as of March 1, 2022; and

(c)    on March 29, 2002, the State of New Jersey Bureau of Securities entered a Cease and Desist Order against Voyager, finding that the EPA was not exempt from registration under the law, and instead that it must be registered—and as a result, Voyager's stock price tanked by 25% in a day and is down over 80% for the year.[8]

---

[8] https://seekingalpha.com/article/4498956-voyager-digital-plunged-25-percent-heres-why (accessed October 28, 2022); https://seekingalpha.com/article/4503716-voyager-digital-buy-dip-during-crypto-crash (accessed December 8, 2022).

15.    On July 5, 2022, Voyager Digital Holdings, Inc. and two affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code. Voyager's bankruptcy cases (the "Voyager Bankruptcy Cases") are jointly administered under Case No. 22-10943 before the Honorable Michael E. Wiles in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

16.    On September 28, 2022, Voyager filed a motion in the Voyager Bankruptcy Cases seeking authority to enter into an asset purchase agreement with West Realm Shires Inc., d/b/a FTX US whereby Voyager will sell substantially all of its assets for a purchase price of approximately $1.422 billion, which includes (i) the value of cryptocurrency on the Voyager platform as of a date to be determined, which, as of September 26, 2022, is estimated to be $1.311 billion, plus (ii) additional consideration which is estimated to provide at least approximately $111 million of incremental value to the Debtors' estates.

17.    Everyone involved in the Voyager Bankruptcy Cases thought that the FTX Entities were the *deus ex machina* come to save the day by bailing out Voyager and paying back at least some of the losses the Voyager customers sustained.

18.    Instead, as explained below, the FTX Entities imploded, their over $30 billion in value evaporated almost overnight, and the FTX Entities found themselves filing their own emergency Chapter 11 bankruptcy petition in Delaware. The Deceptive FTX Platform maintained by the FTX Entities was truly a house of cards, a Ponzi scheme where the FTX Entities shuffled customer funds between their opaque affiliated entities, using new investor funds obtained through investments in the YBAs and loans to pay interest to the old ones and to attempt to maintain the appearance of liquidity.

19.    Part of the scheme employed by the FTX Entities involved utilizing some of the biggest names in sports and entertainment to raise funds and drive global consumers to invest in the YBAs, which were offered and sold largely from the FTX Entities' domestic base of operations here in Miami, Florida, pouring billions of dollars into the Deceptive FTX Platform to keep the whole scheme afloat.

20.    Importantly, although Defendants disclosed their partnerships with the FTX Entities, they have never disclosed the nature, scope, and amount of compensation they personally received in exchange for the promotion of the Deceptive FTX Platform, which the SEC has explained that a failure to disclose this information would be a violation of the anti-touting provisions of the federal

securities laws.[9]  Moreover, none of these defendants performed any due diligence prior to marketing these FTX products to the public.

21.    The SEC took action against boxing champ Floyd Mayweather and music producer DJ Khaled after they were paid by cryptocurrency issuers to tweet promotional statements about investing in Initial Coin Offerings (ICOs), ordering them both to pay disgorgement, penalties and interest for promoting investments in ICOs, including one from cryptocurrency issuer Centra Tech, Inc, for a combined total of $767,500 because they failed to disclose that their promotional efforts on Twitter were paid endorsements.[10]

22.    Other celebrities similarly accused and prosecuted for failing to disclose their paid endorsements include Kim Kardashian and basketball player Paul Pierce.[11] According to the Federal Trade Commission, cryptocurrency scams have increased more than ten-fold year-over-year with consumers losing more than $80 million since October 2020, due in large part to the use of such celebrity endorsements. [12]

23.    As explained more fully in this Complaint, Defendants' misrepresentations and omissions made and broadcast around the globe through the television and internet render them liable to Plaintiff and class members for soliciting their purchases of the unregistered YBAs. *Wildes v. Bitconnect Int'l PLC*, No. 20-11675 (11th Cir. Feb. 18, 2022) (holding that promoters of cryptocurrency through online videos could be liable for soliciting the purchase of unregistered securities through mass communication, and no "personal solicitation" was necessary for solicitation to be actionable).

24.    This action seeks to hold Defendants responsible for the many billions of dollars in damages they caused Plaintiff and the Class and to force Defendants to make them whole.

---

[9]        https://www.ubergizmo.com/2017/11/sec-celebrities-disclose-payment-cryptocurrency-endorsements/#:~:text=It%20has%20issued%20a%20statement%20warning%20celebrities%20that,without%20disclosing%20that%20they%E2%80%99ve%20been%20paid%20for%20it    (accessed December 8, 2022).

[10]        https://news.bloomberglaw.com/us-law-week/insights-celebrity-endorsements-and-cryptocurrency-a-cautionary-tale (accessed December 8, 2022).

[11]        https://blockbulletin.com/news/altcoins/kim-kardashian-among-other-celebrities-sued-for-promoting-cryptocurrencies/ (accessed December 8, 2022).

[12] https://florida.foolproofme.org/articles/770-celebrity-cryptocurrency-scam (accessed December 8, 2022).

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

## PARTIES

25.     Plaintiff Gregg Podalsky is a citizen and resident of Florida. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Podalsky purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Podalsky did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Podalsky has sustained damages for which Defendants are liable.

26.     Plaintiff Skyler Lindeen is a citizen and resident of Florida. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Lindeen purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Lindeen did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Lindeen has sustained damages for which Defendants are liable.

27.     Plaintiff Alexander Chernyavsky is a citizen and resident of Florida. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Chernyavsky purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Chernyavsky did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Chernyavsky has sustained damages for which Defendants are liable.

28.     Plaintiff Edwin Garrison is a citizen and resident of the State of Oklahoma. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Garrison purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Garrison did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Garrison has sustained damages for which Defendants are liable.

29.     Plaintiff Gary Gallant is a citizen and resident of Canada. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Gallant purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Gallant did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Gallant has sustained damages for which Defendants are liable.

30.     Plaintiff Sunil Kavuri is a citizen and resident of the United Kingdom. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Kavuri purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Kavuri did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Kavuri has sustained damages for which Defendants are liable.

31.     Plaintiff David Nicol is a citizen and resident of Sydney, Australia. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Nicol purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Nicol did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Nicol has sustained damages for which Defendants are liable.

32.     Defendant Thomas Brady, NFL quarterback currently playing for the Tampa Bay Buccaneers, is a brand ambassador of FTX, and is a citizen and resident of Miami-Dade County, Florida.

33.     Defendant Gisele Bundchen, one of the world's highest-paid models and a brand ambassador for FTX, is a citizen and resident of Miami-Dade County, Florida.

34.     Defendant Kevin O'Leary, "Mr. Wonderful," a businessman, television personality appearing regularly on *Shark Tank*, and brand ambassador for FTX, is a citizen and resident of Miami Beach, Florida.

35.     Defendant Udonis Haslem, an American professional basketball player for the Miami Heat of the NBA and brand ambassador of FTX, is a citizen and resident of Miami-Dade County, Florida.

36.     Defendant David Ortiz, former designated hitter and first baseman in the MLB and a brand ambassador for FTX, is a citizen and resident of the State of Florida.

37.     Defendant Sam Bankman-Fried, founder and former CEO of FTX and former billionaire, is a citizen and resident of the Bahamas.

38.     Defendant Caroline Ellison is the former CEO of Alameda Research, LLC, a trading firm launched by Defendant Sam Bankman-Fried. She oversaw many of the risky bets Alameda took with regard to FTX customers' crypto tokens. Defendant Ellison is a resident of Hong Kong.

39.     Defendant Sam Trabucco, the former Co-CEO of Alameda Research, LLC, is a citizen and resident of the State of California.

40.     Defendant Gary Wang, co-founder of Alameda Research and FTX, upon information and belief is currently residing in the Bahamas.

41.     Defendant Nishad Singh, the former Director of Engineering of FTX, upon information and belief is currently residing in the Bahamas.

42.     Defendant Dan Friedberg, the former Chief Compliance Officer of FTX, is a citizen and resident of Seattle, Washington.

43.     Defendant Stephen Curry, professional basketball player for the Golden State Warriors of the NBA and brand ambassador for FTX, is a citizen and resident of the State of California.

44.     Defendant Golden State Warriors LLC is a professional basketball team in the NBA that officially launched their partnership with FTX in 2022 with the unveiling of the FTX logo on the court at the Chase Center, and is a corporation operating and existing under the laws of the State of California.

45.     Defendant Shaquille O'Neal, former professional NBA basketball star, sports analyst, entrepreneur, and FTX brand ambassador, is a citizen and resident of Collin County, Texas.

46.     Defendant William Trevor Lawrence, the quarterback for the Jacksonville Jaguars of the NFL and a brand ambassador for FTX, is a citizen and resident of the state of Mississippi.

47.     Defendant Shohei Ohtani, a professional baseball pitcher, designated hitter and outfielder for the Los Angeles Angels of the MLB and a brand ambassador for FTX, is a citizen and resident of the State of California.

48.     Defendant Naomi Osaka, a professional tennis player and brand ambassador for FTX, is a citizen and resident of Beverly Hills, California.

49.     Defendant Lawrence Gene David, an American comedian, writer, actor, television producer, and FTX brand ambassador, is a citizen and resident of Los Angeles, California.

## JURISDICTION AND VENUE

50.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the Defendants.

51.     This Court has personal jurisdiction against Defendants because they conduct business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of FTX's YBAs in Florida, which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of FTX's unregistered securities to consumers in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

52.     Venue is proper in this District under 28 U.S.C. § 1391 because thousands of Class Members either reside in this District; Defendants engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because Defendants entered into transactions and/or received substantial profits from Class Members who reside in this District.

53.     All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## FACTUAL ALLEGATIONS

**A.     Background on FTX and its Key Players.**

54.     Until seeking the protection of the Bankruptcy Court, the FTX Entities operated a multi-billion-dollar mobile application cryptocurrency investment service (the "Deceptive FTX Platform") that placed cryptocurrency trade orders on behalf of users like Plaintiff and Class Members and offered interest bearing cryptocurrency accounts.

*Defendant Sam Bankman-Fried*

55.     The FTX group of companies (FTX Group or FTX) was founded in 2019 and began as an exchange or marketplace for the trading of crypto assets. FTX was established by Samuel Bankman-Fried, Gary (Zixiao) Wang and Nishad Singh, with operations commencing in May 2019. FTX was purportedly established in order to build a digital asset trading platform and exchange for the purpose of a better user experience, customer protection, and innovative products. FTX built the

FTX.com exchange to develop a platform robust enough for professional trading firms and intuitive enough for first-time users.

56.     Prior to that, The Silicon Valley-born, MIT-educated Bankman-Fried, also known as SBF, launched his quantitative crypto trading firm, Alameda Research, in November 2017,[13] after stints in the charity world and at trading firm Jane Street.[14] Quantitative trading consists of trading strategies based on quantitative analysis, which rely on mathematical computations and number crunching to identify trading opportunities.

### *Defendants Caroline Ellison and Sam Trabucco*

57.     By 2018, Defendant Bankman-Fried had persuaded Defendant Ellison to join him at Alameda Research. Defendant Ellison described the recruitment as follows: "This was very much like, 'oh, yeah, we don't really know what we're doing,'" Ellison told Forbes magazine in an interview regarding her initial impressions of Alameda.

58.     In late 2018, the headquarters of Alameda Research was relocated to Hong Kong. The team at Alameda Research included Defendant Bankman-Fried's close friends (and later co-founders for FTX) Nishad Singh and Gary Wang. Defendant Caroline Ellison and Sam Trabucco were also part of the group and upon moving to Hong Kong the group lived like college students and fiercely traded crypto.

59.     After Defendant Bankman-Fried established FTX in 2019, Defendant Ellison began taking more responsibility at Alameda Research along with Sam Trabucco, who served as CEO.

60.     In October 2021, Ellison was appointed as co-CEO of Alameda with Sam Trabucco after Bankman-Fried resigned from the firm in an effort to put distance between the exchange and trading shop he founded. As co-CEO, Trabucco helped oversee Alameda's expansion beyond its initial market-neutral, but relatively low-profit business as a market maker for low-volume cryptocurrencies into riskier trading strategies, according to a Twitter thread detailing that shift. For instance, he said Alameda traders began exploring yield farming in decentralized finance (DeFi). Ellison became sole CEO in August 2022, following Trabucco's departure from the firm, when he shifted his role from Co-CEO to adviser of the company.[15]

61.     Leading up to the collapse of FTX, Ellison lived with nine other FTX or Alameda colleagues in Bankman-Fried's $30 million penthouse in the Bahamas. She reportedly paid SBF rent, and was occasionally

---

[13]     https://www.businessinsider.com/ftx-crypto-king-sam-bankman-fried-rise-and-fall-2022-11 (accessed December 8, 2022).

[14]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed December 8, 2022).

[15]     https://www.coindesk.com/business/2022/08/24/co-ceo-of-crypto-trading-firm-alameda-research-sam-trabucco-steps-down/ (accessed December 8, 2022).

in a romantic relationship with him. In 2021, Ellison tweeted about recreational stimulant use. Upon information and belief, Ellison left the Bahamas and moved back to Hong Kong.

62.     "Young people tend to be too risk averse," Ellison said in a more recent Alameda podcast episode.[16]

63.     The Wall Street Journal recently reported that Ellison told Alameda staffers in a video call that she was one of four people (along with Sam Bankman-Fried, Gary Wang, and Nishad Singh) who were aware of the decision to send FTX customer funds to Alameda, to help the fund meet its liabilities.[17]

### Defendant Gary Wang

64.     Wang is not like his co-founder Sam Bankman-Fried, who loves fame and putting himself at the center of public attention. In fact, there's little public information about Wang, who has been described as a shady but critical player in the rise and fall of FTX.

65.     Wang met Bankman-Fried at a math camp in high school. Later, they became college roommates at the Massachusetts Institute of Technology, where Wang got degrees in mathematics and computer science and Bankman-Fried received a bachelor's in physics.[18]

66.     Before co-founding Alameda Research (and later FTX), Wang worked at Google. He claims to have built a system to aggregate prices across public flight data, according to an introduction on the Future Fund's website.[19] When Bankman-Fried left the Jane Street Hedge Fund to start Alameda in 2017, Wang left the tech giant.

67.     The startup has its beginnings in a three-bedroom Berkeley apartment – the downstairs served as its office. The firm shifted to Hong Kong, in part to take advantage of arbitrage opportunities in Asian bitcoin markets – including the price discrepancy between BTC in Japan and BTC everywhere else.

68.     It's there that Wang and Bankman-Fried funneled funds from Alameda to build its bespoke derivatives exchange. Bankman-Fried told Insider that he is not a good coder: "I don't code. I'm trash. I have not written any of FTX's code base. That's all a lot of other really impressive people at FTX. That's not me at all."[20]

---

[16] https://www.youtube.com/watch?v=zfcb9JAgWBs (accessed December 8, 2022).
[17]     https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238 (accessed December 8, 2022).
[18] https://blog.ftx.com/blog/raising-the-bar/ (accessed December 8, 2022)
[19] https://ftxfuturefund.org/about/ (accessed December 8, 2022).
[20]     https://www.businessinsider.com/crypto-trading-billionaire-sam-bankman-fried-ftx-alameda-surprising-facts-2021-12#5-people-often-think-hes-a-programmer-but-hes-not-5     (accessed December 8, 2022).

69.     Nishad Singh, the head of engineering at FTX, said Wang was a "really good mentor" who offered suggestions and advice to push things out on short timescales.

70.     In the aftermath of FTX's collapse, and the subsequent $400 million hack, questions are circulating around who could possibly have abused client funds. Wang is a prominent suspect, as one of the few people with "root access" to the exchange's code base, according to The Block.[21]

71.     Wang is also one of the board members of FTX Future Fund – the charity guided by "effective altruism" that aims to "use reason and evidence to do the most good possible for the most people."

72.     Wang, one of the 10 roommates in Bankman-Fried' luxury penthouse in the Bahamas, is reportedly among the four people cited by Caroline Ellison who knew about the decision to send customer funds to Alameda, according to people who spoke to the Wall Street Journal.[22]

73.     A few Wang photos are circulating on the internet, though little else is known about the mysterious co-founder who preferred to stay in the shadows as SBF chased the limelight. In a now infamous picture on FTX's website, CTO Wang is seen with his back facing the camera as he focuses on the monitors in front of him.

74.     At the age of 28, Wang topped Forbes' 2022 list of the world's billionaires under 30 with a net worth of $5.9 billion in April. SBF sent his congratulations to Wang in public, tweeting that "I couldn't be prouder" when the list came out.[23]

75.     Wang is reportedly now "under supervision" by Bahamian authorities along with Bankman-Fried and Singh.[24]

---

[21]     https://www.theblock.co/post/186476/who-is-billionaire-ftx-co-founder-gary-wang-and-why-is-he-still-committing-code (accessed December 8, 2022).
[22]     https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238?mod=latest_headlines (accessed December 8, 2022).
[23]
https://twitter.com/SBF_FTX/status/1511324242612297738?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1511324242612297738%7Ctwgr%5E8e0ce65ea02f827b72be96dde8f9484a3ba3e41c%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.usatoday.com%2Fstory%2Fmoney%2F2022%2F04%2F05%2Fcryptocurrency-ceo-donate-charity%2F7272175001%2F
(accessed December 8, 2022).
[24]     https://cointelegraph.com/news/sam-bankman-fried-is-under-supervision-in-bahamas-looking-to-flee-to-dubai (accessed December 8, 2022).

### Defendant Nishad Singh

76.     Nishad Singh joined Alameda Research in the early days, when the five-person trading firm was based in a Berkeley, California, apartment. He went from finding and exploiting arbitrage opportunities in crypto markets to being appointed director of engineering at FTX.

77.     Singh is thought to be a close confidant of Bankman-Fried, having shared multiple apartments with the FTX founder over the years, including most recently a 10-person luxury penthouse in Nassau, the Bahamas.

78.     He is rumored to be just one of three people who controlled the keys to the exchange's matching engine, and may have been informed of a plan to backstop losses at Alameda with FTX customer funds.[25]

79.     Although Singh's LinkedIn profile is down and his Twitter account is locked, the University of California, Berkeley graduate talked about why he left his dream job at Facebook to join Alameda Research in a FTX podcast.[26]

80.     "I spent maybe about a month doing weekends and nights at Alameda," he said, discussing a period of time when his "day job" was as a software engineer working on applied machine learning at Facebook. "At some point, it became obvious that was kind of stupid … so I took some time off and really gave my 100% working at Alameda," Singh said.

81.     Singh visited Alameda in the first month of its existence, where he witnessed Bankman-Fried execute a sequence of trades that he described as "super profitable, easy to understand and there were lots available." Feeling inspired, he took a job.

82.     In the podcast, Singh said he was also attracted to the company's cultural commitment to effective altruism,[27] a movement that "aims to find the best ways to help others," which he discovered in college.

83.     Singh is a board member of FTX Future Fund, a part of the FTX Foundation, a philanthropic collective funded principally by Bankman-Fried and other senior FTX executives.

84.     "It was pretty clear that everybody working [at Alameda] was highly motivated, was sort of effective altruism-aligned, which mattered a lot to me and was really [a] bright spot. I could learn a lot from them," Singh said in the podcast.

---

[25]     https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238?mod=latest_headlines (accessed December 8, 2022).
[26]     https://www.youtube.com/watch?v=rl0Rq2cUSIQ (accessed December 8, 2022).
[27]     https://www.coindesk.com/layer2/2022/11/11/how-sam-bankman-frieds-effective-altruism-blew-up-ftx/ (accessed December 8, 2022).

85.     After spending one and a half years as a core Alameda engineer, Singh took a role as the head of engineering at the then-newly launched FTX derivative exchange in 2019, where he was allowed to code with "minimal supervision." He has provided code to a number of Bankman-Fried-related projects, including the decentralized exchange Serum on Solana.

86.     "Nishad was one of my brother's best friends in high school. He's shown the fastest and most sustained professional growth I've ever witnessed," Bankman-Fried wrote in a company blog.[28] Singh also reportedly built most of FTX's "technological infrastructure" and managed the development team.

87.     Although pitched as a community-run and- organized exchange, people familiar with the matter told CoinDesk the true power over Serum rested with FTX Group, which then held the program's access keys.[29] A similar relationship may be in place at FTX's core properties.[30]

88.     Singh is reportedly now "under supervision" by Bahamian authorities along with Bankman-Fried and Wang.[31]

### Dan Friedberg

89.     Daniel S. Friedberg was the chief compliance officer at FTX, the person who oversaw FTX's compliance initiatives before it imploded. He joined the firm in March 2020, and was instrumental in perpetuating its nefarious activities, in part by helping to cover up any indications that the FTX scheme was unraveling.

90.     Although Friedberg was supposed to be the adult in the room overseeing the operations of the FTX empire, he did so thousands of miles away, remotely, from Seattle, Washington. As FTX's chief regulatory officer, Friedberg was tasked with monitoring customer protection practices, ensuring product offerings complied with existing rules and overseeing internal audits and reviews. He did none of this.

91.     Friedberg has also been tied to an online poker scandal in 2008, where Ultimate Bet's founder Russ Hamilton was accused of installing a "God mode" on his gambling platform that only certain players had access to – resulting in an estimated $50 million in misappropriated funds.

---

[28] https://blog.ftx.com/blog/raising-the-bar/ (accessed December 8, 2022).
[29]     https://www.coindesk.com/business/2022/11/12/ftx-hack-spooks-solana-defi-community-igniting-revolution-at-alameda-controlled-serum-dex/ (accessed December 8, 2022).
[30]     https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238?mod=latest_headlines (accessed December 8, 2022).
[31]     https://cointelegraph.com/news/sam-bankman-fried-is-under-supervision-in-bahamas-looking-to-flee-to-dubai (accessed December 8, 2022).

92.     In a surreptitiously recorded file, Friedberg reportedly advised Hamilton to claim he was a victim of the Ultimate Bets "God mode" scam, and push blame on an unnamed consultant to the company who exploited the site's servers. The audio recordings were published in 2013 under uncertain circumstances and have not been independently verified by CoinDesk.

93.     "I did take this money and I'm not trying to make it right, Dan, so we gotta get that out of the way right away, real quick," Hamilton allegedly said in the audio recording.[32] Hamilton also founded the World Champion online poker platform.

94.     Veteran short seller Marc Cohodes, one of the few to publicly question the rapid rise of FTX before its fall in a September interview with trading-focused webcast Hedgeye,[33] had noted the potential conflicts of hiring someone connected to a cheating scandal to oversee compliance at the $32 billion FTX exchange.

95.     Similarly here, Dan Friedberg in his role as Chief Compliance Officer oversaw both FTX and Alameda, which had its own "god mode," i.e., Alameda was secretly exempted from FTX's auto-liquidation protocols.

96.     Friedberg's penchant for duplicity to make legal problems vanish for his corporate paymasters didn't end with UB's demise. NBC News recently reported on a 2020 incident involving SBF's promotion of the Ethereum-based Cover Protocol and the unfortunate experience of one Dave Mastrianni, an investor who was prevented from cashing out his $400,000 in paper winnings due to "insufficient liquidity" on FTX before the COVER token cratered.[34]

97.     When Mastrianni contacted FTX to accuse SBF of having a "pump and dump" role in the debacle, Friedberg called back with an offer. How would Mastrianni, a graphic artist, like a job creating NFTs for FTX? Friedberg offered Mastrianni an 'adviser' contract that would pay him one BTC for 30 days' work, but it also required Mastrianni to absolve FTX, Alameda, and its affiliates of any responsibility for Mastrianni's COVER losses.

98.     Mastrianni eventually agreed, but while he did receive that one BTC, FTX never accepted any of his artwork. Freidberg later emailed to inform him that the payment "was primarily

---

[32] http://craakker.blogspot.com/2013/05/pokers-watergate-moment.html (accessed December 8, 2022).
[33] https://app.hedgeye.com/insights/122943-marc-cohodes-ftx-is-dirty-rotten-to-the-core-hedgeye-investing-s?with_category=17-insights (accessed December 8, 2022).
[34] https://www.nbcnews.com/news/epic-fall-sam-bankman-fried-was-hailed-crypto-genius-clients-saw-smoke-rcna56583 (accessed December 8, 2022).

for your release of all claims" and, with that goal accomplished, FTX had no more reason to maintain this subterfuge.

99.     In August, the Federal Deposit Insurance Corporation (FDIC) sent a letter to Friedberg and then-FTX US CEO Brett Harrison to "cease and desist" using marketing language that could have been erroneously interpreted as saying that exchange users accounts were ensured by the federal banking regulator. Harrison subsequently deleted the tweet.

100.     Before joining FTX, Friedberg was a partner at Fenwick & West LLP, where he led the law firm's cryptocurrency division, according to a now-deprecated LinkedIn page. He received a JD and MBA degree from the University of Wisconsin-Madison.

**B.     The Rise and Fall of FTX.**

101.     The FTX.com exchange was extremely successful since its launch. This year around $15 billion of assets are traded daily on the platform, which now represents approximately 10% of global volume for crypto trading. The FTX team has grew to over 300 globally. Although the FTX Entities' primary international headquarters is in the Bahamas, its domestic US base of operations is located in Miami, Florida.[35]

102.     FTX quickly became one of the most utilized avenues for nascent investors to purchase cryptocurrency. By the time FTX filed for bankruptcy protection, customers had entrusted billions of dollars to it, with estimates ranging from $10-to-$50 *billion dollars*.

103.     Bankman-Fried got rich off FTX and Alameda, with the two companies netting $350 million and $1 billion in profit, respectively, in 2020 alone, according to Bloomberg.

104.     At his peak, Bankman-Fried was worth $26 billion. At 30, he had become a major political donor, gotten celebrities like the Co-Defendants in this action to vociferously promote FTX, and secured the naming rights to the arena where the NBA's Miami Heat play.[36]

105.     In early November 2022, crypto publication CoinDesk released a bombshell report that called into question just how stable Bankman-Fried's empire really was.[37]

---

[35]     https://www.coindesk.com/business/2022/09/27/crypto-exchange-ftx-is-moving-its-us-headquarters-from-chicago-to-miami/ (accessed December 8, 2022).

[36]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed December 8, 2022).

[37]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed December 8, 2022).

106.    Bankman-Fried's cryptocurrency empire was officially broken into two main parts: FTX (his exchange) and Alameda Research (his trading firm), both giants in their respective industries. But even though they are two separate businesses, the division breaks down in a key place: on Alameda's balance sheet, which was full of FTX – specifically, the FTT token issued by the exchange that grants holders a discount on trading fees on its marketplace. While there is nothing per se untoward or wrong about that, it shows Bankman-Fried's trading giant Alameda rests on a foundation largely made up of a coin that a sister company invented, not an independent asset like a fiat currency or another crypto. The situation adds to evidence that the ties between FTX and Alameda are unusually close.[38]

107.    After obtaining this information, Changpeng "CZ" Zhao, the CEO of Binance, decided to liquidate roughly $530 million-worth of FTT. Customers also raced to pull out, and FTX saw an estimated $6 billion in withdrawals over the course of 72 hours, which it struggled to fulfill.[39] The value of FTT plunged 32%, but rallied once again with Bankman-Fried's surprise announcement on Tuesday, November 8th, that Binance would buy FTX, effectively bailing it out.[40]

108.    The next day, Binance announced that it was withdrawing from the deal, citing findings during due diligence, as well as reports of mishandled customer funds and the possibility of a federal investigation.[41] The news sent FTT plunging even further — Bankman-Fried saw 94% of his net worth wiped out in a single day.[42] On November 11th, unable to obtain a bailout, FTX filed for Chapter 11 bankruptcy and Bankman-Fried resigned as CEO.[43]

109.    Following his resignation, Bankman-Fried issued a 22-tweet-long explanation of where he believed he and the FTX Entities went wrong:[44]

---

[38]    https://www.coindesk.com/business/2022/11/02/divisions-in-sam-bankman-frieds-crypto-empire-blur-on-his-trading-titan-alamedas-balance-sheet/ (accessed December 8, 2022).

[39]    https://markets.businessinsider.com/news/currencies/ftx-6-billion-withdrawals-72-hours-sam-bankman-fried-binance-2022-11 (accessed December 8, 2022).

[40]    https://markets.businessinsider.com/news/currencies/ftx-6-billion-withdrawals-72-hours-sam-bankman-fried-binance-2022-11 (accessed December 8, 2022).

[41]    https://markets.businessinsider.com/news/currencies/ftx-crash-sec-cftc-probes-asset-liability-shortfall-6-billion-2022-11 (accessed December 8, 2022).

[42]    https://www.businessinsider.com/ftx-ceo-crypto-binance-sam-bankman-fried-wealth-wiped-out-2022-11 (accessed December 8, 2022).

[43]    https://markets.businessinsider.com/news/currencies/ftx-bankruptcy-sam-bankman-fried-ceo-crypto-binance-alameda-markets-2022-11 (accessed December 8, 2022).

[44]    https://twitter.com/SBF_FTX/status/1590709189370081280 (accessed December 8, 2022).

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*



**SBF** ✓ @SBF_FTX · Nov 10
1) I'm sorry. That's the biggest thing.

I fucked up, and should have done better.

💬 11K      🔁 21.4K      ❤️ 59.3K      ⬆️

**SBF** ✓ @SBF_FTX · Nov 10
2) I also should have been communicating more very recently.

Transparently--my hands were tied during the duration of the possible Binance deal; I wasn't particularly allowed to say much publicly. But of course it's on me that we ended up there in the first place.

💬 218      🔁 391      ❤️ 4,939      ⬆️

**SBF** ✓ @SBF_FTX · Nov 10
3) So here's an update on where things are.

[THIS IS ALL ABOUT FTX INTERNATIONAL, THE NON-US EXCHANGE. FTX US USERS ARE FINE!]

[TREAT ALL OF THESE NUMBERS AS ROUGH. THERE ARE APPROXIMATIONS HERE.]

💬 259      🔁 639      ❤️ 3,873      ⬆️

**SBF** ✓ @SBF_FTX · Nov 10
4) FTX International currently has a total market value of assets/collateral higher than client deposits (moves with prices!).

But that's different from liquidity for delivery--as you can tell from the state of withdrawals. The liquidity varies widely, from very to very little.

💬 174      🔁 636      ❤️ 3,592      ⬆️

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*



**SBF** ✓ @SBF_FTX · Nov 10

5) The full story here is one I'm still fleshing out every detail of, but as a very high level, I fucked up twice.

The first time, a poor internal labeling of bank-related accounts meant that I was substantially off on my sense of users' margin. I thought it was way lower.

○ 251          ↑↓ 749          ♡ 3,407          ⬆



**SBF** ✓ @SBF_FTX · Nov 10

6) My sense before:

Leverage: 0x
USD liquidity ready to deliver: 24x average daily withdrawals

Actual:

Leverage: 1.7x
Liquidity: 0.8x Sunday's withdrawals

Because, of course, when it rains, it pours. We saw roughly $5b of withdrawals on Sunday--the largest by a huge margin.

○ 241          ↑↓ 907          ♡ 3,823          ⬆



**SBF** ✓ @SBF_FTX · Nov 10

7) And so I was off twice.

Which tells me a lot of things, both specifically and generally, that I was shit at.

And a third time, in not communicating enough. I should have said more. I'm sorry--I was slammed with things to do and didn't give updates to you all.

○ 116          ↑↓ 278          ♡ 2,882          ⬆

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*





*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*



SBF ✔ @SBF_FTX · Nov 10

12) Every penny of that--and of the existing collateral--will go straight to users, unless or until we've done right by them.

After that, investors--old and new--and employees who have fought for what's right for their career, and who weren't responsible for any of the fuck ups.

◯ 102      ⇄ 274      ♡ 3,007      ⬆



SBF ✔ @SBF_FTX · Nov 10

13) Because at the end of the day, I was CEO, which means that *I* was responsible for making sure that things went well. *I*, ultimately, should have been on top of everything.

I clearly failed in that. I'm sorry.

◯ 180      ⇄ 423      ♡ 4,122      ⬆



SBF ✔ @SBF_FTX · Nov 10

14) So, what does this mean going forward?

I'm not sure--that depends on what happens over the next week.

But here are some things I know.

◯ 129      ⇄ 235      ♡ 2,502      ⬆

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*







*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*



**SBF** ✔ @SBF_FTX · Nov 10

18) But all of that isn't what matters right now--what matters right now is trying to do right by customers. That's it.

💬 144          🔁 158          ♡ 1,970          ⬆️



**SBF** ✔ @SBF_FTX · Nov 10

19) A few other assorted comments:

This was about FTX International. FTX US, the US based exchange that accepts Americans, was not financially impacted by this shitshow.

It's 100% liquid. Every user could fully withdraw (modulo gas fees etc).

Updates on its future coming.

💬 406          🔁 760          ♡ 2,776          ⬆️



**SBF** ✔ @SBF_FTX · Nov 10

20) At some point I might have more to say about a particular sparring partner, so to speak.

But you know, glass houses. So for now, all I'll say is:

well played; you won.

💬 1,532          🔁 3,303          ♡ 8,047          ⬆️



**SBF** ✔ @SBF_FTX · Nov 10

21) NOT ADVICE, OF ANY KIND, IN ANY WAY

I WAS NOT VERY CAREFUL WITH MY WORDS HERE, AND DO NOT MEAN ANY OF THEM IN A TECHNICAL OR LEGAL SENSE; I MAY WELL HAVE NOT DESCRIBED THINGS RIGHT though I'm trying to be transparent. I'M NOT A GOOD DEV AND PROBABLY MISDESCRIBED SOMETHING.

💬 908          🔁 1,055          ♡ 3,463          ⬆️



110.     According to a recent Reuters report, however, another explanation contributing to the precarious house of cards that was the Deceptive FTX Platform is that earlier this year, Bankman-Fried secretly transferred *at least $4 billion* in customer funds from FTX to Alameda without telling anyone, after Alameda was hit with a series of losses, and that the FTX entities lent more than *half* of its *$16 billion* in *customer funds* to Alameda in total, with more than *$10 billion in loans outstanding*.[45]

**C.     FTX's offer and sale of YBAs, which are unregistered securities.**

111.     Beginning in 2019, the FTX Entities began offering interest-bearing cryptocurrency accounts to public investors. Plaintiff and other similarly situated individuals invested in FTX's YBAs.

112.     FTX maintains that it does not offer for sale any product that constitutes a "security" under federal or state law. Under federal securities laws as construed by the United States Supreme Court in its decision *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and by the SEC, an investment contract is a form of security under United States securities laws when (1) the purchaser makes an investment of money or exchanges another item of value (2) in a common enterprise (3) with the reasonable expectation of profits to be derived from the efforts of others.

113.     The YBAs were "securities" as defined by the United States securities laws and as interpreted by the Supreme Court, the federal courts, and the SEC. The FTX Entities offered variable interest rewards on crypto assets held in the YBAs on the Deceptive FTX Platform, which rates were determined by the FTX Entities in their sole discretion. In order to generate revenue to fund the promised interest, the FTX Entities pooled the YBA assets to engage in lending and staking activities from which they derived revenue to pay interest on the YBAs. These activities make the YBAs a "security" under state and federal law.

---

[45]     https://markets.businessinsider.com/news/currencies/ftx-crash-client-funds-alameda-binance-sbf-sec-cftc-probe-2022-11?utm_medium=ingest&utm_source=markets (accessed December 8, 2022).

114.    On October 14, 2022, Director of Enforcement of the Texas State Securities Board, Joseph Rotunda, filed a declaration in the Chapter 11 bankruptcy proceedings pending in connection with the collapse of the Voyager Digital cryptocurrency exchange, *In re: Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW), ECF No. 536 (Bankr. S.D.N.Y. Oct. 14, 2022), in which he explained how the YBAs are in fact "an offering of unregistered securities in the form of yield-bearing accounts to the residents of the United States." *Id.*, at 6. In his declaration, the pertinent portions of which are reproduced in full for ease of reference, Rotunda explains:

I am also familiar with FTX Trading LTD ("FTX Trading") dba FTX as described herein. As more fully explained throughout this declaration, I am aware that FTX Trading, along with West Realm Shires Services Inc. dba FTX US ("FTX US"), may be offering unregistered securities in the form of yield-bearing accounts to residents of the United States. These products appear similar to the yield-bearing depository accounts offered by Voyager Digital LTD et al., and the Enforcement Division is now investigating FTX Trading, FTX US, and their principals, including Sam Bankman-Fried.

I understand that FTX Trading is incorporated in Antigua and Barbuda and headquartered in the Bahamas. It was organized and founded in part by Mr. Bankman-Fried, and FTX Trading appears to be restricting operations in the United States. For example, domestic users accessing the webpage for FTX Trading at ftx.com are presented with a pop-up window that contains a disclaimer that reads in part as follows:

Did you mean to go to FTX US? FTX US is a US licensed cryptocurrency exchange that welcomes American users.

You're accessing FTX from the United States. You won't be able to use any of FTX.com's services, though you're welcome to look around the site.

FTX US claims to be regulated as a Money Services Business with FinCEN (No. 31000195443783) and as a money transmitter, a seller of payment instruments and in other non-securities capacities in many different states. It is not, however, registered as a money transmitter or in any other capacity with the Texas Department of Banking and it is not registered as a securities dealer with the Texas State Securities Board.

FTX US owns 75 percent or more of the outstanding equity of FTX Capital Markets (CRD No. 158816) ("FTX Capital"), a firm registered as a broker-dealer with the United States Securities and Exchange Commission, the Financial Industry Regulatory Authority Inc., and 53 state and territorial securities regulators. FTX Capital's registration as a dealer in Texas became effective on May 7, 2012, and the registration continues to remain in force and effect.

FTX US maintains a website at https://ftx.us that contains a webpage for smartphone applications for FTX (formerly Blockfolio)[46] (the "FTX Trading App") and FTX US Pro. Users appear able to click a link in this webpage to download the FTX Trading App even when they reside in the United States.

On October 14, 2022, I downloaded and installed the FTX Trading App on my smartphone. I created an account with FTX Trading through the FTX Trading App and linked the FTX account to an existing personal bank account. During the process, I provided my full first and last name and entered my residential address in Austin, Texas. I also accessed hyperlinks in the FTX Trading App that redirected to the Privacy Policy and Terms of Service. Although I was from the United States and was using the application tied to FTX Trading, the Privacy Policy and Terms of Service were from FTX US - not FTX Trading.

I thereafter used the FTX Trading App to initiate the transfer of $50.00 from my bank account to the FTX account and then transferred .1 ETH from a 3.0 wallet to the FTX account. The transfer of funds from my bank account to the FTX account will take up to six days to complete but the transfer of ETH was processed within a few minutes.

The FTX Trading App showed that I was eligible to earn a yield on my deposits. It also explained the "Earn program is provided by FTX.US" – not FTX Trading. It also represented that "FTX Earn rewards are available for US users on a promotional basis."

I recall the FTX Trading App's default settings were automatically configured to enable the earning of yield. The application also contained a link for additional information about yield. I accessed the link and was redirected to a recent article published by "Blockfolio Rebecca" under help.blockfolio.com. The article began as follows:

> You can now earn yield on your crypto purchases and deposits, as well as your fiat balances, in your FTX Trading App! By opting in and participating in staking your supported assets in your FTX account, you'll be eligible to earn up to 8% APY on your staked assets. THIS APY IS ESTIMATED AND NOT GUARANTEED AS DESCRIBED BELOW.

The article also described the payment of yield. It contained a section titled *How do you calculate APY? Does my balance compound daily?* that read, in part, as follows:

> FTX will deposit yield earnings from the staked coins, calculated hourly, on the investment portfolio that is stored in your FTX Trading App. Yield will be compounded on principal and yield you have already earned. Any cryptocurrency

---

[46] Based upon information and belief, FTX Trading acquired Blockfolio LLC ("Blockfolio") in or around August 2020. At the time, Blockfolio managed a cryptocurrency application. FTX Trading appears to have thereafter rebranded Blockfolio and its smartphone application as FTX. Now, users can download the FTX Trading App from Apple's App Store or Google's Google Play Store. Although FTX rebranded Blockfolio, the application listing in Apple's App Store still shows the application with developed by Blockfolio.

that you have deposited on FTX as well as any fiat balance you may have on your account, will earn yield immediately after you have opted into the program.

The first $10,000 USD value in your deposit wallets will earn 8% APY. Amounts held above $10,000 up to $10MM USD in value (subject to market fluctuations) will earn 5% APY. In this scenario, your yield earned on the coins will look something like the examples below the table.

The article also contained a section titled Is this available in my country? This section explained that "FTX Trading App Earn is available to FTX Trading App customers that are in one of the FTX permitted jurisdictions." It contained a hyperlink to an article titled *Location Restrictions* published by FTX Crypto Derivatives Exchange under help.ftx.com. This article described various restrictions on operations in certain countries and locations and read in part as follows:

**FTX** does not onboard or provide services to corporate accounts of entities located in, established in, or a resident of the **United States of America, Cuba, Crimea and Sevastopol, Luhansk People's Republic, Donetsk People's Republic, Iran, Afghanistan, Syria, or North Korea**. FTX also does not onboard corporate accounts located in or a resident of **Antigua or Barbuda**. FTX also does not onboard any users from Ontario, and FTX does not permit non-professional investors from Hong Kong purchasing certain products.

**FTX does not onboard or provide services to personal accounts of current residents of the United States of America, Cuba, Crimea and Sevastopol, Luhansk People's Republic, Donetsk People's Republic, Iran, Afghanistan, Syria, North Korea, or Antigua and Barbuda**. There may be partial restrictions in other jurisdictions, potentially including Hong Kong, Thailand, Malaysia, India and Canada. In addition, FTX does not onboard any users from Ontario, does not permit non-professional investors from Hong Kong purchasing certain products, and does not offer derivatives products to users from Brazil.

FTX serves all Japanese residents via FTX Japan.

(emphasis in original)

Despite the fact I identified myself by name and address, the FTX Trading App now shows that I am earning yield on the ETH. The yield is valued at 8 percent APR.

Based upon my earning of yield and an ongoing investigation by the Enforcement Division of the Texas State Securities Board, the yield program appears to be an investment contract, evidence of indebtedness and note, and as such appears to be regulated as a security in Texas as provided by Section 4001.068 of the Texas Securities Act. At all times material to the opening of this FTX account, FTX Trading and FTX US have not been registered to offer or sell securities in Texas. FTX Trading and FTX US may therefore be violating Section 4004.051 of the Texas Securities Act. Moreover, the yield program described herein has not been registered or permitted for sale in Texas as generally required by Section 4003.001 of the Securities Act, and as such FTX Trading and FTX US may be violation Section 4003.001 by offering unregistered or unpermitted securities for sale in Texas. Finally, FTX Trading and FTX

US may not be fully disclosing all known material facts to clients prior to opening accounts and earning yield, thereby possibly engaging in fraud and/or making offers containing statements that are materially misleading or otherwise likely to deceive the public. Certain principals of FTX Trading and FTX US may also be violating these statutes and disclosure requirements. Further investigation is necessary to conclude whether FTX Trading, FTX US and others are violating the Securities Act through the acts and practices described in this declaration.

The Enforcement Division of the Texas State Securities Board understands that FTX US placed the highest bid for assets of Voyager Digital LTD et al., a family of companies variously accused of misconduct in connection with the sale of securities similar to the yield program promoted by FTX Trading and FTX US. FTX US is managed by Sam Bankman-Fried (CEO and Founder), Gary Wang (CTO and Founder) and Nishad Singh (Head of Engineering). The same principals hold the same positions at FTX Trading, and I was able to access the yield-earning product after following a link to the FTX Trading App from FTX US's website. The FTX Trading App also indicated the Earn program is provided by FTX US. As such, FTX US should not be permitted to purchase the assets of the debtor unless or until the Securities Commissioner has an opportunity to determine whether FTX US is complying with the law and related and/or affiliated companies, including companies commonly controlled by the same management, are complying with the law.

I hereby authorize the Texas Attorney General's Office and any of its representatives to use this declaration in this bankruptcy proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 14, 2022 in Austin, Texas.

/s Joseph Jason Rotunda

By: Joseph Jason Rotunda

## D.  The Defendants Aggressively Marketed the FTX Platform

115.    In addition to the conduct of Defendant Sam Bankman-Fried, as described in this Complaint, some of the biggest names in sports and entertainment have either invested in FTX or been brand ambassadors for the company. A number of them hyped FTX to their social media fans, driving retail consumer adoption of the Deceptive FTX Platform.

116.    In April 2021, FTX became the first company in the crypto industry to name an arena. This helped lend credibility and recognition to the FTX brand and gave the massive fanbase of basketball exposure to the Deceptive FTX Platform.

117.    FTX's explanation for using stars like Brady, Bunchden, and the other Defendants was no secret. "We're the newcomers to the scene," said then-FTX.US President Brett Harrison, referring to the crypto services landscape in the U.S. "The company needs to familiarize consumers with its technology, customer service and offerings, while competing with incumbents like Coinbase Global Inc. or Kraken," Mr. Harrison said. "We know that we had to embark on some kind of mass branding, advertising, sponsorship type work in order to be able to do that," he said.[47]

118.    In other words, the FTX Entities needed celebrities like Defendants to continue funneling investors into the FTX Ponzi scheme, and to promote and substantially assist in the sale of the YBAs, which are unregistered securities. Below are representative statements and advertisements Defendants made to drive the offers and/or sales of the YBAs, which Plaintiff and Class Members will supplement as the case progresses and discovery unfolds.

### i.    Defendants Tom Brady and Gisele Bundchen



119.    The star quarterback and the businesswoman and model, then a couple, became FTX ambassadors last year. They also took equity stakes in FTX Trading Ltd.

120.    Mr. Brady and Ms. Bündchen also joined the company's $20-million ad campaign in 2021. They filmed a commercial called "FTX. You In?" showing them telling acquaintances to join the FTX platform. The ad can be viewed here: https://www.youtube.com/watch?v=uymLJoKFlW8

---

[47]    https://www.wsj.com/articles/tom-brady-and-gisele-bundchen-to-star-in-20-million-campaign-for-crypto-exchange-11631116800?mod=article_inline (accessed December 8, 2022).

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

ii.     **Defendant Kevin O'Leary**



121.     "Mr. Wonderful," both a brand ambassador and an FTX shareholder, made several public statements designed to induce consumers to invest in the YBAs.

122.     "To find crypto investments opportunities that met my own rigorous standards of compliance, I entered into this relationship with @FTX_Official," Mr. O'Leary said on Twitter last year. Mr. O'Leary **recently deleted the tweet**.

123.     He also served as a judge for the FTX Charity Hackathon in Miami in March of 2022.[48]

124.     And *very* recently, on October 12, 2022, O'Leary stated confidently that FTX was totally compliant and a safe place to hold assets. O'Leary stated that: "I have to disclose I'm a paid spokesperson to a FTX and shareholder there, too, cause we mentioned him and I'm a big advocate for Sam because he has two parents who are compliance lawyers.  If there's ever a place I could be that I'm not gonna get in trouble it's going to be in FTX so you know that's there they're great people but he gets the job in compliance which is why he's working so hard to get regulation."[49]

---

[48] https://ftxcharityhackathon.com/ (accessed December 8, 2022).
[49] *See* https://www.youtube.com/watch?v=iwD_zWgyUz8 beginning at 17:32 (accessed December 8, 2022)

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*



125.    He went on to state that "[t]here are a lot of signs right now that point to things looking bad. Crypto has taken a big hit and investors are wondering if things will turn around. If you follow history and the pattern of things, you know that this is RIGHT ON TRACK and we'll soon see a resurgence with crypto. Do you think we're entering a Bullish period? Let me know in the comments!"[50]

### iii.    Defendant Udonis Haslem



126.    Udonis Haslem, the Captain of the Miami HEAT and Miami legend, became an FTX global ambassador. Much like Brady and Bunchden, Haslem starred in FTX's "You In, Miami?" ad campaign that launched at the start of the 2021 - 2022 Miami HEAT season.

127.    In the ad, which be viewed here: https://www.youtube.com/watch?v=83FDP53yPa8, Haslem states "FTX has arrived in 305. So I just got one question: Are you in, Miami?" Others respond "If he's in, I'm in." Haslem concludes "Our city. Our team. FTX. You in, Miami?"

---

[50] *Id.*

### iv. Defendant David Ortiz



128.     Defendant David Ortiz, who became an FTX brand ambassador and hyped the YBAs in exchange for cryptocurrency and multiple collections of NFTs, also ran his own FTX "You In?" ad, which began running nationwide during the first game of the 2021 World Series.

129.     In the ad, which can be found here: <u>https://www.ispot.tv/ad/qSlm/ftx-big-papi-is-in</u>, Ortiz is watching a game on the television when he receives a phone call from The Moon. Inspired by the "moonblast" home run scored on the field, The Moon frantically tells David about opportunities to get into cryptocurrency with FTX. David decides it's an offer he can't refuse and joins fellow sports stars Stephen Curry and Tom Brady on the platform. FTX announces it is the official crypto exchange of MLB.

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

### v. Defendant Steph Curry



130.    Defendant Stephen Curry had his own nationwide ad campaign pushing the Deceptive FTX Platform, known as the "#notanexpert" campaign.[51] Throughout the ad, Curry repeatedly denies being cast as an expert in cryptocurrency, culminating in his statement that "I'm not an expert, ***and I don't need to be.*** With FTX I have everything I need to buy, sell, and trade crypto ***safely.***"[52]

131.    The purpose of Curry being an ambassador is to expand the reach of the crypto firm and "tout the viability of cryptocurrency to new audiences around the world," FTX said in a press release.[53] In other words, to drive adoption of the Deceptive FTX Platform and to facilitate the sales of unregistered YBAs to unsuspecting and unwitting retail consumers.

132.    "I'm excited to partner with a company that demystifies the crypto space and eliminates the intimidation factor for first-time users," Curry said in the statement, highlighting that "first-time," inexperienced users were the intended targets of the campaign.[54]

---

[51] https://www.youtube.com/watch?v=gsy2N-XI04o (accessed December 8, 2022).
[52] *Id.*
[53]    https://www.prnewswire.com/news-releases/nba-superstar-stephen-curry-becomes-global-ambassador-and-shareholder-of-leading-cryptocurrency-exchange-ftx-through-long-term-partnership-301370497.html (accessed December 8, 2022).
[54] *Id.*

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

vi.     **Defendant Golden State Warriors**



Official Crypto Platform and NFT Marketplace
of the **Golden State Warriors**

133.     The Golden State Warriors and FTX officially launched their partnership in 2022 with the unveiling of the FTX logo on the court at the Chase Center. As the Warriors' Official Cryptocurrency Platform and NFT Marketplace, the franchise dropped NFTs on FTX.us beginning in early 2022. The partnership between the Warriors and FTX marked the first international rights partner for the Warriors, meaning the GSW and FTX had a visible market presence, inclusive of logo and likeness, internationally.

134.     The deal also included the Warriors' G League team, the Golden Guardians and Warriors Gaming Squad (affiliated esports teams), in-arena signage at Chase Center, and virtual floor signage at Warriors games.[55]

---

[55] https://www.instagram.com/p/CYiBaq8JLx7/ (accessed December 8, 2022).

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

      vii.    **Defendant Shaquille O'Neal**



135.    Defendant Shaquille O'Neal, former professional NBA basketball star, sports analyst, and entrepreneur, also became an FTX ambassador, stating in a video posted on FTX's Twitter account that "I'm excited to be partnering with FTX to help make crypto accessible for everyone. I'm all in. Are you?"[56]

---

[56]

https://twitter.com/FTX_Official/status/1532119977381208066?s=20&t=5wTm55FDE6c0cCD9 vCndYg (accessed December 8, 2022).

### viii.    Defendant Trevor Lawrence



136.    Defendant William Trevor Lawrence, the first pick in the 2021 NFL draft and now quarterback for the Jacksonville Jaguars of the NFL, became a brand ambassador for FTX in exchange for unspecified cryptocurrency payments, which sponsorship was announced in April 2021.[57] The stated purpose of the sponsorship was because "Trevor is someone people can have a personal and human connection with for [FTX] and to the crypto space."[58]

---

[57] https://twitter.com/ftx_app/status/1386667859393253376 (accessed December 8, 2022).
[58] https://www.forbes.com/sites/chriscason/2021/04/26/trevor-lawrence-makes-first-investment-move-with-first-of-its-kind-partnership-with-blockfolio/?sh=7190ee6f47ef (accessed December 8, 2022).

### ix.    Defendant Shohei Ohtani



137.    The FTX Entities entered into a long-term partnership with global icon and history-making MLB Superstar Shohei Ohtani. In addition to being an FTX global ambassador, Mr. Ohtani received all of his compensation in equity and cryptocurrencies.[59] In exchange for those unspecified payments, Mr. Ohtani served as a spokesperson for FTX to increase awareness of the Deceptive FTX Platform and to drive adoption of and investments in the unregistered YBA securities on a global scale through a variety of initiatives. [60]

---

[59]    https://www.prnewswire.com/news-releases/mlb-superstar-shohei-ohtani-joins-ftx-as-global-ambassador-through-long-term-partnership-301425911.html (accessed December 8, 2022).
[60] *Id.*

x.    **Defendant Naomi Osaka**



138.    Defendant Naomi Osaka, a 24-year-old professional tennis player and four-time Grand Slam singles champion, became a brand ambassador for FTX, with the express purpose of "getting more women to start investing in crypto."[61] Osaka wore the FTX logo on the kit she wore at tournaments, including the 2022 Miami Open. [62] In exchange for an equity stake in FTX and payments in unspecified amounts of cryptocurrency, Osaka directed and produced content in association with the FTX Entities designed to promote the offer and sale of the unregistered YBA securities, hoping "she will reach a global audience."[63]

139.    Osaka confirmed her involvement by tweeting a glitzy new FTX ad to her **1.1 million followers**, which can be viewed here: https://youtu.be/pkuf8avR50k. It shows the tennis star competing in a comic strip — and over dramatic music, she says: "They thought they made the rules for us. They thought they could control us. They were wrong."

140.    The video then cuts to a boardroom full of marketing executives talking about the ad in a tongue-in-cheek way — and discussing other ideas… including Osaka heading to the moon. An idea to have a QR code bouncing around the screen (a clear nod to Coinbase's Super Bowl spot) is dismissed for being "boring."

---

[61]    https://coinmarketcap.com/alexandria/article/naomi-osaka-tennis-star-teams-up-with-ftx-and-she-s-getting-paid-in-crypto-too (accessed December 8, 2022).
[62]    *Id.*
[63]    *Id.*

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

141.    They settle on letting Osaka speaking for herself — and play a mock-up of the tennis ace giving an interview to a news channel where she says: "I'm Naomi Osaka and I'm proud to partner with FTX. Making cryptocurrency accessible is a goal that FTX and I are striving towards." The ad ends with the tagline: "Naomi is in. You in?"

### xi.    Defendant Larry David



142.    For his part, the legendary comedian and creator of *Seinfeld* and *Curb Your Enthusiasm*, Larry David, created an ad for the FTX Entities called "Don't Miss Out on Crypto," which aired during the 2022 Super Bowl, making FTX one of the most retweeted brands during the Super Bowl, and winning the "Most Comical" honorific from *USA Today*'s Ad Meter.[64]

143.    The ad—the only Super Bowl commercial David ever appeared in—featured David being a skeptic on such historically important inventions as the wheel, the fork, the toilet, democracy, the light bulb, the dishwasher, the Sony Walkman, and, of course, FTX, and cautioned viewers, "Don't be like Larry." The ad can be viewed here: https://youtu.be/BH5-rSxilxo

---

[64]        https://admeter.usatoday.com/lists/usa-today-ad-meter-replay-ratings-2022-final-results/ (accessed December 8, 2022).

## CLASS ACTION ALLEGATIONS

144.     As detailed below in the individual counts, Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure.

**A.      Class Definitions**

145.     Plaintiffs seek to represent the following Global Class, Nationwide Class, and Florida Subclass (collectively, "the Classes"):

      **(1)** **Global Class**: All persons and entities residing outside of the United States who, within the applicable limitations period, purchased or enrolled in a YBA.

      **(2)** **Nationwide Class:** All persons or entities in the United States who, within the applicable limitations period, purchased or enrolled in a YBA.

      **(3)** **Florida Subclass:** All persons or entities in the state of Florida who, within the applicable limitations period, purchased or enrolled in a YBA.

Excluded from the Classes are Defendants and their officers, directors, affiliates, legal representatives, and employees, the FTX Entities and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

146.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes, or to include additional classes or subclasses, before or after the Court determines whether such certification is appropriate as discovery progresses. Plaintiffs seek certification of the Classes in part because all offers of FTX YBAs to Plaintiffs and the Class Members (in which Defendants each substantially participated) were made by FTX from their principal place of business in Miami, Florida, and thus every single offer to sell an FTX YBA stems from a transactional occurrence that emanated from the State of Florida.

**B.      Numerosity**

147.     The Classes are comprised of thousands, if not millions, of consumers globally, to whom FTX offered and/or sold YBAs. Moreover, thousands, if not millions, of consumers worldwide have executed trades on the FTX Platform within the applicable limitations period. Membership in the Classes are thus so numerous that joinder of all members is impracticable. The precise number of

class members is currently unknown to Plaintiffs but is easily identifiable through other means, such as through FTX's corporate records or self-identification.

## C. Commonality/Predominance

148.    This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(a)  whether the YBAs were unregistered securities under federal or Florida law;

(b)  whether Defendants' participation and/or actions in FTX's offerings and sales of YBAs violate the provisions of the Securities Act and Florida securities law.

(c)  the type and measure of damages suffered by Plaintiffs and the Class.

(a)  whether Defendants' practices violate the FDUTPA;

(b)  whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

(c)  whether Plaintiffs and Class members are entitled to injunctive relief;

(d)  whether Plaintiffs and Class members are entitled to declaratory relief; and

(e)  whether Plaintiffs and Class members are entitled to consequential damages, punitive damages, statutory damages, disgorgement, and/or other legal or equitable appropriate remedies as a result of Defendants' conduct.

## D. Typicality

149.    Plaintiffs' claims are typical of the claims of the members of the Classes because all members were injured through the uniform misconduct described above, namely that Plaintiffs and all class members were offered and/or sold FTX's YBAs because of Defendants' actions and/or participation in the offering and sale of these unregistered securities, and Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all such members. Further, there are no defenses available to any Defendant that are unique to Plaintiffs.

## E. Adequacy of Representation

150.    Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and

legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

**F.     Requirements of Fed. R. Civ. P. 23(b)(3)**

151.     The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Classes. All claims by Plaintiffs and the unnamed members of the Classes are based on the common course of conduct by Defendants (1) in marketing, offering, and/or selling the YBAs, which are unregistered securities, and/or (2) in receiving secret undisclosed compensation for their promotion of the Deceptive FTX Platform.

152.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

153.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Classes as is in the case at bar, common questions will be held to predominate over individual questions.

**G.     Superiority**

154.     A class action is superior to individual actions for the proposed Classes, in part because of the non-exhaustive factors listed below:

(a)  Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside nationwide and throughout the state;

(b)  Individual claims by Class members are impracticable because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c)  There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d)  The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e)  Individual suits would not be cost effective or economically maintainable as individual actions; and

(f)  The action is manageable as a class action.

**H.      Requirements of Fed. R. Civ. P. 23(b)(2)**

155.    Defendants have acted and refused to act on grounds generally applicable to the Classes by engaging in a common course of conduct of aiding and abetting the offering and/or selling the YBAs, which are unregistered securities, thereby making appropriate final injunctive relief or declaratory relief with respect to the classes as a whole.

156.    Defendants have acted and refused to act on grounds generally applicable to the Classes by engaging in a common course of conduct of uniformly identical and uniform misrepresentations and omissions in receiving secret undisclosed compensation for their promotion of the Deceptive FTX Platform, thereby making appropriate final injunctive relief or declaratory relief with respect to the classes as a whole.

**I.      Requirements of Fed. R. Civ. P. 23(c)(4)**

157.    As it is clear that one of the predominant issues regarding Defendants' liability is whether the YBAs FTX offered and/or sold are unregistered securities, utilizing Rule 23(c)(4) to certify the Class for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

158.    As it is clear that another predominant issue regarding Defendants' liability is whether they have violated the consumer protection and securities laws of Florida in making identical and uniform misrepresentations and omissions regarding the functionality of the Deceptive FTX Platform, and/or in receiving secret undisclosed compensation for their promotion of the Deceptive FTX Platform, utilizing Rule 23(c)(4) to certify the Classes for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

**J.      Nature of Notice to the Proposed Class.**

159.    The names and addresses of all Class Members are contained in the business records maintained by FTX and are readily available to FTX. The Class Members are readily and objectively identifiable. Plaintiffs contemplate that notice will be provided to Class Members by e-mail, mail, and published notice.

## <u>COUNT ONE</u>

**Violations of the Florida Statute Section 517.07,**

**The Florida Securities and Investor Protection Act**

**(Plaintiffs Individually and on behalf of the Classes)**

160.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1–159 above, as if fully set forth herein.

161.     Section 517.07(1), Fla. Stat., provides that it is unlawful and a violation for any person to sell or offer to sell a security within the State of Florida unless the security is exempt under Fla. Stat. § 517.051, is sold in a transaction exempt under Fla. Stat. § 517.061, is a federally covered security, or is registered pursuant to Ch. 517, Fla. Stat.

162.     Section 517.211 extends liability to any "director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security."

163.     The YBA is a security pursuant to Fla. Stat. § 517.021(22)(a).

164.     The YBAs sold and offered for sale to Plaintiff and Class members were not:

    a.   exempt from registration under Fla. Stat. § 517.051;

    b.   a federal covered security;

    c.   registered with the Office of Financial Regulations (OFR); or

    d.   sold in a transaction exempt under Fla. Stat. § 517.061.

165.     The FTX Entities sold and offered to sell the unregistered YBAs to Plaintiffs and the members of the Class.

166.     Defendants are directors, officers, partners and/or agents of the FTX Entities pursuant to Fla. Stat. § 517.211.

167.     The FTX Entities, with Defendants' material assistance, offered and sold the unregistered YBAs to Plaintiffs and the members of the Class. As a result of this assistance, Defendants violated Fla. Stat. § 517.07 et seq. and Plaintiffs and members of the Class sustained damages as herein described.

## COUNT TWO

**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**

**§ 501.201, Florida Statutes, *et seq.***

**(Plaintiffs Individually and on behalf of the Classes)**

168.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1–159 above, as if fully set forth herein.

169.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq.* ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

170.     Plaintiffs and Class members are consumers as defined by section 501.203, Fla. Stat. Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

171.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

172.     Defendants' unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

173.     Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

174.     Plaintiffs and consumers in the Classes have been aggrieved by Defendants' unfair and deceptive practices and acts of false advertising by paying into the Ponzi scheme that was the Deceptive FTX Platform and in the amount of their lost investments.

175.     The harm suffered by Plaintiffs and consumers in the Classes was directly and proximately caused by the deceptive and unfair practices of Defendants, as more fully described herein.

176.     Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs and consumers in the Classes make claims for actual damages, attorneys' fees and costs.

177.     Defendants still utilize many of the deceptive acts and practices described above. Plaintiffs and the other members of the Classes have suffered and will continue to suffer irreparable

harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs and the Classes to obtain both declaratory or injunctive relief to put an end to Defendants' unfair and deceptive scheme.

## COUNT THREE

### Civil Conspiracy

### (Plaintiffs Individually and on behalf of the Classes)

178.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1–159 above, as if fully set forth herein.

179.     The FTX Entities and Defendants made numerous misrepresentations and omissions to Plaintiffs and Class Members about the Deceptive FTX Platform in order to induce confidence and to drive consumers to invest in what was ultimately a Ponzi scheme, misleading customers and prospective customers with the false impression that any cryptocurrency assets held on the Deceptive FTX Platform were safe and were not being invested in unregistered securities.

180.     The FTX Entities entered into one or more agreements with Defendants with the purpose of making these misrepresentations and/or omissions to induce Plaintiff and consumers to invest in the YBAs and/or use the Deceptive FTX Platform.

181.     Defendants engaged in unlawful acts with the FTX Entities, namely, the misrepresentations and omissions made to Plaintiffs and the Classes and the sale of unregistered securities.

182.     Defendants' conspiracy substantially assisted or encouraged the wrongdoing conducted by the FTX Entities; further, Defendants had knowledge of such fraud and/or wrongdoing, because of their experience and relationship with the FTX Entities, as described above and as such, knew that the representations made to Plaintiffs were deceitful and fraudulent.

183.     Defendants' conspiracy with the FTX Entities to commit fraud caused damages to Plaintiffs and the Classes in the amount of their lost investments.

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

## COUNT FOUR

### Declaratory Judgment

### (Declaratory Judgment Act, Florida Statutes §§ 86.011 *et seq.*)

### (Plaintiffs Individually and on behalf of the Classes)

184.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–159 as if fully set forth herein.

185.    This Count is asserted against Defendants under Florida Statutes §§ 86.011, *et seq.*

186.    There is a bona fide, actual, present and practical need for the declaratory relief requested herein; the declaratory relief prayed for herein deal with a present, ascertained or ascertainable state of facts and a present controversy as to a state of facts; contractual and statutory duties and rights that are dependent upon the facts and the law applicable to the facts; the parties have an actual, present, adverse and antagonistic interest in the subject matter; and the antagonistic and adverse interests are all before the Court by proper process for final resolution.

187.    Plaintiffs and the members of the Classes have an obvious and significant interest in this lawsuit.

188.    Plaintiffs and members of the Classes purchased YBAs, based in part on justifiable reliance on the Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as further described hereinabove.

189.    If the true facts had been known, including but not limited to that the YBAs are unregistered securities, the Deceptive FTX Platform does not work as represented, and Defendants were paid exorbitant sums of money to peddle Voyager to the nation, Plaintiffs and the Classes would not have purchased YBAs in the first place.

190.    Thus, there is a justiciable controversy over whether the YBAs were sold illegally, and whether the Defendants illegally solicited their purchases from Plaintiff and the Class.

191.    Plaintiff and the Class seek an order declaring that the YBAs were securities required to be registered with the SEC and state regulatory authorities, that the Deceptive FTX Platform did not work as represented, and Defendants were paid exorbitant sums of money to peddle FTX to the nation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for a judgment on behalf of themselves and the Classes:

    a.      Certifying the Class as requested herein;

    b.      Awarding actual, direct and compensatory damages;

    c.      Awarding restitution and disgorgement of revenues if warranted;

    d.      Awarding declaratory relief as permitted by law or equity, including declaring the Defendants' practices as set forth herein to be unlawful;

    e.      Awarding injunctive relief as permitted by law or equity, including enjoining the Defendants from continuing those unlawful practices as set forth herein, and directing the Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

    f.      Awarding statutory and multiple damages, as appropriate;

    g.      Awarding attorneys' fees and costs; and

    h.      Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

*Gregg Podalsky, et al. v. Samuel Bankman-Fried, et al.*
*Amended Class Action Complaint and Demand for Jury Trial*

Dated: December 8, 2022                    Respectfully submitted,

**By:** */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

**By:** */s/ David Boies*
David Boies
(*Pro Hac Vice* Application Forthcoming)
Alex Boies
(*Pro Hac Vice* Application Forthcoming)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
dboies@bsfllp.com

**By:** */s/ Stephen Neal Zack*
Stephen Neal Zack
Florida Bar No. 145215
Hon. Ursula Ungaro (Ret.)
Florida Bar No. 200883
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com
uungaro@bsfllp.com

*Co-Counsel for Plaintiff and the Class*