# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:23-cv-20439-CMA

Norris et al v. Brady et al

Assigned to: Chief Judge Cecilia M. Altonaga

Demand: $30,000,000

Case in other court: 11th Judicial Circuit, 22-022900-CA-01

Cause: 28:1441 Notice of Removal-Declaratory Judgment

Date Filed: 02/03/2023

Jury Demand: Plaintiff

Nature of Suit: 890 Other Statutory Actions

Jurisdiction: Federal Question

**Plaintiff**

**Michael Norris**

represented by **Adam M. Moskowitz**
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134-6036
305 740-1423
Email: adam@moskowitz-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jose Manuel Ferrer**
Mark Migdal and Hayden
80 SW 8 Street
Suite 1999
33130
Miami, FL 33131
305-374-0440
Email: jose@markmigdal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Kaye**
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Miami, FL 33134
(305) 740-1423
Email: joseph@moskowitz-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zack**
Boies Schiller & Flexner
100 SE 2nd Street
Suite 2800, Miami Tower
Miami, FL 33131-2144
305-539-8400
Fax: 305-539-1307
Email: szack@bsfllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Ungaro**
Boies Schiller Flexner LLP
100 SE 2nd Street
Suite 2800
Miami, FL 33131
305-479-6553
Email: uungaro@bsfllp.com *(Inactive)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Boies**
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY 10504
914-749-8200
Email: aboies@bsfllp.com
*ATTORNEY TO BE NOTICED*

**David Boies**
Boies Schiller Flexner LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200
Email: dboies@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandon Rowan**                    represented by    **Adam M. Moskowitz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jose Manuel Ferrer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Kaye**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Ungaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Boies**

(See above for address)
*ATTORNEY TO BE NOTICED*

**David Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Livieratos**　　　　　　　represented by　**Adam M. Moskowitz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jose Manuel Ferrer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Kaye**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Ungaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shengyun Huang**　　　　　　　represented by　**Adam M. Moskowitz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jose Manuel Ferrer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Kaye**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Ungaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Vijeth Shetty**         represented by   **Adam M. Moskowitz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jose Manuel Ferrer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Kaye**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Ungaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Bo Yang**

represented by **Adam M. Moskowitz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jose Manuel Ferrer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Kaye**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zack**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ursula Ungaro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Boies**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Thomas Brady**

represented by **Stephanie Anne Casey**
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134
(305) 476-7400
Fax: (305) 476-7444
Email: scasey@colson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Andrew Lipshultz**
Colson Hicks Eidson
255 Alhambra Circle
Coral Gables, FL 33134
3054767400
Email: zach@colson.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew B. Clubok**
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
202-637-2200
Email: andrew.clubok@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brittany M.J. Record**
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004
(202) 637-2200
Email: Brittany.Record@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Greenman**
Latham & Watkins LLP
10250 Constellation Blvd., Suite 1100
Los Angels, CA 90067
(424) 653-5500
Email: Elizabeth.Greenman@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Stebbins Bina**
Latham & Watkins LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
(424) 653-5500
Email: Jessica.stebbinsbina@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marvin Putnam**
Latham & Watkins LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500
Email: Marvin.Putnam@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michele D. Johnson**
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235
Email: michele.johnson@lw.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan E. Engel**
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004
(202) 637-2200
Email: Susan.Engel@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roberto Martinez**
Colson Hicks Eidson
255 Alhambra Circle
Penthouse
Coral Gables, FL 33134-2351
305-476-7400
Fax: 476-7444
Email: bob@colson.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kevin O'Leary**                    represented by    **Brandon Scott Floch**
Marcus Neiman Rashbaum & Pineiro LLP
2 South Biscayne Blvd.
Suite 2530
Miami, FL 33131
305-434-4943
Email: bfloch@mnrlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Eldridge Marcus**
Marcus Neiman & Rashbaum, LLP
One Biscayne Tower - Suite 1750
2 South Biscayne Boulevard
Miami, FL 33131
305-400-4260
Fax: 866-780-8355
Email: jmarcus@mnrlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Adam Neiman**
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
954 462 1200
Fax: 9546882492
Email: jneiman@mnrlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Anthony Pineiro**
Marcus Neiman & Rashbaum LLP
2 S. Biscayne Boulevard
Suite 1750
Miami, FL 33131
3054004268
Email: mpineiro@mnrlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew B. Brettler**
Berk Brettler LLP
9119 Sunset Blvd.
West Hollywood, CA 90069
(310) 278-2111
Email: abrettler@berkbrettler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Ortiz**                    represented by    **Christopher Stephen Carver**
Akerman LLP
Three Brickell City Centre Suite 1100
98 Southeast Seventh Street
Miami, FL 33131
305-982-5572
Fax: 305-374-5095
Email: christopher.carver@akerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason Samuel Oletsky**
Akerman LLP
201 East Las Olas Boulevard
Ste 1800
Fort Lauderdale, FL 33301
954-759-8909
Fax: 954-463-2224
Email: jason.oletsky@akerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine Ann Johnson**
Akerman LLP
201 E. Las Olas Blvd., Suite 1800
Fort Lauderdale, FL 33301
954-463-2700
Fax: 954-463-2224
Email: Katie.johnson@akerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/03/2023 | 1 | NOTICE OF REMOVAL (STATE COURT COMPLAINT - Amended Complaint and Demand for Jury Trial) Filing fee $ 402.00 receipt number AFLSDC-16294798, filed by Thomas Brady, David Ortiz, Kevin O'Leary. (Attachments: # 1 Civil Cover Sheet, # 2 Amended State Court Complaint, # 3 Exhibit Service of Process, # 4 Exhibit Plaintiffs' Motion for Partial Summary Judgment)(Martinez, Roberto) No Answer/Motion To Dismiss Filed. Modified Text/Attachment Description on 2/3/2023 (nwn). (Entered: 02/03/2023) |
| 02/03/2023 | 2 | Clerks Notice of Judge Assignment to Chief Judge Cecilia M. Altonaga.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Melissa Damian is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (nwn) (Entered: 02/03/2023) |
| 02/03/2023 | 3 | Notice of Pending, Refiled, Related or Similar Actions by Thomas Brady (Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 4 | NOTICE of Compliance *with Local Rule 7.2* by Thomas Brady (Attachments: # 1 Exhibit A - Motion to Stay in Favor of First-Filed Federal Action) (Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 5 | Bar Letter re: Admissions sent to attorney David Boies, Alex Boies, Andrew Clubok, Susan E. Engel, Brittany M.J. Record, Marvin S. Putnam, Jessica Stebbins Bina, Elizabeth A. Greenman, Michele D. Johnson, Andrew B. Brettler, mailing date February 3, 2023, (pt) (Entered: 02/03/2023) |
| 02/03/2023 | 6 | ORDER Requiring a Removal Status Report by 2/13/2023. Signed by Chief Judge Cecilia M. Altonaga on 2/3/2023. *See attached document for full details.* (ps1) (Entered: 02/03/2023) |
| 02/03/2023 | 7 | Order Requiring Joint Scheduling Report and Certificates of Interested Parties Joint Scheduling Report by 2/13/2023. Signed by Chief Judge Cecilia M. Altonaga on 2/3/2023. *See attached document for full details.* (ps1) (Entered: 02/03/2023) |
| 02/03/2023 | 8 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Susan E. Engel. Filing Fee $ 200.00 Receipt # AFLSDC-16297252 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order)(Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 9 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Andrew B. Clubok. Filing Fee $ 200.00 Receipt # AFLSDC-16297306 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order)(Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 10 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Elizabeth A. Greenman. Filing Fee $ 200.00 Receipt # AFLSDC-16297333 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order) (Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 11 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Jessica Stebbins Bina. Filing Fee $ 200.00 Receipt # AFLSDC-16297492 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit Certification, # 2 Text of Proposed Order Proposed Order)(Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 12 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Marvin Putnam. Filing Fee $ 200.00 Receipt # AFLSDC-16297516 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order)(Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 13 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Brittany M.J. Record. Filing Fee $ 200.00 Receipt # BFLSDC-16297534 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order)(Martinez, Roberto) (Entered: 02/03/2023) |
| 02/03/2023 | 14 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Michele D. Johnson. Filing Fee $ 200.00 Receipt # AFLSDC-16297599 by Thomas Brady. Responses due by 2/17/2023 (Attachments: # 1 Exhibit Certification, # 2 Text of Proposed Order Proposed Order)(Martinez, Roberto) (Entered: 02/03/2023) |
| 02/06/2023 | 15 | PAPERLESS ORDER granting 8 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 16 | PAPERLESS ORDER granting 9 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 17 | PAPERLESS ORDER granting 10 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 18 | PAPERLESS ORDER granting 11 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 19 | PAPERLESS ORDER granting 12 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 20 | PAPERLESS ORDER granting 13 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 21 | PAPERLESS ORDER granting 14 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Chief Judge Cecilia M. Altonaga (CMA) (Entered: 02/06/2023) |
| 02/06/2023 | 22 | MOTION to Remand to State Court by Shengyun Huang, Michael Livieratos, Michael Norris, Brandon Rowan, Vijeth Shetty, Bo Yang. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Moskowitz, Adam) (Entered: 02/06/2023) |
| 02/06/2023 | 23 | ORDER that Defendants shall submit a single combined response or separate answers to the Amended Complaint [ECF No. 1-2] within the time allowed for Defendants to respond. Signed by Chief Judge Cecilia M. Altonaga on 2/6/2023. *See attached document for full details.* (ps1) (Entered: 02/06/2023) |

| 02/06/2023 | 24 | ORDER that Plaintiff, Vijeth Shetty's Motion for Partial Summary Judgment [ECF No. 1-4] and Defendants Motion to Stay [ECF No. 4-1] are DENIED without prejudice. Signed by Chief Judge Cecilia M. Altonaga on 2/6/2023. *See attached document for full details.* (ps1) (Entered: 02/06/2023) |
|---|---|---|
| 02/07/2023 | 25 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Andrew B. Brettler. Filing Fee $ 200.00 Receipt # AFLSDC-16304809 by Kevin O'Leary. Responses due by 2/21/2023 (Attachments: # 1 Certification of Andrew B. Brettler, # 2 Text of Proposed Order)(Neiman, Jeffrey) (Entered: 02/07/2023) |
| 02/08/2023 | 26 | ORDER granting 25 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Andrew B. Brettler. Signed by Chief Judge Cecilia M. Altonaga on 2/8/2023. *See attached document for full details.* (ps1) (Entered: 02/08/2023) |
| 02/10/2023 | 27 | MOTION for Extension of Time --Defendants' Motion to Defer or Extend Deadlines set by Orders (ECF Nos. 6 & 7) re 7 Order Requiring Joint Scheduling Report, 6 Status Report Order by Thomas Brady, Kevin O'Leary, David Ortiz. Responses due by 2/24/2023 (Carver, Christopher) (Entered: 02/10/2023) |
| 02/13/2023 | 28 | ORDER granting 27 Motion for Extension of Time. The deadline set by the February 3, 2023 Order [ECF No. 6 ] and Order Requiring Scheduling Report and Certificates of Interested Parties [ECF No. 7 ] is deferred pending further order of the Court. The obligation to provide certificates of interested parties and corporate disclosure statements remains. Signed by Chief Judge Cecilia M. Altonaga on 2/13/2023. *See attached document for full details.* (ps1) (Entered: 02/13/2023) |
| 02/13/2023 | 29 | Defendant's Certificate of Other Affiliates/Corporate Disclosure Statement - NONE disclosed -- *Defendant David Ortiz' Certificate of Interested Persons* by David Ortiz (Carver, Christopher) (Entered: 02/13/2023) |
| 02/13/2023 | 30 | Certificate of Other Affiliates/Corporate Disclosure Statement - NONE disclosed *Defendant Kevin O'Leary's Certificate of Interested Persons* by Kevin O'Leary (Floch, Brandon) (Entered: 02/13/2023) |
| 02/13/2023 | 31 | Certificate of Other Affiliates/Corporate Disclosure Statement - NONE disclosed by Thomas Brady (Martinez, Roberto) (Entered: 02/13/2023) |
| 02/13/2023 | 32 | Plaintiff's Certificate of Other Affiliates/Corporate Disclosure Statement - NONE disclosed by Shengyun Huang, Michael Livieratos, Michael Norris, Brandon Rowan, Vijeth Shetty, Bo Yang (Moskowitz, Adam) (Entered: 02/13/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/14/2023 15:02:47 | | |
| **PACER Login:** | AdamMoskoadam | **Client Code:** | FTX |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-20439-CMA |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

IN THE CIRCUIT COURT IN THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

MICHAEL NORRIS, et al.

        Plaintiffs,

v.

THOMAS BRADY et al.

        Defendants.

**COMPLEX BUSINESS DIVISION**

CASE NO. 2022-022900-CA-01

## **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

"Then there's things that have happened with Voyager **_and with FTX now_**—that's somebody running a company that's **_just dumb as fu\*\* greedy_**. So, what does Sam Bankman do? He just, give me more, give me more, give me more, so I'm gonna borrow money, loan it to my affiliated company, and hope and pretend to myself that the FTT tokens that are in there on my balance sheet are gonna sustain their value."[1]

### **– Mark Cuban, Nov. 12, 2022**



### **– Defendant Sam Bankman Fried (Former CEO, FTX)**

---

[1] https://www.yahoo.com/video/ftx-twitter-chaos-embarrassing-athletes-195343800.html (accessed December 5, 2022).

Plaintiffs, (1) Michael Norris, (2) Brandon Rowan, (3) Michael Livieratos, (4) Shengyun Huang, (5) Vijeth Shetty, and (6) Bo Yang (collectively, "Plaintiffs", that all invested millions of dollars in FTX)[2], sue Defendants, all Florida residents, Tom Brady, Kevin O'Leary and David Ortiz (collectively, "the Florida Defendants"), who each promoted, assisted in, and actively participated in, FTX Trading LTD d/b/a FTX's ("FTX Trading") and West Realm Shires Services Inc. d/b/a FTX US's ("FTX US") (collectively, the "FTX Entities"), offer and sale of unregistered securities, in the form of identical Yield-Bearing Accounts ("YBAs"), seeking to recover damages, declaratory and/or injunctive relief stemming from the offer and sale of FTX Trading's and FTX US's yield-bearing cryptocurrency accounts.

## INTRODUCTION

1.        Most experts agree that the FTX Collapse Disaster is the largest and greatest financial fraud in history.  The new CEO of FTX, who helped wind down the prior Enron fraud, admitted that what he quickly uncovered in FTX to date, is worse than in the Enron Fraud.  Almost $14 billion dollars is unaccounted for, and certainly billions of dollars have been stolen from investors across the globe.  FTX will be involved in federal bankruptcy proceedings for many years to come and there is no guarantee that the victims will be able to see any recovery from those processes.

2.        This state complaint is brought by a sampling of those individual injured investors, against only the Florida Defendants, who directly profited from promoting the sale of unregistered securities, and who all admittedly never complied with any of the FTC's long-established federal regulations, requiring full disclosure for all paid endorsements, especially for touting investment products and, in fact, specifically for promoting cryptocurrency platforms.

3.        One common and identical question in this case, and in many other cryptocurrency litigation matters, is simply whether the SEC was initially correct, in finding that all of these YBAs are (or are not) the sale of "unregistered securities." Based upon this Court's great prior experience in securities litigation, that question can and should be decided quickly for all of the parties, so that all cryptocurrency litigation can be quickly advanced and the victims (and alleged co-conspirators) have a clear and expedited path.

---

[2] Each Named Plaintiff filed their own individual state court complaint before this Court. In an effort to organize and coordinate all of this litigation, Undersigned Counsel joined forces and agreed to file one Consolidated Amended Compliant. None of the Defendants were ever served with any of the original complaints and in fact, counsel for some of the defendants were told about filing of this Consolidated Complaint and agreed to this organized procedure.

4.      This question was already practically answered in the affirmative through various regulatory statements, guidance, and actions issued by the Securities and Exchange Commission and other regulatory entities. For example, the SEC could not have more clearly warned the FTX Brand Ambassadors than it did on November 1, 2017, in the "SEC Statement Urging Caution Around Celebrity Backed ICOs,"[3]

> In the SEC's Report of Investigation concerning The DAO,[4] the Commission warned that virtual tokens or coins sold in ICOs may be securities, and those who offer and sell securities in the United States must comply with the federal securities laws.  Any celebrity or other individual who promotes a virtual token or coin that is a security must disclose the nature, scope, and amount of compensation received in exchange for the promotion.  **A failure to disclose this information is a violation of the anti-touting provisions of the federal securities laws**.  **Persons making these endorsements may also be liable** for potential violations of the anti-fraud provisions of the federal securities laws, **for participating in an unregistered offer and sale of securities**, and for acting as unregistered brokers.  The SEC will continue to focus on these types of promotions to protect investors and to ensure compliance with the securities laws.

5.      Not only that, but the SEC and state securities regulators have also targeted cryptocurrency brokers and exchanges just like FTX for offering almost this exact same type of interest-bearing account, finding that exchanges such as BlockFi,[5] Voyager,[6] and Celsius[7] all offered these same accounts as unregistered securities.

6.      These individual Plaintiffs seek a Declaratory Ruling by this Court, on two specific and very narrow issues, whose focus is solely objective: (1) should the FTX YBA's, that were identical and provided to every FTX investor, be considered "securities", under the applicable *Howey* test, and (2) whether the Florida Defendants violated state consumer laws by failing to abide by any of the FTC long established rules and regulations, specifically on what is required for a celebrity endorsement of

---

[3]      https://www.sec.gov/news/public-statement/statement-potentially-unlawful-promotion-icos (accessed December 5, 2022).

[4] https://www.sec.gov/litigation/investreport/34-81207.pdf (accessed December 5, 2022)

[5] https://www.sec.gov/news/press-release/2022-26 (accessed December 5, 2022).

[6]      https://coingeek.com/6-us-regulators-crackdown-on-voyager-digital-over-interest-bearing-accounts/ (accessed December 5, 2022).

[7]

https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjvjNvg27j7AhWfRTABHfwzDe4QFnoECAsQAQ&url=https%3A%2F%2Fwww.nj.gov%2Foag%2Fnewsreleases21%2FCelsius-Order-9.17.21.pdf&usg=AOvVaw0Zd94fuhFSsOoGKM-vQ3YI (accessed December 5, 2022).

crypto currency. The answer to just these two, narrow questions will greatly advance litigation across the globe relating to the FTX Disaster, help determine who may be liable for aiding and abetting this massive fraud, one way or another and may also help advance (for either side) all of the other pending massive litigation, against other cryptocurrency platforms (such as Voyager) that offered similar YBAs.

7.      It is important to note that Claims in this case provide for ***strict liability,*** and therefore if these YBAs are found to be "securities," all of the FTX "brand ambassadors" may not have any defense to the claims in this action. <u>The "caveat emptor" defense that Defendants and others are pushing in the press will have no application.</u> Plaintiffs intend to seek an expedited ruling, by way of partial summary judgment or otherwise, that these YBAs legally qualify as "securities," 20 days after filing this complaint or sooner as allowed by applicable law.

8.      It must be repeated that this is not a case where Plaintiffs made a "risky" investment in any stock or cryptocurrency, or that they lost money speculating on various cryptocurrency projects. Plaintiffs' claim arises simply from the purchase of a YBA, an interest account with FTX that every customer who signed up for the FTX app received by default, and which, as explained below, was guaranteed to generate attractive, interest returns on their significant holdings in the account, regardless of whether those assets were held as USD or cryptocurrency, and regardless of whether any trades were ever made with the assets held in the YBA. In other words, the YBA was portrayed to be better (with more interest) and safer than a bank account (because they had many billions in reserve), something that was "very safe" and "protected." That is the specific narrative that Defendants pushed in promoting the offer and sale of these YBAs, which are unregistered securities. For that, the Florida Defendants are liable for Plaintiffs' losses, jointly and severally and to the same extent as if they were themselves the FTX Entities.

9.      Literally overnight, Plaintiffs' assets held in their YBAs on the Deceptive FTX Platform were robbed from them as FTX imploded and former-CEO, Sam Bankman-Fried, filed a Chapter 11 bankruptcy petition in Delaware on an emergency basis. This happened because, as explained by the new CEO of the failed FTX Entities:

> I have over 40 years of legal and restructuring experience. I have been the Chief Restructuring Officer or Chief Executive Officer in several of the largest corporate failures in history. I have supervised situations involving allegations of criminal activity and malfeasance (Enron). I have supervised situations involving novel financial structures (Enron and Residential Capital) and cross-border asset recovery and maximization (Nortel and Overseas Shipholding). Nearly every situation in which I have been involved has been characterized by defects of some sort in internal controls, regulatory compliance, human resources and systems integrity.

*Never* in my career have I seen such a complete failure of corporate controls and such a **complete absence of trustworthy financial information** as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced, **unsophisticated** and **potentially compromised** individuals, **this situation is unprecedented**.

*See* In re: FTX Trading Ltd, et al., No. 22-11068 (JTD), ECF No. 24, ¶¶ 4–5 (D. Del. Nov. 17, 2022) (emphasis added).

10.     This should not have happened. Not to any of these Plaintiffs, and not to the thousands of other FTX customers who now find themselves in the same predicament.

11.     The Cryptocurrency National Disaster is growing by the billions almost every day. More crypto companies are filing new federal bankruptcy petitions each day, all running for protection from the billions of dollars of losses they directly caused to thousands of investors here in Florida and across the country. This is by far the largest securities national disaster, greatly surpassing the Madoff Ponzi Scheme, and could very likely become a complex national litigation disaster, similar to how the hundreds of thousands of asbestos cases swamped all courts across the country. Unless a workable, coordinated, and organized structure is established now, at the very onset of these proceedings, here in Miami, which served as the epicenter for the crypto fraud, the FTX victims will continue to suffer and the only people to benefit will be the professionals in the bankruptcy and civil courts.

12.     One common and identical question in this case, and in many other cryptocurrency litigation matters, is simply whether the SEC was initially correct, in finding that all of these YBAs are (or are not) the sale of "unregistered securities." Based upon this Court's great prior experience in securities litigation, that question can and should be decided quickly for all of the parties, so that all cryptocurrency litigation can be quickly advanced and the victims (and alleged co-conspirators) have a clear and expedited path.

13.     The Deceptive and failed FTX Platform emanated from Miami, Florida (FTX moved its Global Headquarters from Bahamas to Miami) and was based upon false representations and deceptive conduct. Although many incriminating FTX emails and texts have already been destroyed, we located them and they evidence how FTX's fraudulent scheme was designed to take advantage of unsophisticated investors from across the country, who utilize mobile apps to make their investments. As a result, American consumers collectively sustained at least over $11 billion dollars in damages. FTX organized and emanated its fraudulent plan from its worldwide headquarters located here in Miami, Florida. Miami became the "hot spot" for crypto companies, hosting the most investments in

crypto startups as well as the annual Bitcoin Miami 2022 Global Forum. Several crypto companies, including crypto exchange Blockchain.com, Ripple and FTX.US, moved their headquarters to Miami. Others, including fellow exchange eToro, expanded their U.S. presence with offices in Miami. FTX was already very familiar with Miami, signing a deal worth more than $135 million dollars for the naming rights of the waterfront arena, where 3-time NBA Champions the Miami Heat play.

## FACTUAL BACKGROUND

14.     On December 24, 2021, Plaintiffs' counsel brought the first (and only) putative nationwide class action complaint against the now-defunct cryptocurrency trading app, Voyager, styled *Mark Cassidy v. Voyager Digital Ltd., et al.,* Case No. 21-24441-CIV-ALTONAGA/Torres (the "*Cassidy* Action"), alleging that the platform owned and operated by Voyager Digital Ltd. ("Voyager") and Voyager Digital LLC ("VDL") was an unregulated and unsustainable fraud. In the *Cassidy* Action, Plaintiffs also alleged that Defendant Ehrlich, Voyager's CEO, teamed up with Defendants Cuban and the Dallas Mavericks to promote Voyager, by making false representations and employing other means of deception. As a result, the Voyager plaintiff and Voyager class members, all sustained losses in excess of $5 billion.

15.     The allegations in the *Cassidy* complaint—and specifically Mark Cuban's role in promoting Voyager—received national attention. *See* https://www.jdsupra.com/legalnews/new-lawsuits-target-cryptocurrency-9604406/ (summarizing the allegations and explaining that "Mark Cuban, owner of the NBA's Dallas Mavericks, is a major stakeholder in Voyager. The complaint alleges that he made comments at a press conference in which he specifically targeted unsophisticated investors 'with false and misleading promises of reaping large profits in the cryptocurrency market.'"); https://www.law.com/dailybusinessreview/2021/12/29/mark-cuban-linked-crypto-platform-hit-with-florida-nationwide-class-action-lawsuit-in-miami-federal-court/?slreturn=20220701214901 (same, in the *Daily Business Review*).

16.     After the *Cassidy* Complaint was filed, the following important actions took place:

(a)     the United States Securities and Exchange Commission (SEC) began an enforcement review focused on whether Voyager's Earn Program Accounts ("EPAs") constitute unregistered securities;

(b)     seven state Attorneys General (New Jersey, Alabama, Kentucky, Oklahoma, Texas, Vermont and Washington) took specific action finding that Voyager was violating their state laws, including issuing "cease and desist" letters to Voyager, finding that the EPA was an

  unregistered security, prohibiting the crypto-asset broker-dealer from selling any more unregistered securities (finding that Voyager used these EPAs to raise millions of dollars in revenue worldwide as of March 1, 2022; and

(c)  on March 29, 2002, the State of New Jersey Bureau of Securities entered a Cease and Desist Order against Voyager, finding that the EPA was not exempt from registration under the law, and instead that it must be registered—and as a result, Voyager's stock price tanked by 25% in a day and is down over 80% for the year.[8]

  17.  On July 5, 2022, Voyager Digital Holdings, Inc. and two affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code. Voyager's bankruptcy cases (the "Voyager Bankruptcy Cases") are jointly administered under Case No. 22-10943 before the Honorable Michael E. Wiles in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

  18.  On September 28, 2022, Voyager filed a motion in the Voyager Bankruptcy Cases seeking authority to enter into an asset purchase agreement with West Realm Shires Inc., d/b/a FTX US whereby Voyager will sell substantially all of its assets for a purchase price of approximately $1.422 billion, which includes (i) the value of cryptocurrency on the Voyager platform as of a date to be determined, which, as of September 26, 2022, is estimated to be $1.311 billion, plus (ii) additional consideration which is estimated to provide at least approximately $111 million of incremental value to the Debtors' estates.

  19.  Everyone involved in the Voyager Bankruptcy Cases thought that the FTX Entities were the *deus ex machina* come to save the day by bailing out Voyager and paying back at least some of the losses the Voyager customers sustained.

  20.  Instead, as explained below, the FTX Entities imploded, their over $30 billion in value evaporated almost overnight, and the FTX Entities found themselves filing their own emergency Chapter 11 bankruptcy petition in Delaware. The Deceptive FTX Platform maintained by the FTX Entities was truly a house of cards, a Ponzi scheme where the FTX Entities shuffled customer funds between their opaque affiliated entities, using new investor funds obtained through investments in the YBAs and loans to pay interest to the old ones and to attempt to maintain the appearance of liquidity.

---

[8] https://seekingalpha.com/article/4498956-voyager-digital-plunged-25-percent-heres-why (accessed October 28, 2022); https://seekingalpha.com/article/4503716-voyager-digital-buy-dip-during-crypto-crash (accessed December 5, 2022).

21.    Part of the scheme employed by the FTX Entities involved utilizing some of the biggest names in sports and entertainment—like these Defendants—to raise funds and drive American consumers to invest in the YBAs, which were offered and sold largely from the FTX Entities' domestic base of operations here in Miami, Florida, pouring billions of dollars into the Deceptive FTX Platform to keep the whole scheme afloat.

22.    Importantly, although Defendants disclosed their partnerships with the FTX Entities, they have never disclosed the nature, scope, and amount of compensation they personally received in exchange for the promotion of the Deceptive FTX Platform, which the SEC has explained that a failure to disclose this information would be a violation of the anti-touting provisions of the federal securities laws.[9] Moreover, none of these defendants performed any due diligence prior to marketing these FTX products to the public.

23.    The SEC took action against boxing champ Floyd Mayweather and music producer DJ Khaled after they were paid by cryptocurrency issuers to tweet promotional statements about investing in Initial Coin Offerings (ICOs), ordering them both to pay disgorgement, penalties and interest for promoting investments in ICOs, including one from cryptocurrency issuer Centra Tech, Inc, for a combined total of $767,500 because they failed to disclose that their promotional efforts on Twitter were paid endorsements.[10]

24.    Other celebrities similarly accused and prosecuted for failing to disclose their paid endorsements include Kim Kardashian and basketball player Paul Pierce.[11] According to the Federal Trade Commission, cryptocurrency scams have increased more than ten-fold year-over-year with consumers losing more than $80 million since October 2020, due in large part to the use of such celebrity endorsements.[12]

25.    As explained more fully in this Complaint, Defendants' misrepresentations and omissions made and broadcast around the country through the television and internet render them

---

[9]      https://www.ubergizmo.com/2017/11/sec-celebrities-disclose-payment-cryptocurrency-endorsements/#:~:text=It%20has%20issued%20a%20statement%20warning%20celebrities%20that,without%20disclosing%20that%20they%E2%80%99ve%20been%20paid%20for%20it (accessed December 5, 2022).

[10]      https://news.bloomberglaw.com/us-law-week/insights-celebrity-endorsements-and-cryptocurrency-a-cautionary-tale (accessed December 5, 2022).

[11]      https://blockbulletin.com/news/altcoins/kim-kardashian-among-other-celebrities-sued-for-promoting-cryptocurrencies/ (accessed December 5, 2022).

[12]  https://florida.foolproofme.org/articles/770-celebrity-cryptocurrency-scam (accessed December 5, 2022).

liable to Plaintiffs and all other FTX customers for soliciting their purchases of the unregistered YBAs. *Wildes v. Bitconnect Int'l PLC*, No. 20-11675 (11th Cir. Feb. 18, 2022) (holding that promoters of cryptocurrency through online videos could be liable for soliciting the purchase of unregistered securities through mass communication, and no "personal solicitation" was necessary for solicitation to be actionable).

26.    This action seeks to hold Defendants responsible for Plaintiffs' damages and for the Court to decide the legal question of whether: (1) the YBA offered and sold to Plaintiffs—the same one offered and sold to millions of other Americans for collectively billions of dollars—constituted an unregistered security, and whether (2) the FTX Florida Defendants (the FTX Brand Ambassadors) violated the Florida consumer protection statute, by violating the long standing FTC (and other) federal and state regulations, on the requirements for touting investment products through celebrity endorsements.

## PARTIES

27.    Plaintiff Michael Norris is the Plaintiff that filed the original Complaint before this Court.  He is a citizen and resident of the State of New Jersey. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Norris purchased an unregistered security from FTX in the form of a YBA and funded the account with sufficient assets to earn interest on his holdings. Plaintiff Norris did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform, as detailed in this complaint, and purchased the YBA and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Norris has sustained damages for which Defendants are liable.

28.    Plaintiff Brandon Rowan is a citizen and resident of the State of Tennessee. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Rowan purchased an unregistered security from FTX in the form of a YBA and funded the account with sufficient assets to earn interest on his holdings. Plaintiff Rowan did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform, as detailed in this complaint, and purchased the YBA and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Rowan has sustained damages for which Defendants are liable.

29.    Plaintiff Michael Livieratos is a citizen and resident of the State of Connecticut. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Livieratos purchased an unregistered security from FTX in the form of a YBA and funded the account with sufficient assets

to earn interest on his holdings. Plaintiff Livieratos did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform, as detailed in this complaint, and purchased the YBA and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Livieratos has sustained damages for which Defendants are liable.

30.     Plaintiff Shengyun Huang is a citizen and resident of the State of Virginia. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Huang purchased an unregistered security from FTX in the form of a YBA and funded the account with sufficient assets to earn interest on his holdings. Plaintiff Huang did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform, as detailed in this complaint, and purchased the YBA and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Huang has sustained damages for which Defendants are liable.

31.     Plaintiff Vijeth Shetty was at all relevant times a citizen and resident of the State of Florida. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Shetty purchased an unregistered security from FTX in the form of a YBA and funded the account with sufficient assets to earn interest on his holdings. Plaintiff Shetty did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform, as detailed in this complaint, and purchased the YBA and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Shetty has sustained damages for which Defendants are liable.

32.     Plaintiff Bo Yang is a citizen and resident of the State of Florida. She is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Yang purchased an unregistered security from FTX in the form of a YBA and funded the account with sufficient assets to earn interest on her holdings. Plaintiff Yang did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform, as detailed in this complaint, and purchased the YBA and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Yang has sustained damages for which Defendants are liable.

33.     Defendant Thomas Brady, NFL quarterback currently playing for the Tampa Bay Buccaneers, is a brand ambassador of FTX, and is a citizen and resident of Miami-Dade County, Florida.

34.    Defendant Kevin O'Leary, "Mr. Wonderful," a businessman, television personality appearing regularly on *Shark Tank*, and brand ambassador for FTX, is a citizen and resident of Miami Beach, Florida.

35.    Defendant David Ortiz, former designated hitter and first baseman in the MLB and a brand ambassador for FTX, is a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE

36.    This action seeks, among other things, an expedited declaratory ruling for deciding the legal question of whether the YBA offered and sold to Plaintiffs—the same, exact one offered and sold to millions of other Americans for collectively billions of dollars—constituted an unregistered security.  Accordingly, this action is well within the exclusive plenary jurisdiction of the Circuit Court as the amount in controversy far exceeds $30,000.00, exclusive of interest, costs and attorney's fees. Moreover, assignment to the Complex Business Litigation Division is proper because the amount in controversy far exceeds $1 million and involves complex issues.

37.    This Court has personal jurisdiction against Defendants because they are all admittedly Florida residents, who also conduct business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of FTX's YBAs in Florida, which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of FTX's unregistered securities to consumers in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

38.    Venue is proper in this District pursuant to sections 47.011 and 47.051 because Defendants reside in this District; Defendants engaged in business in this District; and a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

39.    All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## FACTUAL ALLEGATIONS

### A.    Background on FTX.

40.    Until seeking the protection of the Bankruptcy Court, the FTX Entities operated a multi-billion-dollar mobile application cryptocurrency investment service (the "Deceptive FTX Platform") that placed cryptocurrency trade orders on behalf of users like Plaintiffs and offered interest bearing cryptocurrency accounts.

41.     The FTX group of companies (FTX Group or FTX) was founded in 2019 and began as an exchange or marketplace for the trading of crypto assets. FTX was established by Samuel Bankman-Fried, Gary (Zixiao) Wang and Nishad Singh, with operations commencing in May 2019. FTX was purportedly established in order to build a digital asset trading platform and exchange for the purpose of a better user experience, customer protection, and innovative products. FTX built the FTX.com exchange to develop a platform robust enough for professional trading firms and intuitive enough for first-time users.

42.     Prior to that, The Silicon Valley-born, MIT-educated Bankman-Fried, also known as SBF, launched his crypto trading firm, Alameda Research, in 2017,[13] after stints in the charity world and at trading firm Jane Street.[14]

43.     The FTX.com exchange was extremely successful since its launch. This year around $15 billion of assets are traded daily on the platform, which now represents approximately 10% of global volume for crypto trading. The FTX team has grew to over 300 globally. Although the FTX Entities' primary international headquarters is in the Bahamas, its domestic US base of operations is located in Miami, Florida.[15]

44.     FTX quickly became one of the most utilized avenues for nascent investors to purchase cryptocurrency. By the time FTX filed for bankruptcy protection, customers had entrusted billions of dollars to it, with estimates ranging from $10-to-$50 *billion dollars*.

45.     Bankman-Fried got rich off FTX and Alameda, with the two companies netting $350 million and $1 billion in profit, respectively, in 2020 alone, according to Bloomberg.

46.     At his peak, Bankman-Fried was worth $26 billion. At 30, he had become a major political donor, gotten celebrities like the Co-Defendants in this action to vociferously promote FTX, and secured the naming rights to the arena where the NBA's Miami Heat play.[16]

---

[13]     https://www.businessinsider.com/ftx-crypto-king-sam-bankman-fried-rise-and-fall-2022-11 (accessed December 5, 2022).

[14]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed December 5, 2022).

[15]     https://www.coindesk.com/business/2022/09/27/crypto-exchange-ftx-is-moving-its-us-headquarters-from-chicago-to-miami/ (accessed December 5, 2022).

[16]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed December 5, 2022).

47.     In early November 2022, crypto publication CoinDesk released a bombshell report that called into question just how stable Bankman-Fried's empire really was.[17]

48.     Bankman-Fried's cryptocurrency empire was officially broken into two main parts: FTX (his exchange) and Alameda Research (his trading firm), both giants in their respective industries. But even though they are two separate businesses, the division breaks down in a key place: on Alameda's balance sheet, which was full of FTX – specifically, the FTT token issued by the exchange that grants holders a discount on trading fees on its marketplace. While there is nothing per se untoward or wrong about that, it shows Bankman-Fried's trading giant Alameda rests on a foundation largely made up of a coin that a sister company invented, not an independent asset like a fiat currency or another crypto. The situation adds to evidence that the ties between FTX and Alameda are unusually close.[18]

49.     After obtaining this information, Changpeng "CZ" Zhao, the CEO of Binance, decided to liquidate roughly $530 million-worth of FTT. Customers also raced to pull out, and FTX saw an estimated $6 billion in withdrawals over the course of 72 hours, which it struggled to fulfill.[19] The value of FTT plunged 32%, but rallied once again with Bankman-Fried's surprise announcement on Tuesday, November 8th, that Binance would buy FTX, effectively bailing it out.[20]

50.     The next day, Binance announced that it was withdrawing from the deal, citing findings during due diligence, as well as reports of mishandled customer funds and the possibility of a federal investigation.[21] The news sent FTT plunging even further — Bankman-Fried saw 94% of his net

---

[17]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed December 5, 2022).

[18]     https://www.coindesk.com/business/2022/11/02/divisions-in-sam-bankman-frieds-crypto-empire-blur-on-his-trading-titan-alamedas-balance-sheet/ (accessed December 5, 2022).

[19]     https://markets.businessinsider.com/news/currencies/ftx-6-billion-withdrawals-72-hours-sam-bankman-fried-binance-2022-11 (accessed December 5, 2022).

[20]     https://markets.businessinsider.com/news/currencies/ftx-6-billion-withdrawals-72-hours-sam-bankman-fried-binance-2022-11 (accessed December 5, 2022).

[21]      https://markets.businessinsider.com/news/currencies/ftx-crash-sec-cftc-probes-asset-liability-shortfall-6-billion-2022-11 (accessed December 5, 2022).

worth wiped out in a single day.[22] On November 11th, unable to obtain a bailout, FTX filed for Chapter 11 bankruptcy and Bankman-Fried resigned as CEO.[23]

51.     Following his resignation, Bankman-Fried issued a 22-tweet-long explanation of where he believed he and the FTX Entities went wrong:[24]



---

[22]     https://www.businessinsider.com/ftx-ceo-crypto-binance-sam-bankman-fried-wealth-wiped-out-2022-11 (accessed December 5, 2022).

[23]     https://markets.businessinsider.com/news/currencies/ftx-bankruptcy-sam-bankman-fried-ceo-crypto-binance-alameda-markets-2022-11 (accessed December 5, 2022).

[24]     https://twitter.com/SBF_FTX/status/1590709189370081280 (accessed December 5, 2022).

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*







*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*



SBF ✓ @SBF_FTX · Nov 10

7) And so I was off twice.

Which tells me a lot of things, both specifically and generally, that I was shit at.

And a third time, in not communicating enough. I should have said more. I'm sorry--I was slammed with things to do and didn't give updates to you all.

◯ 116      ↺ 278      ♡ 2,882      ⬆



SBF ✓ @SBF_FTX · Nov 10

8) And so we are where we are. Which sucks, and that's on me.

I'm sorry.

◯ 155      ↺ 357      ♡ 3,122      ⬆



SBF ✓ @SBF_FTX · Nov 10

9) Anyway: right now, my #1 priority--by far--is doing right by users.

And I'm going to do everything I can to do that. To take responsibility, and do what I can.

◯ 162      ↺ 357      ♡ 3,715      ⬆



SBF ✓ @SBF_FTX · Nov 10

10) So, right now, we're spending the week doing everything we can to raise liquidity.

I can't make any promises about that. But I'm going to try. And give anything I have to if that will make it work.

◯ 164      ↺ 394      ♡ 3,377      ⬆

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*



SBF ✓ @SBF_FTX · Nov 10

11) There are a number of players who we are in talks with, LOIs, term sheets, etc.

We'll see how that ends up.

◯ 87          ↻ 234          ♡ 2,625          ⬆



SBF ✓ @SBF_FTX · Nov 10

12) Every penny of that--and of the existing collateral--will go straight to users, unless or until we've done right by them.

After that, investors--old and new--and employees who have fought for what's right for their career, and who weren't responsible for any of the fuck ups.

◯ 102          ↻ 274          ♡ 3,007          ⬆



SBF ✓ @SBF_FTX · Nov 10

13) Because at the end of the day, I was CEO, which means that *I* was responsible for making sure that things went well. *I*, ultimately, should have been on top of everything.

I clearly failed in that. I'm sorry.

◯ 180          ↻ 423          ♡ 4,122          ⬆



SBF ✓ @SBF_FTX · Nov 10

14) So, what does this mean going forward?

I'm not sure--that depends on what happens over the next week.

But here are some things I know.

◯ 129          ↻ 235          ♡ 2,502          ⬆

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*







*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*



SBF ✓ @SBF_FTX · Nov 10
18) But all of that isn't what matters right now--what matters right now is trying to do right by customers.  That's it.

◯ 144          ⇅ 158          ♡ 1,970          ⬆



SBF ✓ @SBF_FTX · Nov 10
19) A few other assorted comments:

This was about FTX International.  FTX US, the US based exchange that accepts Americans, was not financially impacted by this shitshow.

It's 100% liquid.  Every user could fully withdraw (modulo gas fees etc).

Updates on its future coming.

◯ 406          ⇅ 760          ♡ 2,776          ⬆



SBF ✓ @SBF_FTX · Nov 10
20) At some point I might have more to say about a particular sparring partner, so to speak.

But you know, glass houses.  So for now, all I'll say is:

well played; you won.

◯ 1,532          ⇅ 3,303          ♡ 8,047          ⬆



SBF ✓ @SBF_FTX · Nov 10
21) NOT ADVICE, OF ANY KIND, IN ANY WAY

I WAS NOT VERY CAREFUL WITH MY WORDS HERE, AND DO NOT MEAN ANY OF THEM IN A TECHNICAL OR LEGAL SENSE; I MAY WELL HAVE NOT DESCRIBED THINGS RIGHT though I'm trying to be transparent.  I'M NOT A GOOD DEV AND PROBABLY MISDESCRIBED SOMETHING.

◯ 908          ⇅ 1,055          ♡ 3,463          ⬆



52. According to a recent Reuters report, however, another explanation contributing to the precarious house of cards that was the Deceptive FTX Platform is that earlier this year, Bankman-Fried secretly transferred *at least $4 billion* in customer funds from FTX to Alameda without telling anyone, after Alameda was hit with a series of losses, and that the FTX entities lent more than *half* of its *$16 billion* in *customer funds* to Alameda in total, with more than *$10 billion in loans outstanding*.[25]

**B.      FTX's offer and sale of YBAs, which are unregistered securities.**

53. Beginning in 2019, the FTX Entities began offering interest-bearing cryptocurrency accounts to public investors. Plaintiffs and other similarly situated individuals invested in FTX's YBAs.

54. FTX maintains that it does not offer for sale any product that constitutes a "security" under federal or state law. Under federal securities laws as construed by the United States Supreme Court in its decision *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and by the SEC, an investment contract is a form of security under United States securities laws when (1) the purchaser makes an investment of money or exchanges another item of value (2) in a common enterprise (3) with the reasonable expectation of profits to be derived from the efforts of others.

55. The YBAs were "securities" as defined by the United States securities laws and as interpreted by the Supreme Court, the federal courts, and the SEC. The FTX Entities offered variable interest rewards on crypto assets held in the YBAs on the Deceptive FTX Platform, which rates were determined by the FTX Entities in their sole discretion. In order to generate revenue to fund the promised interest, the FTX Entities pooled the YBA assets to engage in lending and staking activities from which they derived revenue to pay interest on the YBAs. These activities make the YBAs a "security" under state and federal law.

---

[25]      https://markets.businessinsider.com/news/currencies/ftx-crash-client-funds-alameda-binance-sbf-sec-cftc-probe-2022-11?utm_medium=ingest&utm_source=markets (accessed December 5, 2022).

56.     On October 14, 2022, Director of Enforcement of the Texas State Securities Board, Joseph Rotunda, filed a declaration in the Chapter 11 bankruptcy proceedings pending in connection with the collapse of the Voyager Digital cryptocurrency exchange, *In re: Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW), ECF No. 536 (Bankr. S.D.N.Y. Oct. 14, 2022), in which he explained how the YBAs are in fact "an offering of unregistered securities in the form of yield-bearing accounts to the residents of the United States." *Id.*, at 6. In his declaration, the pertinent portions of which are reproduced in full for ease of reference, Rotunda explains:

> I am also familiar with FTX Trading LTD ("FTX Trading") dba FTX as described herein. As more fully explained throughout this declaration, I am aware that FTX Trading, along with West Realm Shires Services Inc. dba FTX US ("FTX US"), may be offering unregistered securities in the form of yield-bearing accounts to residents of the United States. These products appear similar to the yield-bearing depository accounts offered by Voyager Digital LTD et al., and the Enforcement Division is now investigating FTX Trading, FTX US, and their principals, including Sam Bankman-Fried.

> I understand that FTX Trading is incorporated in Antigua and Barbuda and headquartered in the Bahamas. It was organized and founded in part by Mr. Bankman-Fried, and FTX Trading appears to be restricting operations in the United States. For example, domestic users accessing the webpage for FTX Trading at ftx.com are presented with a pop-up window that contains a disclaimer that reads in part as follows:

>> Did you mean to go to FTX US? FTX US is a US licensed cryptocurrency exchange that welcomes American users.

>> You're accessing FTX from the United States. You won't be able to use any of FTX.com's services, though you're welcome to look around the site.

> FTX US claims to be regulated as a Money Services Business with FinCEN (No. 31000195443783) and as a money transmitter, a seller of payment instruments and in other non-securities capacities in many different states. It is not, however, registered as a money transmitter or in any other capacity with the Texas Department of Banking and it is not registered as a securities dealer with the Texas State Securities Board.

> FTX US owns 75 percent or more of the outstanding equity of FTX Capital Markets (CRD No. 158816) ("FTX Capital"), a firm registered as a broker-dealer with the United States Securities and Exchange Commission, the Financial Industry Regulatory Authority Inc., and 53 state and territorial securities regulators. FTX Capital's registration as a dealer in Texas became effective on May 7, 2012, and the registration continues to remain in force and effect.

FTX US maintains a website at https://ftx.us that contains a webpage for smartphone applications for FTX (formerly Blockfolio)[26] (the "FTX Trading App") and FTX US Pro. Users appear able to click a link in this webpage to download the FTX Trading App even when they reside in the United States.

On October 14, 2022, I downloaded and installed the FTX Trading App on my smartphone. I created an account with FTX Trading through the FTX Trading App and linked the FTX account to an existing personal bank account. During the process, I provided my full first and last name and entered my residential address in Austin, Texas. I also accessed hyperlinks in the FTX Trading App that redirected to the Privacy Policy and Terms of Service. Although I was from the United States and was using the application tied to FTX Trading, the Privacy Policy and Terms of Service were from FTX US - not FTX Trading.

I thereafter used the FTX Trading App to initiate the transfer of $50.00 from my bank account to the FTX account and then transferred .1 ETH from a 3.0 wallet to the FTX account. The transfer of funds from my bank account to the FTX account will take up to six days to complete but the transfer of ETH was processed within a few minutes.

The FTX Trading App showed that I was eligible to earn a yield on my deposits. It also explained the "Earn program is provided by FTX.US" – not FTX Trading. It also represented that "FTX Earn rewards are available for US users on a promotional basis."

I recall the FTX Trading App's default settings were automatically configured to enable the earning of yield. The application also contained a link for additional information about yield. I accessed the link and was redirected to a recent article published by "Blockfolio Rebecca" under help.blockfolio.com. The article began as follows:

> You can now earn yield on your crypto purchases and deposits, as well as your fiat balances, in your FTX Trading App! By opting in and participating in staking your supported assets in your FTX account, you'll be eligible to earn up to 8% APY on your staked assets. THIS APY IS ESTIMATED AND NOT GUARANTEED AS DESCRIBED BELOW.

The article also described the payment of yield. It contained a section titled *How do you calculate APY? Does my balance compound daily?* that read, in part, as follows:

---

[26] Based upon information and belief, FTX Trading acquired Blockfolio LLC ("Blockfolio") in or around August 2020. At the time, Blockfolio managed a cryptocurrency application. FTX Trading appears to have thereafter rebranded Blockfolio and its smartphone application as FTX. Now, users can download the FTX Trading App from Apple's App Store or Google's Google Play Store. Although FTX rebranded Blockfolio, the application listing in Apple's App Store still shows the application with developed by Blockfolio.

> FTX will deposit yield earnings from the staked coins, calculated hourly, on the investment portfolio that is stored in your FTX Trading App. Yield will be compounded on principal and yield you have already earned. Any cryptocurrency that you have deposited on FTX as well as any fiat balance you may have on your account, will earn yield immediately after you have opted into the program.

> The first $10,000 USD value in your deposit wallets will earn 8% APY. Amounts held above $10,000 up to $10MM USD in value (subject to market fluctuations) will earn 5% APY. In this scenario, your yield earned on the coins will look something like the examples below the table.

The article also contained a section titled Is this available in my country? This section explained that "FTX Trading App Earn is available to FTX Trading App customers that are in one of the FTX permitted jurisdictions." It contained a hyperlink to an article titled *Location Restrictions* published by FTX Crypto Derivatives Exchange under help.ftx.com. This article described various restrictions on operations in certain countries and locations and read in part as follows:

> **FTX** does not onboard or provide services to corporate accounts of entities located in, established in, or a resident of the **United States of America, Cuba, Crimea and Sevastopol, Luhansk People's Republic, Donetsk People's Republic, Iran, Afghanistan, Syria, or North Korea**. FTX also does not onboard corporate accounts located in or a resident of **Antigua or Barbuda**. FTX also does not onboard any users from Ontario, and FTX does not permit non-professional investors from Hong Kong purchasing certain products.

> **FTX does not onboard or provide services to personal accounts of current residents of the United States of America, Cuba, Crimea and Sevastopol, Luhansk People's Republic, Donetsk People's Republic, Iran, Afghanistan, Syria, North Korea, or Antigua and Barbuda**. There may be partial restrictions in other jurisdictions, potentially including Hong Kong, Thailand, Malaysia, India and Canada. In addition, FTX does not onboard any users from Ontario, does not permit non-professional investors from Hong Kong purchasing certain products, and does not offer derivatives products to users from Brazil.

> FTX serves all Japanese residents via FTX Japan.

(emphasis in original)

Despite the fact I identified myself by name and address, the FTX Trading App now shows that I am earning yield on the ETH. The yield is valued at 8 percent APR.

Based upon my earning of yield and an ongoing investigation by the Enforcement Division of the Texas State Securities Board, the yield program appears to be an investment contract, evidence of indebtedness and note, and as such appears to be regulated as a security in Texas as provided by Section 4001.068 of the Texas Securities Act. At all times material to the opening of this FTX account, FTX Trading and FTX US have not been registered to offer or sell securities in Texas. FTX Trading and FTX US may therefore be violating Section 4004.051 of the Texas Securities Act. Moreover, the yield program described herein has not

been registered or permitted for sale in Texas as generally required by Section 4003.001 of the Securities Act, and as such FTX Trading and FTX US may be violation Section 4003.001 by offering unregistered or unpermitted securities for sale in Texas. Finally, FTX Trading and FTX US may not be fully disclosing all known material facts to clients prior to opening accounts and earning yield, thereby possibly engaging in fraud and/or making offers containing statements that are materially misleading or otherwise likely to deceive the public. Certain principals of FTX Trading and FTX US may also be violating these statutes and disclosure requirements. Further investigation is necessary to conclude whether FTX Trading, FTX US and others are violating the Securities Act through the acts and practices described in this declaration.

The Enforcement Division of the Texas State Securities Board understands that FTX US placed the highest bid for assets of Voyager Digital LTD et al., a family of companies variously accused of misconduct in connection with the sale of securities similar to the yield program promoted by FTX Trading and FTX US. FTX US is managed by Sam Bankman-Fried (CEO and Founder), Gary Wang (CTO and Founder) and Nishad Singh (Head of Engineering). The same principals hold the same positions at FTX Trading, and I was able to access the yield-earning product after following a link to the FTX Trading App from FTX US's website. The FTX Trading App also indicated the Earn program is provided by FTX US. As such, FTX US should not be permitted to purchase the assets of the debtor unless or until the Securities Commissioner has an opportunity to determine whether FTX US is complying with the law and related and/or affiliated companies, including companies commonly controlled by the same management, are complying with the law.

I hereby authorize the Texas Attorney General's Office and any of its representatives to use this declaration in this bankruptcy proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 14, 2022 in Austin, Texas.

/s Joseph Jason Rotunda

By: Joseph Jason Rotunda

### C. The Defendants Aggressively Marketed the FTX Platform

57.     In addition to the conduct of Sam Bankman-Fried, as described in this Complaint, some of the biggest names in sports and entertainment have been Brand Ambassadors for the company. A number of them hyped FTX directly to their social media fans, driving retail consumer adoption of the Deceptive FTX Platform.

58.     In April 2021, FTX became the first company in the crypto industry to name an arena. This helped lend credibility and recognition to the FTX brand and gave the massive fanbase of basketball exposure to the Deceptive FTX Platform.

59.     FTX's explanation for using stars like Brady, O'Leary, and others was no secret. "We're the newcomers to the scene," said then-FTX.US President Brett Harrison, referring to the crypto services landscape in the U.S. "The company needs to familiarize consumers with its technology, customer service and offerings, while competing with incumbents like Coinbase Global Inc. or Kraken," Mr. Harrison said. "We know that we had to embark on some kind of mass branding, advertising, sponsorship type work in order to be able to do that," he said.[27]

60.     In other words, the FTX Entities needed celebrities like Defendants to continue funneling investors into the FTX Ponzi scheme, and to promote and substantially assist in the sale of the YBAs, which are unregistered securities. Below are representative statements and advertisements Defendants made to drive the offers and/or sales of the YBAs, which Plaintiffs will supplement as the case progresses and discovery unfolds.

---

[27]     https://www.wsj.com/articles/tom-brady-and-gisele-bundchen-to-star-in-20-million-campaign-for-crypto-exchange-11631116800?mod=article_inline (accessed December 5, 2022).

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*

### **Defendant Tom Brady**



61.     The star quarterback became an FTX ambassador last year. He also took an equity stake in FTX Trading Ltd.

62.     Mr. Brady also joined the company's $20-million ad campaign in 2021. They filmed a commercial called "FTX. You In?" showing him telling acquaintances to join the FTX platform. The ad can be viewed here: https://www.youtube.com/watch?v=uymLJoKFlW8

### **Defendant Kevin O'Leary**



63.     "Mr. Wonderful," both a brand ambassador and an FTX shareholder, made several public statements designed to induce consumers to invest in the YBAs.

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*

64.     "To find crypto investments opportunities that met my own rigorous standards of compliance, I entered into this relationship with @FTX_Official," Mr. O'Leary said on Twitter last year. Mr. O'Leary *recently deleted the tweet*.

65.     He also served as a judge for the FTX Charity Hackathon in Miami in March of 2022.[28]

66.     And *very* recently, on October 12, 2022, O'Leary stated confidently that FTX was totally compliant and a safe place to hold assets. O'Leary stated that: "I have to disclose I'm a paid spokesperson to a FTX and shareholder there, too, cause we mentioned him and I'm a big advocate for Sam because he has two parents who are compliance lawyers. If there's ever a place I could be that I'm not gonna get in trouble it's going to be in FTX so you know that's there they're great people but he gets the job in compliance which is why he's working so hard to get regulation."[29]



67.     He went on to state that "[t]here are a lot of signs right now that point to things looking bad. Crypto has taken a big hit and investors are wondering if things will turn around. If you follow history and the pattern of things, you know that this is RIGHT ON TRACK and we'll soon see a resurgence with crypto. Do you think we're entering a Bullish period? Let me know in the comments!"[30]

---

[28] https://ftxcharityhackathon.com/ (accessed December 5, 2022).

[29] *See* https://www.youtube.com/watch?v=iwD_zWgyUz8 beginning at 17:32 (accessed December 5, 2022)

[30] *Id.*

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*

## Defendant David Ortiz



68.     Defendant David Ortiz, who became an FTX brand ambassador and hyped the YBAs in exchange for cryptocurrency and multiple collections of NFTs, also ran his own FTX "You In?" ad, which began running nationwide during the first game of the 2021 World Series.

69.     In the ad, which can be found here: https://www.ispot.tv/ad/qSlm/ftx-big-papi-is-in, Ortiz is watching a game on the television when he receives a phone call from The Moon. Inspired by the "moonblast" home run scored on the field, The Moon frantically tells David about opportunities to get into cryptocurrency with FTX. David decides it's an offer he can't refuse and joins fellow sports stars Stephen Curry and Tom Brady on the platform. FTX announces it is the official crypto exchange of MLB.

## <u>COUNT ONE</u>

### Violations of the Florida Statute Section 517.07,

### The Florida Securities and Investor Protection Act

70.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1–69 above, as if fully set forth herein.

71.     Section 517.07(1), Fla. Stat., provides that it is unlawful and a violation for any person to sell or offer to sell a security within the State of Florida unless the security is exempt under Fla. Stat. § 517.051, is sold in a transaction exempt under Fla. Stat. § 517.061, is a federally covered security, or is registered pursuant to Ch. 517, Fla. Stat.

72.     Section 517.211 extends liability to any "director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security."

73.     The YBA is a security pursuant to Fla. Stat. § 517.021(22)(a).

74.     The YBAs sold and offered for sale to Plaintiffs was not:

    a.   exempt from registration under Fla. Stat. § 517.051;

    b.   a federal covered security;

    c.   registered with the Office of Financial Regulations (OFR); or

    d.   sold in a transaction exempt under Fla. Stat. § 517.061.

75.     The FTX Entities sold and offered to sell the unregistered YBAs to Plainitff.

76.     Defendants are directors, officers, partners and/or agents of the FTX Entities pursuant to Fla. Stat. § 517.211.

77.     The FTX Entities, with Defendants' material assistance, offered and sold the unregistered YBAs to Plaintiffs. As a result of this assistance, Defendants violated Fla. Stat. § 517.07 et seq. and Plaintiffs sustained damages as herein described.

## COUNT TWO

### For Violations of the Florida Deceptive and Unfair Trade Practices Act,
### § 501.201, Florida Statutes, *et seq.*

78.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1–69 above, as if fully set forth herein.

79.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq.* ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

80.     Plaintiffs are each a consumer as defined by section 501.203, Fla. Stat. Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

81.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

82.     Defendants' unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

83.     Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

84.     Plaintiffs have been aggrieved by Defendants' unfair and deceptive practices and acts of false advertising by paying into the Ponzi scheme that was the Deceptive FTX Platform and in the amount of his lost investment.

85.     The harm suffered by Plaintiffs was directly and proximately caused by the deceptive and unfair practices of Defendants, as more fully described herein.

86.     Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs make claims for actual damages, attorneys' fees and costs.

87.     Defendants still utilize many of the deceptive acts and practices described above. Plaintiffs have suffered and will continue to suffer irreparable harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs to obtain both declaratory or injunctive relief to put an end to Defendants' unfair and deceptive scheme.

## COUNT THREE

### Civil Conspiracy

88.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1–69 above, as if fully set forth herein.

89.     The FTX Entities and Defendants made numerous misrepresentations and omissions to Plaintiffs about the Deceptive FTX Platform in order to induce confidence and to drive consumers to invest in what was ultimately a Ponzi scheme, misleading customers and prospective customers with the false impression that any cryptocurrency assets held on the Deceptive FTX Platform were safe and were not being invested in unregistered securities.

90.     The FTX Entities entered into one or more agreements with Defendants with the purpose of making these misrepresentations and/or omissions to induce Plaintiffs to invest in the YBAs and/or use the Deceptive FTX Platform.

91.     Defendants engaged in unlawful acts with the FTX Entities, namely, the misrepresentations and omissions made to Plaintiffs and the sale of unregistered securities.

92.     Defendants' conspiracy substantially assisted or encouraged the wrongdoing conducted by the FTX Entities; further, Defendants had knowledge of such fraud and/or wrongdoing, because of their experience and relationship with the FTX Entities, as described above and as such, knew that the representations made to Plaintiffs were deceitful and fraudulent.

93.     Defendants' conspiracy with the FTX Entities to commit fraud caused damages to Plaintiffs in the amount of their lost investments.

## COUNT FOUR

### Declaratory Judgment

### (Declaratory Judgment Act, Florida Statutes §§ 86.011 *et seq.*)

94.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–69 as if fully set forth herein.

95.     This Count is asserted against Defendants under Florida Statutes §§ 86.011, *et seq.*

96.     There is a bona fide, actual, present and practical need for the declaratory relief requested herein; the declaratory relief prayed for herein deal with a present, ascertained or ascertainable state of facts and a present controversy as to a state of facts; contractual and statutory duties and rights that are dependent upon the facts and the law applicable to the facts; the parties have an actual, present, adverse and antagonistic interest in the subject matter; and the antagonistic and adverse interests are all before the Court by proper process for final resolution.

97.     Plaintiffs have an obvious and significant interest in this lawsuit.

98.     Plaintiffs each purchased a YBA, based in part on justifiable reliance on the Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as further described hereinabove.

99.     If the true facts had been known, including but not limited to that the YBAs are unregistered securities, the Deceptive FTX Platform does not work as represented, and Defendants were paid exorbitant sums of money to peddle Voyager to the nation, Plaintiffs would not have purchased a YBA in the first place.

100.    Thus, there is a justiciable controversy over whether the YBA was sold illegally, and whether the Defendants illegally solicited their purchases from Plaintiff.

101.    Plaintiffs seek an order declaring that the YBAs are securities required to be registered with the SEC and state regulatory authorities, that the Deceptive FTX Platform did not work as represented, and Defendants were paid exorbitant sums of money to peddle FTX to the nation.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for a judgment:

a.     Awarding actual, direct and compensatory damages;

b.     Awarding restitution and disgorgement of revenues if warranted;

c.     Awarding declaratory relief as permitted by law or equity, including declaring the Defendants' practices as set forth herein to be unlawful, and that the YBA offered and sold to Plaintiffs—the same one offered and sold to millions of other Americans for collectively billions of dollars—constituted an unregistered security;

d.     Awarding injunctive relief as permitted by law or equity, including enjoining the Defendants from continuing those unlawful practices as set forth herein, and directing the Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

e.     Awarding statutory and multiple damages, as appropriate;

f.     Awarding attorneys' fees and costs; and

g.     Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to all claims so triable.

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*

Dated: December 5, 2022

Respectfully submitted,

**By:** */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

**By:** */s/David Boies*
David Boies
(*Pro Hac Vice* Application Forthcoming)
Alex Boies
(*Pro Hac Vice* Application Forthcoming)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
dboies@bsfllp.com

**By:** */s/Stephen Neal Zack*
Stephen Neal Zack
Florida Bar No. 145215
Hon. Ursula Ungaro (Ret.)
Florida Bar No. 200883
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com
uungaro@bsfllp.com

**By:** */s/Jose M. Ferrer*
Jose M. Ferrer
Florida Bar No. 173746
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440
jose@markmigdal.com
eservice@markmigdal.com

*Michael Norris, et al. v. Thomas Brady, et al.*
*Amended Complaint and Demand for Jury Trial*

**By: */s/Ricardo M. Martinez-Cid***
Ricardo M. Martinez-Cid
Florida Bar No. 383988
Lea P. Bucciero
Florida Bar No. 84763
Zachary S. Gorwitz
Florida Bar No. 1025415
**PODHURST ORSECK, P.A.**
One S.E. Third Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382
Email: rmcid@podhurst.com
Email: lbucciero@podhurst.com
Email: zgorwitz@podhurst.com
Email: rmcteam@podhurst.com

*Co-Counsel for Plaintiffs*