1
2
3
4
5
6
7
8
9
10
11
12
13

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (SBN 149343)
*tblood@bholaw.com*
THOMAS J. O'REARDON II (SBN 247952)
*toreardon@bholawcom*
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

*Counsel for Plaintiffs*
*(add'l counsel listed below)*

14
15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JOSÉ TOMÁS SEPÚLVEDA ZULETA, MICHAEL LEHRER, and TRISTAN NEWMAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>SILVERGATE CAPITAL CORPORATION, ALAN J. LANE, CHRISTOPHER M. LANE, TYLER J. PEARSON, and JASON BRENIER,<br><br>    Defendants. | Case No.: **'22CV1901 L    AGS**<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR FRAUD; FRAUDULENT CONCEALMENT & INDUCEMENT; CIVIL CONSPIRACY; NEGLIGENCE; VIOLATIONS OF THE UCL; and UNJUST ENRICHMENT**<br><br>DEMAND FOR JURY TRIAL |

> "Life as a crypto firm can be divided up into before Silvergate and after Silvergate — it's hard to overstate how much it revolutionized banking for blockchain companies."
>
> — Sam Bankman-Fried
> FOUNDER AND CEO, FTX AND ALAMEDA RESEARCH

Plaintiffs JOSÉ TOMÁS SEPÚLVEDA ZULETA, MICHAEL LEHRER, and TRISTAN NEWMAN, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby bring this action against Defendants SILVERGATE CAPITAL CORPORATION, ALAN J. LANE, CHRISTOPHER M. LANE, TYLER J. PEARSON, and JASON BRENIER, and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief including the investigation of counsel.

## INTRODUCTION

1.     Silvergate Capital Corporation is the parent of Silvergate Bank (together, "Silvergate"), a United States bank serving the cryptocurrency industry. Its customers include, for example, cryptocurrency exchanges, institutional investors, and stablecoin issuers. Some of its notable customers are Coinbase, Paxos, Circle, Kraken, Bitstamp, Gemini, and Crypto.com.

2.     This case concerns Silvergate's conduct regarding its most notable customer, the cryptocurrency trading exchange, FTX, which spectacularly imploded in early November 2022, entering into Chapter 11 bankruptcy as the result of rampant fraud and corporate malfeasance that has seemingly left over a million debtors with losses in the billions of dollars.

3.     Silvergate and its Chief Executive and Risk Officers were complicit in and responsible for some of these fraudulent losses because, in violation of its Know-Your-Customer (KYC) and Anti-Money Laundering (AML) regulatory obligations, Silvergate

knowingly or negligently permitted FTX to direct customer deposits to Alameda Research, a hedge fund that is a wholly separate entity also owned by FTX's founder and Chief Executive Officer, Sam Bankman-Fried.

## THE PARTIES

4.      Plaintiff José Tomás Sepúlveda Zuleta is a citizen and resident of Viña Del Mar, Chile.

5.      Plaintiff Michael Lehrer is a resident of Atlanta, Georgia.

6.      Plaintiff Tristan Newman is a resident of Austin, Texas.

7.      Defendant Silvergate Capital Corporation is a Maryland company with its principle place of business in La Jolla, California. It is the parent of Silvergate Bank.

8.      Defendant Alan J. Lane is the director and Chief Executive Officer of both Silvergate Capital Corporation and Silvergate Bank and a resident of Temecula, California.

9.      Defendant Christopher M. Lane is Silvergate's Senior Vice President of Business & Deposit Systems, sometimes referred to as Chief Technology Officer. Prior to that, Mr. Lane was Senior Vice President and Chief Operations Officer, and Director of Business Systems. Mr. Lane is the son of Defendant Alan J. Lane and a resident of Temecula, California.

10.     Until November 7, 2022, when he was replaced, Defendant Tyler J. Pearson was Silvergate's Chief Risk Officer. Prior to that, Mr. Pearson was Silvergate's Senior Vice President of Enterprise Risk Management. Mr. Pearson is the son-in-law of Defendant Alan J. Lane and a resident of Temecula, California.

11.     Defendant Jason Brenier holds several positions at Silvergate. Since October 2018, he has been Vice President and Director of Finance and Accounting. Since October 2019, he has also been Silvergate's Senior Vice President of Correspondent Banking, and Senior Relationship Manager. Finally, in May 2022, he was also named Silvergate's Director of Trading. Mr. Brenier is the son-in-law of Defendant Alan J. Lane and a resident of Temecula, California.

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendants.  In addition, more than two-thirds of the members of the class reside in states other than the state in which Defendants are citizens and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

13.    The Court has personal jurisdiction over Defendants pursuant to Cal. Code Civ. P. § 410.10, as a result of Defendants' substantial, continuous and systematic contacts with the State, and because Defendants have purposely availed themselves of the benefits and privileges of conducting business activities within the State.

14.    Venue is proper in this Southern District of California pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants reside in this district, Silvergate is headquartered in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**FACTS**

**I.    BACKGROUND**

15.    Silvergate was founded in 1988, is a member of the Federal Reserve, and is publicly traded on the New York Stock Exchange under the symbol SI, having gone public in October 2019.

16.    In 2013, Silvergate began to provide banking services to the emerging digital asset industry. Today, it is the leading provider of financial infrastructure solutions and services for the growing cryptocurrency industry. Replicated below is an infographic showing Silvergate's business as of June 2021.



17.     In particular, Silvergate maintains and operates a real-time payments platform, known as the Silvergate Exchange Network (SEN), which is central to its suite of payment, lending, and funding solutions for its customers in the digital currency industry. The SEN allows Silvergate's customers 24/7 access to send money between their Silvergate accounts, and the accounts of other participants on the SEN, an important feature in the cryptocurrency industry.

## II.     SILVERGATE'S PARTNERSHIP WITH FTX

18.     Until its recent implosion and bankruptcy, FTX was a platform for trading digital assets like cryptocurrencies and tokens. As is customary with brokers that facilitate retail trading of stocks (like TD Ameritrade, E-Trade, Robinhood, etc.), retail traders wanting to participate in the FTX cryptocurrency exchange platform were first required to deposit funds with FTX. This could be accomplished in a number of ways, including by wiring fiat following wiring instructions FTX provided.

19.     Silvergate and FTX had a close relationship. Although Silvergate has approximately 1,500 customers, FTX represented nearly 10% of Silvergate's deposits, making FTX one of Silvergate's most important customers. Indeed, before it collapsed, FTX was the second largest cryptocurrency exchange in the world. In testament to this relationship,

CLOSED,LNO

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:22-cv-01901-BEN-WVG

Sepulveda Zuleta et al v. Silvergate Capital Corporation et al
Assigned to: Judge Roger T. Benitez
Referred to: Magistrate Judge William V. Gallo
Related Cases: 3:23-cv-00038-BEN-WVG
              3:22-cv-01981-BEN-WVG
Cause: 28:1453 Class Action Fairness Act

Date Filed: 12/01/2022
Date Terminated: 02/10/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

## Plaintiff

**Jose Tomas Sepulveda Zuleta**
*on behalf of themselves and all others*
*similarly situated*

represented by   **Caroline S. Emhardt**
Fitzgerald Joseph LLP
2341 Jefferson Street
Suite 200
San Diego, CA 92110
619-215-1741
Email: caroline@fitzgeraldjoseph.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack Fitzgerald**
Fitzgerald Joseph LLP
2341 Jefferson Street
Suite 200
San Diego, CA 92110
619-215-1741
Fax: 619-331-2943
Email: jack@fitzgeraldjoseph.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Davis , IV**
Casey Gerry LLP
110 Laurel Street
San Diego, CA 92101
619-238-1811
Fax: 619-544-9232
Email: jdavis@cglaw.com *(Inactive)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie Rae Persinger**
Fitzgerald Joseph LLP
2341 Jefferson Street
Suite 200
San Diego, CA 92110
619-215-1741

Email: melanie@fitzgeraldjoseph.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul K. Joseph**
Fitzgerald Joseph LLP
2341 Jefferson Street
Suite 200
San Diego, CA 92110
619-215-1741
Email: paul@pauljosephlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Joseph O'Reardon , II**
Blood Hurst & O'Reardon, LLP
501 West Broadway
Suite 1490
San Diego, CA 92101
(619) 338-1100
Fax: (619) 338-1101
Email: toreardon@bholaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy G. Blood**
Blood Hurst & O'Reardon, LLP
501 West Broadway
Suite 1490
San Diego, CA 92101
(619) 338-1100
Fax: (619) 338-1101
Email: tblood@bholaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor Matthew Flynn**
Fitzgerald Joseph, LLP
2341 Jefferson Street
Suite 200
San Diego, CA 92110
619-215-1741
Email: trevor@fitzgeraldjoseph.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Lehrer**       represented by   **Caroline S. Emhardt**
*on behalf of themselves and all others*                (See above for address)
*similarly situated*                             *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

**Jack Fitzgerald**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Davis , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie Rae Persinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul K. Joseph**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Joseph O'Reardon , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy G. Blood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor Matthew Flynn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tristan Newman**
*on behalf of themselves and all others
similarly situated*

represented by   **Caroline S. Emhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack Fitzgerald**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Davis , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie Rae Persinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul K. Joseph**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Joseph O'Reardon , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy G. Blood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor Matthew Flynn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

Silvergate Capital Corporation      represented by **Polly Towill**
Sheppard Mullin Richter and Hampton LLP
333 South Hope Street
43rd Floor
Los Angeles, CA 90071
(213) 617-5480
Fax: (213) 620-1398
Email: ptowill@sheppardmullin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Landry**
Sheppard Mullin Richter & Hampton
333 South Hope Street
43rd Floor
Los Angeles, CA 90071
213-620-1780
Fax: 213-620-1398
Email: jlandry@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

**Madalyn Annabel Macarr**
Sheppard Mullin Richter & Hampton
333 S. Hope Street
43rd Floor
Los Angeles, CA 90071
213-620-1780
Fax: 213-620-1398
Email: mmacarr@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alan J. Lane**                                    represented by    **Polly Towill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Landry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madalyn Annabel Macarr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christopher M. Lane**                            represented by    **Polly Towill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Landry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madalyn Annabel Macarr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tyler J. Pearson**                               represented by    **Polly Towill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Landry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madalyn Annabel Macarr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jason Brenier**                                  represented by    **Polly Towill**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Landry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madalyn Annabel Macarr**

(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/01/2022 | 1 | COMPLAINT with Jury Demand against Jason Brenier, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Silvergate Capital Corporation ( Filing fee $402 receipt number ACASDC-17389898.), filed by Jose Tomas Sepulveda Zuleta, Tristan Newman, Michael Lehrer. (Attachments: # 1 Civil Cover Sheet)<br><br>The new case number is 3:22-cv-1901-L-AGS. Judge M. James Lorenz and Magistrate Judge Andrew G. Schopler are assigned to the case. (Fitzgerald, Jack)(cxl1) (rmc). (Entered: 12/02/2022) |
| 12/02/2022 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (cxl1) (rmc). (Entered: 12/02/2022) |
| 12/05/2022 | 3 | SUMMONS Returned Executed by Jose Tomas Sepulveda Zuleta, Tristan Newman, Michael Lehrer. Silvergate Capital Corporation served. (Flynn, Trevor) (cxl1). (Entered: 12/05/2022) |
| 12/05/2022 | 4 | SUMMONS Returned Executed by Jose Tomas Sepulveda Zuleta, Tristan Newman, Michael Lehrer. Tyler J. Pearson served. (Flynn, Trevor) (cxl1). (Entered: 12/05/2022) |
| 12/14/2022 | 5 | SUMMONS Returned Executed by Jose Tomas Sepulveda Zuleta, Tristan Newman, Michael Lehrer. Christopher M. Lane served. (Flynn, Trevor) (cxl1). (Entered: 12/14/2022) |
| 12/16/2022 | 6 | NOTICE of Appearance *of Polly Towill* by Polly Towill on behalf of Jason Brenier, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Silvergate Capital Corporation (Towill, Polly)Attorney Polly Towill added to party Jason Brenier(pty:dft), Attorney Polly Towill added to party Alan J. Lane(pty:dft), Attorney Polly Towill added to party Christopher M. Lane(pty:dft), Attorney Polly Towill added to party Tyler J. Pearson(pty:dft), Attorney Polly Towill added to party Silvergate Capital Corporation(pty:dft) (cxl1). (Entered: 12/16/2022) |
| 12/16/2022 | 7 | NOTICE of Appearance *of John Landry* by John Michael Landry on behalf of Jason Brenier, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Silvergate Capital Corporation (Landry, John)Attorney John Michael Landry added to party Jason Brenier(pty:dft), Attorney John Michael Landry added to party Alan J. Lane(pty:dft), Attorney John Michael Landry added to party Christopher M. Lane(pty:dft), Attorney John Michael Landry added to party Tyler J. Pearson(pty:dft), Attorney John Michael Landry added to party Silvergate Capital Corporation(pty:dft) (cxl1). (Entered: 12/16/2022) |
| 12/16/2022 | 8 | Corporate Disclosure Statement by Silvergate Capital Corporation. No Corporate Parents/Interested Parties. (Towill, Polly) (cxl1). (Entered: 12/16/2022) |
| 12/16/2022 | 9 | Joint MOTION for Extension of Time to File Answer re 1 Complaint, by Jason Brenier, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Silvergate Capital Corporation. (Towill, Polly) (cxl1). (Entered: 12/16/2022) |
| 12/16/2022 | 10 | NOTICE of Appearance by Madalyn Annabel Macarr on behalf of Jason Brenier, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Silvergate Capital Corporation (Macarr, Madalyn)Attorney Madalyn Annabel Macarr added to party Jason Brenier(pty:dft), Attorney Madalyn Annabel Macarr added to party Alan J. Lane(pty:dft), Attorney Madalyn Annabel Macarr added to party Christopher M. Lane(pty:dft), Attorney Madalyn Annabel |

| | | Macarr added to party Tyler J. Pearson(pty:dft), Attorney Madalyn Annabel Macarr added to party Silvergate Capital Corporation(pty:dft) (cxl1). (Entered: 12/16/2022) |
|---|---|---|
| 12/19/2022 | 11 | ORDER granting 9 Joint Motion to Extend Deadline for Defendants to Respond to the Class Action Complaint. Signed by Judge M. James Lorenz on 12/19/2022. Defendants shall have five (5) extra pages for their consolidated response, and Plaintiffs shall have five (5) extra pages to oppose. (All non-registered users served via U.S. Mail Service)(cxl1) (Entered: 12/19/2022) |
| 12/21/2022 | 12 | SUMMONS Returned Executed by Jose Tomas Sepulveda Zuleta, Tristan Newman, Michael Lehrer. Alan J. Lane served. (Flynn, Trevor) (cxl1). (Entered: 12/21/2022) |
| 12/21/2022 | 13 | CERTIFICATE OF SERVICE by Jason Brenier, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Silvergate Capital Corporation *Declaration of Service re Notice of Appearance of Madalyn A. Macarr* (Macarr, Madalyn) (cxl1). (Entered: 12/21/2022) |
| 01/18/2023 | 14 | MINUTE ORDER OF RECUSAL. Judge M. James Lorenz is no longer assigned. Case reassigned to District Judge Ruth Bermudez Montenegro and District Judge Ruth Bermudez Montenegro for all further proceedings. The new case number is 22cv1901-RBM-AGS.(no document attached) (maq) (anh). (Entered: 01/18/2023) |
| 01/20/2023 | 15 | NOTICE OF RELATED CASE(S) by Michael Lehrer, Tristan Newman, Jose Tomas Sepulveda Zuleta of case(s) 22-cv-1981-BEN-WVG & 23-CV-38-CAB-AHG . (Fitzgerald, Jack) (jpp). (Entered: 01/20/2023) |
| 02/03/2023 | 16 | ORDER OF TRANSFER PURSUANT TO LOW NUMBER RULE. Case reassigned to Judge Roger T. Benitez and Magistrate Judge William V. Gallo for all further proceedings. District Judge Ruth Bermudez Montenegro, Magistrate Judge Andrew G. Schopler no longer assigned to case. The new case number is 22CV1901-BEN-WVG.. Signed by District Judge Ruth Bermudez Montenegro on 2/3/2023. Signed by Judge Roger T. Benitez on 2/3/2023.(All non-registered users served via U.S. Mail Service)(alns) (Entered: 02/06/2023) |
| 02/09/2023 | 17 | NOTICE of Voluntary Dismissal by Michael Lehrer, Tristan Newman, Jose Tomas Sepulveda Zuleta (Fitzgerald, Jack) (ddf). (Entered: 02/09/2023) |
| 02/10/2023 | 18 | MINUTE ORDER: This matter is dismissed without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure due to the plaintiff filing of their Voluntary Dismissal. ECF No. 17 (no document attached) (ddf) (Entered: 02/10/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/14/2023 12:14:45 | | | |
| **PACER Login:** | AdamMoskoadam | **Client Code:** | FTX |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-01901-BEN-WVG |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

though it has been removed since FTX's bankruptcy, the following endorsement appeared on Silvergate's website:

> "Life as a crypto firm can be divided up into before Silvergate and after Silvergate — it's hard to overstate how much it revolutionized banking for blockchain companies."
>
> — Sam Bankman-Fried
> FOUNDER AND CEO, FTX AND ALAMEDA RESEARCH

20.     Notably, in quoting him and using his endorsement to market its own business, Silvergate identified Mr. Bankman-Fried as the "Founder and CEO" of *both* FTX and Alameda Research.

## III.    FTX'S FRAUD AND COLLAPSE

21.     In 2017, Mr. Bankman-Fried launched a crypto trading firm, Alameda Research LLC. Initially, it primarily operated as a delta-neutral trading firm, using strategies like market making and arbitrage to avoid taking directional risk. Later, it began to take increasingly risky bets, losing billions of dollars in the process as cryptocurrency markets fell precipitously in 2022.

22.     In 2019, Mr. Bankman-Fried, along with Gary (Zixiao) Wang and Nishad Singh, founded FTX as an exchange or marketplace for the trading of digital assets like cryptocurrencies, with its operations beginning in May 2019. FTX's primary international headquarters are in the Bahamas, with its U.S. operations located in Miami, Florida.

23.     FTX's promise was a trading platform and exchange for digital assets that would provide a better user experience, customer protections, and innovative products robust enough for professional trading firms and intuitive enough for first-time and retail users.

24.     FTX also created and issued FTT, the main utility token providing access to the FTX exchange platform's features and services. FTT token holders are entitled to some FTX exchange discounts and other benefits, but the token's main attribute is that FTX periodically uses a portion of its profits to buy FTT tokens back, making them deflationary. Thus, the higher FTX's profits are, the higher the price of FTT will be. So FTT tokens are a bet on FTX's future. Such tokens, however, are open to abuse.

25.     In an August 6, 2021 interview with Bloomberg's Matt Levine, Mr. Bankman-Fried candidly explained the potential for fraud:

> You start with a company that builds a box and in practice this box, they probably dress it up to look like a life-changing, you know, world-altering protocol that's gonna replace all the big banks in 38 days or whatever. Maybe for now actually ignore what it does or pretend it does literally nothing. It's just a box. So what this protocol is, it's called 'Protocol X,' it's a box, and you take a token.

> So you've got this box and it's kind of dumb, but like what's the end game, right? This box is worth zero obviously. . . . But on the other hand, if everyone kind of now thinks that this box token is worth about a billion dollar market cap, that's what people are pricing it at and sort of has that market cap. Everyone's gonna mark to market. In fact, you can even finance this, right? You put X token in a borrow lending protocol and borrow dollars with it. If you think it's worth like less than two thirds of that, you could even just like put some in there, take the dollars out. Never, you know, give the dollars back. You just get liquidated eventually. And it is sort of like real monetizable stuff in some senses.[1]

26.     FTX and Alameda were quite successful, having netted approximately $350 million and $1 billion in profits, respectively, in 2020 alone.

27.     With FTX quickly gaining in popularity, in the summer of 2021, Mr. Bankman-Fried stepped down as CEO from Alameda Research to focus on FTX. But his influence and connection with Alameda was still deeply ingrained. On November 28, 2022, for example, Law360 reported that FTX told the bankruptcy judge at the hearing for its first-day motions that Mr. Bankman-Fried "had run the worldwide, multibillion-dollar business as a 'personal fiefdom.'"[2]

---

[1] As reported in Matt Levine, "FTX's Balance Sheet Was Bad," Bloomberg (Nov. 13, 2022), *at* https://www.bloomberg.com/opinion/articles/2022-11-14/ftx-s-balance-sheet-was-bad; *see also* "Transcript: Sam Bankman-Fried and Matt Levine on Crypto Market Structure," Bloomberg (Aug. 6, 2021), *at* https://www.bloomberg.com/news/articles/2021-08-06/transcript-sam-bankman-fried-and-matt-levine-on-crypto-market-structure.

[2] Rick Archer, "FTX Pledges Better Books, Celsius Faulted for Asset Mingling," Law360 (Nov. 28, 2022), *at* https://www.law360.com/articles/1552261/ftx-pledges-better-books-celcius-faulted-for-asset-mingling.

6

28.     Over the next year, FTX continued to grow. As of September 2022, around $15 billion of digital assets were being traded daily on FTX's platform, representing 10% of the global volume for crypto trading.

29.     In early November 2022, however, crypto publication CoinDesk released a report finding that, even though FTX and Alameda were ostensibly separate companies, Alameda's balance sheet was mostly comprised of FTT, the token FTX had invented.[3] It appeared that, following massive losses Alameda had sustained in the second quarter of 2022 when the cryptocurrency Luna collapsed, FTX was lending Alameda money against these illusory assets. The report thus called FTX's liquidity into serious question.

30.     Shortly after these revelations, FTX's primary competitor, Binance (headed by Changpeng "CZ" Zhao) announced it was liquidating $530 million worth of FTT tokens. Customers raced to withdraw funds from FTX, with an estimated $6 billion withdrawn over the course of 72 hours, as the value of its FTT token plunged 32% in the same timeframe.

31.     On Tuesday, November 8, 2022, FTX announced that Binance would buy FTX, effectively bailing it out. The following day, however, Binance announced it was walking away from the deal after performing due diligence and finding that customer funds had been mishandled. This news sent FTT plunging.



---

[3] *See* Ian Allison, "Divisions in Sam Bankman-Fried's Crypto Empire Blur on His Trading Titan Alameda's Balance Sheet: Alameda had $14.6 billion of assets as of June 30, according to a private document CoinDesk reviewed. Much of it is the FTT token issued by FTX, another Bankman-Fried company." CoinDesk (Nov. 2, 2022), *at* https://www.coindesk.com/business/2022/11/02/divisions-in-sam-bankman-frieds-crypto-empire-blur-on-his-trading-titan-alamedas-balance-sheet.

32.     On the morning of Thursday, November 10, 2022, Reuters reported that, after Alameda sustained $500 million in losses in May and June 2022, Mr. Bankman-Fried had transferred at least $4 billion from FTX to Alameda without telling anyone, "fearing the news would leak."[4] Moreover, "the Wall Street Journal reported FTX lent more than half of its $16 billion in customer funds to Alameda in total, with Bankman-Fried telling an investor this week that **Alameda owes FTX about $10 billion**."[5]

33.     At around the same time the report came out, on November 10, 2022, Mr. Bankman-Fried took to Twitter, firing off a series of tweets apologizing for and attempting to explain FTX's failures.



34.     Tweets 4-6 and 19 in the series (and particularly the blurb highlighted in tweet 5 below) are particularly relevant here.



---

[4] Brian Evans, "Sam Bankman-Fried secretly transferred FTX customer funs to Alameda Research after his trading firm suffered losses in the spring, report says," Reuters (Nov. 10, 2022), *at* https://www.cnbc.com/2022/11/13/sam-bankman-frieds-alameda-quietly-used-ftx-customer-funds-without-raising-alarm-bells-say-sources.html.

[5] *Id.* (emphasis added).

1
2
3
4
5
6
7



8
9
10
11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27
28



9

35. According to an FTX balance sheet leaked that same day and pictured below, FTX held just $900 million in liquid assets against $8.9 billion of liabilities. The document also referenced a negative $8 billion entry described as "hidden, poorly internally labeled 'fiat@' account."[6]



| Liabilities | | Assets | | |
|---|---|---|---|---|
| | -8,859,042,572 | Liquid | 899,859,124 | 1,012,262,574 |
| Ticker | Liability | Ticker | Deliverable now | Before this week |
| LayerZero | -45,000,000 | HOOD | 472,291,833 | 579,183,374 |
| EUR | -114,536,254 | USD in Ledger Prime | 200,000,000 | 200,000,000 |
| Genesis | -200,000,000 | USDB | 73,001,646 | 73,223,641 |
| BlockFi | -215,000,000 | DAI | 28,491,686 | 28,464,601 |
| USDT | -796,482,404 | DOT | 28,384,450 | 32,522,098 |
| ETH | -671,542,668 | PAXG | 23,767,062 | 23,244,430 |
| BTC | -1,412,738,406 | JPY | 21,758,186 | 21,979,251 |
| USD | -5,135,280,129 | TUSD | 15,991,381 | 16,034,265 |
| Other | -268,462,711 | EURT | 12,117,879 | 11,847,808 |
| | | BRZ | 9,049,093 | 8,708,731 |
| | | BRL | 7,017,295 | 6,753,417 |
| | | WXRP | 6,987,896 | 9,298,681 |
| | | PAX | 1,000,714 | 1,002,277 |

| 23 | Hidden, poorly internally labled "fiat@" account | -8,000,000,000 |
|---|---|---|

---

[6] Matt Levine, "FTX's Balance Sheet Was Bad," Bloomberg (Nov. 13, 2022), *at* https://www.bloomberg.com/opinion/articles/2022-11-14/ftx-s-balance-sheet-was-bad.

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

36.     On Friday, November 11, 2022, FTX filed for Chapter 11 bankruptcy, and Bankman-Fried resigned as CEO. Alameda Research and a host of other companies related to FTX and Alameda also moved for bankruptcy and joint administration.[7]

37.     Shortly after FTX's bankruptcy filing, the Wall Street Journal reported that "[i]n a video meeting with Alameda employees late Wednesday [November 9] Hong Kong time, Alameda CEO Caroline Ellison said that she, Mr. Bankman-Fried and two other FTX executives, Nishad Singh and Gary Wang, were aware of the decision to send customer funds to Alameda."[8] Ms. Ellison explained that "FTX used customer money to help Alameda meet its liabilities."[9]

38.     On November 13, 2022, citing "a source familiar with company operations," CNBC reported that Alameda "was able to quietly use customer funds from . . . FTX in a way that flew under the radar of investors, employees and auditors in the process, according to [the] source."[10] It did this by "using billions from FTX users without their knowledge . . . ."[11] As a result of Alameda's use—and loss—of FTX customers' funds, FTX "drastically

---

[7] *See In re FTX Trading Ltd. Bankr.*, No. 22-BR-11068-JTD (D. Del., filed Nov. 11, 2022), Dkt. No. 1 (Voluntary Petition), Annex 1.

[8] David Michaels, Elaine Yu, and Caitlin Ostroff, "Alameda, FTX Executives Are Said to Have Known FTX Was Using Customer Funds; Trading firm Alameda's troubles helped lead to the bankruptcy of crypto exchange FTX." Wall Street Journal (Nov. 12, 2022), *at* https://www.wsj.com/articles/alameda-ftx-executives-are-said-to-have-known-ftx-was-using-customer-funds-11668264238.

[9] *Id.*

[10] Kate Rooney, "Sam Bankman-Fried's Alameda quietly used FTX customer funs for trading, say sources," CNBC.com (Nov. 13, 2022), *at* https://www.cnbc.com/2022/11/13/sam-bankman-frieds-alameda-quietly-used-ftx-customer-funds-without-raising-alarm-bells-say-sources.html.

[11] *Id.*

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

underestimated the amount FTX needed to keep on hand if someone wanted to cash out," and "did not have nearly enough on hand" when things went bad.[12]

39.     According to CNBC, "The blurred lines between FTX and Alameda Research resulted in a massive liquidity crisis for both companies. . . . When asked about the blurred lines between his companies in August [2022], Bankman-Fried denied any conflict of interest and said FTX was a 'neutral piece of market infrastructure,'" and that he had "put a lot of work over the last few years into trying to eliminate conflicts of interest there,'" adding "'I don't run Alameda anymore. I don't work for it, none of FTX does. We have separate staffs—we don't want to have preferential treatment. We want as best as we can, to treat everyone fairly.'"[13]

40.     On November 15, 2022, Mr. Bankman-Fried engaged in a twitter conversation with Vox writer Kelsey Piper, which she published the next day.[14] Certain portions of the conversation relevant here are replicated below.

[continued]

---

[12] *See id.*

[13] *Id.*

[14] Kelsey Piper, "Sam Bankman-Fried tries to explain himself: The fallen crypto CEO on what went wrong, why he did what he did, and what lies he told along the way," Vox (Nov. 16, 2022), *at* https://www.vox.com/future-perfect/23462333/sam-bankman-fried-ftx-cryptocurrency-effective-altruism-crypto-bahamas-philanthropy.

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT



*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

was the Alameda thing when LUNA crashed the first time customer deposits got lent out (that's what people are saying) or was it more like, the accounting was such that a lot of the stuff you were doing was implicitly backed by customer deposits?

Yesterday, 9:25 PM

**SBF** ✓

messy accounting + margin exchange --> position built up over time, though in retrospect LUNA crash was when a lot of it did

but messy accounting --> I didn't realize full size of it until a few weeks ago

Yesterday, 9:26 PM

**SBF** ✓

if you could do it all over again, would you just take more careful accounting? never touch customer funds? never go into crypto?

Yesterday, 9:34 PM

more careful accounting + offboard Alameda from FTX once FTX could live on its own

Yesterday, 9:34 PM

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT



41. Finally, Mr. Bankman-Fried admitted that FTX was using Alameda's bank account to receive customer deposits, rather than transferring money from FTX to Alameda.



42.     Notably, the amount of these diverted, comingled customer funds corresponds to the negative $8 billion "hidden, poorly labeled fiat@ account" on FTX's balance sheet.

43.     The same day FTX filed for bankruptcy, November 11, 2022, John J. Ray III accepted the position of FTX's CEO. On November 17, 2022, Mr. Ray submitted in the bankruptcy action a Declaration in Support of Chapter 11 Petitions and First Day Pleadings, stating:[15]

---

[15] *Id.*, Dkt. No. 24.

> 4.     I have over 40 years of legal and restructuring experience.  I have been the Chief Restructuring Officer or Chief Executive Officer in several of the largest corporate failures in history.  I have supervised situations involving allegations of criminal activity and malfeasance (Enron).  I have supervised situations involving novel financial structures (Enron and Residential Capital) and cross-border asset recovery and maximization (Nortel and Overseas Shipholding).  Nearly every situation in which I have been involved has been characterized by defects of some sort in internal controls, regulatory compliance, human resources and systems integrity.
>
> 5.     Never in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced, unsophisticated and potentially compromised individuals, this situation is unprecedented.

44.    Mr. Ray further declared:

> **B.     Cash Management**
>
> 50.     The FTX Group did not maintain centralized control of its cash.  Cash management procedural failures included the absence of an accurate list of bank accounts and account signatories, as well as insufficient attention to the creditworthiness of banking partners
>
> -18-
>
> 4892-0827-0654 v.2
>
> ---
>
> Case 22-11068-JTD     Doc 24     Filed 11/17/22     Page 19 of 30
>
> around the world.  Under my direction, the Debtors are establishing a centralized cash management system with proper controls and reporting mechanisms.

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

45.     Mr. Ray's declaration included organization charts demonstrating that, despite both being owned by Sam Bankman-Fried, FTX and Alameda are wholly separate entities.

46.     After obtaining audited financial statements of West Realm Shires, also known as FTX US, and FTX Trading Ltd., following the initiation of the bankruptcy, CoinDesk published an article describing a "series of red flags" in those reports.[16]

47.     First, FTX used two audit firms to separately audit FTX's U.S.-based entity and its offshore Bahamas-based entity. Those audit firms, Armanino and Prager Metis, are relatively small and inspected by the Public Company Accounting Oversight Board (PCAOB) only once every three years. Both have poor records with the PCAOB.

48.     Second, neither Armanino's nor Prager Metis's audits provided an opinion on FTX's internal controls over accounting and financial reporting.[17]

49.     Third, although FTX appeared to be profitable, neither FTX US nor FTX Trading paid any federal income taxes.[18]

50.     Finally, CoinDesk noted "complex, roundtrip and utterly confounding related-party transactions documented" over just two years. These related-party transactions were the "biggest red flag," and were so numerous that it was "difficult to know where to begin to analyze them."[19]

## IV.     SILVERGATE'S ROLE IN THE FTX FRAUD AND COLLAPSE

51.     FTX was a crucial client of Silvergate's. As of June 2022, Silvergate had approximately 1,500 institutional clients, with a total of approximately $12 billion on deposit. Yet, despite constituting just a few accounts at Silvergate, FTX's deposits made up a full 10% of Silvergate's total deposits.

---

[16] Francine McKenna, "'A Complete Failure of Corporate Controls': What Investors and Accountants Missed in FTX's Audits," CoinDesk (Nov. 18, 2022), *at* https://www.coindesk.com/layer2/2022/11/18/a-complete-failure-of-corporate-controls-what-investors-and-accountants-missed-in-ftxs-audits.

[17] *Id.*

[18] *Id.*

[19] *Id.*

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

52.     To trade cryptocurrencies on FTX, customers must have first deposited funds. At least some customers wishing to make deposits via bank wire were directed by FTX to deposit funds to account(s) held at Silvergate. As Mr. Bankman-Fried admitted, however, the account(s) that at least some customers were directed to deposit funds to was not held by FTX, but rather Alameda Research, a wholly separate entity.

53.     In addition to Mr. Bankman-Fried's admission, there are numerous accounts online of FTX customers being directed to deposit funds in an Alameda Research account. Two such tweets are replicated below, with one showing the Alameda Research Account as number 5090014456 at Silvergate.




*Blowup of image in second "Alice" tweet above*

> **Intermediary Bank SWIFT Code:** PCBBUS66
> **Intermediary Bank ABA Number:** 121042484
> **Intermediary Bank Name:** Pacific Coast Bankers' Bank
> **Intermediary Bank Address:** Walnut Creek, CA 94596
>
> **Receiving Bank SWIFT Code:** SIVGUS21
> **Receiving Bank Routing Number:** 322286803
> **Receiving Bank Name:** Silvergate Bank
> **Receiving Bank Address:** 4250 Executive Square Suite 300 La Jolla, CA 92037
> **Beneficiary Name:** Alameda Research LTD
> **Beneficiary Address:** Tortola Pier Park, Bldg. I, Second Floor, Wickham Cay I., Road Town,
> Tortola British Virgin Islands
> **Beneficiary Account Number:** 5090014456

54. That same account number—along with seven others for Alameda—was noted in a November 19 filing in the FTX bankruptcy proceeding (Dkt. No. 47-3), as shown below.

| Debtor | Bank Name | Last Four Digits of Account No. |
| --- | --- | --- |
| FTX Japan K.K. | SBI Sumishin Net Bank Ltd. | 7502 |
| FTX Japan K.K. | SBI Sumishin Net Bank Ltd. | 3065 |
| FTX Japan K.K. | SBI Sumishin Net Bank Ltd. | 0109 |
| FTX Japan K.K. | SBI Sumishin Net Bank Ltd. | 0110 |
| Alameda Research LLC | Signature Bank | 5489 |
| Alameda Research Ltd | Signature Bank | 9485 |
| Maclaurin Investments Ltd. | Signature Bank | 2685 |
| Blockfolio, Inc. | Signature Bank | 4174 |
| FTX Europe AG | Signature Bank | 7500 |
| FTX Trading Ltd | Signature Bank | 9964 |
| FTX Trading Ltd | Signature Bank | 9018 |
| FTX Ventures Ltd | Signature Bank | 7872 |
| Hive Empire Trading Pty Ltd | Signature Bank | 3087 |
| Ledger Holdings Inc. | Signature Bank | 8106 |
| Ledger Prime LLC | Signature Bank | 5385 |
| Ledger Prime LLC | Signature Bank | 5377 |
| Paper Bird Inc | Signature Bank | 8701 |
| West Realm Shires Inc. | Signature Bank | 7436 |
| West Realm Shires Services Inc. | Signature Bank | 2804 |
| West Realm Shires Services Inc. | Signature Bank | 3976 |
| West Realm Shires Services Inc. | Signature Bank | 6989 |
| West Realm Shires Services Inc. | Signature Bank | 6989 |
| FTX Lend Inc. | Signature Bank | 7651 |
| Crypto Bahamas LLC | Signature Bank | 5171 |
| Good Luck Games, LLC | Signature Bank | 7432 |
| Goodman Investments Ltd. | Signature Bank | 2903 |
| West Realm Shires Financial Services Inc. | Signature Bank | 9812 |
| Alameda Research LLC | Signet | 5489 |
| Ledger Holdings Inc. | Silicon Valley Bank | 7808 |
| Alameda Research KK | Silvergate Bank | 3433 |
| Alameda Research KK | Silvergate Bank | 4621 |
| Alameda Research LLC | Silvergate Bank | 5587 |
| Alameda Research LLC | Silvergate Bank | 6056 |
| Alameda Research LLC | Silvergate Bank | 6080 |
| Alameda Research Ltd | Silvergate Bank | 4456 |
| Alameda Research Ltd | Silvergate Bank | 4464 |
| Alameda Research Ltd | Silvergate Bank | 4605 |
| FTX Europe AG | Silvergate Bank | 4439 |
| FTX Europe AG | Silvergate Bank | 8182 |
| FTX Europe AG | Silvergate Bank | 8190 |
| FTX Japan K.K. | Silvergate Bank | 8169 |
| FTX Japan K.K. | Silvergate Bank | 8185 |
| FTX Japan K.K. | Silvergate Bank | 8193 |
| Ledger Holdings Inc. | Silvergate Bank | 1235 |
| Ledger Prime LLC | Silvergate Bank | 1223 |
| Ledger Prime LLC | Silvergate Bank | 3145 |
| North Dimension Inc | Silvergate Bank | 8738 |
| North Dimension Inc | Silvergate Bank | 8746 |
| West Realm Shires Services Inc. | Silvergate Bank | 8589 |

21

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

55.     As a U.S. bank, pursuant to Title III of the USA PATRIOT Act ("Act")[20] Silvergate is subject to Know-Your-Customer (KYC) and Anti-Money Laundering (AML) laws and regulations designed to help prevent identity theft, money laundering, financial fraud, terrorism financing, and other financial crimes. *See* 31 U.S.C. § 5312.

56.     Under section 312 of the Act, U.S. financial institutions like Silvergate must perform due diligence, and in some cases, enhanced due diligence, with regard to correspondent accounts[21] established or maintained for foreign financial institutions, like FTX, and private banking accounts established or maintained for non-U.S. persons.[22]

57.     U.S. financial institutions covered by the Act, like Silvergate, must establish a due diligence program that includes appropriate, specific, risk-based, and, where necessary, enhanced policies, procedures, and controls that are reasonably designed to detect and report known or suspect money laundering or suspicious activity conducted through or involving any correspondent account established, maintained, administered, or managed in the United States.[23]

58.     At a minimum, this includes (1) determining whether the account is subject to enhanced due diligence under section 312, (2) assessing the money laundering risk posed, based on consideration of relevant risk factors, and (3) applying risk-based policies, procedures, and controls to each such correspondent account reasonably designed to detect

---

[20] HR 3162, Pub. L. 107-56, the "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001" (Enacted Oct. 26, 2001).

[21] A correspondent account is one established to receive deposits from or make payments on behalf of a foreign financial institution, or handle other financial transactions related to such institution. *See* Pub. L. 107-56 § 311(e)(1)(B).

[22] *See* Dep't of Treasury, Financial Crimes Enforcement Network, "FACT SHEET: Section 312 of the USA PATRIOT Act; Final Regulation and Notice of Proposed Rulemaking" (December 2005) at 1, *at* https://www.fincen.gov/sites/default/files/shared/312factsheet.pdf.

[23] *See id.*

and report known or suspected money laundering activity, including a periodic review of the correspondent account activity.[24]

59. More specifically, this means taking reasonable steps to "(1) determine the identity of **all nominal and beneficial owners of the private banking account**; . . . (3) determine the source(s) of funds deposited into the private banking account and **the purpose and expected use of the account**; and (4) **review the activity of the account to ensure that the activity is consistent with the information obtained about the source of funds, the stated purpose and the expected use of the account**, as needed to guard against money laundering, and to report any suspicious activity."[25]

60. Moreover, under section 312 of the Act, U.S. financial institutions like Silvergate must apply "enhanced" due diligence when establishing or maintaining a correspondent account for a foreign financial institution (like FTX) that is operating (1) under an offshore license, (2) in a jurisdiction found to be non-cooperative with international anti-money laundering principles, or (3) in a jurisdiction found to be of primary money laundering concern under section 311 of the Act. With regard to such correspondent accounts, the Act requires U.S. financial institutions like Silvergate to take reasonable steps to (1) conduct appropriate enhanced scrutiny; (2) determine whether the foreign bank itself offers correspondent accounts to other foreign banks (i.e., nested accounts) and, as appropriate, identify such foreign bank customers and conduct additional due diligence on them; and (3) identify the owners of the foreign bank, if its shares are not publicly traded.[26]

61. Silvergate is aware of its compliance responsibilities. A November 21, 2022 "Letter to our Customers" published on linkedin.com by Silvergate CEO, Defendant Alan J. Lane, stated:

---

[24] *Id.*

[25] *Id.* at 4.

[26] *Id.* at 3.

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

Our business starts by knowing our customers, their business and the activity they plan to conduct at our institution. Once we approve a new customer, if the activity in their account does not match the activity that we expect based on our initial approval, we take immediate action up to and including terminating that relationship. No exceptions. The U.S. Bank Secrecy Act requires us to develop a robust compliance and risk management program. It's a responsibility we take very seriously.[27]

62.     In an April 2022 Finastra TV episode titled "Leveraging Crypto for Banks (Americas)," Defendant Christopher M. Lane was asked, "As crypto use cases proliferate and converge with traditional banking and payment services, which elements of the cryptocurrency and blockchain ecosystem can financial institutions be looking to own, or truly control for their clients?" Silvergate's CEO stated he believed:

[T]he role that commercial banks play in this ecosystem is really providing that of trust. I think it's really important that banks really focus on, essentially compliance—KYC, AML—as they think through what aspects of this ecosystem that they need to own. So I think that's probably answer number one.

And then I think custody in general is something that's just so foundational to some of the products that are going to be built here. It's just, it's really important if banks are looking for partnerships in this space that they stay close to the custody solution.[28]

63.     Mr. Lane further stated:

From a Silvergate perspective, this is something we've been doing for about 10 years now. So just trying to understand the changes of what's required from a compliance perspective is definitely something that if you're getting into this space in time to put the work in there—and again, going back to the concept earlier, **KYC/AML is just a critical component for any bank looking[ at] getting into this space**. A compliance program in general.[29]

---

[27] *At* https://www.linkedin.com/pulse/letter-our-customers-silvergate-bank.

[28] *At* https://www.finastra.com/tv/episode/leverage-crypto-banks-americas, at 13:40-15:11 (cleaned up).

[29] *Id.* starting at 26:30 (cleaned up; emphasis added).

24

64.     Silvergate and the individual defendants failed to fulfill their due diligence obligations by either failing to establish an adequate due diligence program or failing to properly execute that program.

65.     Had Silvergate and the individual defendants complied with their KYC, AML and due diligence obligations, they would have known that numerous transactions sent to the Alameda Research account were not intended to go to the hedge fund, but were intended for deposit to FTX.

66.     Ordinary due diligence would have revealed suspicious activity and required reporting. For example, it would be extremely unusual and suspicious for a hedge fund to receive the high volume of transfers or deposits, in relatively small amounts, from a high number of distinct persons, that was occurring with Alameda Research.

67.     Moreover, all of the accounts held by Sam Bankman-Fried's companies—including FTX Ltd., FTX US, and Alameda—were held in Silvergate, giving the bank a full view of the companies' financials.

68.     Had Silvergate conducted even a cursory review of FTX's audits, it would have been aware of the serious issues plaguing its corporate control. Silvergate either reviewed FTX and Alameda audits and ignored their red flags, or it simply chose not to request audits.

69.     Silvergate was also well aware that cryptocurrency is an industry rife with opportunity for and actual instances of fraud. Silvergate had witnessed many such instances in its many years of serving the industry.[30] It thus should have been especially attuned to the means and mechanisms of fraud of the type in which FTX and Alameda engaged.

---

[30] *See*, *e.g.*, Mike Freeman, "San Diego lawsuit aims to safeguard $154M in embezzled funds that were converted to cryptocurrency: U.S. Attorney seeks civil forfeiture; Funds transferred to Coinbase account at La Jolla bank and converted into 3,879 Bitcoins." San Diego Union-Tribune (Dec. 21, 2021), *available at* https://www.sandiegouniontribune.com/business/story/2021-12-21/san-diego-lawsuit-aims-to-safeguard-154-million-in-allegedly-embezzled-funds-converted-to-crypto-currency.

70.     In addition, FTX's Chief Regulatory Officer, Dan Friedberg, was well-known for a $50 million poker cheating scandal.[31] Silvergate thus should have been especially attuned to the possibility for fraud given Mr. Friedberg's involvement in the business.

71.     Because FTX and Alameda never had financial statements audited, neither ever provided Silvergate with audited financial statements. This alone should have been suspicious to Silvergate.

72.     Had Silvergate and the individual defendants fulfilled their due diligence requirements they would have detected that such funds were being misdirected and reported it—especially given the close nature of Alameda Research and FTX, and the prominence of FTX as a client for Silvergate.

73.     In sum, Silvergate—including through the actions and non-actions of its CEO, Defendant Alan J. Lane, Senior Vice President of Business Systems, Defendant Chris Lane, Senior Vice President of Enterprise Risk Management, Defendant Tyler J. Pearson, and Vice President and Manager of Correspondent Banking, Defendant Jason Brenier—either intentionally (fraudulently), or at least negligently or recklessly failed to comply with its KYC and AML obligations, which would have prevented funds intended for FTX from being deposited and comingled in an unrelated bank account. By doing so, Silvergate enabled FTX's fraud and the losses of millions—perhaps even billions—of dollars of FTX customer deposits.

**A.     Defendant Alan J. Lane (Silvergate CEO)**

74.     Defendant Alan J. Lane joined Silvergate Bank in December 2008, as director and Chief Executive Officer. He is also director and CEO of the bank's holding company,

---

[31] *See* Fang Shihan, "FTX was fueled by drugs, sex, and poker fraud," The Checkout (Nov. 17, 2022), *at* https://www.techinasia.com/ftx-fueled-drugs-sex-poker-fraud; Thomas Barrabi, "FTX's 'chief regulatory officer' Dan Friedberg tied to online poker scandal." New York Post (Nov. 20, 2022), *at* https://nypost.com/2022/11/20/ftxs-ex-chief-regulatory-officer-tied-to-online-poker-scandal.

1  Defendant Silvergate Capital Corporation. He holds a B.A. in Economics from San Diego
2  State University.

3      75.   As CEO, Mr. Lane is responsible for all aspects of Silvergate's business. Mr.
4  Lane was an early proponent of cryptocurrencies and a key driver of Silvergate's entry into
5  the industry.

6      76.   Given that FTX is one of Silvergate's most important customers based on value
7  alone—comprising a full 10% of the bank's deposits despite it having 1,500 customers—Mr.
8  Lane knew or should have known how the due diligence program regarding FTX, Alameda,
9  and their accounts was designed, enacted, and executed.

10     77.   In a November 8, 2021 interview titled "Roundtable: Banking in the Digital Age
11  with Alan Lane," Mr. Lane spoke at length about Silvergate's business, and special the SEN.

12     78.   According to Mr. Lane, SEN connects digital currency exchanges with "several
13  hundred institutional investors" like "hedge funds, family offices, etc.—any institution that
14  is investing in digital currencies or digital assets as a new asset class," and "the primary
15  benefit that our customers gain in transacting across the SEN is that it is a regulated on ramp
16  and an off ramp between U.S. dollars and other fiat currencies, into and out of digital
17  currencies."[32]

18     79.   According to Mr. Lane, "the SEN was really a gamechanger . . . for the industry"
19  because it "helped reduce banking friction, improved liquidity, and also reduced counterparty
20  risk because all of the customers who participate on the SEN, they've all been run through
21  our regulatory compliance framework."[33]

22     80.   Mr. Lane further stated that:

23     As folks are entering the [SEN] ecosystem, they beat a path to our door
24     because we have a regulated, a tried-and-true, regulated platform that has been
       through eight years of consistent regulatory oversight. I want to be clear, I
25     don't ever want to overstate that. The regulators don't say, yeah this is great,

26

27  [32] *Id.* at 1:27-2:26.

28  [33] *Id.* at 3:01-3:28.

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

they just tell us if we can't do it, right, and so we've been doing it for eight years, and they haven't said we can't. And so the consistent regulatory oversight, the improvements over time, the KYC, the anti-money laundering; it means our customers know that they have a bank account they can count on.[34]

81.    Finally, Mr. Lane stated that Silvergate was "all in" on crypto, and that 98% or 99% of Silvergate's deposits were related to crypto by that time.[35] In discussing Silvergate's customers, Mr. Lane stated that Silvergate was "in the background . . . helping our customers, our institutional, our business customers, scale their businesses . . . ."[36]

82.    Mr. Lane failed to appropriately ensure the sufficiency of Silvergate's due diligence program, monitoring, and reporting regarding FTX and Alameda, and instead helped facilitate what should have been an obvious misdirection of funds.

83.    Had Mr. Lane fulfilled his obligations regrading due diligence for FTX accounts, Silvergate would have quickly detected and reported suspicious activity and prevented misdirection of funds early on, which should have prevented further misdirection of funds.

**B.    Defendant Chris Lane (Silvergate SVP of Business & Deposit Systems)**

84.    As Senior Vice President of Business & Deposit Systems, Defendant Chris Lane had responsibilities concerning Silvergate's compliance with KYC and AML requirements.

85.    During his April 2022 appearance on Finastra TV, Mr. Lane was asked

Do the models for KYC and AML change as the shift from . . . the identity-based model of AML and KYC—we know who you are, you're a trusted entity, ok [you are] good [to] do stuff . . . from that to, we don't know who you are, this is a blockchain scenario, but we know every single thing that you're doing, while you're doing it, and we know everything you've done, because we can go back and look. Because then you start really measuring things in terms of behaviors, and trying to stop bad behaviors, rather than trying to stop bad people from getting into the ecosystem. Do you see banks

---

[34] *Id.* at 24:51-25:23.

[35] *See id.* at 26:29-50.

[36] *Id.* at 29:04-26.

having to make a shift in that, in order to interact with, and really optimize interactions with the crypto and blockchain ecosystems?

In response, he stated:

> So I think what you might be referring to is just the pseudonymous nature of . . . cryptocurrencies. I don't know that there's necessarily anything vastly different than how banks and non-bank financial institutions have already been performing their KYC/AML obligations in this space for longer than Bitcoin has been around. You know, the ability to actually verify a person, you know, a person's identity and essentially get to know them without having them walk into a physical branch. That's the use case that's been around for a while and I don't think it changes drastically with the evolution of this ecosystem.
>
> Banks and non-bank financial institutions; there are players that have been doing this for a long time, essentially providing a digital onboarding experience, and just continuing to build on that use case and evolve that program is I think is what's needed.

86. Mr. Lane knew or should have known how the due diligence program regarding FTX and Alameda and their accounts were designed and enacted.

87. Mr. Lane failed to appropriately monitor and ensure the sufficiency of Silvergate's due diligence program and monitoring regarding FTX and Alameda.

88. Had Mr. Lane fulfilled his obligations regrading due diligence for FTX and Alameda accounts, Silvergate would have detected and reported suspicious activity. This should have prevented further misdirection of funds.

89. Because of Mr. Lane's failures, Silvergate failed to detect or report what should have been obviously suspicious activity—permitting perhaps billions of dollars of intended for FTX to be deposited into an account held by a separate entity, Alameda Research.

90. Had Mr. Lane fulfilled his obligations regrading due diligence for FTX accounts, Silvergate would have quickly detected and reported suspicious activity and prevented misdirection of funds early on, which should have prevented further misdirection of funds.

**C.** **Tyler J. Pearson (Silvergate Chief Risk Officer & SVP of Enterprise Risk Management)**

91.   Defendant Tyler J. Pearson was Silvergate's Chief Risk Officer from April 2021 to early November 2022, and prior to that was Silvergate's Senior Vice President of Enterprise Risk Management from September 2017 to December 2019.

92.   In his positions with Silvergate, Mr. Pearson was responsible for identifying, analyzing, and mitigating internal and external risks, and ensuring Silvergate complies with government regulations.

93.   Mr. Pearson was responsible for ensuring the design, enactment, and execution of the due diligence program regarding FTX and Alameda and their accounts were sufficient and properly enacted.

94.   Because of Mr. Pearson's failures, Silvergate failed to detect or report what should have been obviously suspicious activity—permitting perhaps billions of dollars of intended for FTX to be deposited into an account held by a separate entity, Alameda Research.

95.   As Alma Agotti, a former enforcer with the U.S. Securities and Exchange Commission said, "It's very bad  practice and risk management in any book to mingle your customer funds with counterparty funds and other funds," and "It's bad risk management and it's sloppy at the very least."[37]

96.   Such misdirection or mingling of funds should have been obvious if the Mr. Pearson and Silvergate enacted an adequate due diligence program and adequately executed the program.

97.   Had Mr. Pearson fulfilled his obligations regrading due diligence for FTX  and Alameda accounts, Silvergate would have quickly detected and reported suspicious activity

---

[37] Yueqi Yang and Max Reyes, "FTX Received Some Customer Deposits Via Bank Accounts Held     by     Alameda,"     Bloomberg     (Nov.     28,     2022),     *at* https://www.bloomberg.com/news/articles/2022-11-28/ftx-received-some-customer-deposits-via-bank-accounts-held-by-alameda.

30

and prevented misdirection of funds early on, which should have prevented further misdirection of funds.

### D. Jason Brenier (Silvergate Director of Trading; SVP of Correspondent Banking; Senior Relationship Manager; VP and Director of Finance and Accounting)

98. Defendant Jason Brenier is an experienced Certified Public Accountant. He received a B.A. in Business Economics with Accounting Emphasis from UC Santa Barbara in 2005, and has taught a class on Auditing at UCSD.

99. Mr. Brenier was and is responsible for many aspects of Silvergate's business related to the behavior at issue in this case. This includes, for example participating in the review and design of Risk and Control programs for the Trading department; maintaining current knowledge of all federal and state laws and regulations; assisting in reporting to Finance, Risk, and Operations and to external parties, including regulators; collaborating with the Operations, Treasury, Risk, Finance, Compliance, Sales, and Business Development Departments; and having ownership over the Trading Department's balance sheet.

100. Mr. Brenier knew or should have known how the due diligence program regarding FTX and Alameda and their accounts were designed and implemented.

101. Mr. Brenier failed to appropriately monitor and ensure the sufficiency of Silvergate's due diligence program and its execution regarding FTX and Alameda and their accounts.

102. Had Mr. Brenier fulfilled his obligations the due diligence program related to FTX and Alameda, he and others at Silvergate would have detected and reported suspicious activity. This should have prevented further misdirection of funds.

103. Had Mr. Brenier fulfilled his obligations regrading due diligence for FTX and Alameda accounts, Silvergate would have quickly detected and reported suspicious activity and prevented misdirection of funds early on.

104. Had Mr. Brenier fulfilled his obligations regrading due diligence for FTX and Alameda accounts, Silvergate would have quickly detected and reported suspicious activity

31

and prevented misdirection of funds early on, which should have prevented further misdirection of funds.

*      *      *

105. In sum, Silvergate and the individual defendants failed to perform adequate KYC and AML procedures to ensure, for example, that funds being deposited into Alameda Research's account did not belong to FTX customers, rather than Alameda, or were otherwise tainted.

106. Silvergate was incentivized either to actively assist FTX in the fraud, or at least look the other way. As FTX grew exponentially, so too did its preeminent product, SEN:



107. Because Silvergate profits from transactions and transfers on SEN, it directly profited from the misdirection of funds to Alameda research, and increased use of the FTX exchange platforms.

108. In addition, Silvergate profited from deposits that digital-asset customers left on its network, which grew significantly as FTX's business grew. At the end of September 2022, those deposits were 90% of the bank's overall deposit base, amounting to $11.9 billion. And

32

of that, FTX alone constituted nearly 10% of the $11.9 billion in deposits, or about $1.2 billion.[38] As a result, Silvergate's profits grew even when traffic on SEN slowed.[39]

109.   Similarly, prior to going public and retaining FTX as a client in 2019, Silvergate had net income of $7.6 million, which ballooned to $75.5 million by 2021, as shown in the chart below from Silvergate's 2021 10-K.

|  | Year Ended December 31, | | | | |
|---|---|---|---|---|---|
|  | 2021 | 2020 | 2019 | 2018 | 2017 |
|  | (In thousands, except per share data) | | | | |
| **Statement of Operations Data:** | | | | | |
| Interest income | $ 130,394 | $ 79,590 | $ 81,035 | $ 72,752 | $ 48,306 |
| Interest expense | 1,127 | 7,226 | 10,078 | 3,129 | 6,355 |
| Net interest income | 129,267 | 72,364 | 70,957 | 69,623 | 41,951 |
| Provision for (reversal of) loan losses | — | 742 | (439) | (1,527) | 262 |
| Net interest income after provision | 129,267 | 71,622 | 71,396 | 71,150 | 41,689 |
| Noninterest income | 45,256 | 19,177 | 15,754 | 7,563 | 3,448 |
| Noninterest expense | 89,120 | 59,605 | 52,478 | 48,314 | 30,706 |
| Income before income taxes | 85,403 | 31,194 | 34,672 | 30,399 | 14,431 |
| Income tax expense[(1)] | 6,875 | 5,156 | 9,826 | 8,066 | 6,788 |
| Net income | 78,528 | 26,038 | 24,846 | 22,333 | 7,643 |
| Dividends on preferred stock | 3,016 | — | — | — | — |
| Net income available to common shareholders | $ 75,512 | $ 26,038 | $ 24,846 | $ 22,333 | $ 7,643 |

110.   The individual Defendants benefited directly from the malfeasance.

111.   As Silvergate's business and profits rapidly grew along with FTX's, so too did its executives' income and the value of their stock and options holdings.

112.   Between its October 2019 IPO, and November 15, 2022, Silvergate's stock increased from $12 per share to a high of $226.97 per share.

113.   Moreover, Defendant Alan J. Lane's salary nearly tripled between 2018 (when he earned $717,000), and 2021 (when he earned $1.9 million).

---

[38] *See* Marc Rubinstein, "These Banks Were Left Holding the Bag in Crypto Implosion," The Washington Post (Nov. 23, 2022), *available at* https://tinyurl.com/2d4ktdfz; *see also* https://beincrypto.com/banks-get-burned-playing-with-crypto.

[39] *See* Zhiyuan Sun, "Silvergate Capital Crypto Transfers Down by $50 Billion Compared to Q3 2021," CoinTelegraph (Oct. 18, 2022), *at* https://cointelegraph.com/news/silvergate-capital-s-crypto-to-fiat-transfers-decrease-by-50b-compared-to-q3-2021



114. More specifically, as CEO, in 2021, Mr. Lane earned a total compensation package of $1,884,426, comprised of a salary of $520,000; stock awards of $414,953; options awards of $413,651; non-equity compensation of $489,840; and other compensation of $45,982.

115. The other individual Defendants associated with Silvergate were also well compensated. In 2020, Silvergate paid Defendant Chris Lane $352,163; paid Defendant Tyler J. Pearson $246,553; and paid Defendant Jason Brenier $270,601.

116. Moreover, in July 2022—approximately three months before FTX's collapse— Defendant Alan J. Lane exercised options to purchase 16,314 shares of Silvergate at $16.09, which he immediately sold for an average of approximately $92.46 per share, netting him approximately $1,245,832 in proceeds.

| SI | | | Insider Trades (Form4 Filings) | | | | | | | Filter ▼ |
|----|----|----|----|----|----|----|----|----|----|----|
| TX DATE | NAME | DISPOSED/ACQUIRED | SECURITY TYPE | NO. SHARES | PRICE | OWNERSHIP | TX CODE | OFFICER | OFFICER TITLE | DIRECTOR | 10% OWNER |
| 2022-07-21 | LANE ALAN J | A | Class A Common Stock | 16314 | 16.09 | 16314 | M | 1 | President and CEO | 1 | 0 |

| SI | | | Insider Trades (Form4 Filings) | | | | | | | Filter ▼ |
|----|----|----|----|----|----|----|----|----|----|----|
| TX DATE | NAME | DISPOSED/ACQUIRED | SECURITY TYPE | NO. SHARES | PRICE | OWNERSHIP | TX CODE | OFFICER | OFFICER TITLE | DIRECTOR | 10% OWNER |
| 2022-07-21 | LANE ALAN J | D | Class A Common Stock | 9214 | 92.9352 | 0 | S | 1 | President and CEO | 1 | 0 |
| 2022-07-21 | LANE ALAN J | D | Class A Common Stock | 7100 | 91.8337 | 9214 | S | 1 | President and CEO | 1 | 0 |

117.   Because its fortunes were so tied up in FTX, Silvergate's stock price and market capitalization has dropped precipitously, to approximately $21 per share around the time of the filing of this Complaint (a drop of approximately 90% from its high).  In light of FTX's collapse, Morgan Stanley lowered its 2023 EPS estimate for Silvergate, arguing that the digital asset-focused bank now faces a "wide range of outcomes and risks" solely from the demise of FTX.[40]



118.   The assistance in illicit enterprises seems to be a pattern for Silvergate. In response to a June 2022 subpoena, Silvergate produced records that have been alleged to show that "[d]uring the period of September 2021 to June 2022 ten companies had transferred a total of over $425 million dollars" from crypto accounts held in Silvergate to South American money launderers.[41]

---

[40] *See* Max Gottlich, "Silvergate faces 'wide range of outcome and risks' from FTX fallout: Morgan Stanley," Seeking Alpha (Nov. 25, 2022), *at* https://seekingalpha.com/news/3911368-silvergate-faces-wide-range-of-outcomes-and-risks-from-ftx-fallout-morgan-stanley.

[41] *See* August 16, 2022 Affidavit of Detective Benjamin Dusenbery, *In re: Seizure of Two Million Forth-Eight Thousand Two Hundred Twenty-Nine Dollars and 40/100 ($2,048,229.48) In United Stats Currency*, Case No. CACE-22-012446 (Circuit Ct. for 17th Judicial Circuit, Broward County, Florida), Filing No. 155882914 (e-filed Aug. 23, 2022).

## V.    THE AFTERMATH

119.    On November 7, 2022, shortly before FTX filed for bankruptcy, Silvergate appointed a new Chief Risk Officer, replacing Defendant Tyler J. Pearson.[42]

120.    The same day FTX filed bankruptcy, November 11, 2022, Silvergate issued a press release titled "Silvergate Provides Statement on FTX Exposure," quoting Defendant Alan J. Lane. According to the release:

> Silvergate . . . today issued the following statement regarding its exposure to FTX **and its related entities** ("FTX"):

> "In light of recent developments, I want to provide an update on Silvergate's exposure to FTX. As of September 30, 2022, Silvergate's total deposits from all digital asset customers totaled $11.9 billion, of which FTX represented less than 10%. Silvergate has no outstanding loans to nor investments in FTX, and FTX is not a custodian for Silvergate's bitcoin-collateralized SEN Leverage loans. To be clear, our relationship with FTX is limited to deposits," said Alan Lane, Chief Executive Officer of Silvergate.[43]

121.    Five days later, on November 16, 2022, Silvergate issued a press release titled "Silvergate Provides Mid-Quarter Update and Announces Participation in Oppenheimer's 5th Blockchain & Digital Assets Summit." It stated that it was "providing the following unaudited and preliminary mid-quarter results as of November 15, 2022," then noted "Average quarter-to-date digital asset customer deposits of approximately $9.8 billion, **excluding all deposits from FTX and its related entities**."[44]

122.    It thus appears that as much as $2.1 billion of FTX's "deposits from all digital assets customers" represent funds ostensibly sent to FTX, some portion of which were actually sent to Alameda, where they were stolen in the FTX Ponzi scheme.

---

[42] Silvergate Capital Corporation Press Release, "Silvergate announces changes to its executive team" (Nov. 7, 2022), *at* https://ir.silvergate.com/news/news-details/2022/Silvergate-announces-changes-to-its-executive-team/default.aspx.

[43] Silvergate Capital Corporation 8-K (Nov. 14, 2022), Ex. 99.1 (emphasis added).

[44] Silvergate Capital Corporation 8-K (Nov. 17, 2022), Ex. 99.1 (emphasis added).

## VI.   PLAINTIFFS' EXPERIENCE AND DAMAGES

123.   Beginning in May 2022, and continuing until FTX's implosion and bankruptcy, Plaintiff José Tomás Sepúlveda Zuleta funded and used the FTX international platform. Mr. Sepúlveda Zuleta primarily used FTX for staking cryptocurrency.

124.   Beginning in or around November 2021 and continuing until shortly before FTX's implosion and bankruptcy, Plaintiff Michael Lehrer funded and actively traded cryptocurrency and other digital assets on the FTX US exchange.

125.   Beginning in or around April 2021, Plaintiff Tristan Newman funded and regularly used the FTX international trading platform to trade cryptocurrency and other digital assets (at the time, he was living abroad).

126.   At least in part as a result of Silvergate's wrongful actions detailed herein, on November 11, 2022, FTX and 133 related entities, including FTX US, declared bankruptcy.

127.   At the time FTX declared bankruptcy on November 11, 2022, Plaintiff Zuleta had approximately $4,500 worth of cryptocurrency on deposit with FTX, which he has been unable to withdraw or otherwise recover despite multiple attempts to do so.

128.   At the time FTX declared bankruptcy on November 11, 2022, Plaintiff Lehrer had approximately $323,000 USD on deposit with FTX. Since that time, despite making efforts, Plaintiff has been unable to withdraw or otherwise recoup his funds.

129.   At the time FTX declared bankruptcy on November 11, 2022, Plaintiff Newman had approximately $8,000 in USD, and $7,000 in cryptocurrency on deposit with FTX. Since that time, despite trying, Plaintiff has been unable to withdraw or otherwise recoup his funds.

## CLASS ACTION ALLEGATIONS

130.   While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons who, as of November 11, 2022, had legal title to any fiat or cryptocurrency unable to be withdrawn from FTX, including both the FTX US and FTX international platforms (the "Class").

131.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

132.    Questions of law and fact common to Plaintiff and the Class include:

a.    Whether Silvergate maintained bank accounts in the name of Alameda Research;

b.    Whether FTX customers were directed to deposit funds into one or more Silvergate bank accounts held in the name of Alameda Research;

c.    Whether Silvergate knowingly or negligently allowed customer funds intended to be deposits to FTX to be deposited instead to one or more bank accounts held in the name of Alameda Research;

d.    Whether Silvergate's facilitating the deposit of customer funds intended for FTX to be deposited into one or more bank accounts held in the name of Alameda Research constituted fraud, negligence, and/or a violation of the law;

e.    Whether Plaintiffs and other Class Members were damaged by Silvergate's wrongful and/or unlawful actions and inactions;

f.    Whether Silvergate and the individual Defendants benefitted or were unjustly enriched by their improper conduct;

g.    Appropriate injunctive relief;

h.    The proper amount of damages, including punitive damages;

i.    The proper amount of restitution; and

j.    The proper amount of attorneys' fees.

133.    These common questions of law and fact predominate over questions that affect only individual Class Members.

134.    Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Silvergate's conduct in facilitating the deposit of customer funds intended for FTX into accounts owned and

controlled by Alameda Research, which directly contributed to the FTX implosion and bankruptcy that has harmed Plaintiffs and other Class Members.

135.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation.

136.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

137.   Silvergate has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

138.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### Fraud

139.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

140.   At the time Plaintiffs and other Class Members traded cryptocurrency on FTX's platforms, they were unaware Silvergate permitted or facilitated funds intended for FTX to be deposited into bank accounts held by Alameda Research.

141.   Plaintiffs and other Class Members reasonably relied on Silvergate's and the individual Defendants' expertise and regulatory obligations in deciding to fund and use the FTX exchange platforms.

142.   Plaintiffs and other Class Members did not know—and could not have known through reasonable diligence—the true nature of the banking arrangements between FTX, Silvergate, and Alameda, and their officers, Defendants Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, Jason Brenier, as well as Sam Bankman-Fried, and Caroline Ellison. Indeed,

1  these relationships have only come to light in the wake of FTX's spectacular collapse and
2  bankruptcy.

3      143.   Plaintiffs and other Class Members had a right to rely on Silvergate's and the
4  individual Defendants' omissions of material information, as Defendants maintained
5  exclusive or superior control over knowledge of the true nature of the personal, business, and
6  baking relationships at issue.

7      144.   Plaintiffs and other Class Members were injured as a result of their reliance on
8  Silvergate's and the individual Defendants' omissions, causing them to sustain actual losses
9  and damages in a sum to be determined at trial, including punitive damages.

10                          **SECOND CAUSE OF ACTION**

11                     **Fraudulent Concealment & Inducement**

12      145.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as
13  if set forth in full herein.

14      146.   Silvergate and each of the individual Defendants did not disclose, but instead
15  concealed material information about the bank accounts and banking relationships at issue,
16  as discussed herein.

17      147.   Silvergate and each of the individual Defendants knew, or should have known,
18  that FTX deposits were being mishandled, and FTX and Alameda funds comingled.

19      148.   Silvergate and each of the individual Defendants also knew that their omissions
20  regarding the bank accounts were material, and that reasonable consumers would rely on their
21  omissions in making deposits intended for FTX into Alameda Research's account(s) at
22  Silvergate, and in funding and using the FTX exchange platforms.

23      149.   Plaintiffs and other Class Members did not know—nor could they have known
24  through reasonable diligence—the true nature of the personal, business, and banking
25  relationships alleged herein.

26      150.   Plaintiffs and other Class Members had a right to rely on Silvergate's and each
27  of the individual Defendants' instructions and omissions in funding and using the FTX

28

exchange platforms, as Defendants maintained exclusive or superior control over the platforms' accounts and what information was available regarding them.

151.   In making omissions of material facts, Silvergate and each of the individual Defendants intended to induce, and did induce Plaintiffs and other Class Members into funding and using the FTX exchange platforms, where their funds and assets became part of the fraud.

152.   Plaintiffs and other Class Members were injured as a result of their reliance on Silvergate's and each of the individual Defendants material omissions, causing them to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

**THIRD CAUSE OF ACTION**

**Civil Conspiracy**

153.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

154.   Silvergate and each of the individual Defendants made numerous omissions to Plaintiffs and other Class Members in order to induce confidence and drive consumers to deposit funds into what was ultimately a Ponzi scheme.

155.   Defendants Silvergate, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, and Jason Brenier entered into one or more agreements with Sam Bankman-Fried and Caroline Ellison, and the entities they controlled, FTX and Alameda Research, for the purpose of making misrepresentations and omissions, and facilitating the Ponzi scheme.

156.   Silvergate and each of the individual Defendants further engaged in unlawful acts, namely the violation of the USA PATRIOT Act, and other banking regulations requiring the accurate earmarking and handling of banking transactions.

157.   Defendants' conspiracy substantially assisted or encouraged the wrongdoing conducted by FTX and Alameda Research; further, Silvergate and each of the individual Defendants had knowledge of the fraud and/or wrongdoing because of their experience and relationship with FTX and Alameda Research, as alleged herein. As such, Silvergate and each

41

of the individual Defendants knew that omissions made to Plaintiffs and other Class Members were deceitful and fraudulent, and could result in great harm to Plaintiffs and other Class Members.

158. Defendants' conspiracy with FTX and Alameda to commit fraud caused damages to Plaintiffs and other Class Members in a sum to be determined at trial, including punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

159. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

160. Silvergate and each of the individual Defendants negligently, carelessly, recklessly, and/or unlawfully mishandled deposits intended for FTX but deposited into Silvergate accounts held by Alameda Research.

161. As a direct and legal result of Defendants' wrongful conduct and omissions, Plaintiffs and other Class Members have sustained damages in a sum to be determined at trial, including punitive damages.

## FIFTH CAUSE OF ACTION

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

162. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

163. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

164. The acts, omissions, misrepresentations, practices, and non-disclosures of Silvergate and each of the individual Defendants alleged herein constitute business acts and practices.

### <u>Fraudulent</u>

165. The acts, omissions, misrepresentations, practices, and non-disclosures of Silvergate and each of the individual Defendants alleged herein were fraudulent because they

42

induced Plaintiffs and other Class Members to fund and use the fraudulent FTX exchange platforms under false pretenses.

**Unlawful**

166. The acts of Silvergate and each of the individual Defendants alleged herein are "unlawful" under the UCL in that, as alleged herein, they violate the USA PATRIOT Act, and particularly its KYC, AML and due diligence requirements, and constitute fraud, fraudulent concealment, civil conspiracy, negligence, and unjust enrichment.

167. Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

**Unfair**

168. Silvergate's and each of the individual Defendants' conduct was unfair because it was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, did not outweigh the gravity of the harm to its consumers.

169. Silvergate's and each of the individual Defendants' conduct was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the USA PATRIOT Act, and specifically the public policy rationales that underpin KYC and AML obligations.

170. Silvergate's and each of the individual Defendants' conduct was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. For example, FTX consumers directed to deposit funds into an account in the name of Alameda Research may reasonably not have noticed the discrepancy, or may have assumed there was some lawful connection between the entities (such as a doing-business-as relationship), and reasonably relied on Silvergate to safeguard their deposits.

171. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

\*                    \*                    \*

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

172. Defendants profited from, and Plaintiffs and other Class Members suffered injury in fact and lost money as a result of Defendants' fraudulent, unlawful, and unfair conduct. Accordingly, Plaintiffs seek an Order for the restitution of all monies that were inequitably acquired by Defendants pursuant to the UCL.

**SIXTH CAUSE OF ACTION**

**Quasi-Contract / Unjust Enrichment**

173. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

174. Plaintiffs and other Class Members conferred benefits on Defendants by depositing funds into and using the FTX exchange platforms.

175. Defendants were unjustly enriched in retaining the revenues derived from Plaintiffs' and other Class Members' funding and use of the FTX exchange platforms. Retention of those moneys under these circumstances is unjust and inequitable. Defendants' actions and omissions caused injuries to Plaintiffs and other Class Members because they would not have deposited and lost their funds if the true facts had been known, and if Defendants had not engaged in the malfeasance alleged.

176. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants have been unjustly enriched in an amount to be determined at trial.

**PRAYER FOR RELIEF**

177. Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendants Silvergate, Alan J. Lane, Christopher M. Lane, Tyler J. Pearson, and Jason Brenier as to each and every cause of action, and the following remedies:

(A) An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

(B) An Order requiring Defendants to bear the cost of Class Notice;

44

(C)   An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

(D)   An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

(E)   An Order requiring Defendants to pay compensatory damages and punitive damages as permitted by law;

(F)   An award of attorneys' fees and costs; and

(G)   Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

178.   Plaintiffs hereby demands a trial by jury on all issues so triable.


Dated: December 1, 2022          /s/ Jack Fitzgerald

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD
*tblood@bholaw.com*
THOMAS J. O'REARDON
*toreardon@bholaw.com*
JAMES M. DAVIS (SBN 301636)

45

jdavis@bholaw.com
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

**Counsel for Plaintiffs**

*José Tomás Sepúlveda Zuleta et al. v. Silvergate Capital Corp. et al.*
CLASS ACTION COMPLAINT

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

'22CV1901 L        AGS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOSÉ TOMÁS SEPÚLVEDA ZULETA, et al., on behalf of themselves and all others similarly situated,

## DEFENDANTS
SILVERGATE CAPITAL CORPORATION, ALAN J. LANE, CHRIS LANE, TYLER PEARSON, and JASON BRENIER

**(b)** County of Residence of First Listed Plaintiff   Republic of Chile
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Fitzgerald Joseph LLP, 2341 Jefferson St., Suite 200, San Diego, CA 92110

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(d)(2) (the Class Action Fairness Act)
Brief description of cause:
FRAUD; FRAUDULENT CONCEALMENT & INDUCEMENT; CONSPIRACY; NEGLIGENCE; UCL; and UNJUST ENRICHMENT

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
Dec 1, 2022

SIGNATURE OF ATTORNEY OF RECORD
/s Jack Fitzgerald

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____