**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: FTX Cryptocurrency Exchange Collapse Litigation** | **MDL No. 3076** |

**RESPONSE OF PRAGER METIS CPAS, LLC**
**IN SUPPORT OF PETITIONERS' MOTION FOR TRANSFER**

Defendant Prager Metis CPAs, LLC ("Prager Metis") files this response in support of the motion of Petitioners Garrison, Podalsky, Lindeen, Chernyavsky, Kavuri, Gallant, and Nicol to establish an MDL proceeding for actions related to the collapse of the FTX cryptocurrency trading platform (Doc. Nos. 1–3). For the reasons described below, Prager Metis concurs in the request for centralization under 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation.

**BACKGROUND**

In 2019, Samuel Bankman-Fried and his associates started a cryptocurrency exchange consisting of several affiliated entities collectively referred to as "FTX." Defendant Prager Metis is a New York-based accounting firm that audited the financial statements of one non-public FTX affiliate[1] for the years ended December 31, 2021 and December 31, 2020, and for the partial year April 1, 2019 to December 31, 2019.

Following a series of media reports alleging that FTX executives inappropriately commingled customer assets, FTX swiftly collapsed and declared bankruptcy in November 2022. In short order, three former FTX executives pled guilty to defrauding customers and investors and

---

[1] FTX Trading, Ltd., an Antigua entity consisting of FTX's non-US exchange.

agreed to assist federal investigators. Bankman-Fried was extradited to the United States from the Bahamas and is currently awaiting trial on fraud and money laundering charges.

Simultaneously, FTX customers launched lawsuits in multiple jurisdictions against FTX executives, financial institutions, accounting firms, and celebrity spokespeople, alleging, among other things, that these defendants either made, enabled, or failed to prevent material misrepresentations relating to FTX.

As these cases involve numerous common questions of fact (described below), Petitioners Garrison, Podalsky, Lindeen, Chernyavsky, Kavuri, Gallant, and Nicol moved for this Panel to consolidate FTX Cryptocurrency Exchange Collapse-related litigation into an MDL before the U.S. District Court for the Southern District of Florida on February 10, 2023. The schedule of cases that would be swept into this MDL is broad and ever-expanding, belying the utility of consolidated pretrial proceedings. Petitioner's initial motion listed eleven actions across three jurisdictions. (Doc. No. 1-2). Parties have subsequently filed notices of five potential tag-along actions (Doc. Nos. 8, 9, 16, 21, 26-1, 41), with additional tag-alongs likely.

For its part, Prager Metis has been sued by FTX customers in the U.S. District Courts for the Northern District of California,[2] the Southern District of Florida,[3] and the District of New Jersey.[4] The substance of these claims against Prager Metis is essentially identical: FTX customers allege that FTX executives withheld or misrepresented information and that Prager Metis bears responsibility for those frauds due to the audit work it performed for FTX Trading, Ltd. and the unqualified audit opinions it issued on the financial statements of FTX Trading, Ltd. All of these cases are in their earliest stages, and Prager Metis has not yet filed a response in any of these cases.

---

[2] *Papadakis, et al. v. Bankman-Fried, et al.*, No. 3:23-cv-00024 (N.D. Cal.); *Pierce v. Bankman-Fried, et al.*, No. 3:22-cv-07444 (N.D. Cal.); *Hawkins v. Bankman-Fried, et al.*, No. 3:22-cv-07620.
[3] *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, No. 1:23-cv-20700.
[4] *Lucky D. v. Prager Metis LLP, et al.*, No. 2:23-cv-00389.

Prager Metis's strong preference is to handle pretrial proceedings in a single court of law. Absent the creation of an MDL, Prager Metis will be forced to simultaneously defend itself against nearly-identical plaintiffs and claims in three-plus courts on opposite sides of the country. In the interest of convenience and judicial economy, Prager Metis therefore supports the transfer of all actions against it into a consolidated multidistrict action under 28 U.S.C. § 1407.

## ARGUMENT

### I.      MDL Centralization is Warranted under Section 1407.

#### A.      FTX Cryptocurrency Exchange Collapse Litigation Involves "One or More Common Questions of Fact"

The actions subject to this motion satisfy the MDL statute's prerequisite that the actions present "one or more common questions of fact." 28 U.S.C. § 1407(a). Notably, this standard does not require "a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371,1372 (J.P.M.L. 2005). The actions named in the MDL motion more than clear this bar. All of the actions arise from allegations that FTX executives withheld or misrepresented information with respect to customer assets deposited on the FTX platform and that the accountants, financial services firms, and spokespeople who worked with FTX were complicit in or otherwise bear responsibility for those alleged frauds. Common questions of fact include:

- Whether FTX executives misled customers and about FTX's practices for safeguarding customer funds;

- Whether FTX executives embezzled customer assets;

- Whether FTX executives misrepresented the financial condition of their organization;

- If a fraud took place, which FTX executives and entities were involved;

- Whether FTX's service providers and spokespeople could have reasonably prevented FTX from defrauding its customers or investors;

- Whether FTX's service providers and spokespeople owed a duty to FTX's customers or investors, and, if so, the nature of that duty;

- Whether proposed classes satisfy the numerosity, commonality, typicality, and fairness requirements of Fed. R. Civ. P. 23;

- Whether proposed classes are duplicative of one another;

- Whether plaintiffs and putative class members relied upon defendants' statements to their detriment, and, if so, which statements by which defendants;

- Whether plaintiffs and putative class members sustained monetary loss and the proper measure of that loss; and

- Whether plaintiffs and putative class members are entitled to consequential damages, punitive damages, statutory damages, disgorgement, and/or other legal or equitable remedies.

**B.    Coordination of These Cases for Pretrial Proceedings Would Serve the Convenience of Parties, Witnesses, and Courts.**

Prager Metis also agrees that coordination of the actions named in the MDL motion will serve the convenience of the parties and witnesses. Transfer is appropriate where the Panel determines that a coordinated proceeding "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of the litigation." 28 U.S.C. § 1407(a). That standard is met when centralization "will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *See In re Zofran (Ondansetron) Prods. Liab. Litig.*, 138 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015). Here, Prager Metis

believes that the proposed centralization is appropriate, anticipating that the parties will work together to craft solutions that avoid duplicative discovery and conserve judicial resources.

Absent consolidation, the common issues questions identified in Part A above would arise simultaneously in over a dozen actions pending simultaneously on opposite coasts of the country. Disparate litigants would therefore turn to the same witnesses over and over again. Custodians would spend precious resources responding to substantially similar document subpoenas. Key witnesses would be required to sit for duplicative depositions. Counsel would spend countless hours crisscrossing the country to attend duplicative hearings and depositions. Requests for production would necessarily reference parallel cases, resulting in a circular chain of discovery ultimately yielding substantially identical factual records in each case through inefficient means.

To avoid these ends, Prager Metis endorses consolidation with the expectation that, in an MDL, witnesses will not be subject to multiple depositions. Consolidation would avoid inefficiencies and permit the judicial process to proceed.

Moreover, transfer and coordination will "conserve the resources of parties, their counsel, and the judiciary." *In re Zofran*, 138 F. Supp. 3d at 1382. Responding to discovery requests, negotiating with opposing counsel over the entry of protective orders, and inevitable discovery disputes, are all time-consuming, inefficient and expensive. In major litigation, document demands predictably lead to motion practice. If the cases remain pending before different judges for discovery, the same issues are likely to be litigated in numerous motions to compel and motions for protective orders in different cases, with inconsistent rulings and needless burden on the federal judiciary.

Centralization will also eliminate the risk of inconsistent pretrial rulings on discovery and other pretrial matters. *See, e.g., In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349

(J.P.M.L. 2004) (consolidating cases to "prevent inconsistent pretrial rulings" as well as eliminate duplicative discovery and conserve resources). As detailed herein, these actions involve a multitude of overlapping factual allegations and legal claims, amplifying the hazard of inconsistent rulings between cases. For example, nearly all of the cases will require expert testimony on the intricacies of cryptocurrency trading. Absent consolidation, the same crypto expert giving the same testimony could be disallowed under Rule 702 in one case but not another, leading to sharply divergent outcomes on otherwise indistinguishable claims. Centralization would prevent such inconsistency. *See, e.g., In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1375 (J.P.M.L. 2021) ("[c]entralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions").

Finally, all lawsuits relating to FTX's collapse were filed within the past four months, and none are so advanced that consolidation would unduly disrupt proceedings. At this early juncture, the significant synergies associated with consolidation can be unlocked without prejudicing the parties. All civil, non-bankruptcy cases seeking recovery on behalf of FTX customers should be therefore be transferred to a single court and judge for coordinated pretrial proceedings.

## CONCLUSION

For the foregoing reasons, the motion to transfer pursuant to 28 U.S.C. § 1407 should be granted.

Dated: March 10, 2023

Respectfully submitted,

By: */s/ Joanna R. Travalini*
Joanna R. Travalini
**SIDLEY AUSTIN LLP**
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
jtravalini@sidley.com

*Counsel for Defendant*
*Prager Metis CPAs, LLC*