**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | MDL No. 3076 |

**PLAINTIFFS LAM, JESSUP, HAWKINS, PIERCE, AND PAPADAKIS' RESPONSE IN
<u>OPPOSITION TO THE MOTION TO TRANSFER</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ......................................................................................................... 4

     A.     The Five Original N.D. Cal. Actions Include the Properly Designated First-Filed Action and Are Effectively Self-Coordinating with Four of Five Additional N.D. Cal. Actions Not Listed On ECF No. 1-2 ............................................................ 5

     B.     Petitioners and Their Counsel in the Southern District of Florida Have Unnecessarily Filed Duplicative, Disorganized, and Overlapping Litigation In an Effort to Forum Shop ............................................................................................ 7

III.   ARGUMENT .............................................................................................................. 9

     A.     The Cases Should Not Be Centralized .................................................................. 9

     B.     In the Alternative, the Northern District of California Is The Appropriate Transferee Forum if Centralization is Granted ...................................................................... 13

          1.     The Fact That The Largest Number of Cases Are Pending in the Northern District of California Favors It As the Transferee Forum ......................... 13

          2.     The Occurrence of Discovery Favors the Northern District of California 14

          3.     The Northern District of California Is Where The Cases Have Progressed the Farthest ............................................................................................... 14

          4.     The Site of Occurrence Of Common Facts Favors The Northern District of California, as Well As Being the Presumptive Location of Key Witnesses and Documents ........................................................................................ 16

          5.     The Skill, Experience, and Caseloads of the Judicial Officers in the Northern District of California Favor Its Selection As The Transferee Forum ...................................................................................................... 18

          6.     All Additional Factors Support Transfer to the Northern District of California ................................................................................................. 19

IV.   CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliano v. Quaker Oaks Co.*,
No. 16 C 3087, 2017 WL 56638 (N.D. Ill. Jan. 4, 2017) ........................................... 8

*Ambient Healthcare, Inc. v. Columbia Casualty Co.*,
No. 12-61054, 2012 WL 12864330 (S.D. Fla. Dec. 12, 2012)................................... 3

*Federated Rural Electric Ins. Corp. v. Arkansas Electric Cooperatives*, *Inc.*,
48 F.3d 294 (8th Cir. 1995) ........................................................................................ 8

*In re [24]7.AI, Inc. Customer Data Sec. Breach Litig.*,
338 F. Supp. 3d 1345 (J.P.M.L. 2018)........................................................................ 9

*In re AndroGel Prod. Liab. Litig.*,
24 F. Supp. 3d 1378 (J.P.M.L. 2014)........................................................................ 14

*In re FCA U.S LLC Monostable Elec. Gearshift Litig.*,
214 F. Supp. 3d 1354 (J.P.M.L. 2016)...................................................................... 18

*In re Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012)...................................................................... 10

*In re Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*,
118 F. Supp. 3d 1377 (J.P.M.L. 2015)...................................................................... 12

*In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*,
326 F. Supp. 3d 1372 (J.P.M.L. 2018)...................................................................... 10

*In re McKinsey & Company, Inc. National Prescription Opiate Consultant Litig.*,
543 F. Supp. 3d 1377 (J.P.M.L. 2021)...................................................................... 19

*In re Ocala Funding, LLC, Com.  Litig.*,
867 F. Supp. 2d 1332 (J.P.M.L. 2012)...................................................................... 11

*In re PersonalWeb Techs., LLC and Level 3 Communications, LLC, Patent Litig.*,
340 F. Supp. 3d 1373 (J.P.M.L. 2018)...................................................................... 13

*In re Pet Food Prod. Liab. Litig.*,
499 F. Supp. 2d 1346 (J.P.M.L. 2007)...................................................................... 14

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. Litig.*,
178 F. Supp. 3d 1377 (J.P.M.L. 2016)...................................................................... 18

*In re Senior Health Insurance Co. of Pennsylvania Rehabilitation Plan Litig.*,
    MDL No. 3033, 2022 WL 2129057 (J.P.M.L. Jun. 1, 2022) ..................................................... 12

*In re Smith & Nephew BHR & R3 Hip Implant Prod. Liab. Litig.*,
    249 F. Supp. 3d 1348 (J.P.M.L. 2017) ....................................................................................... 14

*In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*,
    273 F. Supp. 3d 1357 (J.P.M.L. 2017) ....................................................................................... 11

*In re the Litigation Practice Group, PC, Credit Repair Organizations Act (CROA)
Contract Litig.*,
    MDL No. 3065, 2023 WL 1812173 (J.P.M.L. Feb. 6, 2023) ..................................................... 12

*In re Zimmer Durom Hip Cup Prods. Liab. Litig.*,
    717 F. Supp. 2d 1376 (J.P.M.L. 2010) ....................................................................................... 13

*Italian Colors Rest. v. Am. Express Co.*,
    No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ........................................... 8

*New View Gifts & Accessories, Ltd. v. Tri-Coastal Design Group*,
    No. 02-CV-3428, 2002 WL 1896217 (E.D. Pa. Aug. 15, 2002) ................................................. 3

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) ....................................................................................................... 8

**Statutes**

28 U.S.C.
    § 1407(a) ............................................................................................................................. passim

**Other Authorities**

Manual for Complex Litigation (Fourth)
    §20.131 (2004) ............................................................................................................................. 13

## I.    INTRODUCTION

The collapse of the FTX Entities and the public revelations about the massive fraud behind the scenes have precipitated at least fourteen (not including actions filed and dismissed)[1] class action lawsuits seeking recovery for those depositing cryptocurrency assets in accounts with the FTX Entities.   The primary locus of the currently pending cases is the Northern District of California, where at least ten of the class actions have been filed.  Eight out of these ten cases in the Northern District of California have already been related to one another and are pending before the Honorable Jacqueline Scott Corley ("Judge Corley").

Five of these eight related class actions pending before Judge Corley (defined herein as "the Five Original N.D. Cal. Actions") were brought by Plaintiffs Elliott Lam, Michael Elliott Jessup, Russell Hawkins, Stephen Pierce, and Julie Papadakis ("Plaintiffs").[2]  Plaintiffs have sought, and will continue to seek, to be consolidated and organized pursuant to a leadership structure.   Indeed, Plaintiffs in the Five Original N.D. Cal Actions are already informally

---

[1] If the consolidated actions pending in the Southern District of Florida listed on ECF No. 1-2 are included in the count as separate cases, the number is fifteen.  For purposes of this memorandum, the count at present will be stated as fourteen cases.  All citations to "ECF No. __" are to filings in MDL No. 3076, unless otherwise specified.  All emphasis is added, and quotations and footnotes omitted, unless otherwise specified herein.

[2]  The actions are *Lam v. Bankman-Fried, et al.*, Case No. 3:22-cv-07336-JSC (the "*Lam* Action"), *Jessup v. Bankman-Fried, et al.*, Case No. 3:22-cv-07666-JSC, *Hawkins v. Bankman-Fried, et al.*, Case No. 3:22-cv-07620-JSC, *Pierce v. Bankman-Fried, et al.*, Case No. 3:22-cv-07444-JSC and *Papadakis v. Bankman-Fried, et al.*, Case No. 3:23-00024-JSC (the "*Papadakis* Action") (collectively, the "Five Original N.D. Cal. Actions").  The Five Original N.D. Cal. Actions are included in the 11 actions referred to in the Motion as the "Related Actions".  The Motion to Transfer (ECF No. 1 or the "Motion") did not include the potential tag-along action (ECF No. 8) of *O'Keefe v. Sequoia Capital Operations, LLC*, Civil Action No. 1:23-cv-20700 (S.D. Fla.) (the "*O'Keefe* Action").  Similarly, on March 9, 2023, a notice of a related class action was filed with the Panel, notifying of an action entitled *Statistica Capital Ltd. et al. v. Signature Bank*, No. 23-00993-ALC (S.D.N.Y.), pending in the Southern District of New York (ECF No. 42).   The complaint in the action alleges that Signature Bank is a New York chartered commercial bank. ECF No. 42-1.

coordinating with counsel representing the plaintiffs in the related Three Silvergate N.D. Cal. Actions (defined herein)[3] and in another potentially related action, the *Rabbitte* Action. Plaintiffs expect to also offer coordination to counsel in the *Girshovich* Action. As noted, the *Rabbitte* Action and the *Girshovich* Action are referred to herein as the "Two Sequoia N.D. Cal. Actions."

Plaintiffs oppose Petitioners' motion for consolidation and centralization of the Related Actions, however, because there is no need to create additional delay and litigation. The Petitioners, whose action is pending in the Southern District of Florida (the "Florida Action" or the "*Garrison* Action"), have sought centralization unnecessarily, and with the direct purpose of thwarting coordination efforts by the remaining plaintiffs. Not only do Plaintiffs oppose the Motion, but it is expected that certain defendants in the Florida Action will also oppose the Motion. *See* ECF No. 87 on docket in the *Garrison* Action.

Plaintiffs have proposed a structured and manageable way to coordinate the litigation pending in the Northern District of California. The Panel should not countenance the Petitioners'

---

[3] Parties from three actions filed in the Southern District of California listed on ECF No. 1-2, have dismissed and certain of those parties, and others, have refiled in the Northern District of California, pursuing claims against Silvergate Bank (a California corporation) and its parent company Silvergate Capital Corporation (headquartered in California) (collectively "Silvergate"), and certain Silvergate executives. *See* ECF Nos. 9 (referencing the "*Magleby* Action"), 16, 21, 31 (the "Three Silvergate N.D. Cal. Actions"). On March 8, 2023, these actions were related to the *Lam* Action. *See Lam* Action at ECF No. 29. ECF No. 1-2 omits *Rabbitte v. Sequoia Capital Operations LLC, et al.*, Case No. 3:23-cv-655 (N.D. Cal.) (the "*Rabbitte* Action"). ECF 1-2 also omits *Girshovich v. Sequoia Capital Operations, LLC, et al.*, Case No. 3:23-cv-00945-JCS (N.D. Cal.) (the "*Girshovich* Action"). The *Rabbitte* Action and *Girshovich* Action (collectively the "Two Sequoia N.D. Cal. Actions") each name Sequoia Capital Operations LLC, Thoma Bravo, LP, and Paradigm Operations LP, all entities having headquarters or a principal office within the Northern District of California, for their alleged role in the harm to consumers related to the FTX Entities. *See* ECF No. 1 in the *Rabbitte* Action and ECF No. 1 in the *Girshovich* Action. As used herein, the term the "Five Additional N.D. Cal. Actions" refers, collectively, to the Three Silvergate N.D. Cal. Actions and the Two Sequoia N.D. Cal. Actions.

effort to derail the organized progression of the Five Original N.D. Cal. Actions and should be denied.

In the alternative, should the Panel believe that centralization is appropriate, Plaintiffs respectfully submit that the Related Actions listed in ECF No. 1-2 should be centralized in the Northern District of California where, as noted above, at least 10 of the potentially 14 currently pending class actions filed on behalf of those who deposited assets or held accounts with FTX are pending.

Additional factors supporting the Northern District of California include that FTX US and Alameda Research had offices within the borders of the Northern District of California at various times during the relevant period, each of the auditor defendants named in the Related Actions is either headquartered or has an office within the Northern District of California, and Samuel Bankman-Fried is widely reported in the media to be under house arrest in a location within the Northern District of California.  As noted herein, many defendants named in the other Related Actions or the Five Additional N.D. Cal. Actions are also headquartered, or located in, California.

It also should be noted that the "first-filed" trophy the Petitioners wish to claim is illusory. Petitioners trumpet first-filed status due to the filing of *Garrison v. Bankman-Fried, et al*. Case No. 1:22-cv-22753-KMM (the "*Garrison* Action") on November 15, 2022.  Petitioners neglected to inform the Panel, however, that a dismissal of the entire action was filed on December 8, 2022 (ECF No. 14 in the *Garrison* Action).  "When a case is voluntarily dismissed, it is not considered the first filed case." *Ambient Healthcare, Inc. v. Columbia Casualty Co*., No. 12-61054, 2012 WL 12864330, at *5 (S.D. Fla. Dec. 12, 2012); *see also New View Gifts & Accessories, Ltd. v. Tri-Coastal Design Group*, No. 02-CV-3428, 2002 WL 1896217, at *1 (E.D. Pa. Aug. 15, 2002) (rejecting plaintiff's argument of being first-filed after it voluntarily dismissed action).  As a result,

as the *Lam* Action (one of the Five Original N.D. Cal. Actions) was filed on November 20, 2022 in the Northern District of California, it became the first-filed action when the *Garrison* Action was dismissed.[4]  Plaintiffs submit, therefore, that the claim of "first-filed" properly belongs to the *Lam* Action, not the *Garrison* Action, which became a nullity on December 8, 2022.[5]

## II.    BACKGROUND

The Related Actions, presently concentrated in two district courts, stem from the collapse of the FTX Entities as a result of a scheme to operate the companies in a manner of a Ponzi scheme, with customer funds sent to the FTX Entities being used for purposes inconsistent with the representations made to customers, including secret loans to the founders and executives of the FTX Entities, payments to cover investment losses, and other unauthorized transactions such as purchases of real estate unrelated to the business.  Each of these actions, styled as class actions on behalf of consumers/customers (account holders) of the FTX Entities, were filed after the November 11, 2022 filings by the FTX Entities of bankruptcy protection due to the collapse of the so-called "house of cards" that the executives of the FTX Entities were running under the guise of a cryptocurrency exchange and trading platform.  While each of the Related Actions had its impetus in the aftermath of the collapse, the Related Actions and the Five Additional N.D. Cal.

---

[4] *Kavuri v. Bankman-Fried, et al.,* Case No. 1:22-cv-23817 (S.D. Fla.) (the "*Kavuri* Action"), not listed on ECF No. 1-2, was filed by the same counsel as in the *Garrison* Action, and filed the same day as the *Lam* Action, but also voluntarily dismissed.  *See* ECF Nos. 5-6 in the *Kavuri* Action. The filing and dismissal of the *Kavuri* Action is also not disclosed in the Motion.  Sunil Kavuri, the plaintiff in the dismissed *Kavuri* Action was added as a plaintiff in the December 16, 2022 complaint filed in the *Garrison* Action.  *See* ECF No. 16 in the *Garrison* Action. Additional acts by Petitioner's counsel to file duplicative actions, forum shop and engage in acts of nondisclosure to the Panel are set forth herein.

[5] Indeed, four of the Five Original N.D. Cal. Actions were filed by December 5, 2022, long before the December 16, 2022 filing of the operative complaint in the *Garrison* Action, which was filed after the entire *Garrison* Action had been voluntarily dismissed.  *See Garrison* Action ECF Nos. 14 and 16.

Actions do not uniformly name the same defendants, assert the same claims, nor identically define their proposed classes. *See e.g.* ECF No. 1-2, 1-4 to 1-14 (complaints in the Related Actions listed on ECF No. 1-2); 8, 8-3, 9, 9-1, 16, 21, 31, 41-42. *See also* ECF Nos. 9-2 (the *Magleby* Action complaint) at page 2, ¶¶10-12 (naming Silvergate Bank) and at pages 40-42, ¶¶171-184 (alleging only common law claims); ECF No. 1 in the *Rabbitte* Action and ECF No. 1 in the *Girshovich* Action (naming Sequoia Capital Operations LLC, Thoma Bravo, LP, and Paradigm Operations LP, and including California statutory law claims, including violation of Cal. Corp. Code §25504.1).

### A. The Five Original N.D. Cal. Actions Include the Properly Designated First-Filed Action and Are Effectively Self-Coordinating with Four of Five Additional N.D. Cal. Actions Not Listed On ECF No. 1-2

Plaintiffs' Five Original N.D. Cal. Actions were filed in the Northern District of California between November 20, 2022 and January 5, 2023. These actions have been related, and due to motions filed by the Plaintiffs in those actions, all are currently assigned to Judge Corley for judicial supervision. *See Lam* Action at ECF Nos. 9, 15, 17-18.

Plaintiffs and their counsel in each of the Five Original N.D. Cal. Actions are coordinated and aligned to prosecute their claims efficiently on behalf of the Class, and indeed have been coordinating since 2022, including by means of weekly conferences. Indeed, Plaintiffs in the Five Original N.D. Cal. Actions filed a motion to consolidate their actions and appoint a leadership structure. *See Lam* Action at ECF No. 19. While Judge Corley vacated the hearing on the motion in view of certain issues concerning service on the various defendants, Plaintiffs in certain of these actions have already negotiated schedules with certain of the defendants for responses to the

consolidated complaint that would be filed after entry of the consolidation order. *See* ECF Nos. 31-34 in the *Papadakis* Action (setting responses due on March 31, 2023).[6]

Moreover, the undersigned counsel has conferred with counsel for three actions initially pending in the Southern District of California, naming Silvergate for its role in connection with the FTX Entities. Parties in one or more of these three have dismissed, and then refiled, these actions (on February 14, 2023) in the Northern District, and these Three Silvergate N.D. Cal. Actions (defined above) have been related to the *Lam* Action in the Northern District of California. *See Lam* Action at ECF Nos. 22 and 29. The Two Sequoia N.D. Cal. Actions are also pending in the Northern District of California, although not listed on ECF No. 1-2. In other words, there are no actions on the Related Actions list pending in the Southern District of California at this time, and instead, ten (10) of the now fourteen (14) actions involving the FTX Entities are now pending in the Northern District of California, with only three pending in the Southern District of Florida (according to ECF Nos. 1-2 and 8-1) and another potentially related action filed in the Southern District of New York. *See* ECF No. 41-42.

---

[6] A review of the Florida Action docket reveals that it appears unserved defendants remain in that Action as well. *See* ECF No. 87 in the *Garrison* Action (filing by Defendants Brady, Bundchen, Oritz, O'Leary, and Lawrence). As stated in ECF No. 87, certain defendants named therein are seeking relief from Petitioners' attempt at a rushed scheduling conference and note that Petitioners "failed to timely (and, apparently, properly) serve all defendants, and failed to even communicate with Moving Defendants about a scheduling conference until this week – [which] unfairly prejudices all defendants." As indicated in ECF No. 94 in the *Garrison* Action, Petitioners were told by the court therein that (citing back to ECF No. 82 in that action), "[i]t has been 111 days since the Complaint was filed and the Parties have not filed their joint scheduling report, nor has Plaintiff moved for an enlargement of time to hold the scheduling conference. The Parties are instructed to comply with the Court's November 16, 2022 Pretrial Order on or before March 10, 2023." The *Garrison* court noted that "[f]ailure to do so may result in sanctions." ECF No. 82 in the *Garrison* Action also indicates Petitioners failed to follow the local rules of that court. In brief, rather than being advance in the *Garrison* Action, it appears Petitioners have created multiple issues therein, and no basis exists to drag the Plaintiffs in the Five Original N.D. Cal. Actions into the issues in those proceedings.

**B.    Petitioners and Their Counsel in the Southern District of Florida Have Unnecessarily Filed Duplicative, Disorganized, and Overlapping Litigation In an Effort to Forum Shop**

In contrast to the orderly and efficient self-organization and inclusion occurring among litigants in the Northern District of California, a review of the filings in the Southern District of Florida, all but one of which involve Petitioners' counsel, demonstrate disorganized attempts at forum shopping and multiplying litigation for no valid reason other than to manufacture an argument for a proposed MDL and proclaim the Southern District of Florida as the place where the actions should proceed.

First, as noted above, Petitioner's counsel misrepresents the *Garrison* Action as first filed because they omitted to disclose that it was voluntarily dismissed and then refiled only **after** the *Lam* Action (one of the Five Original N.D. Cal. Actions) was filed.  Nor do they disclose their flip-flop on the *Kavuri* Action (filed and dismissed).  Yet, this does not scratch the surface of the failures by Petitioners and their counsel to demonstrate candor with the Panel.

Ironically, it may be that Petitioners' counsel has filed so much duplicative litigation that they cannot keep their factual record straight.  Oddly, the December 16, 2022 complaint in the *Garrison* Action alleges it is the "only Class Action in the Country" (ECF No. 16 at page 1), which allegation was false when it was made and remains false.  The *Lam* Action, one of the Five Original N.D. Cal. Actions, had been on file since November 20, 2022.  Worse yet, Petitioner's counsel -- the very counsel making that allegation on December 16, 2022 -- had filed litigation earlier in December 2022 in state court against several of the same defendants in the action entitled *Norris, et al. v. Brady, et al.*, Case No. 2022-022900-CA-01 (11th Jud. Cir. Dade Cty. Fla.) (the "*Norris* Action").

The *Norris* Action was removed by the defendants to the Southern District of Florida on February 3, 2023, is presently captioned as *Norris, et al. v. Thomas Brady, et al*., No. 1:23-cv-

20439-CMA (S.D. Fla.), and is the subject of a pending remand motion by the same counsel for Petitioners herein.  *See* ECF No. 22 in the *Norris* Action.  The *Norris* Action is cited in the Motion as another factor purportedly supporting the Southern District of Florida as the forum for the Related Actions (Motion at 14).

"[W]here plaintiffs file suits that are nearly identical to a previously-filed action in a different forum and then soon move to establish an MDL in their preferred forum, there is at least a basis for concern that the plaintiffs (or their counsel) are engaging in forum shopping. Such a concern would provide a reason to discount their choice of forum."  *See Aliano v. Quaker Oaks Co.*, No. 16 C 3087, 2017 WL 56638, at *3, n.2 (N.D. Ill. Jan. 4, 2017) (*citing Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 n.2 (7th Cir. 2010)); *see also Federated Rural Electric Ins. Corp. v. Arkansas Electric Cooperatives*, *Inc.*,  48 F.3d 294, 299 (8th Cir. 1995) (criticizing party for its "forum-shopping spree"); *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *4 (N.D. Cal. Nov. 10, 2003) (repeated filings are evidence of forum shopping and procedural manipulation).

Here, Petitioner's counsel filed (and in many cases voluntarily dismissed) three federal cases (the *Garrison* Action, the *Kavuri* Action, and *Podalsky, et al. v. Bankman-Fried, et al.*, Case No. 1:22-cv-23983-KMM (S.D. Fla.) (the "*Podalsky* Action")[7] and the *Norris* Action in what objectively appears to be forum shopping, and should not be rewarded for this conduct by uprooting ten class actions filed in the Northern District of California whose counsel are

---

[7] Indeed, while ECF No. 1-2 lists the *Podalsky* Action as consolidated with the *Garrison* Action, less apparent is the fact that the plaintiffs in the *Podalsky* Action, which was dismissed on December 9, 2022, are listed as plaintiffs in the only operative complaint on file in the *Garrison* Action, the so-called "amended" but functionally the only complaint filed in that action after it was voluntarily dismissed.  *See* ECF No. 16 in the *Garrison* Action.

cooperating without invoking the limited resources of courts or the Panel.[8]  As noted in the opposition to the remand motion filed on March 7, 2023 in the *Norris* Action (ECF No. 37 in that action at page 1):

> . . . Plaintiffs admit that they filed this duplicative action in state court because they believe the state court can issue declaratory rulings on federal law more quickly than this Court. Yet four days after they filed this Remand Motion, Plaintiffs moved before the Judicial Panel for Multidistrict Litigation, seeking to transfer cases filed in California against different defendants and raising different claims, and proposing that another judge of this Court preside over a multidistrict litigation—including this action, which they contend should be remanded—and issue the same declaratory rulings.  Plaintiffs' procedural maneuvers multiply litigation for no legitimate reason.

The Motion serves no actual benefit to the Class. For the reasons discussed herein, the Motion should be denied, or the Southern District of Florida cases should be transferred to the Northern District of California, where the overwhelming majority of cases have chosen to litigate this dispute.

## III.    ARGUMENT

### A.    The Cases Should Not Be Centralized

The objectives of 28 U.S.C. § 1407(a) are being accomplished in the Northern District of California, and there is no need for the Panel to centralize due to the existence of a handful of cases in the Southern District of Florida filed in all but one instance by essentially the same sets of counsel. Indeed, centralization is a "last solution after considered review of all other options." *In re [24]7.AI, Inc. Customer Data Sec. Breach Litig.*, 338 F. Supp. 3d 1345, 1347 (J.P.M.L. 2018);

---

[8] The off-tangent discussion of the purported work that Petitioner's counsel have done for other class actions not subject to the Motion to Transfer will not be addressed herein.  *See* Motion at 2-4 (providing assertions concerning the cryptocurrency trading app referred to as Voyager that was/is the subject of *Mark Cassidy v. Voyager Digital Ltd., et al.*, Case No. 21-24441-CIV-ALTONAGA/Torres.  That action has not been related to any of the Related Actions listed herein, and it is not the subject of the Motion.

see also *In re Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379-80 (J.P.M.L. 2012) ("centralization under section 1407 should be the last solution after considered review of all other options"). This is true even where "[t]here is no dispute that the[] cases share factual issues." *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018). Petitioners have made no affirmative showing of common factual issues among all cases in the Related Actions (or the *O'Keefe* Action) list and failed to identify the Five Additional N.D. Cal. Actions. Plaintiffs submit that this failure should result in the denial of the Motion. Moreover, as noted above, common factual issues alone are not sufficient.

Under Section 1407(a), in addition to the requirement of "common issues of facts", the Panel may centralize pretrial proceedings only "for the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). These objectives are already served in the Northern District of California, and there is no need to centralize the four class action cases, three of which are filed by the same counsel for Petitioners,[9] pending in the Southern District of Florida with the Five Original N.D. Cal. Class Actions and Five Additional N.D. Cal. Actions.

The Petitioners claim that all of the cases are in the "early stage" and that therefore centralization by the Panel is appropriate, effectively asserting that there is no inconvenience. Mot. at 11. While it is true that the cases are essentially in their early stages, it does not necessarily

---

[9] As noted above, there really is no stand-alone *Podalsky* Action since it was dismissed and the plaintiffs therein were added to the amended (or only operative) complaint in the *Garrison* Action. The third action listed on ECF No. 1-2 from the Southern District of Florida is the *Norris* Action, which is the subject of a remand motion, as discussed herein. If the *Norris* Action is remanded, there would be, at best, two actions pending in the Southern District of Florida: the *Garrison* Action and the tag-along *O'Keefe* Action. Two actions hardly merit centralization nor transfer to the Southern District of Florida, as discussed herein.

follow that centralization by the Panel is therefore appropriate or convenient. Plaintiffs and their undersigned counsel have made substantial progress in coordinating the litigation in the Northern District of California, and the majority of cases are already pending there.  As set forth above, plaintiffs' counsel in the Five Original N.D. Cal. Actions have conferred with counsel for plaintiffs in four of the Five Additional N.D. Cal. Actions regarding coordination of the cases in the Northern District of California.

Transferring the Related Actions to an MDL will only serve to stifle voluntary coordination efforts, delay recovery for the Class, and force the parties and their counsel to expend unnecessary resources on wasteful motion practice. In other words, transfer under § 1407 will accomplish the exact opposite of what it is intended to do (*i.e.*, reduce litigation costs and conserve time and effort of the parties) and may only potentially serve to benefit the Petitioners' counsel who are no doubt concerned that the focus of the filed cases is not where they have elected to file their action.

In such circumstances, the Panel regularly denies centralization because the transfer would delay the progress of more advanced cases. *See, e.g., In re Ocala Funding, LLC, Com.  Litig.*, 867 F. Supp. 2d 1332 (J.P.M.L. 2012) (denying centralization because one case is more advanced than others).  In addition to having been filed when the Southern District of Florida cases had either been dismissed or were non-existent, Plaintiffs and their counsel for the Five Original N.D. Cal. Actions have already dedicated substantial time to the litigation in that forum, as detailed below.

There is no reason to stop the orderly, efficient, and zealous prosecution of Plaintiffs' Five Original N.D. Cal. Actions, nor the progress made in coordinating with counsel for the additional four class action cases pending in that district.  Centralizing the cases would subvert one of the paramount goals of Section 1407, which is to promote the just and efficient conduct of litigation. *See In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L.

2017) ("We see no reason to disrupt the parties' successful efforts at informal coordination when almost all parties agree that centralization would provide little or no benefit."); *In re Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1377, 1378 (J.P.M.L. 2015) (the movants failed to meet their heavy burden because the common issues were not complex and because "[t]hese cases already are being managed in an orderly and efficient manner.").

  Finally, and perhaps fatally to the Motion, it does not show why centralization of the Related Actions is necessary.  While assertions of the risk of inconsistent rulings, particularly as to class certification is bantered around by the Petitioners (Motion at 11), this Panel recently rejected such an argument in *In re the Litigation Practice Group, PC, Credit Repair Organizations Act (CROA) Contract Litig.*, MDL No. 3065, 2023 WL 1812173, at *1 (J.P.M.L. Feb. 6, 2023) (denying centralization of eleven actions – including two class actions -- pending in nine districts). Although in the *CROA Contract Litig.*, 2023 WL 1812173, at *1, one class was on behalf of Georgia residents, and the other class was a nationwide class excluding Georgia residents such that identical class certification issues were not raised, the Panel stated that "even if certain class certification and attorney-client privilege issues may arise in both class actions, that is not sufficient reason to centralize . . . ." *Id.* at *1.  Thus, in an action spanning nine districts and eleven cases, the Panel did not centralize due to the failed showing by the proponents of centralization and indicated a preference for informal coordination.  *Id*. at *2.  Indeed, to the extent the Petitioners assert the risk of inconsistent rulings regarding legal questions, this Panel has provided that this is insufficient to justify §1407 centralization.  *See In re Senior Health Insurance Co. of Pennsylvania Rehabilitation Plan Litig.*, MDL No. 3033, 2022 WL 2129057, at *1 (J.P.M.L. Jun. 1, 2022).

**B.** **In the Alternative, the Northern District of California Is The Appropriate Transferee Forum if Centralization is Granted**

There are numerous factors that the Panel typically takes into consideration in determining the most appropriate transferee forum. As set forth in 28 U.S.C. §1407(a), in pertinent part, "transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

**1.** **The Fact That The Largest Number of Cases Are Pending in the Northern District of California Favors It As the Transferee Forum**

At the outset, ten of the fourteen actions that the Panel should consider are pending in the Northern District of California. According to the Manual for Complex Litigation (Fourth) at Section 20.131 (2004), **the first factor** the Panel considers is "where the largest number of cases is pending . . . ."   This key fact (that five of the twelve cases have already been related to each other and assigned to Judge Corley) renders the Northern District of California as the most appropriate transferee district. *In re PersonalWeb Techs., LLC and Level 3 Communications, LLC, Patent Litig.*, 340 F. Supp. 3d 1373, 1374–75 (J.P.M.L. 2018) (transferring cases to district where "[t]he majority of the cases are pending"); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010) (same).

After examining where the largest number of cases are pending, the Manual for Complex Litigation (Fourth) at §20.131 (2004) indicates additional factors are "where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Id*.  These additional factors support the Northern District of California as the transferee forum if required.

13

### 2.    The Occurrence of Discovery Favors the Northern District of California

As between the Northern District of California and the Southern District of Florida, the occurrence of discovery is either neutral or favors the Northern District of California.  There is no assertion that discovery has occurred in the Southern District of Florida cases listed in ECF No. 1-2, and as set forth herein, at least some informal discovery has occurred in one of the Five Original N.D. Cal. Actions.[10]  Plaintiffs are not including the one Southern District of New York action in the analysis, as it was only recently identified to the Panel as potentially a related action (ECF Nos. 41-42) and the docket for the action indicates it is not as advanced as the Five Original N.D. Cal. Actions.

### 3.    The Northern District of California Is Where The Cases Have Progressed the Farthest

In addition, the Panel often cites progress made by a district court as a reason why it is an appropriate transferee court. *See, e.g.*, *In re Smith & Nephew BHR & R3 Hip Implant Prod. Liab. Litig.*, 249 F. Supp. 3d 1348, 1352 (J.P.M.L. 2017) (transferee district presiding over "one of the most procedurally-advanced actions"); *In re AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014) (transferee court "has already taken initial steps to organize litigation"); *In re Pet Food Prod. Liab. Litig.*, 499 F. Supp. 2d 1346, 1347 (J.P.M.L. 2007) ("pretrial proceedings are advancing well" in transferee district and "about one-third of all pending actions are already in this district"). Here, Judge Corley has related the Three Silvergate N.D. Cal. Actions to the *Lam Action* (one of the Five Original N.D. Cal. Actions), and has reviewed a motion to consolidate and

---

[10] For example, counsel for one of the Plaintiffs in the Five Original N.D. Cal. Actions has written to Senator Warren, and others, for information and materials concerning Silvergate.

appoint a leadership structure, which will be resubmitted once service on certain defendants is resolved.

In addition to the efforts of Judge Corley to entertain motions and/or stipulations of the parties in the Five Original N.D. Cal. Actions to organize the matters, Plaintiffs' counsel in these actions (as noted above) have additionally been in contact with counsel for numerous Defendants in the related cases, including Sam Bankman-Fried, whose counsel has agreed to accept service for his client. Counsel for the Plaintiffs in the Five Original N.D. Cal. Actions also have been coordinating their cooperation to ensure the best path forward for their clients and the putative class. Additionally, the efforts expended by counsel for the Plaintiffs in the Five Original N.D. Cal. Actions have focused on events in this District, the country, and the world.  For example, counsel for the Plaintiffs in the Five Original N.D. Cal. Actions:

- discussed a potential tolling agreement with counsel for Defendant Golden State Warriors, LLC.
- have been in communication with Defendant Bankman-Fried's attorneys.
- retained counsel in The Bahamas to file a Writ of Mandate for clients in that country and to effectuate personal service on Defendant Bankman-Fried in The Bahamas before he was extradited to the United States at the end of 2021. Commonwealth of The Bahamas, In the Supreme Court, Common Law and Equity Division Case No.01779.
- have corresponded with prosecutors from the Southern District of New York regarding the disposition of the civil cases.
- have been involved in the bankruptcy action for FTX as well, including filing an objection to the appointment of Sullivan & Cromwell as the debtors' lead counsel.

15

- have sent correspondence to Senator Warren, and others, seeking information about the investigation of the FTX Entities and related parties, including Silvergate Capital Corporation.

- have served one or more of the initial complaints on all defendants (other than Singh), and have already negotiated stipulations for the timing of the Auditor Defendants' responses to the pleadings, setting the due date as March 31, 2023 presently, with reference to the planned consolidation of the Five Original N.D. Cal. Actions.

*See* ECF No. 19, 19-1 to 19-8, and 25 (at pages 4-5) in the *Lam* Action; ECF Nos. 16-20 and 31-34 in the *Papadakis* Action.

In contrast, the dockets for the four Southern District of Florida Actions demonstrate mainly a pattern of filing and then voluntarily dismissing actions, with the same core set of law firms filing multiple duplicative litigations in what appears to be an attempt at judicial shopping, as discussed above. Indeed, the self-titled "amended" pleading on December 16, 2022, in the *Garrison* Action (ECF No. 16 in the *Garrison* Action) is functionally their initial pleading following the earlier dismissal in the original *Garrison* Action. To be certain, the Southern District of Florida actions have taken a blunderbuss approach in seeking to name every celebrity, person, or entity who came into contact with the FTX Entities, but that shows a lack of a coherent litigation plan rather than a productive strategy to target those principally involved in the misconduct.

### 4. The Site of Occurrence Of Common Facts Favors The Northern District of California, as Well As Being the Presumptive Location of Key Witnesses and Documents

This longstanding presence of several of the FTX Entities in the Northern District of California far exceeds the "claim to fame" of the Petitioners, that the FTX Entities were located in Miami, Florida. A review of the article cited by the Petitioners in support of their "Miami-centric" argument is dated in late September 2022 (indicating the pending movement of the headquarters),

just shortly before the bankruptcies were filed in November 2022.  Motion at 18, n.11.  Thus, far from some extensive and far-reaching operations in Miami, the FTX Entities apparently operated from the location for only a limited time period.  Nor is the test for the Panel to be dictated by where the "cryptocurrency 'hot spot'" is or annual bitcoin conferences, as Petitioners urge.  Motion at 18.

Equally, Petitioner's assertion that many of the "Brand Ambassador" defendants are Florida residents or that their conduct "emanated" from Florida is also a non-starter.  Motion at 18.  First, most of these purported "Brand Ambassador" defendants are not included in the Five Original N.D. Cal. Actions, nor in the Three Silvergate N.D. Cal. Actions or the Two Sequoia N.D. Cal. Actions and there is no basis to haul the parties in these actions to centralization before the Panel or centralization in the Southern District of Florida simply because Petitioners decided to name these persons.  Indeed, in the *O'Keefe* Action (a tag-along action), the "fourth" Southern District of Florida case, eight (8) of approximately nineteen (19) defendants are headquartered or located in California, and many within the boundaries of the Northern District of California.  *See* ECF No. 8-1.

Additionally, as is widely reported in the media, Samuel Bankman-Fried is under house arrest in Stanford, California, and given that FTX US (doing business as West Realm Shires Services, Inc.) had an address at 2000 Center Street in Berkeley, California[11],  and that Alameda Research was also founded in and/or had offices in Northern California during a portion of the

---

[11]  *See*  https://files.alpaca.markets/disclosures/library/FTXTermsOfService-UserAgreement.pdf (last visited March 10, 2023).

relevant period[12], key documents and witnesses are likely to be found in that District. Indeed, the two auditors named in three of the Five Original N.D. Cal. Actions (and belatedly in the tag-along *O'Keefe* Action) are either headquartered in the district or have several offices located in the district. *See Papadakis* Action at ECF No. 13 at ¶¶41-42. In contrast, Petitioners have offered no evidence that any Defendant in the Five Original N.D. Cal. Actions are within the Southern District of Florida, or that any documents are only available within that jurisdiction. The existence of key witnesses and documents in a given district is a factor in deciding where an MDL should be located. *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. Litig.*, 178 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016) ("key witnesses reside there, including employees and decision makers tasked with the development and execution of product labeling, marketing and advertising"); *In re FCA U.S LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d 1354, 1356 (J.P.M.L. 2016) ("key witnesses and documents are located there, including evidence from its . . . supplier . . . which has its U.S. regional headquarters in this district.").

> **5.     The Skill, Experience, and Caseloads of the Judicial Officers in the Northern District of California Favor Its Selection As The Transferee Forum**

Another factor where the Northern District of California meets, or exceeds, the Southern District of Florida is in the assignment of a strong jurist such as Judge Corley of the Northern District of California. Judge Corley is a highly accomplished jurist who has been on the bench in the District since 2011, initially as a Magistrate Judge.[13]  Judge Corley is assigned to each of the Five Original N.D. Cal. Actions and has overseen complex MDL actions including, during the

---

[12]*See* https://www.dnb.com/business-directory/company-profiles.alameda_research_llc.f1bca9c05ee6423d98e6e539099955f0.html (last visited March 10, 2023).

[13] *See* https://cand.uscourts.gov/judges/corley-jacqueline-scott-jsc/ (last visited Mar. 3, 2023).

time she served as a Magistrate Judge, overseeing discovery in *In Re: Facebook, Inc. Consumer Privacy User Profile Litig.*, MDL No. 2843 (N.D. Cal.), and she currently also presides over in *In Re: Qualcomm Antitrust Litigation*, 3:17-md-02773 (N.D. Cal.).[14]

Indeed, the Northern District of California is just as well equipped to handle these proceedings as the Southern District of Florida. The Panel's report for the period up to February 16, 2023, shows at least 17 MDLs pending in the Northern District of California (covering what appears to be thousands of individual cases), demonstrating the court's capacity to give this significant matter its due care and consideration. *See* MDL Statistics Report—Distribution of Pending MDL Dockets by District (as of February 16, 2023).[15]

### 6.     All Additional Factors Support Transfer to the Northern District of California

Finally, the additional factors examined by the Panel are also satisfied by transfer to the Northern District of California, including that the transferee district be easily accessible to parties and witnesses. The Northern District of California is accessible from three major international airports (San Jose, San Francisco, and Oakland airports) and offers a variety of hotel and other accommodations.

---

[14] Indeed, as set out above, there are at least 17 MDLs pending in the Northern District of California, encompassing thousands of individual actions, and if the Panel determines transfer to a different judge from that district is appropriate, it has a variety of judges from which to select, each of whom have extensive experience with MDL litigation. *See e.g. In re McKinsey & Company, Inc. National Prescription Opiate Consultant Litig.*, 543 F. Supp. 3d 1377, 1379-80 (J.P.M.L. 2021) (finding that the Northern District was an appropriate forum, and also noting experience of judicial officer from the district presiding over multiple MDL matters).

[15] Pending MDLs By District as of February 16, 2023, JPML.USCOURTS.GOV, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February 16-2023.pdf.

Based on these metrics considered, the Northern District of California is the superior venue since all factors the Panel routinely examines favor that venue over the Southern District of Florida.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Panel deny the Motion to Transfer. In the alternative, should the Panel decide that centralization is appropriate, Plaintiffs respectfully request that the MDL be assigned to Judge Jacqueline Scott Corley of the Northern District of California who oversees eight of the ten class actions pending in the Northern District of California: the Five Original N.D. Cal. Related Actions and the Three Silvergate N.D. Cal. Actions.

Respectfully submitted,

DATED: March 10, 2023                 **KAPLAN FOX & KILSHEIMER LLP**

By:   _/s/ Laurence D. King_
        Laurence D. King

Laurence D. King
Kathleen M. Herkenhoff
Blair E. Reed
1999 Harrison Street, Suite 1560
Oakland, CA  94612
Telephone:  (415) 772-4700
Email: _lking@kaplanfox.com_
        _kherkenhoff@kaplanfox.com_
        _breed@kaplanfox.com_

Frederic S. Fox
Joel B. Strauss
Jeffrey P. Campisi
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone:  212-687-1980
Email: _ffox@kaplanfox.com_
        _jstrauss@kaplanfox.com_
        _jcampisi@kaplanfox.com_

_Counsel for Plaintiff Papadakis and Proposed Interim Co-Lead Counsel in the Five Original N.D. Cal. Related Actions_

DATED: March 10, 2023                 **AUDET & PARTNERS, LLP**

By: ___*/s/ William M. Audet*_____
      William M. Audet

William M. Audet
Ling Yue Kuang
Kurt David Kessler
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:  (415) 568-2555
Email:*waudet@audetlaw.com*
      *lkuang@audetlaw.com*
      *kkessler@audetlaw.com*

*Counsel for Plaintiff Lam and Proposed Liaison Counsel and Chair of Executive Committee in the Five Original N.D. Cal. Related Actions*

DATED: March 10, 2023      **POMERANTZ LLP**

By: ___*/s/ Jennifer Pafiti*_____
      Jennifer Pafiti

1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone:  405-7190
Email:*jpafiti@pomlaw.com*

Joshua B. Silverman
Christopher Tourek
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Email:  jbsilverman@pomlaw.com
ctourek@pomlaw.com

*Counsel for Plaintiff Hawkins and Proposed Interim Co-Lead Counsel in the Five Original N.D. Cal. Related Actions*

DATED: March 10, 2023      **EDELSON PC**

By: ___*/s/ Yaman Salahi*_____
      Yaman Salahi

Todd M. Logan
Yaman Salahi
P. Solange Hilfinger-Pardo
Edelson PC
150 California Street, 18th Floor
San Francisco, CA  94111
Telephone: (415) 212-9300
tlogan@edelson.com
ysalahi@edelson.com

21

shilfingerpardo@edelson.com

Amy Hausmann
Hannah Hilligoss
Edelson PC
350 N La Salle St., 15th Floor
Chicago, IL 60654
Telephone: (312) 589-6370
ahausmann@edelson.com
hhilligoss@edelson.com

*Counsel for Plaintiff Jessup and Proposed Interim Co-Lead Counsel in the Five Original N.D. Cal. Related Actions*

**WITES LAW FIRM**
Marc A. Wites
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (866) 558-9631
Email: *mwites@witeslaw.com*

*Counsel for Plaintiff Papadakis and Proposed Executive Committee Member in the Five Original N.D. Cal. Related Actions*

**THE HODA LAW FIRM, PLLC**
Marshal Hoda
12333 Sowden Road, Suite B, PMB 51811
Houston, TX 77080
Telephone:  (832) 848-0036
Email: *marshal@thehodalawfirm.com*

*Counsel for Plaintiff Pierce and Proposed Executive Committee Member in the Five Original N.D. Cal. Related Actions*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
Eitan Kimelman
60 E. 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Email: *peretz@bgandg.com*
        *eitank@bgandg.com*

*Counsel for Plaintiff Hawkins and Proposed Executive Committee Member in the Five Original N.D. Cal. Related Actions*

**LIEFF GLOBAL**
Robert L. Lieff (CA SBN 037568)
rlieff@lieff.com

22

P.O. Drawer A
Rutherford, California 94573

**LEHMAN, LEE & XU LLC**
(Saipan #25977-001-1)
**c/o LEHMAN, LEE & XU**
Edward Lehman
elehman@lehmanlaw.com
Jacob Blacklock
jblacklock@lehmanlaw.com
Suite 3313, Tower One, Times Square
1 Matheson Street, Causeway Bay, Hong Kong
Telephone:   (852) 3588-2127
Facsimile:   (852) 3588-2088

*Counsel for Plaintiff Lam in the Five Original N.D.
Cal. Related Actions*

23