**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON THE MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | MDL No. 3076 |

**INTERESTED PARTY THOMA BRAVO, LP'S RESPONSE**
**IN SUPPORT OF THE MOTION FOR TRANSFER**

Interested Party Thoma Bravo, L.P. ("Thoma Bravo"), pursuant to Panel Rule 6.2(e) and the Panel's March 20, 2023 minute order (ECF No. 74), submits this response in support ("Response in Support of Transfer") of the motion of Petitioners Garrison, Podalsky, Lindeen, Chernyavsky, Kavuri, Gallant, and Nicol ("Petitioners") for transfer of related actions arising out of the collapse of the FTX.com and FTX.us cryptocurrency trading platforms ("FTX Platforms") for coordinated or consolidated pretrial proceedings (ECF Nos. 1-3) ("Motion for Transfer").

**PROCEDURAL BACKGROUND**

Although not named in any of the actions originally scheduled by Petitioners in their Motion for Transfer, Thoma Bravo is a defendant in two potential tag-along actions subsequently identified in these proceedings:   (1) the now-consolidated action styled *In re FTX Investors Sequoia Capital Litigation*, No. 3:23-cv-00655-JSC (N.D. Cal.) ("*Sequoia Capital*"),[1] *see* (ECF No. 51); and (2) *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, No. 1:23-cv-20700 (S.D. Fla.) ("*O'Keefe*"), *see* (ECF No. 8).   In total, there are 17 FTX-related cases now subject to the pending Motion for Transfer (the "FTX Cases").   (ECF No. 73-1).   The *Sequoia Capital* action named three defendants:   Sequoia Capital Operations, LLC ("Sequoia"), Paradigm Operations LP ("Paradigm"), and Thoma Bravo.   The *O'Keefe* action named 19 defendants in total:   Sequoia, Paradigm, Thoma Bravo, and eight other private investors alleged to have invested in various capital raises by FTX Trading Ltd. and West Realm Shires Services, Inc. d/b/a FTX US (together, the "FTX Entities"), along with eight other defendants, including the FTX Entities' alleged banks, accountants, and legal counsel.

On March 10, 2023, Sequoia and Paradigm filed a brief in support of the Motion for Transfer (ECF No. 55) ("Sequoia and Paradigm's Brief"), arguing in favor of centralization

---

[1]    Two cases comprise the consolidated action—*Rabbitte v. Sequoia Capital Operations, LLC, et al.*, No. 3:23-cv-00655 (N.D. Cal.) and *Girshovich v. Sequoia Capital Operations, LLC, et al.*, No. 3:23-cv-000945 (N.D. Cal.).

because (1) the FTX Cases share common questions of fact since they arise out of the same allegations of the FTX Entities' misconduct, (2) centralization will promote the just and efficient conduct of the FTX Cases by eliminating the possibility of overlapping or inconsistent pretrial rulings, and (3) centralization will further the convenience of the parties and witnesses by streamlining discovery and mitigating the related burdens on the parties and courts involved. (ECF No. 55).  Prager Metis CPAs, LLC ("Prager Metis"), a defendant in the *O'Keefe* case, also filed a brief in support of the Motion for Transfer, (ECF No. 58), likewise detailing common issues of fact raised by the FTX Cases and explaining how centralization will serve the just and efficient conduct of these cases.

On March 20, 2023, the Panel entered a minute order closing briefing on the above-captioned matter and noting that "[p]arties in any potential tag-along action may file an Interested Party response . . . no later than the Thursday prior to the hearing session at which the motion for transfer is to be heard by the Panel."  (ECF No. 74).

On April 24, 2023, Patrick J. Rabbitte, a plaintiff in the *Sequoia Capital* action, filed an interested party response in opposition to the Motion for Transfer, (ECF No. 91), contending that, of all defendants in the FTX Cases, only Sequoia and Paradigm support MDL centralization, and arguing, in part, that the purported lack of support for centralization weighs against granting Petitioners' motion.  *Id.* at 1, 4.  On April 25, 2023, Mark Girshovich, the other plaintiff in the *Sequoia Capital* action, filed an interested party response in opposition to the Motion for Transfer, adopting the arguments in Rabbitte's brief.  (ECF No. 96).

Parties were required to file a notice of presentation or waiver of oral argument by May 1, 2023 or be deemed to have waived oral argument.  (ECF No. 86 at 2, 14).  Some parties who

2

had not previously filed briefs with respect to the Motion for Transfer submitted such notices identifying their position with respect to centralization.

To date, 19 parties in the FTX Cases expressly support centralization—14 plaintiffs and 5 defendants, including Thoma Bravo.   (ECF Nos. 1, 55, 58, 64, 73, 102, 106, 108-109). Defendant Golden State Warriors, LLC took no position as to centralization, but stated a preference for the Northern District of California as the MDL venue, should this Panel grant the Motion for Transfer.  (ECF Nos. 50, 99).  Twenty-three parties oppose centralization, including 13 plaintiffs and 10 defendants.  (ECF Nos. 52, 56-57, 59-61, 71, 81, 88, 90-92, 94, 96, 98, 100-101, 104-105, 107, 111-115).   And the 57 remaining parties, including 20 plaintiffs and 37 defendants, have made no submissions with respect to the Motion for Transfer.

### ARGUMENT

For the reasons stated in Sequoia and Paradigm's Brief, which Thoma Bravo joins, and as further explained below, Thoma Bravo respectfully submits that the Panel should centralize the FTX Cases for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.

The FTX Cases are brought by substantially overlapping plaintiff classes against various constellations of defendants in an effort to recoup alleged losses flowing from the conduct and collapse of the FTX Entities.   Notably absent from the FTX Cases are the FTX Entities themselves, which are protected from suit outside of bankruptcy court during the pendency of their bankruptcy proceedings.   These are precisely the circumstances under which actions involving multiple defendants should be centralized given the significant overlap in the central factual issues, parties, proposed classes, and claims. *See In re Jan. 2021 Short Squeeze Trading Litig.*, MDL No. 2989, 2021 WL 1258399, at *2 (J.P.M.L. Apr. 2, 2021) (granting centralization where (1) "[a]ll the actions in this litigation arise from the trading restrictions imposed by the on-

line trading platforms," (2) the actions "will entail common discovery of Robinhood, other broker defendants, and the various institutional investor and clearinghouse defendants," and (3) "there is significant overlap in the putative classes asserted in these actions, most of which include all Robinhood users affected by the trading restrictions"); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.* ("*In re AMCA*"), 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (granting centralization in a single MDL encompassing multiple defendants where there was "significant overlap in the central factual issues, parties, proposed classes, and claims" in cases stemming from the same data breach by an entity in bankruptcy).

First, the FTX Cases present numerous common questions of fact. These cases all arise out of the same allegations of wrongdoing by the FTX Entities. Although they assert various statutory and common law theories of liability, all of the complaints include claims sounding in fraud and misrepresentation. Foundational questions of fact in all of the FTX Cases will include when the FTX Entities began their alleged misuse of customer assets and other alleged misconduct, who was involved, how FTX concealed its conduct, what information about FTX's conduct was available, to whom such information was available, and when that information was available to them. These common questions of fact will be relevant to a myriad of defendant-specific inquiries, including as to the knowledge and intent to deceive elements of many of plaintiffs' fraud- and misrepresentation-based claims. And, because the FTX Entities' conduct is central here, "[a] single, multi-defendant MDL also will facilitate more efficient coordination with the [FTX Entities'] bankruptcy proceeding, in which the parties' anticipated discovery of [those entities] likely would take place." *In re AMCA*, 410 F. Supp. 3d at 1353.

Further, all but two of the FTX Cases are putative class actions that involve substantially overlapping plaintiff classes, composed overwhelmingly of FTX Platform users who allege

losses resulting from their use of and alleged inability to access funds on those platforms as a result of the FTX Entities' collapse and bankruptcy petitions in November 2022. *Compare O'Keefe* Compl. ¶ 180 (putative class composed of "all natural persons and entities who purchased, deposited and/or transacted Class Member funds in accounts on the FTX platform any time after May 1, 2019, through FTX's collapse on November 11, 2022, the date on which it filed for bankruptcy, and have been harmed by Defendants' conduct alleged herein") *with Rabbitte* Compl. ¶ 1 (putative class composed of "all persons and entities other than Defendants that purchased, deposited, and/or transacted in fiat currency or digital assets in accounts with West Realm Shires Services Inc. d/b/a FTX US . . . or FTX Trading LTD . . . between July 20, 2021 and November 11, 2022") *with Papadakis* Compl. ¶ 103 (putative class composed of "all persons other than Defendants that have deposited funds and/or assets in accounts . . . with FTX Trading LTD d/b/a FTX . . . or West Realm Shires Services Inc. d/b/a FTX US . . . and who have been unable to access or withdraw the deposited funds and/or assets in the Accounts").[2] Among other things, this overlap implicates common questions of fact across cases regarding plaintiffs' use of the FTX Platforms as it relates to class certification, causation, and damages.

"[C]rucially, the conflicting and overlapping class allegations contained in the complaints raise the indubitable possibility of inconsistent class determinations by courts of coordinate jurisdiction." *In re Roadway Express, Inc. Emp. Pracs. Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974). "Unless these conflicting overlapping claims of class representation are presented to one judge, inconsistent determinations might result." *In re Value Line Special Situations Fund Litig.*,

---

[2]   These putative classes also overlap with the putative class in an adversary proceeding brought directly against the FTX Entities and certain related parties and insiders pending in the FTX bankruptcy proceedings. *See Onusz, et al. v. West Realm Shires Inc., et al.*, No. 22-50513 (Bankr. D. Del.) Compl. ¶¶ 3, 181 (putative class composed of "millions of customers of the FTX Group who deposited cash and digital assets at either or both the FTX Group's U.S.-based and non-U.S.-based trading platforms have been unable to withdraw, use or access the billions of dollars in assets that were contractually required to be held safely in accounts on their behalf (the proposed 'Customer Class') since shortly before [the FTX bankruptcy proceedings]").

334 F. Supp. 999, 1000 (J.P.M.L. 1971).   The Panel regularly grants centralization requests where, as here, cases involve overlapping putative classes.  *See, e.g.*, *id.*; *In re RealPage, Inc., Rental Software Antitrust Litig.*, MDL No. 3071, 2023 WL 2875737, at *1 (J.P.M.L. Apr. 10, 2023); *In re Hair Relaxer Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 3060, 2023 WL 1811836, at *2 (J.P.M.L. Feb. 6, 2023); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 344 F. Supp. 2d 755, 756 (J.P.M.L. 2004); *In re Roadway*, 384 F. Supp. at 613.  Here, too, centralization will eliminate the possibility of conflicting class certification rulings. Centralization therefore is essential to the just and efficient conduct of the FTX Cases.

Despite Rabbitte's contentions otherwise, *see* (ECF No. 91 at 2-5), "declining to centralize this litigation would not resolve the complexities presented by managing cases involving multiple defendants . . . ."  *In re Hair Relaxer*, 2023 WL 1811836, at *2.  Nor is it superior to reshuffle the claims in the FTX Cases by defendant into separate proceedings where, as here, plaintiffs largely appear to "assert indivisible claims against the defendants . . . ." *Id.* at n.4.  There can be no fair and orderly adjudication of these actions if they are litigated in disparate proceedings, on different courts' timetables, with the risk of conflicting rulings on the same core issues of fact and law.  "Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary." *In re High Sulfur Content Gasoline*, 344 F. Supp. 2d at 757.

For the foregoing reasons and those stated in Sequoia and Paradigm's Brief, the FTX Cases meet the requirements for transfer under 28 U.S.C. § 1407 and should be centralized for coordinated or consolidated pretrial proceedings.

Dated: May 5, 2023

*/s/ Anna Terteryan*
Mark McKane, P.C. (SBN 230552)
mark.mckane@kirkland.com
Anna Terteryan (SBN 300368)
anna.terteryan@kirkland.com
Stephen Silva (SBN 335865)
stephen.silva@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Interested Party*
*Thoma Bravo, LP*