1               UNITED STATES JUDICIAL PANEL
                ON MULTIDISTRICT LITIGATION
2                       -  -  -

3    IN RE:  FTX CRYPTOCURRENCY          MDL NO.
     EXCHANGE COLLAPSE LITIGATION        3076
4

                        -  -  -
5

6        Transcript of proceedings on May 25, 2023
      James A. Byrne U.S. Courthouse, Philadelphia, PA 19106

7                       -  -  -

8    BEFORE:   HONORABLE KAREN K. CALDWELL, CHAIR
               United States District Court
9              Eastern District of Kentucky

10             HONORABLE NATHANIEL M. GORTON
               United States District Court
11             District of Massachusetts

12             HONORABLE MATTHEW F. KENNELLY
               United States District Court
13             Northern District of Illinois

14             HONORABLE DAVID C. NORTON
               United States District Court
15             District of South Carolina

16             HONORABLE ROGER T. BENITEZ
               United States District Court
17             Southern District of California

18             HONORABLE DALE A. KIMBALL
               United States District Court
19             District of Utah

20             HONORABLE MADELINE COX ARLEO
               United States District Court
21             District of New Jersey

22                      -  -  -

23             Cherilyn M. McCollum, CCR-NJ, RPR
                    Official Court Reporter
24
     Proceedings taken stenographically and prepared utilizing
25   computer-aided transcription

```
 1   APPEARANCES:

 2   For Moving          Boies Schiller Flexner LLP
     Plaintiffs:         David Boies, Esquire
 3                       Adam Moskowitz, Esquire
                         Armonk, NY
 4

 5   For the Six         Latham & Watkins LLP
     Celebrity           Andrew B. Clubok, Esquire
 6   Defendants:         Washington, DC

 7
     For Plaintiff       Kaplan Fox & Kilsheimer LLP
 8   Julie Papadakis:    Laurence D. King, Esquire
                         Oakland, CA
 9

10   For Plaintiff       Robbins Geller Rudman & Dowd LLP
     Patrick J.          Stuart A. Davidson, Esquire
11   Rabbitte:           Boca Raton, FL

12
     For Defendants      Cleary Gottlieb Steen & Hamilton LLP
13   Sequoia Capital,    Rishi Zutshi, Esquire
     et al:              New York, NY
14

15   For Plaintiff       Girard Sharp LLP
     Matson Magleby:     Daniel Girard, Esquire
16                       San Francisco, CA

17
     For Defendants      Sheppard Mullin Richter & Hampton LLP
18   Silvergate Bank,    John M. Landry, Esquire
     et al:              Los Angeles, CA
19

20   For Plaintiff       Fishman Haygood, LLP
     Connor O'Keefe:     Kerry J. Miller, Esquire
21                       New Orleans, LA

22
     As Receiver for     Federal Deposit Insurance Corporation
23   Defendant           Rosemary Q. Barry, Esquire
     Signature Bank:     New York, NY
24

25                            -   -   -
```

1                (Proceeding commences at 10:20 a.m.)

2         JUDGE CALDWELL:  The Panel will now turn to MDL 3076,

3    the FTX Cryptocurrency Exchange Collapse Litigation.

4         Mr. Boies.

5         MR. BOIES:  Thank you, Your Honor.  May it please the

6    Court, my name is David Boies from Boies Schiller Flexner.  I

7    represent the plaintiffs in the Southern District of Florida

8    litigation.

9         This proposed MDL involves more than a dozen lawsuits,

10   more than two dozen lawsuits, I believe, more than a dozen

11   defendants, more than two dozen plaintiffs.  They are in the

12   Northern District of California; they're in Florida; they're in

13   New Jersey; they're in New York.  There are four different

14   kinds of defendants.  There are the FTX insiders; there are the

15   FTX promoters; there are the FTX professional servicers, like

16   accountants and lawyers; and there are the FTX financiers, like

17   banks, hedge funds, private equity firms.

18        Now, the cases against these four groups of defendants

19   have a substantial number of issues that overlap and are the

20   same, but they also have a substantial number of issues that

21   are peculiar to the particular kind of defendant.  And I think

22   one of the things that the Panel is going to need to consider

23   is, if you consolidate, do you consolidate all in front of one

24   court, perhaps with individual tracks?  Do you consolidate some

25   in one court, some in another court?  But I think it is

1   important to keep in mind, while there is a tremendous amount

2   of overlap for all the cases that are common, there's also a

3   very substantial amount of overlap that goes to particular.

4        We think that the Southern District of Florida is

5   substantially the best forum.  It is the place where the first

6   cases were filed.  It is the only forum where all four of the

7   groups of defendants are present now.  There were promoters

8   present in the Northern District of California, but they were

9   dismissed voluntarily I think just yesterday.  It is a district

10  that has a number of experienced judges.  It's moving its

11  docket fast.  There have been a number of developments there.

12  We've reached --

13        JUDGE CALDWELL:  You can finish your thought.

14        MR. BOIES:  We've reached an initial settlement with

15  one of the insiders to get their cooperation.  It's now going

16  to be presented to the Court for approval, so it's moving

17  along.

18        JUDGE CALDWELL:  Judge Kennelly.

19        JUDGE KENNELLY:  So the principal argument against is

20  it's too unwieldy because it's so far flung.  I'd like to hear

21  what you have to say about that.  But the second and related

22  point, which I'll just give now, is you made allusions of the

23  possibility of not sending it all to one judge.  If you were

24  going to do that, how would you divvy it up?

25        MR. BOIES:  Well, I think that you have the promoters

1   and you have the insiders.  And I think that if you were

2   going -- if you were going to separate out people, you might

3   separate out the financiers and you might separate out the

4   professional servicers.  My own view is that it's better off

5   with one judge perhaps with different tracks.

6          JUDGE KENNELLY:  So what about the unwieldiness

7   argument then?

8          MR. BOIES:  Your Honor, I just got finished with Judge

9   Proctor in Blue Cross Blue Shield with 37 separate companies

10  all across the country.

11         JUDGE KENNELLY:  So basically what you're saying is a

12  good judge can get it done.

13         MR. BOIES:  A good judge can get it done.  And that's

14  the purpose of the Multidistrict Panel is to take these

15  unwieldy cases.  Think how more unwieldy it is if you don't

16  consolidate.

17         These are overlapping class actions.  You are going to

18  have a class action with the same defendants, the same

19  plaintiffs, the same issues, the same class members going on

20  racing each other to judgment.  And, of course, we're going to

21  try to get there first.  They're going to try to get there

22  first.  I can't think of a worse thing.

23         JUDGE GORTON:  Why shouldn't the case go to Judge

24  Corley in the Northern District of California who already has

25  ten of these cases?

1          MR. BOIES:  There are an equal number of cases in the

2   Southern District of Florida.  And I think Judge Corley is a

3   terrific judge, Your Honor, but the Southern District of

4   Florida is where FTX had its U.S. headquarters; it is where the

5   first cases were filed; it is where the cases have made the

6   most progress.  It's the only place that all four types of

7   defendants are currently present.  And it also has some very

8   good judges as well.

9          JUDGE CALDWELL:  Okay.  Other questions?

10          Thank you.

11          MR. BOIES:  Thank you, Your Honor.  And on rebuttal my

12   colleague, Mr. Moskowitz --

13          JUDGE CALDWELL:  We will hear from him in a moment.

14          Mr. Clubok.

15          MR. CLUBOK:  Good morning, Your Honors.  Andrew

16   Clubok, Latham & Watkins LLP.  I'll be speaking on behalf of

17   some of the defendants in the case that Mr. Boies first

18   brought, the first *Garrison* case that Mr. Garrison brought,

19   Mr. Boies, in Florida, Thomas Brady, Gisele Bundchen, Lawrence

20   David, Kevin O'Leary, David Ortiz, and William Lawrence.

21          Your Honors, I'm not going to repeat what's in our

22   briefs.  I think we've laid out how there are individual

23   issues, not common issues, that predominate over these

24   different cases.  There will not be convenience benefits,

25   certainly not to bringing the case to Florida, because almost

1  none of the parties live there and there's no witnesses there.

2  And this notion that FTX had its headquarters there, my

3  understanding is that FTX announced they were going to move

4  their headquarters there before the bankruptcy and then never

5  did.  There are certainly not a trove of witnesses there

6  somehow unique to that area.  In fact, a number of the

7  defendants in our case have filed personal jurisdiction motions

8  to dispute that there's even any jurisdiction over them in

9  Florida.

10          And in terms of judicial efficiency, it's not going to

11  be advanced by consolidation.  And in Petitioner's own motion

12  and in their own conduct since, they reveal this.

13          So on pages 1 and 12 of their petition they note that

14  the cases that my clients are in, the *Norris* and the several

15  cases that have all now been consolidated into *Norris* and are

16  being handled in front of Judge Moore, as Mr. Boies said on

17  page 1 of the petition, it is proceeding expeditiously and

18  efficiently, and on page 12 he said it was well-organized.

19  That's because these cases that are just narrow-cast focused on

20  some individuals who did advertisements on behalf of FTX, and

21  there will be issues about what those particular advertisements

22  said, whether there is First Amendment issues governing the

23  words that were spoken, whether there could be causation

24  between those ads and some kind of harm, whether there is

25  reliance for those particular words, those issues have nothing

1  to do with what I gather from these cases against financial

2  institutions and other entities, and you'll hear from, you

3  know, folks who represent those.  But the *Norris* -- I'm sorry,

4  the *Garrison* case that was first filed in Florida has nothing

5  to do with so many or at least, I should say, the individual

6  issues predominate.

7          Now, since --

8          JUDGE CALDWELL:  Finish your thought.

9          MR. CLUBOK:  Since this petition was filed,

10  Mr. Garrison, Mr. Boies filed another case in Florida.  They

11  did not even mark it related to their own *Garrison* case that

12  was already pending in Florida.  And yet they say to you we

13  need you to help do multidistrict treatment in order to somehow

14  combine these cases that are already pending in the same

15  district and that they could have used the procedures of filing

16  related cases if they really believed they were related, but

17  they filed an attestation they were not.

18          JUDGE CALDWELL:  You've exhausted your time.

19          Questions for counsel?

20          Thank you very much.  We have your argument.

21          MR. CLUBOK:  Thank you.

22          JUDGE CALDWELL:  Laurence King.

23          MR. KING:  Good morning, Your Honors.  Laurence King

24  from Kaplan Fox on behalf of plaintiff Julie Papadakis and the

25  other Lam plaintiffs in the Northern District of California.

1          Your Honors, our position is that we oppose

2    centralization of the FTX cases because it is not needed.

3    Nearly all of the cases before the Panel are pending in two

4    courts, the Northern District of California and the Southern

5    District of Florida, as you have heard.

6          You heard other districts mentioned.  There is one

7    case in each of those districts.  I think Southern District of

8    New York and District of New Jersey, I believe one of which is

9    an individual case and not a class action.

10          In the Northern District of California Judge Corley

11    has already consolidated the cases against certain subgroups of

12    defendants.  Making progress, we have a case management

13    conference scheduled soon.  You've heard about the prognosis in

14    the Southern District of Florida.  In other words, the parties

15    are doing what they should be doing and coordination is

16    working.

17          The Panel has noted in other cases, in multiple cases,

18    that voluntary coordination and cooperation is a preferred

19    alternative to centralization, and we think we're well down

20    that path.  The plaintiffs in all the cases -- our office

21    convened a video conference to discuss coordination to avoid

22    things like duplicative discovery.  And the Panel has also

23    noted there are other devices available to lawyers and courts,

24    such as 1404 transfers, first-filed motions to stay subsequent

25    cases, voluntary dismissals to organize the cases, work

1  together.  I believe experienced counsel and experienced judges

2  can and should do that, and I think this case is ripe for it

3  because of the different subgroups of defendants that you've

4  heard about.

5       However, should the Panel decide to centralize these

6  cases, we believe the Northern District of California is the

7  best choice.  The majority of cases that are there.  It has the

8  majority of support among people who have weighed in with the

9  Panel.  Judge Corley is very experienced, and as I've noted,

10  she has shown the ability to start to move these cases, get

11  things consolidated and get things moving.

12       JUDGE CALDWELL:  Thank you, counsel.

13       MR. KING:  Thank you.

14       JUDGE CALDWELL:  Questions for counsel?

15       Thank you.  We have your argument.

16       MR. KING:  Thank you.

17       JUDGE CALDWELL:  Stuart Davidson.

18       MR. DAVIDSON:  Good morning, Your Honors.  My name is

19  Stuart Davidson from the Robbins Geller law firm, Boca Raton,

20  Florida, on behalf of the consolidated plaintiffs in the *In re*

21  *FTX Sequoia Litigation*, which has already been consolidated

22  before Judge Corley and is proceeding along.

23       I could not agree more than with what Mr. Clubok said

24  about the distinctions between these types of cases.  There is

25  simply no factual overlap whatsoever between, for example, the

1  cases against the venture capital firms, like Sequoia Capital

2  in my consolidated cases, and the promotors or influencers or

3  celebrities as they are called in multiple different papers.

4  And I think that is so stark that it really defeats the purpose

5  of a multidistrict litigation in this case.

6        Now, Mr. Boies mentions the idea of maybe different

7  MDLs for different sets of tracks, if you will.  That doesn't

8  make any sense, at least for my case, which is the Sequoia

9  cases I will call them.  There are only three cases against

10  Sequoia -- three of them are in the Northern District of

11  California -- the consolidated case that I am interim class

12  counsel for, a brand-new case called *Cabo* that was filed in the

13  Northern District of California, and this case called *O'Keefe*

14  filed in the Southern District of Florida.  Now, putting aside

15  the fact that there is not a single connection to Florida in

16  that *O'Keefe* case, none of the defendants are in Florida,

17  Mr. O'Keefe is from Mississippi, there was no reason for that

18  case to be filed in the Southern District of Florida, and he

19  also names a whole bunch of defendants, but he does name

20  Sequoia Capital.  And there are other tools in the district

21  court's toolbox, as we put in our papers, to be able to sever

22  those claims against Sequoia and transfer them or to stay under

23  the first-filed rule.

24        Judge Kennelly, you mentioned that in MDL 60 days is a

25  blink of an eye in these cases, and I couldn't agree more.  And

1  that really is the main focus of my argument here, which is, if

2  you centralization the Sequoia cases, I can guarantee that a

3  case that would take maybe 18 to 24 months to resolve is going

4  to take three to four years to resolve.  That is not fair to

5  the plaintiffs.  That is not fair to the defendants.  It

6  defeats the purposes -- the express purposes of 1407 and

7  Federal Rule 1:  just, efficient, speedy resolution of a case.

8  MDL'ing the Sequoia cases simply would not result in that.

9          Thank you.

10          JUDGE CALDWELL:  Questions for counsel?

11          Yes.  Go ahead.

12          JUDGE KENNELLY:  Is there anybody who has sued

13  multiple groups of defendants, like yours plus others, in a

14  case?

15          MR. DAVIDSON:  The *O'Keefe* case is the perfect

16  example.  It was really a kitchen-sink complaint.  The *Cabo*

17  case is interesting because it sues Sequoia as well as I think

18  an accounting firm.  So I recognize there are some

19  complications there.  I think severance and transfer or

20  severance and stay is the best way to handle those cases,

21  but --

22          JUDGE KENNELLY:  Are any of these far enough along

23  where somebody has filed a motion to sever anything?

24          MR. DAVIDSON:  Not yet.  No.

25          JUDGE KENNELLY:  That's it.

```
 1            MR. DAVIDSON:   Thank you.

 2            JUDGE CALDWELL:   Other questions?

 3       Thank you.

 4            MR. DAVIDSON:   Thank you very much.

 5            JUDGE CALDWELL:   Rishi Zutshi.   Am I pronouncing that

 6  correctly?

 7            MR. ZUTSHI:   That was perfect.

 8            Good morning.   May it please the Panel, Rishi Zutshi,

 9  Cleary Gottlieb, on behalf of Sequoia Capital Operations.

10  Sequoia have been named as a defendant in four different

11  FTX-related actions.   Two, as you have heard, have been

12  consolidated in the Northern District, there is a third in the

13  Northern District, and the fourth in Southern District of

14  Florida.   We're here in support of transferring consolidation,

15  as are the majority of the defendants who are similarly

16  situated in those cases.   I think it's five out of six that

17  have expressed a viewpoint, have expressed support.

18            I'll just focus very quickly on two issues.

19            First, we've heard plaintiffs who -- and those

20  plaintiffs and Cabo, I think, supports the MDLs as well, but

21  the other plaintiffs, we have heard them talk about differences

22  in the claims here.   I think that really misses the point.   The

23  fundamental fact here is that all of these cases arise out of

24  FTX's misconduct.   And nearly all the claims against all of the

25  different tracks of defendants that we've heard about are
```

1  premised on the notion that defendants did something to aid or

2  otherwise participate in FTX's misconduct.  So the facts and

3  circumstances of what FTX's misconduct was is going to be key

4  to the resolution of all of these cases.  And that is why this

5  is a classic example of an MDL case.  It is, you know, seen,

6  you know, going back maybe 20-some years, MDLs coming out of

7  WorldCom, Enron, Adelphia, more recently the Robinhood cases

8  after the January 2021 short squeeze.  Where there is an

9  underlying central financial fraud and then there's litigation

10 that comes out of it, it makes perfect sense to coordinate.

11        If there are any doubt about that -- one of the -- in

12 fact, plaintiff whom you just heard from in the Northern

13 District, before they opposed the centralization here, in a

14 filing that they made supporting consolidation of two cases in

15 the Northern District, they actually said, and I quote, that

16 these cases should be before one judge because they -- this is

17 the quote -- because they concern substantially the same

18 parties, property, transaction, or event, and -- and I quote

19 again -- there would be unduly burdensome duplication of labor

20 and expense or conflicting results if the cases are conducted

21 before different judges.

22        The other point I'll note very quickly is that we've

23 also heard them talk about the differences in the defendants.

24 Having different but overlapping defendants is not a bar to an

25 MDL.  In fact, counsel is in favor it here.  The Court has

1  noted in Robinhood, and I think this happened with good

2  effect --

3          JUDGE CALDWELL:  Time is up.

4          MR. ZUTSHI:  -- that there were tracks for different

5  types of defendants.

6          Thank you very much.

7          JUDGE ARLEO:  Do you feel strongly about which

8  district if we were to consolidate?

9          MR. ZUTSHI:  No, Your Honor.  We haven't taken a

10 position on the district.  I think there are able jurists who

11 handle and manage these cases effectively in either of the

12 districts that we've heard about.

13         JUDGE CALDWELL:  Other questions?

14         Thank you.

15         MR. ZUTSHI:  Thank you.

16         Mr. Girard.

17         MR. GIRARD:  I'm here on behalf of the plaintiffs in

18 three Silvergate cases in the Northern District of California.

19 My name is Daniel Girard.  I'm representing a client who has a

20 name out of Charles Dickens, Matson Magleby.

21         So I think the gentleman before me, my colleague, was

22 quoting from my brief.  I'm not certain of that.  We initially

23 supported this motion.  We came to see that we -- we concluded

24 our position was erroneous based on the developments in front

25 of Judge Corley.  She granted on April 19th a stipulation

1  consolidating our cases.  A consolidated complaint was timely

2  filed on May 19th and we have a response date, so we're moving

3  forward at pace.  There has not been the multiplicity of cases

4  that I expected, and so we have a case that can go to judgment

5  independently of all these other cases, the three Silvergate

6  Bank cases.

7          And our case is very simple.  Silvergate was not a

8  lender.  It was simply acting as banker.  Our case is an aiding

9  and abetting case.  We will either prove bank knowledge plus

10  substantial assistance or we won't.  That's it.  And we don't

11  need any discovery from anybody other than our bank and some

12  discovery from the estate.  In a case like this, typically the

13  trustee will make that discovery available on the same terms to

14  all parties.  So there's no one who needs discovery of us

15  beyond our defendant and we don't need discovery from anybody

16  else.  We don't have any overlapping issues.  We can try our

17  case without any other participation from any other defendant

18  or any other plaintiff in this case.  So we have nothing to

19  gain.  We've moving forward in front of Judge Corley.

20          We would urge you to deny this motion.  If you grant

21  the motion, we would ask that you leave the Silvergate cases

22  out.  Or if you choose to include the cases, we would ask that

23  you send the litigation to the Northern District of California

24  and assign it to Judge Corley, who is well-equipped to handle

25  the cases and has already begun doing that on a comprehensive

1   basis.

2          JUDGE CALDWELL:  Questions for Mr. Girard?

3          Thank you very much.

4          MR. GIRARD:  Thank you all.

5          JUDGE CALDWELL:  John Landry.

6          MR. LANDRY:  John Landry of Sheppard Mullin for the

7   Silvergate Bank defendants.

8          We heard petitioners' counsel talk about multiple

9   tracks and multiple MDLs.  Well, what track would be for

10  Silvergate?  We'd have to call it the Silvergate track because

11  the issues related to Silvergate are so Silvergate-specific.

12  There are only two cases pending against Silvergate:  the

13  consolidated case in the Northern District of California and

14  the *O'Keefe* case, the kitchen-sink case in Florida.  That's it.

15  There is not one plaintiff that is suing Silvergate that

16  supports transfer in this action.

17         The other issue is this:  Silvergate is winding down

18  its operations.  It is voluntarily liquidating.  That

19  liquidation process is actively underway under close

20  supervision of state and federal regulators.  Placing

21  Silvergate into an MDL at this time will only increase the

22  complexity of litigation and increase the cost to Silvergate.

23  And most importantly, on page 2 of petitioners' reply, they

24  acknowledge that including Silvergate in the MDL there is a

25  possibility that that will not advance the objectives of 1407

1  transfer, and they argue as an alternative position that there

2  would be a transfer that would exclude Silvergate.  And so they

3  are talking about multiple tracks, and yet they're saying they

4  can envision a scenario in which Silvergate is not among those

5  tracks, and I would ask the Panel that that happen.

6          JUDGE CALDWELL:  Yes.

7          JUDGE KENNELLY:  In the cases in which Silvergate

8  defendants are sued, are those other defendants named in those

9  cases?

10          MR. LANDRY:  In the Northern District, no.  It's just

11  the Silvergate defendants.  There are in the *O'Keefe* case --

12          JUDGE KENNELLY:  That's the Florida case?

13          MR. LANDRY:  -- 20-plus defendants.  That's the

14  kitchen-sink case.

15          JUDGE KENNELLY:  Thanks.

16          JUDGE CALDWELL:  Other questions?

17          Thank you.

18          MR. LANDRY:  Thank you.

19          JUDGE CALDWELL:  Kerry Miller.

20          MR. MILLER:  Good morning, Your Honors.  Kerry Miller

21  on behalf of the Connor O'Keefe plaintiffs, the so-called

22  kitchen-sink complaint.  We like to call it comprehensive.

23          Your Honors, the notion that's been hit on, there's

24  just not enough overlap to justify centralization in this

25  matter, we're going to -- I'm going to talk to you from the

1  perspective of my plaintiff, my client, Connor O'Keefe, a young

2  man who lost a substantial portion of his savings in this

3  collapse.  There is no overlap.  With our case, call it

4  comprehensive, it doesn't involve celebrities at all.  It

5  doesn't involve any of the celebrities or any of the claims of

6  the celebrities or any of the elements or discovery that

7  related to the claims of the celebrities asserted by the

8  movants.

9        We know this MDL -- we know this case, these cases

10 arising out of the FTX collapse will be long, hard, and

11 complex.  Centralization will make them longer, harder, and

12 more complex.  There's no doubt about that.  When you think

13 about what MDLs can do to aid efficiency in litigation in cases

14 like this, you start off sometimes with the master complaint.

15 You could never draft a master complaint in this case.  There

16 is not enough overlap amongst the claims and the parties to

17 conceivably draft a master complaint that could be useful.

18        Rule 12 practice.  The claims and defendants are

19 entirely different.  There is no efficiency to be gained by

20 having one judge entertain multiple Rule 12 motions involving

21 entirely different claims, entirely different defendants, based

22 on entirely different state law.

23        Discovery.  No efficiency to be gained by way of

24 common discovery, like you would do in MDL where you do have

25 substantial overlap.  There is just not enough overlap here in

1   the limited number of cases involved primarily in two

2   jurisdictions.

3        Lastly, the same would apply to summary judgment as

4   you tick down the list of what an MDL judge to aid in

5   efficiency.

6        Same would apply to experts if the MDL judge in this

7   case were to analyze Daubert or do any things like that.  There

8   is just not enough overlap to benefit the parties to the

9   litigation, our party particularly being a young man who lost

10  substantial portion of his savings.

11       JUDGE CALDWELL:  Questions?  Yes.

12       JUDGE BENITEZ:  Assume hypothetically that we decided

13  to consolidate.  How do you feel about excluding Silvergate

14  from the -- Silvergate Bank from the consolidation?

15       MR. MILLER:  Yeah, I mean, there are some practical

16  realities arising from fallout of this, and Silvergate Bank

17  could be excluded from consolidation.  There are just some

18  practical realities that would defeat the efficiency even more

19  if there were consolidation, such as dealing with receivership,

20  and I think the FDIC lawyer will speak after us, so maybe there

21  will be some questions along those lines.  But, yes, I think

22  they could be carved out.

23       JUDGE KENNELLY:  So you haven't sued the celebrity

24  defendants, but you have sued other defendants or groups of

25  defendants that are named in other cases, right?

```
 1            MR. MILLER:  Correct.

 2            JUDGE KENNELLY:  And I mean, the theory of this, and

 3    again, I'm speaking in broad terms, one was aiding and abetting

 4    except the insiders.  Where I come from, when you try to prove

 5    an aiding and abetting claim, you got to prove the underlying

 6    misconduct.

 7            MR. MILLER:  Right.

 8            JUDGE KENNELLY:  So how can you say there's no

 9    overlap?  You got overlapping defendants and you got

10    overlapping underlying misconduct.  You said "no overlap" at

11    least three times.

12            MR. MILLER:  There is -- underlying misconduct might

13    be the one common issue.  But with respect to the celebrities

14    versus our cases, aiding and abetting under common law, that's

15    where the overlap ends.  That is where the overlap ends.

16            Given the bankruptcy --

17            JUDGE KENNELLY:  Well, except to the extent that you

18    sued defendants that are also named in other cases.

19            MR. MILLER:  Yes, to an extent.  But given the

20    bankruptcy and the criminal proceedings, I don't think it's

21    going to be difficult to prove the underlying conduct.  That

22    might be one percent of the effort.

23            JUDGE ARLEO:  How can you say there is going to be no

24    overlap on discovery even on a conspiracy theory on your

25    defendants between your case and the other cases?
```

1          MR. MILLER:  What I was referring to was the movants'

2     cases, the celebrity cases.  Yes, there would be overlap

3     between -- to the extent that we have common defendants --

4          JUDGE ARLEO:  Everything.  Carving out the celebrities

5     would be --

6          MR. MILLER:  There will be overlap.  And as Mr. King

7     noted, the plaintiff lawyers have already gotten on Zooms and

8     have thought about coordination.  But we don't need MDL

9     consolidation.

10          JUDGE CALDWELL:  Other questions?

11          Thank you for your argument.

12          MR. MILLER:  Thank you.

13          JUDGE CALDWELL:  Rosemary Barry.

14          MS. BARRY:  Good morning, Your Honors.  I'm Rosemary

15     Barry from the FDIC Legal Division on behalf of FDIC as the

16     receiver for Signature Bank.

17          JUDGE BENITEZ:  I'm sorry.  Could you speak into the

18     microphone.

19          JUDGE CALDWELL:  Maybe turn it toward you.

20          MS. BARRY:  My apologies, Your Honors.

21          Good morning, Your Honors.  Rosemary Barry from the

22     FDIC Legal Division on behalf of the FDIC as a receiver for

23     Signature Bank, which is a defendant in the *Statistica Capital*

24     *v. Signature Bank* case pending in the Southern District of New

25     York.

1        There are three reasons why the *Statistica* action is

2   unique and should not be included in any transfer order that

3   the Panel may enter.  First, the *Statistica* action is the only

4   action involving Signature Bank, a bank that was closed in

5   March of this year and is currently in an FDIC receivership.

6   As a result, that case is currently stayed pending the

7   exhaustion of a mandatory administrative claims process by the

8   *Statistica* plaintiffs.  As we explained in our interested party

9   response, depending on when a claim is filed, that process can

10  take as long as up until early next year.  Until that process

11  is complete, no court may assert jurisdiction over the claims

12  in the *Statistica* action or order discovery in the action.  For

13  that reason, it would be not efficient to include it in any

14  proposed MDL.

15        Second, the parties at issues in the *Statistica* action

16  are unique.  There is no overlap between the parties in the

17  *Statistica* case and any of the other cases.  Signature is

18  currently only a defendant -- or, I'm sorry, the FDIC as

19  receiver of Signature Bank is currently only a defendant in the

20  *Statistica* action.  Plaintiffs' theory of liability is that

21  Signature Bank facilitated FTX's fraud by allowing monies that

22  they intended to deposit with FTX to be transferred to Alameda.

23  As a result, the focus of discovery will be different and very

24  focused on Signature Bank, the specific banking transactions at

25  issue, the contractual relationship with plaintiffs, and

 1  Signature Bank's alleged knowledge of FTX's fraud.

 2          In addition, the law is different in the *Statistica*

 3  action.  New York law applies there, unlike in any other case,

 4  and the FDIC receiver will have unique federal defenses,

 5  including the defense that every class member must exhaust the

 6  administrative claims process as a prerequisite to judicial

 7  review.

 8          And finally, even the movants in their reply papers

 9  conceded that if the Panel were to determine that it would not

10  be efficient to include Signature Bank in the MDL that it would

11  support its exclusion.

12          Thank you, Your Honors.

13          JUDGE CALDWELL:  Questions?

14          JUDGE ARLEO:  Do you take any position on Silvergate?

15          MS. BARRY:  I read Silvergate's papers, and it sounds

16  like their issues are very -- that we're in a similar position

17  in that it is an aiding and abetting claim against the bank

18  that will specifically focus on the specific banking

19  transactions and the bank's alleged knowledge of FTX's fraud

20  based on its know-your-client, anti-money laundering practices,

21  and that is going to require highly individualized discovery of

22  Silvergate.  So there's really no overlap.  It will be

23  specifically focused on the individual defendant.

24          JUDGE ARLEO:  Thank you.

25          JUDGE CALDWELL:  Other questions?

1          Thank you very much.

2          MS. BARRY:  Thank you, Your Honor.

3          Now we'll hear rebuttal from Mr. Moskowitz.

4          MR. MOSKOWITZ:  Good morning, Your Honors.  Adam

5  Moskowitz on behalf of the movant for the Southern District of

6  Florida.  I am just going to have three quick points.

7          Some of the plaintiffs' lawyers you heard today are

8  wonderful, and a lot of them are my friends and the plaintiffs

9  are going to be lucky to have all of them.  Dan and Stuart,

10  they are all great lawyers.  Mark Lanier as well.  And there's

11  a reason that Mark Lanier filed papers saying he filed in the

12  Northern District of California but he supports Miami.  Because

13  what we've learned in the last eight months is Miami served as

14  the headquarters for FTX and the Miami Arena was the focal

15  point of most of the fraud.  And he explains in detail Dan

16  Friedberg, who is the former chief compliance officer of FTX,

17  he gave an affidavit in our recent complaint that we filed

18  before Judge Moore where he said everything originated from

19  Miami.  Before they moved their headquarters there, they had an

20  office there, and that's where they focused everything.  They

21  flew people down, they flew third parties down so they could

22  see the FTX Arena insignia, and that, he said, would give them

23  trust and credibility.  So that's why we believe Miami is the

24  focal point of this.

25          And Chief Judge Altonaga has been handling other

1   crypto cases for a year and a half in Miami with these same

2   issues of what is an unregistered security, what is a promoter.

3   So she would have great experience.  She has two of the FTX

4   cases.  Judge Moore has another case that he's had for the last

5   seven months.  So we have a lot of experience down in Miami for

6   these cases.

7         Second, this is unusual that most of the defendants --

8         JUDGE CALDWELL:  I'm sorry.  Your time is expired.

9         Questions?

10        JUDGE KIMBALL:  Should Signature and/or Silvergate be

11  included?

12        MR. MOSKOWITZ:  I don't think so.  I think they could

13  be carved out, and that's why we haven't amended our complaint

14  to name them.  But the other defendants all agree with

15  consolidation.  Except the celebrities, because the Florida

16  celebrities don't have jurisdiction in California, and the

17  California defendants would argue in California there's no

18  jurisdiction.  If we're in MDL court, that argument goes away.

19  That's why they're particularly against it.  The other

20  defendants are in favor of consolidation.

21        JUDGE CALDWELL:  Other questions?

22        Thank you very much.  That concludes arguments

23  regarding MDL No. 3076.

24       (Proceeding concludes at 10:55 a.m.)

25                -  -  -

1          I certify that the foregoing is a correct transcript

2    from the record of proceedings in the above-entitled matter.

3

4    /s/ Cherilyn M. McCollum

5    Cherilyn M. McCollum, CCR, RPR
     Official Court Reporter
6
     Date:   26th day of May, 2023
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25