BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | MDL Docket: 3076 |

**DEFENDANT ARMANINO LLP'S RESPONSE IN OPPOSITION TO
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-1)**

Defendant Armanino LLP ("Armanino") hereby opposes Plaintiffs' Motion to Vacate Conditional Transfer Order (CTO-1) (ECF No. 150) regarding *Lucky D., et al. v. Prager Metis LLP, et al.*, Case No. 23000389 (D.N.J.) ("*Lucky D.*"). Plaintiffs' claims are completely subsumed by the putative class actions pending against Armanino that have already been transferred to the consolidated proceedings in MDL No. 3076 (the "Transferred Actions").[1] Plaintiffs' claims arise from the same nucleus of facts at issue in the Transferred Actions. Plaintiffs themselves are putative members of some of the proposed classes in the Transferred Actions. As such, the Panel should deny Plaintiffs' Motion to Vacate and transfer *Lucky D.* to MDL No. 3076.[2]

Under 28 U.S.C. § 1407, the Panel should consider three factors in determining whether a case should be transferred for coordinated and consolidated pretrial proceedings: (1) the presentation of one or more common questions of fact; (2) transfer must be for the convenience of

---

[1] Armanino is a named defendant in the following Transferred Actions: *O'Keefe v. Sequoia Capital Operation, LLC, et al.*, Case No. 1:23-cv-20700 (S.D. Fla.), *Pierce v. Bankman-Fried, et al.*, Case No. 3:22-cv-07444-JSC (N.D. Cal.), *Hawkins v. Bankman-Fried, et al.*, Case No. 22-cv-07620-JSC (N.D. Cal.), *Papadakis v. Bankman-Fried, et al.*, Case No. 3:23-cv-00024-JSC (N.D. Cal.), *Cabo, et al. v. Sequoia Capital Operations, LLC, et al.*, Case No. 3:23−02222 (N.D. Cal.), and *Siskind v. Sequoia Capital Operations, LLC, et al.*, Case No. 1:23-cv-22144-KMM (S.D. Fla.).

[2] By filing this submission, Armanino does not submit to personal jurisdiction in the United States District Court for the District of New Jersey. Armanino reserves its right to assert any defense listed in Federal Rule of Civil Procedure 12(b), including lack of personal jurisdiction or improper venue.

1

parties and witnesses; and (3) transfer must promote the just and efficient conduct of such actions. All of these criteria favor transfer and consolidation of this action with the Transferred Actions, and Plaintiffs fail to present any valid argument to the contrary.

The claims against Armanino in *Lucky D.* are founded on exactly the same allegations against Armanino, FTX Trading Ltd. ("FTX.com"), West Realm Shires Services Inc. ("FTX.US"), and former FTX officers in the Transferred Actions. While the *Lucky D.* Plaintiffs only bring claims against Armanino and Prager Metis LLP ("Prager Metis"), which performed audit services for FTX.US and FTX.com, respectively, there is not a single alleged fact in *Lucky D.* that will not be the subject of discovery in the Transferred Actions. Further, while Plaintiffs in *Lucky D.* do not seek to represent a class, they are members of putative classes identified in the Transferred Actions, which seek recovery of the same funds the *Lucky D.* Plaintiffs allege they have lost. Given the substantial overlap of factual and legal issues, and the identity of the parties, transferring *Lucky D.* to the multidistrict litigation in the Southern District of Florida will serve efficiency and foster the convenience of the parties and witnesses.

## BACKGROUND

On January 26, 2023, the *Lucky D.* Plaintiffs filed their amended complaint in the District of New Jersey, arising out of the highly publicized collapse of the FTX.com and FTX.US cryptocurrency exchanges. Plaintiffs, who identify themselves as "international FTX customers" and allege they have lost their assets deposited on "trading platforms maintained by FTX entities" as a result of the exchanges' collapse and bankruptcy, brought their suit not against FTX.com, FTX.US, or any of FTX's former or current officers or directors, but against Armanino, the independent auditor of FTX.US, and Prager Metis, the independent auditor of FTX.com. *Lucky D.* Amended Compl. at 5 ¶ 1. Plaintiffs allege they deposited assets on FTX exchanges in reliance on

Armanino's and Prager Metis's "audit reports," work product which Plaintiffs concede has "not been publicly released" but allege they were aware of based on public statements from FTX.com founder and former CEO Samuel Bankman-Fried. *See Lucky D.* Amended Compl. ¶¶ 16-17. Plaintiffs bring claims for professional malpractice, common law fraud, and consumer fraud against Armanino and Prager Metis.

On February 10, 2023, claimants in two actions pending in the Southern District of Florida moved the Panel for consolidation or coordination of a number of related actions arising out of the collapse of FTX.com and FTX.US. (ECF No. 1, the "MDL Transfer Motion"). Following the MDL Transfer Motion, Prager Metis notified the Panel of *Lucky D.* as a potential tag-along action. (ECF No. 68.) Armanino and Prager Metis also filed a request to stay *Lucky D.* pending a decision by the Panel. The *Lucky D.* Plaintiffs opposed a stay, arguing—as they have repeated in their motion to vacate the Panel's conditional transfer order—that their case is unique because it brings individual claims directly against Armanino and Prager Metis.

On June 5, the Panel issued a transfer order, concluding that the actions identified in the MDL Transfer Motion involved common questions of facts, and transferring the actions for consolidated proceedings before Judge Moore in the Southern District of Florida. At present, six actions consolidated before Judge Moore name Armanino as a defendant. On June 6, the Panel issued Conditional Transfer Order (CTO-1), concluding that certain tag-along actions, including *Lucky D.*, involved questions of fact that are common to the actions previously transferred. (ECF No. 140.) The *Lucky D.* Plaintiffs seek to vacate the conditional transfer order on the grounds that their claims are "wholly distinct" from the claims in the actions transferred to the Southern District of Florida. (ECF No. 150-1.)

3

**ARGUMENT**

I.  *Lucky D.* **and the Transferred Actions Concern the Same Parties, Subject Matter, and Legal Issues.**

The *Lucky D.* Plaintiffs present no new arguments for this Panel to consider. As this Panel recognized in its Order establishing a multidistrict litigation, while certain actions "undoubtedly involve several non-overlapping defendants and raise defendant-specific issues," transfer and consolidation is appropriate because "they all rest on the same core set of facts concerning the alleged fraud that led to FTX's collapse[.]" (ECF No. 138, the "JPML Transfer Order" at 2.) "Transfer under Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant where, as here, the actions still arise from a common factual core." *Id.* (citing *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L.2014)); *In re: Fairfield Greenwich Grp. Sec. Litig.*, 655 F. Supp. 2d 1352, 1353 (J.P.M.L. 2009) (consolidating negligent auditing claims against PricewaterhouseCoopers with related fraud actions in an MDL because the actions "will likely focus on a significant number of common events, defendants, and/or witnesses"). The parties, factual issues, and legal claims in *Lucky D.* undoubtedly relate to and arise from the same factual core as the Transferred Actions.

A.  *Lucky D.* Involves the Same Parties as the Transferred Actions.

Armanino is a named defendant in six actions that have been transferred to the consolidated proceedings in the Southern District of Florida. Those matters, all of which are putative class actions, bring claims on behalf of FTX customers, like the *Lucky D.* Plaintiffs, who deposited funds on the FTX exchanges, allegedly relying in part on representations about the audit reports Armanino prepared relating to FTX.US. The *Lucky D.* Plaintiffs, who have been identified as "foreign resident individuals, foreign nationals, and/or foreign business entities" (*Lucky D.*

4

Amended Compl. at 5 ¶ 1) and "international FTX customers" (ECF No. 150-1, at 4), are members of most, if not all, of the putative classes identified in the Transferred Actions.[3] The fact that the *Lucky D.* Plaintiffs do not seek to represent a class and the involvement of other defendants in the consolidated proceedings do not weigh against transfer. *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d at 1390 (transferring both class and individual actions to an MDL); *In re January 2021 Short Squeeze Trading Litig.*, MDL No. 2989, 2021 WL 1258399, at *2 (J.P.M.L. Apr. 2, 2021) (centralizing actions "nam[ing] more than forty brokers, funds, and clearinghouses as defendants" where all actions involved common conduct concerning the Robinhood trading platform). Further, Judge Moore recently approved a leadership structure for claimants in the Transferred Actions, establishing a committee and chairperson for claims against the "FTX Accountants," including Armanino. As such, a subset of claimants' counsel will be particularly focused on the claims against Armanino and Prager Metis. (ECF Nos. 59-1; 61.)

    B. <u>The Claims in *Lucky D.* and the Transferred Actions Concern the Same Subject Matter and Legal Issues.</u>

The claims against Armanino in *Lucky D.* and the Transferred Actions are founded on the same factual allegations.

---

[3]   *See Pierce* Compl. ¶¶ 136-37 (Plaintiff seeks to represent a class of all persons who "entrusted fiat and/or digital currency to FTX US" between January 1, 2020 and the present); *Hawkins* Compl. ¶ 46 ("all those who have been unable to withdraw funds deposited into YBAs with the FTX Entities; and were damaged upon the revelation of the alleged corrective disclosures"); *Papadakis* Corrected Compl. ¶ 103 (all persons "who have deposited funds and/or assets in accounts" with FTX.com or FTX.US "and who have been unable to access or withdraw those funds and/or assets."); *O'Keefe* Compl. ¶ 180 ("All natural persons and entities who purchased, deposited and/or transacted Class Member funds in accounts on the FTX platform any time after May 1, 2019, through FTX's collapse on November 11, 2022, the date on which it filed for bankruptcy, and have been harmed by Defendants' conduct alleged herein."); *Cabo* Compl. ¶ 159 ("Global Class: All persons and entities residing outside of the United States who, within the applicable limitations period, purchased or held legal title to any fiat or cryptocurrency deposited or invested through an FTX platform."); *Siskind* Compl. ¶ 156 ("[A]ll persons and entities that purchased, deposited, and/or transacted in fiat currency or digital assets in accounts with FTX during the Class Period and who were damaged thereby.").

First, both the *Lucky D.* Plaintiffs and the claimants in the Transferred Actions allege that Armanino failed to comply with professional standards in performing its work for FTX.US. *Compare Lucky D.* Amended Compl. ¶ 17-19, *with O'Keefe* Compl. ¶ 175-76, *and Cabo* Compl. ¶ 142, *and Papadakis* Corrected Compl. ¶ 21, *and Siskind* Compl. ¶ 103. *Lucky D.* Plaintiffs allege Armanino knew "of the precarious financial position of FTX," such that it could not have reasonably completed its audit of FTX.US. *Lucky D.* Amended Compl. at 21 ¶ 3. Remarkably, Plaintiffs admit that Armanino's work product was not publicly released, and Plaintiffs never allege that they saw or reviewed any Armanino report, opinion, or work product. *Lucky D.* Amended Compl. ¶ 17. Instead, Plaintiffs recite a number of actions by FTX entities that "should have raised red flags," and assert that Armanino was negligent because it must have failed to consider these issues when conducting its audit. *Lucky D.* Amended Compl. at 15-20 ¶ 4. As such, Plaintiffs' allegations that Armanino violated professional standards and made false statements "in their private audit reports" are based not on Plaintiffs' analysis of or reliance on any report, but on their assumption that Armanino could not have completed an audit of FTX.US's financials given the corporate malfeasance at FTX.com and/or FTX.US. *Id.* at 14, ¶ 2; 21, ¶ 4.

Claimants in the Transferred Actions likewise alleged that the "Auditor Defendants had knowledge of the fraud and wrongdoing by the FTX Entities as a result of their experience and relationship with the FTX Entities, and thus knew or should have known that the representations they made were deceitful and fraudulent." *Hawkins* Compl. ¶ 84; *see also Pierce* Compl. ¶ 112 ("In light of the glaring nature of the defects in the FTX Group's financial documentation and internal controls . . . Armanino and Prager Metis are believed to have either been at least reckless or willfully blind with regard to the FTX Group's true nature. . ."); *Papadakis* Corrected Compl. ¶¶ 73, 79 ("Given Ray's Congressional testimony as to the absence of records or proper

documentation at the FTX Entities, and the lack of internal controls, data points that the auditors would either be required to examine or consider when undertaking an audit, Plaintiff alleges upon information and belief that the Auditor Defendants knowingly undertook the audit without the required documentation [and] knew that the Individual Defendants were engaged in the misconduct alleged herein."); *Cabo* Compl. ¶ 152 ("Given the work they performed and their review of FTX financial records, Armanino and Prager knew or were willfully blind to the nature of the FTX pattern of fraud."); *Siskind* Compl. ¶ 104 ("[F]rom their diligence and adherence to industry standards, Defendant Accounting Firms knew that FTX was misappropriating those funds."). In short, the actions of Armanino and FTX's officers, and the claims against these parties are inextricably linked across the actions. Based on their pleadings, neither the *Lucky D.* Plaintiffs nor claimants in the Transferred Actions can support their claims against Armanino without demonstrating the alleged corporate malfeasance and financial mismanagement at FTX.US, overseen by the FTX officers including Bankman-Fried, *and* Armanino's knowledge of or failure to detect that misconduct.

Second, both the *Lucky D.* Plaintiffs and claimants in the Transferred Actions argue that Armanino worked in concert with FTX.com and/or FTX.US to induce customers to deposit funds on the FTX exchanges. *Compare Lucky D.* Amended Compl. ¶¶ 15-17, *with Hawkins* Compl. ¶ 37, *and Pierce* Compl. ¶¶ 7, 101, *and Papadakis* Corrected Compl. ¶¶ 74, 75, *and O'Keefe* Compl. ¶ 173, *and Cabo* Compl. ¶ 146, *and Siskind* Compl. ¶ 98. The *Lucky D.* Plaintiffs allege the

> audits were clearly conducted in order to provide current and potential customers of FTX such as plaintiffs a level of assurance over that offered by competitors as well as supposedly complete financial transparency in contrast to their competitors. FTX'[s] intent in retaining defendants to conduct private audits and issue unqualified reports opining such that, that upon announcement of the audit results by FTX would make such customers more likely to hold digital assets on the FTX exchange, transfer new assets into FTX'[s] exchange accounts and to rely upon

>    FTX['s] promise that said assets would remain safe and readily accessible by FTX'[s] customers.

*Lucky D.* Amended Compl. ¶ 17. Likewise, claimants in the Transferred Actions assert that Armanino's "validation" of FTX.US through its audit was "crucial to the FTX Entities' continued growth," and "offered assurance to customers." *Hawkins* Compl. ¶ 37. Similarly, the *Pierce* complaint alleges that Armanino should have known the audits "would be used to entice third parties to entrust FTX Group with their assets," and that in fact the audits "facilitated the FTX Group enterprise by giving Bankman-Fried's entities clean bills of health, which Bankman-Fried used to convince customers and investors to trust him with their money." *Pierce* Compl. ¶¶ 7, 101; *see also O'Keefe* Compl. ¶ 173 ("These audits provided FTX with a necessary veneer of stability and safety and helped to conceal SBF's fraud."); *Cabo* Compl. ¶ 146 (The audit work "helped push the false narrative that FTX is a trustworthy place for investors to place their money, while at the same time, FTX could conceal its fraud."); *Papadakis* Corrected Compl. ¶ 75 (Armanino "acted with knowledge and intent that customers and potential customers of the FTX Entities" would rely on the fact that the financial statements had been audited "in making their decision to have an Account with the FTX Entities or to transact business on the platforms of the FTX Entities."); *Siskind* Compl. ¶ 98 ("These audits provided FTX with a necessary veneer of stability and safety."). While the *Lucky D.* Plaintiffs do not bring claims for conspiracy or aiding and abetting, they certainly allege, like claimants in the Transferred Actions, that Armanino and FTX.US collaborated to induce customers to invest their funds.

    C. <u>The Legal Claims in *Lucky D.* Are Not "Wholly Distinct."</u>

Plaintiffs argue that their claims are "wholly distinct" from the "claims alleging fraud and conspiracy of the so-called aiders and abettors of FTX" in the Transferred Actions. (ECF No. 150-1, at 3-4.) But the mere fact that Plaintiffs have based their claims, founded on the same factual

8

allegations as claimants in the Transferred Actions, on different legal theories does not weigh against transfer. *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d at 1390 ("[T]he presence of additional facts or differing legal theories is not significant where, as here, the actions still arise from a common factual core."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (transferring action despite claims that it involved "some unique defendants, unique claims, and some unique factual issues"); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1325 (J.P.M.L. 2017) ("[T]he substantial factual overlap among all actions . . . is undeniable, and any slight variations in the claims alleged is immaterial to the benefits to be had from centralized proceedings."). In addition, while claimants in the Transferred Actions assert claims for conspiracy and aiding and abetting, claimants in *Siskind* also brings claims for negligent misrepresentation, intentional misrepresentation, and fraudulent inducement directly against Prager Metis and Armanino. *See Siskind* Compl. Counts I-III. These claims are functionally identical to the *Lucky D.* Plaintiffs' claims for professional malpractice and fraud.

Plaintiffs' reliance on *Smith v. Hendricks*, 140 F. Supp. 3d 66, 75 (D.D.C. 2015) is misplaced. There, the court was examining whether claims had been properly joined for the purposes of diversity and removal, not whether an action should be transferred to an MDL. The court in *Smith* determined that malpractice claims against healthcare providers concerning the medical treatment of the plaintiff had been improperly joined to product liability claims against the product manufacturer. Because the product liability claims concerned product design and disclosures, the claims "did not arise out of the same transactions or occurrences." *Id.* First, the standard used to determine whether claims have been properly joined under Federal Rule of Civil Procedure 20 has no application to the Panel's transfer analysis under Section 1407. *See In re EMC*

*Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012) (noting that even where "plaintiff's claims arise out of the same transaction and there are questions of law and fact common to all defendants" such that "common pretrial issues" could be adjudicated together through the multidistrict litigation under Section 1407, district courts have discretion to refuse joinder under Rule 20). Second, the *Lucky D.* Plaintiffs' allegations arise out of exactly the same transactions and occurrences at issue in the Transferred Actions. The *Lucky D.* Plaintiffs and claimants in the Transferred Actions are all FTX customers who allege they relied on the fact that FTX.com and/or FTX.US had been audited when deciding to deposit funds on the FTX platforms, and argue that their financial losses are attributable in part to allegedly deficient audits performed by Armanino and Prager Metis. While the *Lucky D.* Plaintiffs do not bring aiding and abetting or conspiracy claims against Armanino, their malpractice and fraud claims arise from the same nexus of facts as the Transferred Actions, and all the actions purport to link the alleged conduct of Armanino and the misconduct of FTX insiders.

## II. Transfer Serves the Convenience of Parties and Witnesses and Promotes Efficiency.

Transfer will undoubtedly serve the convenience of the parties and witnesses involved in both *Lucky D.* and the Transferred Actions, and conserve the judicial resources of multiple district courts. Centralization under Section 1407 is designed to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Nigeria Charter Flight Contract Litig.*, 323 F. Supp. 2d 1375, 1376 (J.M.P.L. 2004); *see also* JPML Transfer Order at 3 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel and the judiciary."); MDL No. 2017 (*In re: Lehman Brothers Holdings, Inc. ERISA Litig.*), at Dkt. 110 (transferring case brining

claims against EY for "losses from improper accounting procedures" to MDL to "avoid duplicative discovery and other pretrial proceedings against EY arising out of its audits of Lehman's financial statements", noting that plaintiff "will likely benefit from the efforts" of other plaintiffs' counsel in the MDL). Because the *Lucky D.* Plaintiffs and their allegations are subsumed by the putative classes and allegations in the Transferred Actions, the District of New Jersey and Southern District of Florida would unavoidably be required to rule on the same issues if *Lucky D.* is not transferred.

For example, at the pleading stage, the two courts will have to address whether customers of FTX.US and/or FTX.com with no relationship with Armanino can nevertheless hold FTX.US's independent auditor liable for negligence. Further, the courts will need to determine if these customers have suffered any injury in light of the ongoing asset-recovery process in the bankruptcy proceedings. In addition, given the overlap of common questions of fact between *Lucky D.* and the Transferred Actions, transfer would help streamline and simplify any discovery, which would need to be duplicated if *Lucky D.* were to remain an independent action in the District of New Jersey. *See, e.g., In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) ("transfer under Section 1407 has the benefit of placing all actions in this docket before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity occurring in other actions."); *In re: Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1341, 1342 (J.P.M.L. 2011) (same).

### III. The *Lucky D.* Plaintiffs' Motion to Vacate Is Not Timely and Does Not Comply with the Panel's Rules.

Under Rule 7.1(f) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation ("Panel Rules"), parties who oppose a transfer shall file a motion to vacate

the conditional transfer order and brief in support within 14 days of the filing their notice of opposition. Further, "failure to file and serve a motion and brief shall be treated as a withdrawal of the opposition." *Id.* As the *Lucky D.* Plaintiffs acknowledged in their June 29, 2023 letter to the Panel, their motion to vacate and brief in support was filed late, without permission from the Panel. (ECF No. 153.) Further, rather than filing a motion and brief which complied with Panel Rules 6.1 and 7.1, Plaintiffs' merely resubmitted their June 13, 2023 notice of opposition. As such, *Lucky D.* Plaintiffs' motion to vacate should be denied outright.

## CONCLUSION

For the reasons outlined above, the Panel should deny Plaintiffs' Motion to Vacate and transfer *Lucky D.* to the consolidated proceedings in MDL No. 3076 pending before Judge Moore in the United States District Court for the Southern District of Florida.

Dated: July 19, 2023

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Matthew P. Bosher*
Matthew P. Bosher (*Notice of Appearance filed*)
2200 Pennsylvania Ave., NW, Suite 900
Washington, DC 20037-1701
Tel: (202) 955-1500
mbosher@HuntonAK.com

Thomas R. Waskom
Michael J. Bisceglia
Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219
Tel: (804) 788-8200
twaskom@HuntonAK.com
mbisceglia@HuntonAK.com

*Attorneys for Defendant Armanino LLP*

125818.0000003 DMS 302902125v6