**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: FTX Cryptocurrency Exchange Collapse Litigation** | **MDL No. 3076** |

### PRAGER METIS CPAS, LLC'S RESPONSE IN OPPOSITION TO *LUCKY D.* PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER 1

Defendant Prager Metis CPAs, LLC ("Prager Metis") respectfully submits this opposition to Plaintiffs' Motion to Vacate the Panel's Conditional Transfer Order 1 ("CTO-1") as to *Lucky D., et al. v. Prager Metis, LLP[1] & Armanino, LLC*, 2:23-cv-00389-MCA-JRA (D. N.J.) (Dkt. 150) (the "Motion").

### INTRODUCTION

Prager Metis and Armanino (collectively the "Auditor Defendants") have been sued in *seven* practically identical federal cases brought by FTX customers seeking to tie their choices to deposit funds with FTX to the Auditor Defendants' nonpublic financial statement audit work on behalf of different FTX entities. Six of those cases are presently pending before Judge K. Michael Moore of the Southern District of Florida in MDL No. 3076.[2] This Panel conditionally transferred the seventh case (*Lucky D.*) on June 6, 2023, reasoning that it appeared to "involve questions of fact that are common to the actions previously transferred to the Southern District of Florida and assigned to Judge Moore." Dkt. 140, CTO-1. While plaintiffs in four similarly transferred tag-

---

[1] Plaintiffs erroneously refer to Prager Metis CPAs, LLC as "Prager Metis LLP" in their complaint.
[2] This Panel transferred four actions from the Northern District of California (Dkt. 138, 140). Two actions initiated in the Southern District of Florida were subsequently transferred to Judge Moore via intra-district transfer procedures.

alongs acceded to the conditional transfer, *Lucky D.* Plaintiffs filed a Motion to Vacate on June 29, 2023. Dkt. 150.[3]

Plaintiffs' Motion should be denied because *Lucky D.* and the MDL actions present numerous common questions of fact. Indeed, the question of detectable fraud by FTX Insiders at the heart of each of the MDL actions forms a necessary prerequisite for Plaintiffs' allegations against the Auditor Defendants. Contrary to Plaintiffs' assertions, the fact that they brought claims against the auditors directly (and not under a conspiracy or accomplice theory) does not render their complaint unique—the MDL already includes an action with nearly identical negligence and fraud claims against Prager Metis and Armanino.[4] Furthermore, each of twenty Plaintiffs in *Lucky D.* are FTX customers and therefore are within the putative class definition of the six MDL actions involving auditors, and their interests will be well-represented. Finally, transferring *Lucky D.* will serve the convenience of the courts and all parties, thereby enabling the just and efficient resolution of the litigation as a whole.

## LEGAL STANDARD

28 U.S.C. § 1407 empowers this Panel to transfer disparate "civil actions involving one or more common questions of fact" into a single judicial district for "coordinated or consolidated pretrial proceedings . . . upon [the Panel's] determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." As the Panel reiterated in this very MDL, "[t]ransfer under Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and

---

[3] The self-styled "Motion" was filed after the Panel's deadline expired and simply reattached a letter that *Lucky D.* plaintiffs first filed two weeks prior. Without waiving objections to these deficiencies, Prager Metis will respond as though *Lucky D.* Plaintiffs submitted genuine Motion to Vacate.
[4] *See Siskind v. Sequoia Capital Operations, LLC, et al.*, 1:23-cv-20439 (S.D. Fla.).

the presence of additional facts or differing legal theories is not significant where, as here, the actions still arise from a common factual core." Dkt. 138 at 2 (quoting *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390-91 & n.5 (J.P.M.L. 2014)).

With regard to the convenience prong of § 1407, transfer of an action is appropriate "if it furthers the expeditious resolution of the litigation taken *as a whole*, even if some parties to the action might experience inconvenience or delay." *In re Zantac (Ranitidine) Products Liab. Litigation*, 2021 WL 5848067, at *1 (J.P.M.L. Dec. 3, 2021) (emphasis added); *see also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[w]hile we are aware that centralization may pose some inconvenience to some parties, in deciding issues of transfer under Section 1407, we look to the *overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation*." (emphasis added)).

## ARGUMENT

I.   **Transfer is warranted because there is considerable factual overlap between Plaintiffs' claims in *Lucky D.* and the claims pending in the MDL.**

a.   **Plaintiffs' claims are all predicated on a finding of detectable fraud by FTX Insiders – the very question at the core of the MDL.**

In consolidating over a dozen FTX-related actions into a single MDL, this Panel reasoned that "all rest on the same core set of facts concerning the alleged fraud that led to FTX's collapse and, in particular, revolve around the conduct of FTX's Samuel Bankman-Fried, the relationship with another Bankman-Fried company known as Alameda Research, and Alameda's Caroline Ellison." Dkt. 138 at 2. *Lucky D.* is no exception. In their complaint, Plaintiffs allege that the Auditor Defendants "knew at all times the precarious financial position of FTX and the fact that FTX related companies were utilizing fraudulent financial statements as collateral for borrowing from financial institutions as well as providing enticement to investors." *Lucky D.* Dkt. 3 at 21. Proving such an assertion would require establishing that (1) FTX was in a precarious financial

3

position at the time of its financial statement audits, (2) FTX prepared fraudulent financial statements, and (3) the Auditor Defendants were aware of this. All three of those questions of fact are in common with the actions in the MDL and will be answered by the same witnesses in all actions. Put differently, fraud by FTX Insiders is a necessary precondition of Plaintiffs' negligence and fraud claims against the Auditor Defendants. *Lucky D.* belongs in the MDL because its threshold question (the scope and nature of fraud at FTX) is at the very core of the MDL.

As this Panel has frequently recognized, allegations that auditors failed to detect fraud logically belong with allegations that those auditors' clients committed that fraud. In *In re: Fairfield Greenwich Grp. Sec. Litig.*, 655 F. Supp. 2d 1352, 1353 (U.S. Jud. Pan. Mult. Lit. 2009), for example, this Panel consolidated a negligent financial statement auditing claim against PricewaterhouseCoopers with related fraud actions stemming from Bernie Madoff's Ponzi scheme, reasoning that the actions "will likely focus on a significant number of common events, defendants, and/or witnesses." Similarly, in MDL No. 2017 (*In re: Lehman Brothers Holdings, Inc. ERISA Litigation*), this Panel consolidated auditing claims against Ernst & Young with related actions stemming from the collapse of Lehman Brothers. *See* MDL No. 2017 at Dkt. 110. In rejecting that plaintiff's motion to vacate conditional transfer, this Panel reasoned that transfer will "avoid duplicative discovery and other pretrial proceedings against EY arising out of its audits of Lehman's financial statements" and that the objecting plaintiff "will likely benefit from the efforts" of other plaintiffs' counsel in the MDL. *Id.* All of those factors are applicable here—transferring *Lucky D.* will both eliminate duplicative discovery and relieve burden on *Lucky D.* Plaintiffs by enabling their coordination with other MDL Plaintiffs. In light of the common questions of fact between *Lucky D.* and the MDL actions as well as this Panel's robust history of consolidating

auditor claims with claims involving audit clients, this Panel should reject the Motion to Vacate and transfer *Lucky D.* to the MDL.

This conclusion is not undermined by Plaintiffs' reference to irrelevant caselaw. Plaintiffs devoted a significant portion of their Motion to details of *Smith v. Hendricks*, 140 F. Supp. 3d 66 (D.D.C. 2015). Confoundingly, *Smith* is not a JPML case and does not analyze the appropriateness of transferring a case into an MDL. Instead, *Smith* is a federal district court case about subject matter jurisdiction that analyzes whether a case is fit for removal from state to federal court on the basis of diversity jurisdiction despite mis-joining a non-diverse defendant. Critically, *Smith*'s joinder analysis applies Federal Rule of Civil Procedure 20 and is wholly inapplicable to MDL transfer analysis under 28 U.S.C. § 1407. *See In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012) (remarking that transfer to an MDL under 28 U.S.C. § 1407 may be appropriate "even if joinder is not permitted under Rule 20"); *see also Unified Messaging Sols., LLC v. United Online, Inc.*, 2013 WL 1874211, at *5 (N.D. Ill. May 3, 2013) (rejecting a "motion to deconsolidate" an action from an MDL which relied on Rule 20 caselaw and reasoning that "the test for joinder under Rule 20 is more stringent than that for pretrial consolidation under Rule 42 [a provision with identical criteria to § 1407]"). Plaintiffs discuss no other caselaw in support of their position and, unsurprisingly, fail to acknowledge the many JPML decisions which favor transfer under similar circumstances.

> **b.** ***Lucky D.* Plaintiffs' negligence and fraud claims against the Auditor Defendants are indistinguishable from similar claims brought within the MDL.**

In their Motion to Vacate, Plaintiffs falsely assert that their claims against the Auditor Defendants are "wholly distinct" from the conspiracy and accomplice liability claims brought by other MDL plaintiffs because *Lucky D.* alleges "not that [the Auditor Defendants] conspired to advance FTX' [sic.] fraud but that they failed to comport their respective audits with professionally

accepted auditing/accounting standards." Dkt. 150-1 at 3–4. Not so. In fact, there is nothing unique about these claims. Among the complaints already consolidated into the MDL, *Siskind v. Sequoia Capital Operations, LLC, et al.*, 1:23-cv-20439 (S.D. Fla.) also brings claims against Prager Metis and Armanino for negligent misrepresentation, intentional misrepresentation, and fraudulent inducement. *Siskind* Dkt. 1. These claims are pled against the Auditor Defendants directly, do not involve conspiracy or accomplice liability, and are functionally identical to Plaintiffs' claims for professional malpractice and fraud. It would waste judicial resources and the resources of the Auditor Defendants for these identical claims to be brought in two separate forums.

### c. *Lucky D.* Plaintiffs will be members of the MDL's proposed class and their interests will be well-represented.

All six actions against the Auditor Defendants which are presently part of the MDL seek to certify classes comprised of FTX customers who were unable to withdraw their funds following FTX's collapse, and all six actions seek recovery of those customers' missing deposits.[5] *Lucky D.* was brought on behalf of twenty FTX customers who claim to have lost access to their deposits when FTX collapsed. *See Lucky D.* Dkt. 3. Each and every *Lucky D.* plaintiff is therefore a member of the putative MDL class. Every cent of every missing deposit *Lucky D.* Plaintiffs seeks to recover would also be recovered under an identical theory in the MDL.

## II.    Transfer will be convenient for the parties and will promote the just and efficient conduct of the action.

---

[5] *See Cabo* Compl. ¶ 159 ("[a]ll persons and entities . . . who, within the applicable limitations period, purchased or held legal title to any fiat or cryptocurrency deposited or invested through an FTX platform"); *Hawkins* Compl. ¶ 46 ("all those who have unable to withdraw funds deposited into [yield bearing accounts] with the FTX Entities"); *O'Keefe* Compl. ¶ 180 ("[a]ll natural persons and entities who purchased, deposited and/or transacted Class Member funds in accounts on the FTX platform . . . and have been harmed by Defendants' conduct alleged herein"); *Papadakis* Corr. Compl, ¶  103 ("all persons . . . that have deposited funds and/or assets in accounts ("Accounts") with [FTX] and who have been unable to access or withdraw the deposited funds and/or assets in the Accounts"); *Pierce* Compl. ¶ 136 ("all persons who . . . entrusted fiat and/or digital currency to FTX US and were damaged thereby"); *Siskind* Compl. ¶ 156 ("all persons and entities that purchased, deposited, and/or transacted in fiat currency or digital assets in accounts with FTX during the Class Period and who were damaged thereby").

Transferring *Lucky D.*—the sole case against the Auditor Defendants which has not yet been consolidated into the MDL—will serve the convenience of all parties and promote the efficient resolution of the FTX litigation as a whole. Contrary to Plaintiffs' framing, *Lucky D.* does not exist in a vacuum. The Auditor Defendants are already set to litigate FTX-related claims in the Southern District of Florida through the MDL. Vacating *Lucky D.*'s transfer would not—as Plaintiffs suggest—convenience Prager Metis by keeping that case on Prager Metis's New Jersey "home turf" where Plaintiffs suppose relevant documents are "presumably located." Instead, it would force Prager Metis to simultaneously defend itself against like claims in two different forums.

Plaintiffs concede that they demand an even more absurd contortion from Armanino, which is based in California and has no nexus to New Jersey. Plaintiffs nonetheless seek to compel Armanino to defend itself against identical claims in two distant forums which are over 2,000 miles from Armanino's headquarters and over 1,000 miles from one another. This, despite admitting that Armanino is not "the primary accountant defendant from whom these plaintiffs is [sic] seeking relief." Dkt. 150-1. Unsurprisingly, both Auditor Defendants favor transfer of *Lucky D.* to the MDL, where they can dispense of common pretrial proceedings without needless redundancy.

Tellingly, Plaintiffs raise no argument with regard to their own convenience, perhaps because they are scattered across eight countries and three continents, rendering them collectively indifferent to whether the case proceeds in New Jersey or Florida. Joining the MDL will nonetheless serve the convenience of Plaintiffs, whether or not they realize as much today. If they were permitted to proceed in New Jersey, Plaintiffs would still need to monitor docket activity in the MDL and potentially conduct cross-referential discovery to assess issue preclusion and ensure they are not at an information disadvantage relative to MDL Plaintiffs. Therefore, it would be in

Plaintiffs' best interests as well, from an efficiency standpoint at a minimum, for *Lucky D.* to be transferred to the MDL.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Panel should deny Plaintiffs' Motion to Vacate CTO-1 and transfer this case to the Southern District of Florida for consolidated and coordinated pretrial proceedings in MDL No. 3076.

Dated:  July 19, 2023                                 Respectfully submitted,

By: *<u>/s/ Joanna R. Travalini</u>*
Joanna R. Travalini
**SIDLEY AUSTIN LLP**
1 S Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
jtravalini@sidley.com

*Counsel for Defendant*
*Prager Metis CPAs, LLC*