BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: FTX CRYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION                                             MDL No. 3076

**BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-2)**

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.     INTRODUCTION

This putative class action has been brought by the Plaintiffs in an attempt to avoid dismissal of the first action filed in the Southern District of Florida, Case No. 1:23-cv-21023-CMA (the "Florida Action"). The Florida Action was filed on March 15, 2023 (Dkt. No. 1). Thereafter, the Florida Action was stayed (Dkt. No. 120) after the Plaintiffs caused the Florida Action to be added as a tag-along-action to the multi-district litigation: *In Re: FTX Cryptocurrency Exchange Collapse Litigation*, 1:23-md-03076-KMM (the "MDL"). Interestingly, the Florida Court noted that the Florida Action was identified as "potentially" subject to transfer to the MDL. (Dkt. No. 119). There was no CTO entered in the Florida Action, as potential tag-along actions filed in the transferee district do not require Panel action. Rule 7.2(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation.

Upon transfer of the Florida Action to the MDL, after the Defendants hereunder, among others, further raised personal jurisdiction issues[1], the Plaintiffs advised the Court that in order to avoid personal jurisdiction issues they would refile against those defendants that contested personal jurisdiction in their home district. Then, after effectuating service, the Plaintiffs would transfer the matter to the MDL. The problem is that Plaintiffs filed an identical complaint to the Florida Action in the District of Nevada, Case No: 2:23-cv-01138-JAD-BNW (the "Nevada Action"), failing to revise their complaint in any

---

[1] Defendants have not waived their rights to raise any and all 12(b) arguments at this time.

meaningful way and exacerbating the jurisdictional issues. While attempting to solve the personal jurisdiction issues, the Plaintiffs failed to fix standing issues relating to filing under the Private Securities Litigation Reform Act ("PSLRA") (15 USC 78u-4); failed to fix venue issues; and created issues relating to subject matter jurisdiction[2]. Not to mention, Plaintiffs prematurely filed a Notice of Potential Tag-Along Actions in the MDL (Dkt. No. 166) at the same time as filing the Nevada Action.

Interestingly, the Nevada Action does not contain the same Defendants named in the Florida Action. Specifically, Kevin Paffrath, Jaspreet, Singh, Brian Jung, Tom Nash, Ben Armstrong, Erika Kullberg, and Creators Agency, LLC were not named in the Nevada Action. Most importantly here is that neither the Florida Action nor the Nevada Action name FTX, defined collectively as FTX Trading LTD and its subsidiaries d/b/a FTX ("FTX Trading") and West Realm Shires Inc. and its subsidiaries ("WRS") (WRS includes, without limitation, its subsidiary West Realm Shires Services Inc. d/b/a FTX US) ("FTX US"), as a party defendant. Moreover, the "FTX Insider Defendants," defined to include Samuel Bankman-Fried, Caroline Ellison, Gary Wang, and Nishad Singh, are not a party to either action. The reason that FTX and the FTX Insider Defendants were not named in the Florida Action nor the Nevada Action is simple – none of the defendants, including the Nevada Defendants had direct dealings with FTX. Notably, all of the other cases transferred by the MDL Panel included FTX and the FTX Insider Defendants.

## II.  PERTINENT FACTS

Turning to the original Complaint, as filed in the Nevada Action (ECF No. 1), Plaintiffs filed an unverified complaint, wherein Plaintiffs are alleged investors in Yield Bearing Accounts ("YBAs") offered by the FTX Entities[3] and purportedly sustained

---

[2] Furthermore, Plaintiffs did not dismiss the Florida Action upon filing the Nevada action, creating a "first-to-file" problem.

[3] Plaintiffs define the FTX Entities to consist of FTX Trading LTD d/b/a FTX ("FTX Trading") and West Realm Shires Services Inc. d/b/a FTX US ("FTX US"). Complaint at 1:21-22. However, throughout the Complaint, Plaintiffs then refer generically to undefined "FTX"; thus, Plaintiffs do not specify, *inter alia*, which entity Plaintiffs allegedly purchased from, which entity Defendants allegedly were paid by, and which entity Defendants allegedly endorsed.

damages in their accounts following FTX's abrupt fall from grace, and subsequent bankruptcy, last November. Complaint ¶ 14-20, ECF No. 1. Plaintiffs are seven individuals, three of whom allegedly reside in Florida, with the other four in Oklahoma, the United Kingdom, Canada, and Australia. *Id*. Plaintiffs argue these YBAs are unregistered securities. *Id*. Plaintiffs seek recovery for their alleged damages—not from FTX, the party purportedly responsible—but rather from Defendants, alleged "digital creators who provide investor information and advice . . . on their YouTube channels." *Id*. ¶ 21.

Although Plaintiffs do not assert that *any* Defendant made *any* statement about the YBAs, that Defendants profited from FTX's sale of YBAs, that Defendants had any knowledge of FTX's alleged misappropriation and fraud, or that *any* statement by *any* Defendant caused *any* Plaintiff to purchase FTX's YBA, Plaintiffs nonetheless seek to hold Defendants jointly and severally liable for billions of dollars in losses resulting from the putative classes' purchases of the YBAs.

Not one of Plaintiffs' claims, however, is supported by facts that allow the Court to draw the reasonable inference that *any* Defendant is liable to *any* Plaintiff for *FTX's* alleged misconduct. Defendants did not serve as FTX's agents, did not participate in FTX's sales of YBAs to Plaintiffs, did not make any unfair or deceptive statements about the YBAs, and did not conspire with FTX—or anyone—to engage in any unlawful conduct. Nothing pled in the Complaint reasonably suggests otherwise.

The Complaint is remarkably short of factual allegations regarding Mr. Stephan, Mr. Jikh, and/or Mr. Lefebvre. The only mention in the Complaint regarding Mr. Lefebvre is paragraph 25 of the Complaint stating "Defendant, Jeremy Lefebvre, a YouTube star with over 700,000 subscribers to his YouTube page, Financial Education, was paid to endorse FTX, and is a citizen and resident of Las Vegas, Nevada." The only mention at all in the Complaint regarding Mr. Andrei Jikh is paragraph 24 of the Complaint stating: "Defendant, Andrei Jikh, a YouTube star with over 2.2 million subscribers to his YouTube pages, was paid to endorse FTX, and is a citizen and resident of Las Vegas, Nevada."

The only mention in the Complaint regarding Mr. Stephan is in three paragraphs. First, paragraph 23 of the Complaint states: "Defendant, Graham Stephan, a YouTube star with over 4.1 million subscribers to his YouTube pages, was paid to endorse FTX, and is a citizen and resident of Las Vegas, Nevada." In paragraphs 146 and 147 of the Complaint, Plaintiffs' merely state that Mr. Stephan, prior to FTX's collapse, promoted FTX as a safe investment to his followers, and then scrubbed his YouTube channel after the collapse and posted an apology. There was no mention of how Mr. Stephan was related to FTX or of how he availed himself to Florida.

Specifically, regarding subject matter jurisdiction over the Nevada Action, Plaintiffs state in Paragraph 26 that "This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $1,000,000,000.00 (one billion dollars), exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the Defendants. There are several issues here.

The Complaint filed in this Nevada Action is identical to the one in the Florida Action, raising the exact same causes of action. There are four causes of action: Count One: Violations of the Florida Statute Section 517.07; Count Two: For Violations of the Florida Deceptive and Unfair Trade Practices Act, § 501.201, Florida Statutes, et seq.; Count Three: Civil Conspiracy based on the Florida violations alleged; and Count Four: Declaratory Judgment pursuant to the Declaratory Judgment Act, Florida Statutes §§ 86.011 et seq. Notably, not one of these causes of action relates to Nevada law. It is entirely unclear how a Nevada Court could have jurisdiction over strictly Florida causes of action.

Interestingly, in the MDL, which Plaintiffs seek to have the Nevada Action transferred to, Plaintiffs filed an Amended Complaint (Dkt. No. 179) against the Promoters and Digital Creator Defendants (of which the Defendants herein are included). In the Amended Complaint, Plaintiffs' new argument for jurisdiction is "because every Defendant was transferred to this forum from a transferor court which had personal

jurisdiction over that Defendant." Amended Complaint ¶ 78, Dkt. No. 179.  The Amended Complaint also added violations of California and Oklahoma law. However, it did not add any claims arising under Nevada law.  There were no other changes made to the Amended Complaint concerning these Defendants.  Taking the Amended Complaint from the MDL, Plaintiffs then filed an Amended Complaint in the Nevada Action (ECF No. 12).  The only change was to add a cause of action under the Federal Declaratory Judgment Act. However, Plaintiffs' change does not cure the subject matter jurisdiction issue, as the cause of action is clearly frivolous and made solely for the purpose of attempting to create federal question jurisdiction.  *Pristavec v. Meno Holdings SPV, LP*, 593 F.Supp.3d 930 (2022).

Here, there are three Defendants, who have been sued by individuals unknown to them, with whom they had no dealings, personal or business related, even as pled.  The Complaint and the Amended Complaint, as filed in the Nevada Action, contain no specific allegations of wrongdoing by the Defendants.  But most importantly, there are no allegations tying these Defendants to the class action and FTX and the FTX Insider Defendants in the MDL. Instead, the Plaintiffs' attorneys are doing a dragnet operation in naming anyone and everyone that had any connection with FTX, utilizing "cookie cutter" lawsuits that allege that every defendant performed identical actions, which is simply untrue and strongly suggests that Plaintiffs' attorneys have not satisfied their procedural obligations. There is no basis whatsoever to transfer this matter and include these Defendants in the MDL, where there are no common facts or allegations, even as pled. Transfer of the Nevada Action to the MDL will cause these Defendants to spend countless thousands of dollars and waste judicial resources. There is no personal jurisdiction over these Defendants in Florida, and no subject matter jurisdiction in the underlying Nevada Action.  But at a minimum, if any litigation had any foundation, or even any potential for liability, it should take place in Nevada where the Defendants live and work.  This litigation is a source of pressure executed by Plaintiffs and their counsel in  order to extract a settlement so that the Defendants will not have to spend hundreds of thousands of dollars

defending themselves from unwarranted and unsubstantiated allegations levied by individuals they do not even know.

Here, the claims against the Defendants in the Nevada Action are unrelated and do not arise out of the same transactions or occurrences as the other defendants, and as such the claims are not related within the meaning of Federal Rule of Civil Procedure 20(a)(1). This lawsuit involves different facts, different defendants, different witnesses, different jurisdiction, different evidence, different legal theories and different defenses. For these reasons, this matter is properly before the District of Nevada and should not be transferred to the MDL.

### III.  ARGUMENT

The Panel has the authority to vacate its order conditionally transferring a case to an MDL "upon the showing of good cause by any party." *In re Multidistrict Commodity Credit Corp. Litig. Involving Grain Shipments*, 319 F.Supp. 533,534 (J.P.M.L. 1970). In determining whether to vacate a conditional transfer order, "the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider the multiple litigation as a whole in the light of the purposes of the law." *In re Multidistrict Civ. Antitrust Litig. Involving Antibiotic Drugs,* 303 F.Supp. 1056, 1057 (J.P.M.L. 1969). Good cause to vacate a conditional transfer order exists when the case at issue and the other MDL cases do not share sufficient questions of law or fact. *See In re Tri-State Water Rights Litig.*, 481 F.Supp.2d 1351, 1353 (J.P.M.L. 2007) (holding that claims related to the flow of one river were not sufficiently similar to claims related to the flow of another river); *In re Multidistrict Private Civ. Treble Damage Antitrust Litig. Involving IBM*, 316 F.Supp. 976, 977 (J.P.M.L. 1970) (holding that claims related to magnetic tape equipment were not sufficiently similar to claims related to electronic data processing equipment). Good cause exists where consolidation fails to promote the "just and efficient" conduct of the action. See 28 U.S.C. § 1407(a); see also H.R. Rep. No. 1130, 90th Cong. 2nd Session, 1968 U.S.C.C.A.N. 1898, 1900 (explaining that "pretrial consolidation must promote the just and efficient conduct of such actions and be for the convenience of the parties and

witnesses"). Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained." See H.R. Rep. No. 1130, 1968 U.S.C.C.A.N. at 1900.

Three criteria must be satisfied before this Panel may transfer a case: (1) the actions must share common questions of fact; (2) transfer must be convenient for the parties and witnesses; and (3) transfer must "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). All of these criteria must be satisfied in order for the Panel to transfer a case to an existing MDL (*In re Highway Acc. Near Rockville, Connecticut, on December 30, 1972*, 388 F.Supp. 574, 575 (J.P.M.L. 1975)); none of them is satisfied here.

**A. The Nevada Action Should Not be a Part of the MDL Because it Does Not Share Common Questions of Law with the Other MDL Cases.**

If the common questions are predominately legal, the panel should deny transfer. *In re EPA Pesticide Litigation*, 434 F.Supp. 1235 (J.P.M.L. 1977). The Nevada Action is the only case that must be decided under Nevada law. While Plaintiffs attempt to bring the Nevada Action in an attempt to gain personal jurisdiction under Florida law, as shown, this is improper and does not grant subject matter jurisdiction. Resolving these issues requires a court to interpret and apply Nevada and Ninth Circuit Law. The other cases in the MDL, however, do not involve Nevada law. Because these questions of law are fundamentally different, keeping the Nevada Action in this MDL will actually frustrate one of the Panel's purposes in transferring cases to the MDL- conserving resources. The causes of action and legal standards have little overlap, and the parties and the MDL court will use more resources to resolve the distinct issues of the Nevada Action than if the case is removed from the MDL and remanded to Nevada.

**B. The Nevada Action Should Not be a Part of the MDL Because it Does Not Share Common Questions of Fact With the Other MDL Cases and is Not Convenient for These Defendants**.

The Nevada Action also should not be part of the MDL because the questions of fact involved in the Nevada Action are fundamentally different than the other cases in the

MDL. Claims of different individual plaintiffs which involve common legal issues but totally different alleged facts may not be grouped into a single action under the plain and unambiguous language of Federal Rule of Civil Procedure 20(a)(1). I*n re Asbestos Product Liability Litigation*, Civ. No. 08-89546 (E.D. Pa. 2008). Where permitting multi-plaintiff actions with unrelated claims to proceed would complicate discovery and interfere with completion of assigned deadlines, the matter should be rejected by the Panel, or be severed if it is already consolidated. *Id*.

Plaintiffs further fail to allege any facts tying these Defendants to the class action and FTX and the FTX Insider Defendants in the MDL. As pled, there are no common facts or allegations. In addition, there is no jurisdiction over these Defendants in the Nevada Action. Discovery will have to be expanded to accommodate the unique claims and defenses of these Nevada Defendants, and Plaintiffs will not benefit from consolidated discovery nor will the parties to the other MDL cases as no other actions occurred in Nevada.

### C. Transfer of this Nevada Action Will Not Promote the Just Conduct of This Litigation.

In order to determine whether the transfer of this action will promote the just conduct of the litigation, it is instructive to review the pleadings filed. Because the factual and legal issues are not shared between the Nevada Action and the other MDL actions, the transfer of this Nevada Action to the MDL would not conserve judicial resources. Rather, inclusion of the Nevada Action, will only burden the transferee court, who is already contending with the substantial volume of MDL cases, with new issues of discovery and legal defenses which are not present in the other MDL cases or even in that jurisdiction. Thus, the MDL court will be burdened with distinct law and motion matters, which would not conserve judicial resources and will render the MDL less efficient for all parties, other than Plaintiffs counsel.

## IV. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Panel grant their motion, vacate its August 1, 2023 order conditionally transferring to this MDL the *Garrison v. Stephan et al.*, D. Nevada, Case No: 2:23-cv-01138-JAD-BNW, and remand the case to the United States District Court or the District of Nevada.

Dated this 22nd day of August, 2023.

                                            **FLANGAS LAW GROUP**
                                            */s/ Kimberly P. Stein*
                                            KIMBERLY P. STEIN, ESQ.
                                            Nevada Bar No. 8675
                                            E-mail: kps@fdlawlv.com
                                            3275 South Jones Blvd., Suite 105
                                            Las Vegas, Nevada 89146
                                            *Attorneys for Defendants Graham Stephan,*
                                            *Andrei Jikh, and Jeremy Lefebvre*