**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: FTX CYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION**                          **MDL No. 3076**

*Garrison v. Singh, E.D. Michigan, Case No. 23-cv-011764-LJM-KGA*

_____/

**BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL
TRANSFER ORDER DATED AUGUST 1, 2023 (CTO-2)**

**I.        INTRODUCTION**

Defendant Jaspreet Singh ("Singh") hereby moves to vacate the conditional transfer

order, CTO-2, issued by the United States Judicial Panel on Multidistrict Litigation (the

"Panel"), in *In re: FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076, Dkt No.

185 (JPML June 5, 2023), transferring a case filed against him in the Eastern District of

Michigan to the multidistrict litigation *In re: FTX Cryptocurrency Exchange Collapse Litigation*,

No. 1:23-md-3076 (S.D. Fla.) (the "FTX MDL").

Transfer of this case is not warranted because the vast bulk of the case against Mr. Singh

involves facts unique to him – what he did or did not do to promote the FTX exchange's "yield

bearing accounts".  Plaintiffs have not alleged that Mr. Singh acted in concert in any way with

any of the other FTX MDL defendants.  What actions Mr. Singh did or did not take are thus

irrelevant to the cases against the other defendants just as what they did are irrelevant to the case

against him.  Transfer is not warranted, therefore, under 28 U.S.C. § 1407.

## II.    PROCEDURAL BACKGROUND

This Multi-District Litigation involves accusations against approximately 45 separate defendants who are alleged to have played a great variety of different roles in Plaintiffs' claiming to have suffered losses in the collapse of FTX crypto exchange.  *See* Administrative Class Action Complaints ("ACACs") FTX MDL Dkt. Nos. 153 ("Law Firms"), 155 ("Bank Defendants"), 157 ("Domestic Venture Capital Funds", 158 ("Auditor Defendants"), 178 ("FTX Insider Defendants"), 179 ("Promoters and Digital Creator Defendants"), and 182 ("Multinational VC Defendants").  Defendant Singh is included in the "Promoters and Digital Creator Defendants" ACAC.  FTX MDL Dkt. No. 179.

The original complaint against Singh was filed in the Southern District of Florida on March 15, 2023 and included a total of 10 defendants.  *See Garrison v. Paffrath, et al.*, Case No. 1:23-cv-21023-CMA (Dkt No. 1) (the "Florida Action").  On April 17, 2023 Plaintiffs noticed the Florida Action to be added as a tag-along-action to FTX MDL.  JPML Dkt. No. 87.

Pursuant to the FTX MDL Court's June 21, 2023 Initial Case and Scheduling Order (FTX MDL Dkt. No. 61), Defendant Singh notified Plaintiffs and the MDL Court that he objected to personal jurisdiction in the Southern District of Florida.  FTX MDL Dkt. No. 90. Plaintiffs then filed a complaint against Mr. Singh in the Eastern District of Michigan (the "Michigan Action.).  *Garrison v. Singh,* 2:23-cv-11764-LJM-KGA, (Dkt. No. 1) (Attached as Exhibit A, "Exh. A").  Plaintiffs then noticed the Michigan Action to be added as a tag-along-action to FTX MDL.  JPML Dkt. No. 167.  The Panel issued Conditional Transfer Order CTO-2, conditionally transferring the Michigan Case to the FTX MDL.  JPML Dkt. Nos. 178, 185. Although CTO-2 became finalized, the Panel granted Defendant Singh's motion to reinstate CTO-2 with respect to the Michigan Action.  Mr. Singh now files this motion to vacate.

### III.   THE MICHIGAN ACTION

The complaint in the Michigan Action includes three substantive causes of action and one declaratory relief cause of action under Florida State law against Mr. Singh, primarily involving allegations that Mr. Singh promoted "yield-bearing accounts" ("YBAs") offered by the FTX crypto currency exchange.  Count One asserts violations of Florida Statute Section 517.07, "the Florida Securities and Investor Protection Act".  Exh. A, pp. 86-87, ¶¶ 170-177.  Count Two asserts violations of the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., et seq. ("FDUTPA").  Exh. A, pp. 88-89, ¶¶ 178-187.  Count Three asserts "civil conspiracy" between Mr. Singh and "the FTX Entities".  Exh. A, pp. 90-91, ¶¶ 188-193.  Count Four seeks declaratory relief (but never specifies what that relief is).  Exh. A, pp. 91-92, ¶¶ 194-201.

The factual allegations in the Michigan Action complaint primarily focus on Mr. Singh's alleged promotion of yield-bearing accounts, with occasional mentions of promotion of the FTX platform as a whole.  For example,

> 21.     Defendant, Jaspreet Singh, a YouTube star with over 1.4 million subscribers to his YouTube channel, "Minority Mindset," was paid to endorse FTX, and is a citizen and resident of Detroit, Michigan.

> 22.     Defendant is a digital creator who provides investor information and advice on an array of topics, including cryptocurrency generally and FTX on his YouTube channel. YouTube is the second largest search engine, which generates content that is accessible across the globe.

> 23.     Defendant (1) admittedly endorsed and promoted the sale of the FTX YBAs [yield-bearing-accounts] and (2) did not disclose, in any of his YouTube and other social media posts, that he was paid hundreds of thousands and/or millions of dollars by FTX and profited from the sale of FTX YBAs, in clear violation of SEC, FTC and various federal and state regulations.

32.     In particular, Plaintiffs' claims arise from their purchase of and investment in FTX's YBAs, which, FTX marketed through Defendant, as a type of savings account that every customer who signed up for the FTX app received by default, and which, as explained below, was guaranteed to generate returns on their significant holdings in the accounts, regardless of whether those assets were held as legal tender or cryptocurrency, and regardless of whether any trades were made with the assets held in the YBA. That is the narrative that Defendant pushed in promoting the offer and sale of the YBAs, which are unregistered securities. For that, the Defendant is liable for Plaintiffs' losses, jointly and severally and to the same extent as if he himself were the FTX Entities.

## IV.     LEGAL REQUIREMENTS

Before a case can be transferred to a multi-district litigation, the following minimum requirements must be met:

1. The actions must share common issues of fact;

2. Transfer must be for the convenience of parties and witnesses; and

3. Transfer must advance the just and efficient conduct of the actions.

28 U.S.C.A. § 1407(a); *In re Highway Acc. Near Rockville, Connecticut, on December 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975).

The mere existence of common questions of law do not justify transfer.  *In re U.S. Postal Services Next Generation Delivery Vehicle Acquisitions Program Record of Decision Litigation*, 2022 WL 5408780 (U.S.J.P.M.L. 2022) (denying transfer where actions would turn primarily on questions of law with respect to whether agency decision was arbitrary and capricious and violated NEPA; stating that in similar circumstances, court has held centralization unwarranted);

## V.      ANY COMMON ISSUES OF FACT ARE DE MINIMUS

The Michigan Action almost exclusively bases its claims against Mr. Singh solely on allegations of Mr. Singh's actions.  Whatever unresolved "common" issues of fact there might be are few, simple, and vastly outweighed by the questions of fact unique to Mr. Singh.

### A.      Count One

Count One asserts a violation of Florida Statute Section 517.07.  Exh. A, pp. 86-87, ¶¶ 170-177.  Section 517.07 states:

> (1)   It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter.

Fla. Stat. § 517.07.

The statue thus requires that the alleged seller:

(1) sold or offered to sell a security;

(2) in Florida;

(3) that the security was not

(a) registered under the law;

(b) exempt from registration,

(c) a federal covered security, or

(d) part of an exempt sale.

*Id.*

The only thing alleged to be a "security" in the Michigan Action are the YBAs.  Exh. A, p. 5, ¶ 10.  The facts as to how the YBAs operated are in the public domain and have already been extensively analyzed.  *See* Exh A, pp. 53-61, ¶¶ 112-116 and Ex. B (Preliminary Expert Report of Paul Sibenik).  There would be no need to rehash these facts in the Michigan Action.

All the other issues regarding YBAs – whether they are "securities", exempt from registration, a federal security, or sold as part of an exempt sale – are thus purely *legal* issues.

The main and dominating fact questions for Count One would be whether and how Mr. Singh sold or offered to sell YBAs in Florida.  *See* Fla. Stat. § 517.07.  Whatever actions Mr. Singh did or did not take towards selling or offering to sell YBAs is a fact issue unique to him. The complaint specifically alleges that Mr. Singh acted as an "agent" to the FTX Entities.  Exh A., p. 87, ¶ 176.  The FTX Entities are not defendants in the FTX MDL.  Whatever relationship or communications Mr. Singh allegedly had with one or more of those FTX Entities is likewise an inquiry unique to him.  Whatever relationships or communications that any of the other defendant in the FTX MDL may or may not have had with the FTX Entities would be completely irrelevant to the Michigan Action.  No discovery would be needed that would involve any other defendant.

Mr. Singh asserts that he will easily demonstrate that he did nothing remotely close to "selling", "promoting", "advertising" or even saying anything positive about YBAs, rather just the opposite.  He will likewise easily demonstrate that he had no relationship whatsoever with the FTX Entities, let alone any "agency" relationship.  Until and unless these factual issues would be resolved against Mr. Singh, there would be no need to reach any of the legal issues surrounding YBAs.  In any event, to avoid any potential risk of their being conflicting rulings, there could easily be some mechanism by which Mr. Singh could participate in and be bound by a joint resolution of these purely legal issues in the FTX MDL (likely by motion for summary adjudication) while the vast bulk of the case against him remains in the Eastern District of Michigan.  (*See In re Commonwealth Scientific and Industrial Research Organisation Patent Litigation*, 395 F.Supp.2d 1357 (Jud.Pan.Mult.Lit. 2005) ("Alternatives to transfer exist that can

minimize whatever possibilities there might be of duplicative discovery and/or inconsistent

pretrial rulings.")

### B.      Count Two

Count Two asserts violations of the Florida Deceptive and Unfair Trade Practices Act,

section 501.201, Fla. Stat., et seq. ("FDUTPA").  Exh. A, pp. 88-89, ¶¶ 178-187.  Florida Statute

section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

Fla. Stat. § 501.204(1).  Section 501.203, "Definitions", states:

> (3)   "Violation of this part" means any violation of this act or the rules adopted
> under this act and may be based upon any of the following as of July 1, 2017:
>
> > (a)   Any rules promulgated pursuant to the Federal Trade Commission
> > Act, 15 U.S.C. ss. 41 et seq.;
> >
> > (b)   The standards of unfairness and deception set forth and interpreted
> > by the Federal Trade Commission or the federal courts; or
> >
> > (c)   Any law, statute, rule, regulation, or ordinance which proscribes
> > unfair methods of competition, or unfair, deceptive, or unconscionable
> > acts or practices.

Fla. Stat. § 501.203(3)

The complaint only refers to "the deceptive and unfair practices of Defendant, as more

fully described herein."  Exh. A, p. 89, ¶ 185.  There is no reference to any other defendant in the

FTX MDL.  Again, any fact questions involved would be solely unique to Mr. Singh.

### C.      Count Three

Count Three asserts "civil conspiracy" between Mr. Singh and "the FTX Entities".  Exh.

A, pp. 90-91, ¶¶ 188-193.  A civil conspiracy, in Florida, involves the following elements: (a) a

conspiracy between two or more parties; (b) to do an unlawful act or to do a lawful act by

unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage

to plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship,*

931 So.2d 137, 140 (Fla. 5th DCA 2006).

The only alleged co-conspirators are the FTX Entities, who are not defendants in the FTX

MDL.  Exh. A, pp. 90-91, ¶¶ 188-193.  Again, any communications or relationship that may or

may not have occurred or existed between Mr. Singh and the FTX Entities would be exclusive

and unique to Mr. Singh and any communications or relationships between the FTX Entities and

any other FTX MDL defendants would be irrelevant to the Michigan Action.

**VI.    TRANSFER OF THE MICHIGAN ACTION WOULD NOT MAKE THE CASE MORE CONVENIENT OR ADVANCE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS**

As noted above, there are no factual liability issues in common between the Michigan

Action and any of the other actions in the FTX MDL.  Any substantive pre-trial litigation –

discovery, motions to dismiss, motions for summary judgment – of liability issues would be

completely separate.  None of the ACACs allege anywhere that Mr. Singh acted in concert in any

way with any other FTX MDL defendant.  *See* FTX MDL Dkt. Nos. 153, 155, 157, 158, 178 and

179.  Thus, none of plaintiffs' liability allegations regarding Mr. Singh and none of the discovery

that they might seek against him would be relevant to any other FTX MDL defendant or vice

versa.  Likewise, none of the liability discovery Mr. Singh would seek from plaintiffs to defend

against any of their liability allegations would be relevant to any other defendant.  The questions

would all relate to plaintiffs' claims of how they were supposedly influenced (or sold to or

advertised to, etc.) ***by Mr. Singh***.

The only commonality between Mr. Singh and the other defendants would be with

respect to damages.  Plaintiffs assert that defendants would be jointly and severally liable.  *See,*

*e.g.*, FTX MDL Dkt. No. 179, pp. 11-12, 292, ¶¶ 30, 770.  The question of apportionment of damages, if any (if the cases ever got that point), are far, far down the road – after each case had been sent back to their original jurisdictions for trial.  Forcing Mr. Singh to remain in an MDL case, the vast majority of which had nothing to do with him, would be a severe and wholly unnecessary inconvenience.

For their part, plaintiffs would have little to gain.  Given the lack of overlap in issues of fact, Mr. Singhs' discovery against plaintiffs would largely not be duplicative of that propounded by the other defendants.  Their effort in responding to his requests and their time in depositions answering questions about their allegations against him would be largely the same amount of time, whether the Michigan Action was part of FTX MDL or not.  Likewise, plaintiffs' efforts in responding to Mr. Singh's pretrial substantive motions – motions to dismiss or for summary judgement – would be the same since such motions would all involve allegations unique to Mr. Singh.

The requirements of 28 U.S.C.A. § 1407(a), therefore, have not been met and vacating Conditional Transfer Order (CTO-2) is warranted.

## CONCLUSION

**WHEREFORE**, Defendant Jaspreet Singh respectfully requests that this Honorable United States Judicial Panel on Multidistrict Litigation vacate the Conditional Transfer Order dated August 1, 2023 (CTO-2) with respect to Case No. E.D. Michigan, Case No. 23-cv-011764-LJM-KGA and allow that case to proceed in the Eastern District of Michigan

Dated:  August 29, 2023                      Respectfully Submitted,

*/s/ Michael O. Cumming          s*
Michael O. Cummings
N.Y. Bar No. 2701506
Cummings, McClorey, Davis & Acho, P.C.
1185 Avenue of The Americas, Third Floor
(212) 547-8810
mcummings@cmda-law.com
*Attorneys for Defendant Jaspreet Singh*