# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| AUSTIN ONUSZ, CEDRIC KEES VAN PUTTEN, NICHOLAS J. MARSHALL and HAMAD DAR, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Adversary Proceeding No. 22-50513 (JTD) |
| WEST REALM SHIRES INC., WEST REALM SHIRES SERVICES INC. (D/B/A FTX US), FTX TRADING LTD., ALAMEDA RESEARCH LLC, SAM BANKMAN-FRIED, ZIXIAO WANG, NISHAD SINGH and CAROLINE ELLISON, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## DEFENDANT BANKMAN-FRIED TO DISMISS, TRANSFER OR ABSTAIN

**MONTGOMERY McCRACKEN**
**WALKER & RHOADS LLP**
Gregory T. Donilon (No. 4244)
Marc J. Phillips (No. 4445)
1105 North Market Street, 15th Floor
Wilmington, Delaware  19801
Telephone: (302) 504-7800
gdonilon@mmwr.com
mphillips@mmwr.com

Jeremy D. Mishkin
(admitted *pro hac vice*)
1735 Market St., 21st Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 772-7246
jmishkin@mmwr.com

*Attorneys for Samuel Bankman-Fried*

Dated:  December 7, 2023

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

PRELIMINARY STATEMENT ................................................................................. 1

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ...................................... 1

NATURE AND STATE OF PROCEEDINGS.................................................................. 1

I.      STATEMENT OF FACTS ............................................................................. 3

      A.      FTX US Terms of Service ................................................................. 3

      B.      FTX.com Terms of Service................................................................. 6

II.     ARGUMENT ............................................................................................. 7

      A.      Plaintiffs' Claims Against Mr. Bankman-Fried Should Be Dismissed Because They Must Be Brought Individually, Through Arbitration ..................... 8

            1.      The Federal Arbitration Act governs the FTX arbitration agreements and mandates their enforcement. ............................................. 9

            2.      Dismissal, as opposed to a stay pending resolution at arbitration, is warranted................................................................................. 12

            3.      The FTX US ToS contains California choice-of-law and choice-of-venue provisions. ................................................................. 13

            4.      The FTX.com arbitration clause contains an English choice-of-law and a Singapore choice-of-venue provision................................ 14

            5.      Plaintiffs consented to FTX's terms of service, which included arbitration agreements and class action waivers. ..................................... 14

            6.      The class action waivers are enforceable................................................. 16

            7.      The FTX arbitration agreements are valid and enforceable..................... 16

      B.      This Adversary Proceeding Should Be Transferred To The Pending Multi-District Litigation Consolidating Similar Cases ................................... 20

      C.      This Court Lacks Subject Matter Jurisdiction Over the Executive Defendant Claims Against Mr. Bankman-Fried ...................................... 21

      D.      If The Court Finds That It Has Subject Matter Jurisdiction, It Should Exercise Its Discretion to Permissively Abstain From Hearing This Case .......... 24

            1.      Factor 1:  The possible effect of abstention on the administration of the Debtors' estates in bankruptcy............................................. 25

            2.      Factor 2:  The extent to which state law issues predominate over bankruptcy issues. and the difficulty or unsettled nature of applicable state law. ........................................................................ 25

            3.      Factor 3:  The difficulty or unsettled nature of applicable state law. ....... 26

# TABLE OF CONTENTS
## (continued)

| | | | Page |
|---|---|---|---|
| | 4. | Factor 4:  The presence of a related proceeding commenced in state court or other non-bankruptcy court. | 26 |
| | 5. | Factor 5:  The jurisdictional basis, if any, other than 28 U.S.C. §1334. | 26 |
| | 6. | Factor 6:  The degree of relatedness or remoteness of the proceeding to the main bankruptcy case. | 26 |
| | 7. | Factor 7:  The substance rather than the form of an asserted "core" proceeding. | 26 |
| | 8. | Factor 8:  The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. | 27 |
| | 9. | Factor 9:  The burden on the Court's docket. | 27 |
| | 10. | Factor 10:  The likelihood that the commencement of the proceeding in a bankruptcy court involved forum shopping by one of the parties. | 27 |
| | 11. | Factor 11:  The existence of a right to a jury trial. | 27 |
| | 12. | Factor 12:  The presence in the proceeding of non-debtor parties. | 28 |
| E. | | Mr. Bankman-Fried Does Not Consent To Jurisdiction | 28 |
| III. | | CONCLUSION | 28 |

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*,
  21 F.4th 631 (9th Cir. 2021) .................................................................................... 11

*Allen v. Shutterfly, Inc.*,
  No. 20-cv-02448-BLF, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ................................... 17

*Alvarado v. Pac. Motor Trucking Co.*,
  No. 14-cv-0504 DOC, 2014 WL 3888184 (C.D. Cal. Aug. 7, 2014) ...................................... 12

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) .............................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................. 8, 9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)............................................................................................. 16

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013)............................................................................................... 14

*Bertha Dominguez v. Sonesta Int'l Hotels Corp.*,
  No. 22-cv-03027-JCS, 2023 WL 25707 (N.D. Cal. Jan. 3, 2023)........................................... 17

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .................................................................................. 10

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................................ 4

*California Crane Sch., Inc. v. Google LLC*,
  No. 21-cv-10001-HSG, 2022 WL 3348425 (N.D. Cal. Aug. 12, 2022)........................... 17, 18

*CD Partners, LLC v. Grizzle*,
  424 F.3d 795 (8th Cir. 2005) .................................................................................... 8

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*,
  584 F.3d 513 (3d Cir. 2009)................................................................................. 9, 10

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................... 3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................................................... 11

*Cir. City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ............................................................................................... 9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) .................................................................................... 3

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................... 21

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................... 11

*Discover Bank v. Superior Court of Los Angeles*,
   36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (Cal. 2005) ............................. 16

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ........................................................................................... 11

*Erickson v. Nebraska Mach. Co.*,
   2015 WL 4089849 (N.D. Cal. July 6, 2015) ........................................................... 4

*Flores-Mendez v. Zoosk, Inc.*,
   No. 20-cv-04929 WHA, 2022 WL 2967237 (N.D. Cal. July 27, 2022) ............. 18, 19

*Frazier v. W. Union Co.*,
   377 F. Supp. 3d 1248 (D. Colo. 2019) ................................................................... 8

*Gay v. CreditInform*,
   511 F.3d 369 (3d Cir. 2007) .................................................................................. 13

*Giddings v. Media Lodge, Inc.*,
   320 F. Supp. 3d 1064 (D.S.D. 2018) ...................................................................... 8

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
   716 F.3d 764 (3d Cir. 2013) .................................................................................. 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ............................................................................................. 10

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ................................................................................................. 10

**TABLE OF AUTHORITIES**
(continued)

*In re Centennial Coal, Inc.*,
    282 B.R. 140 (Bankr. D. Del. 2002) ........................................ 20, 21

*In re DHP Holdings II Corp.*,
    435 B.R. 220 (Bankr. D. Del. 2010) ........................................ 25

*In re Earned Capital Corp.*,
    331 B.R. 208 (Bankr. W.D. Pa. 2005) ...................................... 24

*In re Evergreen Solar, Inc.*,
    No.11-12590 MFW, 2014 WL 300965, at *1 (Bankr.D. Del. Jan. 28, 2014) ........................... 3

*In re Exide Techs.*,
    544 F.3d 196 (3d Cir. 2008) ................................................. 22

*In re Fruit of the Loom, Inc.*,
    407 B.R. 593 (Bankr. D. Del. 2009) ........................................ 25

*In re LaRoche Industries, Inc.*,
    312 B.R. 249 (Bankr. D. Del. 2004) .................................. 26, 27, 28

*In re Loewen Grp. Int'l, Inc.*,
    344 B.R. 727 (Bankr. D. Del. 2006) ........................................ 25

*In re Mobile Tool Int'l*,
    320 B.R. 552 (Bankr. D.Del. 2005) ......................................... 24

*In re SemCrude, L.P.*,
    428 B.R. 82 (Bankr. D. Del. 2010) ......................................... 24

*In re Stone & Webster, Inc.*,
    367 B.R. 523 (Bankr. D. Del. 2007) ........................................ 23

*In re The Fairchild Corp.*,
    452 B.R. 525 (Bankr. D. Del. 2011) ........................................ 21

*Invista S.A.R.L. v. Rhodia, S.A.*,
    625 F.3d 75 (3d Cir. 2010) ............................................... 9, 10

*Jenny Houtchens, et al., Plaintiffs, v. Google LLC, Defendant*,
    No. 22-cv-02638 BLF, 2022 WL 17736778 (N.D. Cal. Dec. 16, 2022) ................... 12, 17

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991) ................................................ 21

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ............................................................ 8

*Krystal, Inc. v. China United Transp., Inc.*,
2017 WL 6940544 (C.D. Cal. Apr. 12, 2017) ...................................... 14

*Lag Shot LLC v. Facebook, Inc.*,
No. 21-cv-01495 JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021) ...................................... 16

*Laver v. Credit Suisse Sec. (USA), LLC*,
976 F.3d 841 (9th Cir. 2020) ............................................................ 16

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) ........................................................ 11, 18

*Lloyd v. MBNA Am. Bank, N.A.*,
No. 00-cv-109 SLR, 2001 WL 194300 (D. Del. Feb. 22, 2001) .............................................. 13

*Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*,
6 F.3d 1184 (7th Cir. 1993) ............................................................ 25

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......................................................... 18

*Mullen Techs., Inc. v. Qiantu Motor (Suzhou) LTD.*,
No. 19-cv-1979 W AGH, 2020 WL 3573371 (S.D. Cal. July 1, 2020)................................. 14

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......................................................... 12

*Nguyen v. Tesla, Inc.*,
2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) ........................................ 16

*Noble v. Samsung Elecs. Am., Inc*,
682 F. App'x 113 (3d Cir. 2017) ........................................................ 8

*Norde v. Ctr. for Autism & Related Disorders, LLC*,
No. 22-CV-00639-DMR, 2022 WL 4227274 (N.D. Cal. Aug. 22, 2022) .......................... 9, 11

*Penn Outdoor Servs. LLC v. JK Consultants*,
No. 17-cv-2791, 2018 WL 3831398 (E.D. Pa. Aug. 10, 2018) .............................................. 17

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993)............................................................. 3

## TABLE OF AUTHORITIES
### (continued)

*Perrigo Co. v. Int'l Vitamin Corp.*,
   No. 17-cv-1778, 2018 WL 4290387 (D. Del. Sept. 7, 2018)......................................... 3

*Puleo v. Chase Bank USA, N.A.*,
   605 F.3d 172 (3d Cir. 2010)........................................................................................ 11

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)..................................................................................................... 10

*Romanov v. Microsoft Corp.*,
   No. 21-cv-03564 FLW, 2021 WL 3486938 (D.N.J. Aug. 9, 2021)........................... 17

*Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*,
   263 F. Supp. 3d 491 (D. Del. 2017)........................................................................... 14

*Sparling v. Hoffman Const. Co.*,
   864 F.2d 635 (9th Cir. 1988)...................................................................................... 12

*Stoe v. Flaherty*,
   436 F.3d 209 (3d Cir. 2006)................................................................................. 22, 23

*Tompkins v. 23andMe, Inc.*,
   No. 5:13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ................ 17

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ....................................................................................... 3

*Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
   No. 18-cv-06628 BLF, 2019 WL 2603316 (N.D. Cal. June 25, 2019) ..................... 13

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
   No. 2037-N, 2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ......................................... 8

*Wright v. Rent-A-Ctr. E., Inc.*, No. 08-956 (GMS), 2009 WL 4277243 (D. Del. Nov. 30, 2009) 12

*Zephyr Fluid Sols., LLC v. Scholle IPN Packaging, Inc.*,
   No. 22-cv-00475-SRF, 2023 WL 1795798 (D. Del. Feb. 7, 2023) ........................... 17

Statutes

28 U.S.C. § 157............................................................................................................ 22, 23

28 U.S.C. §1334............................................................................................................ passim

28 U.S.C. §1412................................................................................................................ 20

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

9 U.S.C. § 2 ........................................................................................................... 9

Cal. Civ. Code § 1670.5(a) ................................................................................... 18

Rules

Federal Rule of Bankruptcy Procedure 7012(b) ........................................... 1, 7, 22

Federal Rule of Bankruptcy Procedure 7087 ........................................................ 20

Federal Rule of Civil Procedure 12 ............................................................... passim

## PRELIMINARY STATEMENT

Samuel Bankman-Fried ("Mr. Bankman-Fried"), by and through undersigned counsel, hereby submits his memorandum of law in support of his Motion to Dismiss, Transfer, or Abstain (the "Motion") filed contemporaneously herewith and respectfully states as follows:

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

The claims set forth in the Adversary Complaint against Mr. Bankman-Fried should be dismissed or transferred to the pending Multi-District Litigation in the United States District Court for the Southern District of Florida (*In re: FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076, Case No. 1:23-md-03076-KMM) (the "FTX MDL").   In the alternative, permissive abstention is appropriate.  Accordingly, Mr. Bankman-Fried requests (1) that the claims against him be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b) based on the valid and enforceable arbitration agreements in FTX US and FTX Trading, Ltd.'s Terms of Service, (2) that the claims be dismissed to the extent that they seek to proceed in the form of a class action, because Plaintiffs waived any right to bring class actions claims under the applicable Terms of Service, (3) that the claims against him be transferred to the FTX MDL consolidating other pending lawsuits arising under similar facts or, (4) that this Court exercise its authority to permissively abstain pursuant to 28 U.S.C. §1334(c)(1).

## NATURE AND STAGE OF PROCEEDINGS

On December 27, 2022, Plaintiffs Austin Onusz, Cedric Kees Van Putten, Nicholas J. Marshall and Hamad Dar ("Plaintiffs"), individually and on behalf of a proposed class, filed their *Adversary Complaint for Declaratory Judgment and Violations of Common Law* [Adv. D.I. 1] (the "Complaint") against Defendants West Realm Shires Inc. ("WRS"), West Realm Shires Services Inc. (doing business as FTX US) ("FTX US"), FTX Trading Ltd. (doing business as FTX.com)

("FTX.com"), Alameda Research LLC ("Alameda" and, together with WRS, FTX US, and FTX.com, "Debtor Defendants"), Samuel Bankman-Friend, Zixiao Wang, Nishad Singh, and Caroline Ellison (all Defendants, collectively, "Defendants"), in this Court.  *See* Compl. at 1

Plaintiffs' allegations arise out of use of the cryptocurrency exchanges, FTX US and/or FTX.com, to hold digital assets.  *See* Compl. at 10–11, ¶ 33.  Plaintiffs allege they deposited or held customer property with FTX US and/or FTX.com.  Compl. at 46, ¶ 181.  The Complaint is silent as to when Plaintiffs registered with FTX US and/or FTX.com, and which Plaintiff registered with which FTX-related service.  Similarly, the Complaint is silent as to what assets each Plaintiff held, on which FTX platform, during what time frame.  Plaintiffs allege that due to various actions of Defendants, Plaintiffs and any putative class members have been denied use of their property since no later than November 8, 2022.  *See* Compl. at 56, ¶ 216.

Plaintiffs assert claims for breach of contract, breach of fiduciary duty, negligence, conversion, aiding and abetting breach of fiduciary duty, and aiding and abetting conversion against FTX US, FTX Trading Ltd., and individuals associated with the founding and operation of FTX.  *See* Compl. at 48–58.  As against the "FTX Executives", including Mr. Bankman-Fried, Plaintiffs bring claims of breach of fiduciary duty (Count IV), negligence (Count V), and conversion (Count VI) (the "FTX Executive Claims").  *See* Compl. at 54–57.

On October 16, 2023, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, and including Debtor Defendants, the "Debtors") entered into that certain *Settlement and Plan Support Agreement* (the "FTX/Plaintiff Settlement") with the Ad Hoc Committee of Non-US Customers of FTX.com, the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases and Plaintiffs.  On that same date, the Debtors filed the *Notice of Proposed Settlement of Customer Property Disputes* [D.I. 3291], which notice included a copy of

the FTX/Plaintiff Settlement.  Pursuant to the FTX/Plaintiff Settlement, Plaintiffs and the Debtors have agreed to settle, among other things, all claims asserted by Plaintiffs against Debtor Defendants in the Complaint (the "Debtor Defendant Claims"), effective as of the effective date of an anticipated amended plan of reorganization to be filed by the Debtors, and to withdraw the Debtor Defendant Claims with prejudice.  *See* FTX/Plaintiff Settlement Agreement at 11, § 5.  The Debtor Defendant Claims are: (i) declaratory judgment against FTX US and FTX.com (Count I); (ii) declaratory judgment against Alameda (Count II); (iii) breach of contract against FTX US and FTX.com (Count III); and (iv) breach of fiduciary duty against FTX US and FTX.com (Count IV). Pending the occurrence of a plan effective date, Plaintiffs and the Debtors have agreed that litigation of the Debtor Defendant Claims shall be stayed and held in abeyance.  *Id.*

## I.      STATEMENT OF FACTS

### A.      FTX US Terms of Service

In order to use FTX US's services, including creating and using an FTX US account, Plaintiffs would have been required to consent to the FTX US User Agreement (the "FTX US User Agreement"), contained within FTX US's terms of service ("FTX US ToS").[1]  *See* Jeremy D. Mishkin Declaration in Support of Mr. Bankman-Fried's Motion to Dismiss, Transfer or Abstain ("Mishkin Decl.") Ex. A (FTX US User Agreement).  Plaintiffs admit that "FTX US also provided each of its U.S. customers with the 'FTX.US User Agreement[.]'"  *See* Compl. at 28, ¶ 102.

---

[1] This Court may consider the FTX.US and FTX.com ToS for the purposes of a motion to dismiss under Rule 12 because Plaintiffs incorporated them by reference in the Complaint.  *See* Compl. at 28; *In re Evergreen Solar, Inc.*, No. 11-12590 MFW, 2014 WL 300965, at *1 (Bankr. D. Del. Jan. 28, 2014) ("A court may also consider indisputably authentic documents that are referenced in or relied upon by the complaint."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Perrigo Co. v. Int'l Vitamin Corp.*, No. 17-cv-1778, 2018 WL 4290387, at *2 (D. Del. Sept. 7, 2018) ("In sum, it is permissible to consider full text of documents partially quoted in complaint. It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Plaintiffs have not specified the dates they registered for FTX US accounts or held assets via FTX US. *See generally* Compl.  However, around and as of May 16, 2022, FTX US displayed its "Terms of Service" prominently at the bottom of FTX US's website, under the header "Legal."[2] Clicking on the ToS header, available on every page of the website, redirected users to a User Agreement to which all FTX US users were required to agree in order to use FTX US services. *See* FTX US User Agreement at 1, ¶ 1.

The FTX US User Agreement contains a class action waiver and agreement to individually arbitrate all disputes arising out of the ToS or use of FTX US services.  *Id.* at 1, 12.  Section 30 of the User Agreement, labeled "Dispute Resolution," mandates that disputes "will be resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding."  *Id.* at 12.  Section 30 also sets forth, *inter alia*, the manner in which arbitration is to be conducted, the extremely limited exceptions to mandatory arbitration, and a class action waiver. Of particular import are the following clauses:

---

[2] On November 11, 2022 and November 14, 2022, FTX Trading Ltd. and 101 affiliated debtors, including FTX US, each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  FTX US's website was subsequently taken down as part of the restructuring and any attempt to access that domain name redirects the user to restructuring.ra.kroll.com.  *See* FTX.us.

As a result, Mr. Bankman-Fried no longer has access to company records and is thus compelled to rely on preserved versions of the FTX US website and ToS.  The Internet Archive's "Wayback Machine," a digital internet archive website located at archive.web, downloaded copies of the FTX.com website at various points prior to the bankruptcy.  *See* web.archive.org.  The attached copy of the ToS is obtained from a download of FTX.us as of May 16, 2022, captured by Wayback Machine.  "Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of websites as of dates captured by Wayback Machine) (citing *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *1 n. 1 (N.D. Cal. July 6, 2015) (taking judicial notice of website from Wayback Machine)).

A January 6, 2023 internet search on "how to register an FTX US account tos" reflects that prior to the bankruptcy, www.help.ftx.us, required users to "Agree with Our Terms and Service" as part of "Step 1" in creating an account.  *See* Mishkin Decl. Ex. B ("Jan. 6, 2023 Internet Search").  Moreover, the continued use of FTX US's services after any amendment or updates to the ToS constituted acceptance of the revised ToS, including the dispute resolution provision, unless the user rejected any changes to the dispute resolution provision within 30 days of the date the change became effective or the user was notified of the change.  *See* User Agreement at 1, ¶ 2; 13, ¶ 30(g).

(a)      <u>Mandatory Arbitration of Disputes</u>.  We agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding.  You and FTX.US agree that the U.S. Federal Arbitration Act governs the interpretation and enforcement of these Terms, and that you and FTX.US are each waiving the right to a jury or to participate in a class action.  This arbitration provision shall survive termination of these Terms.

…

(f)      <u>Class Action Waiver</u>.  **YOU AND FTX.US AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOURS OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**  Further, if the parties' dispute is resolved through arbitration, the arbitrator may not consolidate another person's claims with your claims, and may not otherwise preside over any form of a representative or class proceeding.  If this specific provision is found to be unenforceable, then the entirety of this Dispute Resolution section shall be null and void.

*Id.* at 12-13 (original emphasis included).  The beginning of the class action waiver is capitalized and bolded to attract user attention.  *Id.*

Even if an FTX US user did not read more than the first page of the User Agreement, a portion of that page, also in bolded, capital letters, reads:

**IMPORTANT NOTICE REGARDING ARBITRATION:   WHEN YOU AGREE TO THESE TERMS YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY DISPUTE BETWEEN YOU AND FTX.US THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT.   PLEASE REVIEW CAREFULLY SECTION 30 "DISPUTE RESOLUTION" BELOW FOR DETAILS REGARDING ARBITRATION.**

*Id.* at 1.  Directly under this clause, the User Agreement reads, "1.  <u>Agreement to Terms/Privacy Policy</u>.  By using our Services, you agree to be bound by these Terms.  If you don't agree to be bound by these Terms, do not use the Services."  *Id.* at 1, ¶ 1.

The FTX US User Agreement's explicit class action waiver and mandatory individual arbitration clause are subject to limited exceptions.  *Id.* at 12-13.  These exceptions include

qualifying disputes in small claims court and equitable claims grounded solely in infringement or misappropriation of intellectual property rights. *Id.* at 12, ¶ 30(b). None of those exceptions apply here, including to Plaintiff's unjust enrichment claim.[3]

By registering accounts and using FTX US services, Plaintiffs and any putative class members consented to FTX US's ToS, including the arbitration agreement and class action waiver. Sections 29 and 30(a) of the User Agreement dictate that any action related to FTX US will be governed by the Federal Arbitration Act. *Id.* at 12, ¶¶ 29, 30(a).[4] Further, the ToS provides that any arbitration shall be conducted by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules (the "AAA Rules"). *Id.* at 12, ¶ 30(c).

## B.   FTX.com Terms of Service

The Complaint also alleges, without specification, that at least one of the named Plaintiffs deposited or held assets using FTX Trading Ltd., doing business as FTX.com. *See* Compl. at 46, ¶ 181. Similar to FTX US, in order to use FTX.com's services, Plaintiffs would have been subject to the Terms of Service for FTX Trading Ltd ("FTX.com ToS").[5] *See* Mishkin Decl. Ex. C ("FTX.com User Agreement"). Plaintiffs expressly rely on the FTX.com ToS in pleading their claims, going so far as to remark on the clarity of the FTX.com ToS, and firmly ground certain claims in them. Having themselves relied on the ToS, Plaintiffs cannot avoid the application of

---

[3] Section 30(b) reads, "Exceptions. As limited exceptions to Section 30(a) above: (i) we both may seek to resolve a Dispute in small claims court if it qualifies; and (ii) we each retain the right to seek injunctive or other equitable relief from a court to prevent (or enjoin) the infringement or misappropriation of our intellectual property rights. *See* User Agreement at 12, ¶ 30(b). Plaintiff's unjust enrichment claim does not concern the infringement or misappropriation of intellectual property rights and is therefore not encompassed by Section 30(b).

[4] The User Agreement also contains choice of law and venue clauses, specifying that for all disputes not covered by the arbitration provision, the laws of the State of California govern and the courts located in Alameda County, California, shall hear any such action. *See* FTX US User Agreement at 12, ¶ 29.

[5] *See supra* n. 1, n. 2. For the reasons explained previously, the FTX.com ToS are currently unavailable on FTX's former website.

other portions of the ToS to their action.  *See* Compl. at 28, ¶ 103 ("FTX.com likewise provided

its "FTX Terms of Service" – between non-U.S. Customers and FTX Trading . . .").

The FTX.com ToS, at times relevant to the Complaint, included a mandatory arbitration

clause and class action waiver.  *Id*. at 27.  The FTX.com ToS specified, *inter alia*,

> Subject to Section 38.13 below, **any Dispute shall be referred to and finally determined by arbitration** administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the Arbitration Rules of the SIAC ("SIAC Rules") for the time being in force.
>
> This arbitration agreement shall be governed by English law.
>
> The seat of the arbitration shall be Singapore.
>
> . . .
>
> **Each party agrees that: (A) any Dispute shall be referred to arbitration in accordance with this Clause 38.12 on an individual basis only and not as a claimant or class member in a purported class or representative action;** (B) combining or consolidating individual arbitrations into a single arbitration is not permitted without the consent of all parties.

*Id*. (emphasis added).

## II.   <u>ARGUMENT</u>

The claims against Mr. Bankman-Fried should be dismissed pursuant to Federal Rules of

Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) and Federal Rule of Bankruptcy Procedure

7012(b), for lack of subject-matter jurisdiction, improper venue, and failure to state a claim, based

on Plaintiffs' consent to the arbitration agreements and the class action waivers in FTX US and

FTX.com's Terms of Service.  If the Court declines to dismiss this adversary proceeding, the

adversary proceeding should be transferred and heard as part of the FTX MDL in the United States

District Court for the Southern District of Florida (*In re: FTX Cryptocurrency Exchange Collapse

Litigation*, MDL No. 3076, Case No. 1:23-md-03076-KMM).  Alternatively, this Court should

permissively abstain, as most relevant factors weigh in favor of abstention.

## A. Plaintiffs' Claims Against Mr. Bankman-Fried Should Be Dismissed Because They Must Be Brought Individually, Through Arbitration

Plaintiffs' claims against Mr. Bankman-Fried should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) based on the arbitration agreements in FTX US and FTX Trading, Ltd.'s Terms of Service.[6]  Regardless of whether Plaintiffs utilized FTX US services or FTX.com services, Plaintiffs agreed to bring any related claims individually, through arbitration, in the proper venue.  Here, as it is undisputed that "based on the face of a complaint, and documents relied upon in the complaint" "certain of a party's claims are subject to an enforceable arbitration clause," a Rule 12(b)(6) standard is appropriate.  *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations omitted). Notably, in their Complaint, Plaintiffs acknowledge, and argue for the enforceability of, both ToS.[7]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[6] Mr. Bankman-Fried, although not a signatory to both ToS, may enforce the arbitration agreement because, *inter alia*, Plaintiffs' claims are intertwined with the duties and obligations arising from the ToS.  "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–30 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).  Under either Delaware or California law, Mr. Bankman-Fried may enforce the agreement. *See Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037-N, 2006 WL 2473665, at *4 (Del. Ch. Aug. 22, 2006) ("Delaware allows a nonsignatory to a contract to compel a signatory to arbitrate under an equitable estoppel theory."); *see also Kramer*, 705 F.3d at 1128–30.  Courts in other jurisdictions, when considering defendants holding similar company positions to Mr. Bankman-Fried, have allowed those defendants to enforce company arbitration agreements. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1262–64 (D. Colo. 2019) (emphasizing interdependence of claims against signatory and nonsignatory defendants and that plaintiffs' claims were intertwined with the duties and obligations arising from the terms of service); *Giddings v. Media Lodge, Inc.*, 320 F. Supp. 3d 1064, 1081–82 (D.S.D. 2018); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798–99 (8th Cir. 2005).

[7] Under Third Circuit law, whether Plaintiffs actually read the ToS and arbitration clause is irrelevant because "[o]nce there is reasonable notice, a party is bound by those terms, even if he failed to read them."  *Noble v. Samsung Elecs. Am., Inc*, 682 F. App'x 113, 116 (3d Cir. 2017).

for the misconduct alleged." *Id.*  But the contrary is also true – where, as here, the plaintiff's pleading establishes that the claims should be dismissed, that is the appropriate result.

Here, Plaintiffs have explicitly acknowledged the validity of both the FTX US ToS and the FTX.com ToS and alleged that each agreement should be enforced.  *See* Compl. at 28–29.  Further, both arbitration clauses are very broad and clearly encompass Plaintiffs' claims against Mr. Bankman-Fried, and both unambiguously bar any effort to bring class action claims.  Because they are valid and apply to the claims here, the arbitration agreements and class actions should be enforced.

### 1.      The Federal Arbitration Act governs the FTX arbitration agreements and mandates their enforcement.

The FAA dictates an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and governs both ToS.  The FTX US User Agreement explicitly provides that the FAA governs the present arbitration agreement.  *See* FTX US User Agreement at 12, ¶¶ 29, 30(a).  "The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce." *Norde v. Ctr. for Autism & Related Disorders, LLC*, No. 22-CV-00639-DMR, 2022 WL 4227274, at *2 (N.D. Cal. Aug. 22, 2022) (citing *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001)).[8]  As to the FTX.com User Agreement, the FAA applies to international arbitration agreements so long as no conflict exists.  *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009) ("The domestic FAA applies to actions brought under the New York Convention to the extent that the

---

[8] As addressed later on, Ninth Circuit case law is appropriate, considering the FTX US ToS choice-of-law provision.

two are not in conflict.").  As no conflict exists here, the FAA applies.  Further, "strong federal policy favoring arbitration applies with special force in the field of international commerce." *Century Indem. Co.,* 584 F.3d at 523.

"[I]n deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  "This determination applies equally in domestic and international arbitration contexts." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010).

Here, there are explicit, broad arbitration agreements contained in both User Agreements. *See* FTX US User Agreement at 12-13; FTX.com User Agreement at 27.  The present dispute concerns Plaintiffs' alleged use of FTX services, and thus is covered by Section 30 of the FTX US User Agreement and Section 38.12 of the FTX.com User Agreement.  *See* FTX US User Agreement at 12, ¶ 30(a) ("any dispute, claim, or controversy arising out of or relating to … the use of the Services … will be resolved solely by binding, individual arbitration …"); FTX.com User Agreement at 1 ("Section 38.12 (Arbitration) requires all Disputes to be resolved by way of legally binding arbitration on an individual basis only and not as a claimant or class member in a purported class or representative action.").

Further, were Plaintiffs to contest the validity or enforceability of the arbitration agreements as a whole, any such disputes would similarly be covered and thus could only be determined in the arbitration process.  *Id.*; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (". . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("The Act allows parties to

agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."); *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634 (9th Cir. 2021) ("It is well-established that some "gateway" issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement."). Both gateway conditions are accordingly met.

Accordingly, "the Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); see also *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) ("the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.").[9]

"By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Norde*, 2022 WL 4227274, at *3 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). As both conditions are met, the FAA requires that Plaintiffs' claims be submitted to arbitration.

---

[9] Although the appropriate law is explicitly included in each ToS, applying Delaware or Third Circuit law would not change the outcome for either ToS. As stated by the Third Circuit, "[t]he FAA ensures that arbitration agreements are enforceable to the same extent as other contracts by establishing a strong federal policy in favor of the resolution of disputes through arbitration." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (citation and internal quotations omitted). The FAA "entitles any party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration to obtain a court order directing that such arbitration proceed in the manner provided for in such agreement." *Puleo*, 605 F.3d at 178 (citation and internal quotations omitted).

## 2. Dismissal, as opposed to a stay pending resolution at arbitration, is warranted.

As all claims against Mr. Bankman-Fried are arbitrable and must be submitted to arbitration, dismissal of these claims is appropriate. The Ninth Circuit and Third Circuit are in agreement that on its face, the FAA "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Jenny Houtchens, et al., Plaintiffs, v. Google LLC, Defendant*, No. 22-cv-02638 BLF, 2022 WL 17736778, at *2 (N.D. Cal. Dec. 16, 2022) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). However, the Circuits also agree that "courts have discretion to stay or dismiss claims subject to a valid arbitration agreement." *Jenny Houtchens, et al.*, 2022 WL 17736778, at *8 (citations omitted). In making this distinction,

> the court should stay an action and compel arbitration when, in a pending suit, any issue is referable to arbitration. A [] district court **also has the discretion to dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration.**

*Wright v. Rent-A-Ctr. E., Inc.*, No. 08-956 (GMS), 2009 WL 4277243, at *2 (D. Del. Nov. 30, 2009) (internal quotations and citations omitted) (granting motion to dismiss). Further, "[a] trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim…." *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (citations omitted) (affirming dismissal of claims based on agreement to arbitrate); *see also Alvarado v. Pac. Motor Trucking Co.*, No. 14-cv-0504 DOC, 2014 WL 3888184, at *7 (C.D. Cal. Aug. 7, 2014), *aff'd*, 672 F. App'x 687 (9th Cir. 2016) ("When a court determines that the entirety of a dispute is subject to arbitration, the court lacks subject matter jurisdiction and dismissal of the complaint is proper") Here, dismissal is proper because all claims against Mr. Bankman-Fried must be submitted to arbitration.

Further, courts in the Third Circuit and Ninth Circuit agree that for binding, valid and enforceable arbitration clauses, federal courts lack subject-matter jurisdiction and dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate. *Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 18-cv-06628 BLF, 2019 WL 2603316, at *1 (N.D. Cal. June 25, 2019) (noting dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is sufficient to enforce arbitration provision); *Lloyd v. MBNA Am. Bank, N.A.*, No. 00-cv-109 SLR, 2001 WL 194300, at *2 (D. Del. Feb. 22, 2001), aff'd, 27 F. App'x 82 (3d Cir. 2002). Thus, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is proper.

### 3. The FTX US ToS contains California choice-of-law and choice-of-venue provisions.

The FTX US ToS states,

> Governing Law and Forum Choice. **These Terms and any action related thereto will be governed by** the Federal Arbitration Act, federal arbitration law, and the **laws of the State of California** without regard to its conflict of laws provisions. Except as otherwise expressly set forth in Section 32 "Dispute Resolution," the exclusive jurisdiction for all Disputes (defined below) that you and FTX.US are not required to arbitrate **will be the state and federal courts located in Alameda County in California**, and you and FTX.US each waive any objection to jurisdiction and venue in such courts.

*See* FTX US User Agreement (emphasis added). Under the FAA, which governs the FTX US ToS, parties are free to structure their arbitration agreements as they see fit, including choice-of-law provisions. *See Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (upholding enforceability of Virginia choice-of-law provision within arbitration agreement and affirming order staying proceedings and compelling arbitration). Should Plaintiffs dispute the enforceability of the arbitration agreement or class action waiver, those disputes are properly heard and decided by the arbitrator, not this Court.

4.      **The FTX.com arbitration clause contains an English choice-of-law and a Singapore choice-of-venue provision.**

"In all but the most unusual cases" "the interest of justice is served by holding parties to their bargain" regarding forum-selections clauses. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013). The FTX.com ToS specifies that it shall be governed by and construed in accordance with English law, and that any such dispute be heard in Singapore. *See* FTX.com ToS. Specifically, any dispute shall be referred to and determined "by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the Arbitration Rules of the SIAC ("SIAC Rules")[,]" and the seat of the arbitration shall be Singapore. *Id.*

Courts in this jurisdiction, and others, have granted motions to dismiss or stay claims with similar arbitration provisions requiring arbitration in Singapore. *Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*, 263 F. Supp. 3d 491, 497 (D. Del. 2017) (granting motion to dismiss based on Singapore arbitration clause); *Mullen Techs., Inc. v. Qiantu Motor (Suzhou) LTD.*, No. 19-cv-1979 W AHG, 2020 WL 3573371, at *4 (S.D. Cal. July 1, 2020) (holding agreement to arbitrate dispute in Singapore valid and enforceable); *Krystal, Inc. v. China United Transp., Inc.*, No. 16-cv-02406-RSWL SPX, 2017 WL 6940544, at *6 (C.D. Cal. Apr. 12, 2017) (enforcing agreement to litigate before SIAC). Plaintiffs' claims relating to use of FTX.com should be similarly dismissed.

5.      **Plaintiffs consented to FTX's terms of service, which included arbitration agreements and class action waivers.**

At all relevant times, Plaintiffs could not have created FTX US accounts, which were required to use the platform's services, without consenting to the FTX US User Agreement.[10] *See*

---

[10] *See* supra n. 1.

January 6, 2023 Internet Search; *see also* FTX US User Agreement at 1, ¶ 1 ("By using our Services, you agree to be bound by these Terms.  If you don't agree to be bound by these Terms, do not use the Services."); *id.* at 1, ¶ 2 ("If you continue to use the Services after we have posted updated Terms it means that you accept and agree to the changes.").  Section 30 of the FTX US User Agreement mandates that disputes "will be resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding."  *See* FTX US User Agreement at 12.  In addition to Section 30, there exists a bolded, capitalized warning on the first page of the terms of service which emphasizes the class action waiver and individual arbitration clause. *Id.* at 1.  Moreover, around and as of May 16, 2022, FTX US displayed its ToS prominently at the bottom of its website, under the header "Legal."[11]

Plaintiffs similarly consented to the FTX.com User Agreement, to the extent they allege use of FTX.com services.  *See* FTX.com User Agreement at 1 ("By registering for a Platform account . . . or using the Services, you agree that you have read, understand and accept the Terms . . .  and you acknowledge and agree that you will be bound by and comply with the Terms.").  Section 38.12 of the FTX.com User Agreement contains an arbitration agreement and class action waiver.  *See* FTX.com User Agreement at 27 ("[A]ny Dispute shall be referred to and finally . . . determined by arbitration . . . on an individual basis only and not as a claimant or class member in a purported class or representative action[.]").  The FTX.com User Agreement also calls attention to the arbitration agreement and class action waiver on its first page.  *Id.* at 1 (". . . all Disputes to be resolved by way of legally binding arbitration on an individual basis only and not as a claimant or class member . . .").

---

[11] *See* supra n. 1.

Accordingly, if Plaintiffs used FTX US or FTX.com services as alleged, they consented to the respective platform's terms of service. *See* Compl. at 46 (alleging use of platform services). This includes the arbitration agreements and class action waivers contained therein.

### 6. The class action waivers are enforceable.

It is well-settled that arbitration agreements containing class action waivers are enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id. Concepcion* ended California's prohibition against class action waivers in this setting, as previously set forth in *Discover Bank* and progeny. *Concepcion*, 563 U.S. at 344 (abrogating *Discover Bank v. Superior Court of Los Angeles*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (Cal. 2005)); *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020) (affirming enforcement of class action waiver); *Lag Shot LLC v. Facebook, Inc.*, No. 21-cv-01495 JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021) (noting *Discover Bank* prohibition against class action waivers was rejected by Supreme Court and granting motion to compel arbitration; *Nguyen v. Tesla, Inc.*, No. 819-cv-01422-JLS-JDE, 2020 WL 2114937, at *6 (C.D. Cal. Apr. 6, 2020) (dismissing class claims which were barred by individual arbitration agreements). Here, Plaintiffs' class claims are barred by the class action waivers and should be dismissed.

### 7. The FTX arbitration agreements are valid and enforceable.

The FTX arbitration agreements, which contain a class action waiver, are valid and enforceable. Valid arbitration agreements were formed when Plaintiffs used FTX services. "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state law

principles that govern the formation of contracts." *Jenny Houtchens, et al.*, 2022 WL 17736778, at *2 (citations omitted).[12]

Similar arbitration agreements, including those containing class action waivers and those existing in an online ToS, are regularly enforced by courts applying California law (which is the applicable law, in accordance with the choice-of-law provision in the same ToS).[13]  *See Allen v. Shutterfly, Inc.*, No. 20-cv-02448-BLF, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020) ("In sum, the Court finds that Shutterfly may compel Plaintiff to arbitration pursuant to the 2018 TOS."); *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *14 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ("The Court addresses these in turn and finds that the terms are not so unduly harsh or one-sided that they are substantively unconscionable."); *California Crane Sch., Inc. v. Google LLC*, No. 21-cv-10001-HSG, 2022 WL 3348425, at *5 (N.D. Cal. Aug. 12, 2022) (finding a valid arbitration agreement in ToS existed and compelling arbitration); *Bertha Dominguez v. Sonesta Int'l Hotels Corp.*, No. 22-cv-03027-JCS, 2023 WL 25707, at *9 (N.D. Cal. Jan. 3, 2023) (granting motion to compel arbitration).  The present arbitration agreements, including the class action waivers, should be similarly enforced here.

---

[12] Mr. Bankman-Fried acknowledges that for FTX.com, the proper discussion is likely grounded in English law, as stated in the FTX.com User Agreement.  For the sake of brevity, this argument is excluded from the Motion.  Mr. Bankman-Fried requests leave to file a supplemental brief, should the Court require briefing on English law.

[13] Similar arbitration agreements, including those containing class action waivers and those existing in an online ToS, are also regularly enforced by courts with the Third Circuit.  *See, e.g. Romanov v. Microsoft Corp.*, No. 21-cv-03564 FLW, 2021 WL 3486938, at *6 (D.N.J. Aug. 9, 2021) (granting motion to compel arbitration based on agreement within terms of service); *Penn Outdoor Servs. LLC v. JK Consultants*, No. 17-cv-2791, 2018 WL 3831398, at *3 (E.D. Pa. Aug. 10, 2018) (granting motion to compel arbitration based on clause within search agreement); *Zephyr Fluid Sols., LLC v. Scholle IPN Packaging, Inc.*, No. 22-cv-00475-SRF, 2023 WL 1795798, at *4 (D. Del. Feb. 7, 2023) (granting motion to compel arbitration).

Plaintiffs might try to argue that the arbitration agreements are unconscionable under California law, but such an argument would fail. "Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was 'unconscionable at the time it was made.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citing Cal. Civ. Code § 1670.5(a)). An unconscionability defense requires the party opposing arbitration to demonstrate *both* procedural and substantive unconscionability. *Id.* (citations omitted). If either form of unconscionability is not present, the contract is not unconscionable. *Id.*

"[T]he threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *California Crane Sch., Inc.*, 2022 WL 3348425, at *3 (N.D. Cal. Aug. 12, 2022) (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016)). "If there is an opportunity to opt out, the arbitration agreement is not adhesive, and thus not procedurally unconscionable." *Id.* (alterations and internal quotations omitted). Here, the arbitration agreements are not adhesive, as they offer users the opportunity to opt-out through declining to use FTX's services entirely.

Even if the arbitration agreements could properly be labeled as adhesive, (which they cannot be for the reasons set forth above), the agreements are still not procedurally unconscionable because reasonable market alternatives existed when Plaintiffs allegedly registered their FTX accounts. "Contracts of adhesion are often procedurally unconscionable, but not always, especially when reasonable market alternatives exist." *Flores-Mendez v. Zoosk, Inc.*, No. 20-cv-04929 WHA, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022) (citations omitted). Plaintiffs could have instead chosen to register with one of FTX's ubiquitous competitors.[14] Accordingly,

---

[14] "If you're interested in buying cryptocurrency, you need to open an account with a crypto exchange. **There are around 500 examples to choose from**[.]" Farran Powell, *10 Best Crypto Apps & Exchanges Of 2023*, FORBES, Mar. 1, 2023, https://www.forbes.com/advisor/investing/cryptocurrency/best-crypto-

regardless of the question of adhesion, the arbitration agreements are not procedurally unconscionable.

The arbitration agreements are similarly not substantively unconscionable. "[A] proper showing of substantive unconscionability requires the provision in question to be so one-sided as to shock the conscience." *Id.* (citations omitted). As explained above,

> In *Concepcion*, the Court upheld the enforceability of AT&T's class-action waiver which provided for arbitration of all disputes between the parties but required that the claims be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. In doing so, the Court rejected the argument that a contractual provision is substantively unconscionable for making an individual action less financially attractive than a class action.

*Id.* (internal citations and quotations omitted). Accordingly, the clauses are not substantively unconscionable. Regardless, both forms of unconscionability are needed to render a provision unconscionable. Accordingly, Plaintiffs cannot avoid the contractual arbitration agreements and class action waivers by asserting they are unconscionable.

In sum, by allegedly using FTX's services, Plaintiffs entered into valid and enforceable arbitration agreements included in the FTX US User Agreement and FTX.com User Agreement. Those arbitration agreements are governed by the FAA.[15] As described above, both gateway issues in determining whether Plaintiffs' claims must be submitted to arbitration are met. Therefore, this Court should enforce the arbitration agreements by their terms, as dictated by the FAA and Supreme Court precedent. As Plaintiffs' own pleading establishes that they cannot bring these claims in this Court, the claims against Mr. Bankman-Fried should be dismissed with prejudice.

---

exchanges/#:~:text=If%20you're%20interested%20in,both%20new%20and%20experienced%20investors (emphasis added).

[15] The FTX.com User Agreement is also governed by SIAC.

**B.     This Adversary Proceeding Should Be Transferred To The Pending Multi-District Litigation Consolidating Similar Cases**

If the Court declines to dismiss this adversary proceeding, it should be transferred and heard as part of the FTX MDL in the United States District Court for the Southern District of Florida (*In re: FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 3076, Case No. 1:23-md-03076-KMM).  The FTX MDL has consolidated, and continues to consolidate, other pending lawsuits arising under similar facts.  The FTX MDL court is uniquely situated to best coordinate and manage the claims asserted in this adversary proceeding.  Further, Plaintiffs have resolved their claims as against Debtor Defendants pursuant to the FTX/Plaintiff Settlement, leaving all remaining claims best heard by an Article III Court as part of the FTX MDL.  Accordingly, this adversary proceeding should be transferred pursuant to Federal Rule of Bankruptcy Procedure 7087 and 28 U.S.C. §1412.

Federal Rule of Bankruptcy Procedure 7087 provides for the transfer of an adversary proceeding, stating, "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. §1412, except as provided in Rule 7019(2)."  Fed. R. Bankr. P. 7087.  Rule 1014-1 of this Court's Local Rules also provides for the transfer of an adversary proceeding.  "28 U.S.C. § 1412 permits a court to transfer venue of a[n adversary] proceeding such as this one in the interest of justice or for the convenience of the parties."  *In re Centennial Coal, Inc.*, 282 B.R. 140, 143–44 (Bankr. D. Del. 2002) (citing 28 U.S.C. § 1412).  In addition to the convenience of the parties, convenience of the witnesses, and the interest of justice, the Third Circuit has outlined the following additional factors to be considered:

> (1) plaintiff's choice of forum, (2) defendant's forum preference (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses-

but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*Id.* at 144 (citations omitted).

Almost all factors listed above weigh in favor of transferring this adversary proceeding to the FTX MDL.  The Article III Court presiding over the FTX MDL is best prepared to handle the remaining claims, now that Plaintiffs' claims against Debtor Defendants have been resolved.  Transferring this adversary proceeding, which arises from the same alleged facts as in the FTX MDL, is most convenient to all parties, witnesses, and is in the interest of justice because, *inter alia*, it will result in consistency, easier administration, and judicial economy.  Should this proceeding not be transferred to the FTX MDL, Mr. Bankman-Fried will be forced to needlessly defend suits arising from the same alleged facts in multiple forums.  Accordingly, this proceeding should be transferred to the FTX MDL, or Mr. Bankman-Fried should be permitted to designate this adversary proceeding as a potential tag-along action to the FTX MDL.

### C.    This Court Lacks Subject Matter Jurisdiction Over the Executive Defendant Claims Against Mr. Bankman-Fried

This Bankruptcy Court lacks subject matter jurisdiction over the purely state law, Executive Defendant Claims (breach of fiduciary duty (Count IV), negligence (Count V) and conversion (Count VI)) against Mr. Bankman-Fried.  Plaintiffs bear the burden of demonstrating that this Court has jurisdiction over this action.  *See In re The Fairchild Corp.*, 452 B.R. 525, 530 (Bankr. D. Del. 2011) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  Plaintiffs have not and cannot meet that burden here and, accordingly, the Executive Defendant Claims should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Bankruptcy Procedure 7012(b).

Bankruptcy Court jurisdiction potentially extends to:  (i) cases under title 11, (ii) proceedings arising under title 11, (iii) proceedings arising in a case under title 11, and (iv) proceedings related to a case under title 11.  28 U.S.C. §§ 1334 and 157; *see also In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008).  "The first three categories are 'core' proceedings in which the bankruptcy court has power to hear, decide, and enter order and judgments." *Id*. "The fourth category, 'related to' proceedings, are 'non-core' proceedings, which the bankruptcy court can hear, but in which it can only submit proposed findings of fact and conclusions of law to the district court, not issue orders." *Id*.  Generally, "a proceeding is 'related to' a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).

With respect to this Court's jurisdiction, Plaintiffs allege without explanation or facts in the Complaint, *inter alia*, that:

(i)     [t]his Court has jurisdiction over this Adversary Proceeding under 28 U.S.C. §§157 and 1334;

(ii)    [t]his Adversary Proceeding is a core proceeding pursuant to pursuant to [sic] 28 U.S.C. §157(b)(2)(A), (B) and (E);

(iii)   [t]his Adversary Proceeding arises in and relates to the Debtors' Bankruptcy Proceedings; and

(iv)    [t]his Adversary Proceeding presents both "core" and "non-core" proceedings under 28 U.S.C. § 157(b).

Compl. at 10, ¶¶ 23-24, 26-27.  Beyond these general allegations, Plaintiffs do not specify whether the Executive Defendant Claims are core or non-core or, if non-core, if and how such claims are related to the Debtors' bankruptcy cases.

The Executive Defendant Claims are not a "case under title 11."  Nor do Plaintiffs allege that this is a case "arising under" title 11.  The only basis remaining to assert that the Executive Defendant Claims are a core proceeding is "arising in" jurisdiction.  A claim "arises in" bankruptcy only if that claim could not be brought outside of a bankruptcy case.  *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).  The Complaint is silent on how the Executive Defendant Claims could only "arise in" in the context of a bankruptcy case.  To the contrary, the Executive Defendant Claims are state law claims that are routinely adjudicated in non-bankruptcy proceedings by non-bankruptcy courts.  As no substantive rights under the Bankruptcy Code are implicated, and these proceedings could exist outside of the Debtors' bankruptcy cases, this is clearly a non-core proceeding.  *See* 28 U.S.C. § 157(b)(2); *see also In re Stone & Webster, Inc.*, 367 B.R. 523, 525 (Bankr. D. Del. 2007) (differentiating core proceedings from non-core proceedings).

Although courts "may hear non-core proceedings that are related to a case under title 11[,]" any relation here is tenuous at best, as Plaintiffs have entered into the FTX/Plaintiff Settlement, thereby resolving the Debtor Defendant Claims, and the remaining Executive Defendant Claims are state law claims brought by non-debtors against non-debtors and will have little or no effect on the administration of the Debtors' estates.  *In re Stone & Webster, Inc.*, 367 B.R. at 525.  In the event that the Court finds that the Executive Defendant Claims are  sufficiently related to the case under 28 U.S.C. § 1334, this Court's jurisdiction over those claims should be limited to submitting proposed findings of fact and conclusions of law to the District Court subject to *de novo* review. *Id.*

D.    **If The Court Finds That It Has Subject Matter Jurisdiction, It Should Exercise Its Discretion to Permissively Abstain From Hearing This Case**

In the event that this Court determines that it has subject matter jurisdiction over the Executive Defendant Claims against Mr. Bankman-Fried, the Court should exercise its discretionary authority to abstain pursuant to 28 U.S.C. § 1334(c)(1), which provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Courts have identified the following twelve factors as relevant to the analysis of permissive abstention: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. *In re SemCrude, L.P.*, 428 B.R. 82, 101–02 (Bankr. D. Del. 2010) (citing *In re Mobile Tool Int'l*, 320 B.R. 552, 556–57 (Bankr. D.Del. 2005)).

While courts have held that these factors should be applied "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative," *In re Earned Capital Corp.*, 331 B.R. 208, 221 (Bankr. W.D. Pa. 2005)

(quoting *Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993)), they have also recognized that several factors are "more substantial" than others. *See In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600, 602 (Bankr. D. Del. 2009); *In re DHP Holdings II Corp.*, 435 B.R. 220, 233 (Bankr. D. Del. 2010); *In re Loewen Grp. Int'l, Inc.*, 344 B.R. 727, 731 (Bankr. D. Del. 2006).

The "more substantial" factors are "the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core." *See Fruit of the Loom*, 407 B.R. at 600. Here, the majority of these factors, and an overwhelming majority of all of the factors, weigh in favor of permissive abstention.

### 1. Factor 1: The possible effect of abstention on the administration of the Debtors' estates in bankruptcy.

The Court's abstention from this case would have no effect on the administration of the Debtors' estates. In light of Plaintiff's entry into the FTX/Plaintiff Settlement and resolution of the Debtor Defendant Claims, this action now involves only state law claims brought by non-debtor parties against other non-debtor parties. Abstention will in no way hinder the Debtors' efforts in their bankruptcy cases, including with respect any plan confirmation process. Accordingly, the first factor weighs in favor of abstention.

### 2. Factor 2: The extent to which state law issues predominate over bankruptcy issues. and the difficulty or unsettled nature of applicable state law.

The Executive Defendant Claims against Mr. Bankman-Fried are purely state law issues and do not implicate bankruptcy law at all. Accordingly, the second factor weighs in favor of abstention.

### 3.    Factor 3:  The difficulty or unsettled nature of applicable state law.

Though the state law issues involved in the case may appear straightforward on their face, the facts and circumstances surrounding these issues make them significantly more complicated and unsettled. *In re LaRoche Industries, Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004)("Abstention is best when novel or unsettled issues of state law are involved.).  Accordingly, the third factor weighs in favor of abstention.

### 4.    Factor 4:  The presence of a related proceeding commenced in state court or other non-bankruptcy court.

As noted above, the FTX MDL is currently pending in the United States District Court for the Southern District of Florida and continues to consolidate other pending lawsuits arising under facts similar to those alleged by Plaintiff.  Accordingly, the fourth factor weighs in favor of abstention.

### 5.    Factor 5:  The jurisdictional basis, if any, other than 28 U.S.C. §1334.

Other than 28 U.S.C. §1334, which, at best, provides only a tenuous basis, Plaintiffs have cited no other basis for jurisdiction in this Court to adjudicate the Executive Defendant Claims. As such, the fifth factor either weighs in favor of abstention or is neutral.

### 6.    Factor 6:  The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.

Particularly in light of the FTX/Plaintiff Settlement, the remaining Executive Defendant Claims – state law claims brought by non-debtors against non-debtors – are distinctly remote from the Debtors' bankruptcy cases.  Accordingly, the sixth factor weighs in favor of abstention.

### 7.    Factor 7:  The substance rather than the form of an asserted "core" proceeding.

As explained above, the Executive Defendant Claims against Mr. Bankman-Fried are clearly a non-core proceeding.  This dispute does not arise under or in title 11.  Rather, this dispute

involves state law claims that not only could, but in fact do, arise outside of bankruptcy law and the Debtors' bankruptcy cases. Accordingly, the seventh factor weighs in favor of abstention.

**8.** **Factor 8: The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.**

The Executive Defendant Claims against Mr. Bankman-Fried are easily severed from the Debtor Defendant Claims, as evidenced by the FTX/Plaintiff Settlement, which clearly leaves no core matters in this action to adjudicate. The FTX MDL court is uniquely situated to best coordinate and manage the Executive Defendant Claims against Mr. Bankman-Fried. Accordingly, the eighth factor weighs in favor of abstention.

**9.** **Factor 9: The burden on the Court's docket.**

The United States Bankruptcy Court for the District of Delaware is one of the busiest bankruptcy jurisdictions in the country and this action would unnecessarily add to that burden. Accordingly, the ninth factor weighs in favor of abstention.

**10.** **Factor 10: The likelihood that the commencement of the proceeding in a bankruptcy court involved forum shopping by one of the parties.**

This factor is essentially neutral as the Debtor Defendants were initially parties to the adversary proceeding and this Court was the only forum in which such claims could proceed. Therefore, it does not appear that the commencement of the proceeding in bankruptcy court involved forum shopping by the Plaintiffs.

**11.** **Factor 11: The existence of a right to a jury trial.**

The right to a jury trial is significant, and its loss by this Court's retention of this case weighs heavily in favor of abstention. *See In re LaRoche Industries, Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004). Mr. Bankman-Fried is a non-debtor party with a right to a jury trial on the Executive Defendant Claims. This Court's retention of this proceeding would force Mr. Bankman-

Fried to forfeit this significant constitutional right. *Id.* Accordingly, the eleventh factor weighs in favor of abstention.

### 12.   Factor 12:  The presence in the proceeding of non-debtor parties.

With Plaintiffs' entry into the FTX/Plaintiff Settlement, the parties remaining in this action are all non-debtors.  Accordingly, the twelfth factor weighs in favor of abstention.

In sum, the overwhelming majority of factors typically evaluated in connection with discretionary abstention favor abstention here, including the factors that courts have determined to be most significant in the abstention analysis.  As such, permissive abstention is appropriate, warranted, and in the best interests of judicial economy.

### E.   Mr. Bankman-Fried Does Not Consent To Jurisdiction

Pursuant to Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware 7008-1 and 70012-1, Mr. Bankman-Fried does not consent to the entry of final orders or judgments by the Court in connection with this adversary proceeding.

## III.   CONCLUSION

For the foregoing reasons, the Court should dismiss the claims set forth in the Adversary Complaint against Mr. Bankman-Fried with prejudice, transfer the claims to the FTX MDL pending in the United States District Court for the Southern District of Florida, or abstain.

Dated:   December 7, 2023
         Wilmington, Delaware

Respectfully submitted,

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

*/s/ Gregory T. Donilon*
Gregory T. Donilon (No. 4244)
Marc J. Phillips (No. 4445)
1105 North Market Street, 15th Floor
Wilmington, Delaware  19801
Telephone: (302) 504-7800
gdonilon@mmwr.com
mphillips@mmwr.com

-and-

Jeremy D. Mishkin (admitted *pro hac vice*)
1735 Market St., 21st Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 772-7246
jmishkin@mmwr.com

*Attorneys for Samuel Bankman-Fried*