# EXHIBIT C

https://www.uscourts.gov/sites/default/files/2023-03_civil_rules_committee_agenda_book_final_0.pdf

joint subcommittee had been formed by a vote of the Standing Committee. Hearing no questions or comments about this item from the Standing Committee, Judge Bates asked whether anyone objected to removing the *Hall v. Hall* issue from ongoing review by the joint subcommittee and the Advisory Committees and dissolving the joint subcommittee. **Without objection, the joint subcommittee was dissolved.**

*Presumptive Deadline for Electronic Filing.* Judge Rosenberg briefly addressed this item, noting that the Advisory Committee had recommended that the proposal be removed from its agenda. But, based on Judge Bates's comments from earlier in the meeting, the joint subcommittee would reconsider the suggestion. **No further action was taken on this item at this time.**

*Information Items*

*Multidistrict Litigation ("MDL").* Judge Rosenberg introduced this item by remarking that the MDL Subcommittee had first been formed in 2018 in response to comments about how important MDLs had become. No decision has yet been made on whether to recommend a rule change addressing MDLs. The subcommittee has instead focused on the question: if there *were* a rule change, what would the best possible rule be? Every MDL is different, and that has been the guiding principle throughout the iteration of different proposals. The subcommittee has been mindful of the importance of flexibility and of the many factors that bear on MDLs. The subcommittee explored putting MDL provisions into Rules 16 and 26 before ultimately developing the idea for a new Rule 16.1.

There are two versions of the draft rule, currently called Alternatives 1 and 2. The Advisory Committee has not yet considered and discussed the feedback of participants at the transferee judges' conference. Alternative 1 was well-received at the transferee judges' conference by many of the same judges who did not support an MDL-specific rule change four years ago.

MDLs make up anywhere from one-third to one-half of the federal docket. There are many new transferee judges who need to be educated about these cases. These judges also appoint new attorneys to leadership in MDLs, and these attorneys need to have proper direction and expertise. The *Manual for Complex Litigation* is being updated, but even if it were already up-to-date, people always begin by looking at the rules. So there needs to be something about MDLs in the rules.

The draft rule is designed to maintain flexibility. It has a series of guiding principles or prompts. Some prompts will apply in a specific MDL, but others may not. A judge need not go through every point listed in the draft rule. The goal is to put these points on the radar of the judges and counsel so that they start active case management early on.

Professor Marcus remarked that input from the Standing Committee would be extremely valuable to the subcommittee, especially as to the list of topics set out in Alternative 1 on page 219 of the agenda book. Judge Rosenberg agreed that the subcommittee would welcome comments on both Alternative 1 and Alternative 2. The goal is to have a more refined version to take to the full Advisory Committee meeting in March and potentially to the Standing Committee for approval for publication in June.

Judge Bates opened the floor for comments and questions.

An academic member noted that the Standing Committee had previously debated whether guidance on MDLs should go in a rule or in some other resource. This member queried whether it might make sense to wait to see the update of the *Manual for Complex Litigation*. The member suggested that Alternative 1's long list looked more like something that would go in the *Manual* than like rule text. Alternative 2 looked more rule-like, but this member would be more comfortable adopting Alternative 2's more spare approach if more detailed guidance could be found elsewhere, such as in the *Manual*. The academic member also noted others' suggestions that the rulemakers address the question of authority for some of the things that judges have done in managing MDLs, and the member questioned whether either alternative draft tackled that issue.

Judge Bates remarked that the next edition of the *Manual* would be a substantial update and would take a long time to complete. Judge Cooke estimated that it would take two to three years, probably closer to three years. Judge Bates noted that, given the three-year timeline for rule changes, it would take about six years for anything like draft Rule 16.1 to come into effect if the committees awaited the new *Manual*.

Judge Rosenberg observed that the *Manual* is not a quick read, and not every judge has or needs to have a desk copy. But as to whether this is a best-practices or a rules issue, she agreed with former chair Judge Dow's emphasis on making sure to put things in the rules—not every lawyer or judge reads the *Manual* or other resources, but everyone looks at the rules.

A judge member stated that a rule along the lines of Rule 16.1 would be helpful to judges and expressed a preference for Alternative 1 because it provides the information a court would need without having to read through a whole manual. It gives the court a lot of ideas and factors to consider in managing the case. Alternative 2 is too broad and vague to be helpful for a first-time MDL judge. Addressing the bracketed items in Alternative 1, such as the reference to a common benefit fund, the member expressed support for including those items in order to spark thought about what needs to be discussed.

Regarding Alternative 1, another judge member asked how the report called for by the rule would address items 6 through 14 if items 1 through 5 had not yet been resolved. If it is unknown who is leadership counsel or what leadership counsel's authority is, who engages in the discussion of items 6 through 14? Judge Rosenberg responded that draft Rule 16.1(b) discusses the designation of coordinating counsel for the preconference meet-and-confer. Coordinating counsel will not necessarily become permanent leadership counsel. Interim coordinating counsel and the judge can identify issues on which the judge needs feedback. These decisions can be changed, perhaps when leadership counsel is appointed or there is a major development in the MDL. This is not uncommon, that decisions made by leadership counsel need to be changed along the way. The rule contemplates that court-appointed coordinating counsel will help with the meet-and-confer and reporting to the court at the first conference on the first 14 issues or any additional issues the court deems necessary. The judge member asked what happens if there is dissension on the plaintiff side. Can coordinating counsel commit to anything in items 6 through 14? What if plaintiffs' counsel is split 50/50 on those issues?

To answer this question, Judge Rosenberg asked a practitioner member to talk about that member's experience with the issue. The member commented that there have been several large MDLs in which the court has appointed interim coordinating counsel to get the lawyers talking to

each other and resolve or narrow the issues. In situations where there is not unanimity on one side on some procedural priority, coordinating counsel presents the differing views to the court in an organized fashion at the initial conference. That doesn't give coordinating counsel absolute authority to make decisions unless there is a consensus. The emphasis is on the organizational and coordinating functions—to let the court see the range of views and make decisions in an orderly way.

Professor Marcus commented that the rule lets the judge direct counsel to report about the topics listed on page 219 of the agenda book. That would help orient the judge to the case and focus the lawyers on things that matter, even if they do not agree. That is better than a free-for-all. And requiring the lawyers to address relevant issues early on could help to avoid situations where the judge makes decisions based on incomplete information and later comes to question them, as Judge Chhabria described concerning his experience with the *Roundup* case. It may also be sensible to soften the language in proposed Rule 16.1(d) on page 220 to make clear that the management order after the initial conference is subject to revision. Overall, the point is to give the judge guidance in overseeing the case.

A judge member expressed continuing skepticism. There is some merit to the question about the court's authority. But the member asked how often transferee courts are reversed for acting without authority. If there is not a problem, perhaps not so much work needs to be done on a solution. This judge noted that the choice between the two alternative drafts only arises if one is first persuaded that a rule is needed at all.

Judge Bates observed that there might have been an authority question in *In re Nat'l Prescription Opiate Litigation*, 976 F.3d 664 (6th Cir. 2020).

A practitioner member stated that he has a bias because his firm litigates many MDLs on the defense side. The member's sense is that the plaintiffs' bar thinks that the MDL system basically works okay, while the defense bar does not think it is working, at least not in the big pharmaceutical MDLs. Rather, the system leads to settlements of meritless cases for billions of dollars. It is difficult for the rulemakers to work in an environment like that, where some people are relatively happy with the system and some are not. Both alternatives, especially the longer Alternative 1, are really about the plaintiffs' side. They may be potentially helpful, but they do not speak to defense concerns. The primary defense concern is that large MDLs are not vehicles for consolidating existing cases so much as encouraging more cases to be filed. The language coming closest to speaking to defense-side concerns is on page 219 of the agenda book, lines 568–69, about creating an avenue for vetting. But the proposed language ("*[w]hether the parties should be directed to* exchange information about their claims and defenses at an early point in the proceedings") was too agnostic. The member suggested considering deleting "whether the parties should be directed to" and starting with "exchange of information about". At least from an efficiency standpoint and from the defense bar's perspective, vetting is important.

The member also commented that, in previous versions, there had been debate about whether the exchange should be of "information" or "information and evidence." The member agreed that "evidence" seems awkward. But "information" is amorphous and may not be enough to determine whether cases in an MDL are meritorious. One suggestion is "exchange information

about the factual bases of their claims and defenses." That gets at the "evidence" concept without using the word "evidence."

Another practitioner member endorsed the idea of separating items 1 through 5 from items 6 through 13 in Alternative 1. This member expressed concern about the application of Alternative 1 before lead counsel is appointed, because then it would become an opportunity for would-be lead counsel to pontificate about the issues in items 6 through 13—that puts the cart before the horse. One of the most important things in an MDL is the appointment of lead counsel. The rules do not limit a judge's considerations in making that appointment. Does the judge consider the size of the claim? Counsel's experience level? The member has a bias toward the Private Securities Litigation Reform Act because it sets a process and criteria for appointing lead counsel. The member thought that transferee judges like that they can pick whom they want for lead counsel. The member predicted that this would become a controversy one day in a big MDL because there are no standards for that appointment. Perhaps a future Advisory Committee will add meat to that bone, but many of the topics listed in the current draft rule are obvious things that any competent MDL judge or defense counsel would want to consider.

A judge member thought that Alternative 1 is a particularly good framework to organize an MDL and indeed any complex case. The member suggested two big-picture additions. First, direct the parties in preparing their report and discussing the case to adhere to the principles of Civil Rule 1—just, speedy, and inexpensive dispositions. Counsel are not always aware of that rule. Second, there should be an emphasis on early determination of core factual issues—this might be early vetting—and core legal issues. Not necessarily dispositive legal issues, but core issues like a *Daubert* motion, an early motion in limine, or an early motion for summary judgment that will shape the law applicable to the case. Civil Rule 16(c)(2) concludes its long list of matters for consideration at a pretrial conference with "facilitating . . . the just, speedy, and inexpensive disposition of the action," thus referencing Rule 1. But because that is so important in a complex case, the reference to Rule 1 should be at the outset of the new rule, followed by a direction to focus on core issues of fact and law.

Judge Bates asked what the Advisory Committee thinks about the issue of settlement. There are questions concerning the court's role and authority, and settlement is a big issue in MDLs. Transferee judges historically have had different levels of involvement. Some think they have no authority to get involved. That is unlike class actions, where Rule 23 sets forth the judge's very involved oversight role. For normal civil cases, Rule 16(c)(2) tells the judge to focus on settlement and to use special procedures to assist in settlements. The question is what the proposed rule says about settlements in MDLs. In Alternative 1 on page 219, at lines 557–58, there is a reference to addressing a possible resolution. In Alternative 2 on page 220, line 598, there is also a reference to possible resolution. What is the message being sent to the bar and bench if that is where settlement winds up in the rule, especially compared to the more fulsome requirement in Rule 23? It is important to write these rules for the less-experienced judges and practitioners.

A practitioner member thought that another provision could be added to deal specifically with settlement—assessing whether there is a method for a prompt resolution of the claims. Over the years, more would probably be added to the rule, but something specifically dealing with considerations of early resolution, and settlement generally, would certainly be worth listing. But the problem of attorney jousting before the appointment of leadership counsel will still arise.

Another practitioner member thought that different language could solve the sequencing issue. The language would state that not all the considerations should be considered or decided at one initial conference; rather, they should be addressed in a series of conferences. Experienced MDL judges know that case management is an ongoing, iterative process; a single pretrial order is not enough. This language could avoid some confusion about how many of the considerations in the rule need to be addressed at one time. It would tell the court that this is a menu of items and let the court determine which are the priority items for the first conference and which to address in an ongoing fashion.

The previous practitioner member reiterated that, unless leadership counsel is appointed early, it makes no sense to deal with the other topics. It would be helpful, especially to inexperienced judges, to make clear in the rule that the appointment of leadership counsel should be dealt with up front.

Judge Rosenberg remarked that the subcommittee spent a lot of time on the settlement issue. Transferee judges thought that—unlike class actions, which have unrepresented parties—judges did not and should not manage, oversee, or approve settlements in MDLs. Some lawyers who looked at the draft rule may have had similar reactions. The subcommittee ultimately decided to take out that language. Still, it is important for the MDL process to have integrity and transparency, and so the subcommittee considered how a judge could ensure the process has those qualities without having the authority to approve a settlement. The solution was to give the judge a more proactive role in all aspects of case management, including appointing leadership counsel, determining leadership counsel's responsibilities, and having a regular reappointment process. Ensuring that the process is fair can promote trust in the outcome.

Judge Bates acknowledged the distinction between managing the process and reviewing the outcome, but suggested that the draft rule did not contain much guidance about what the judge should consider in appointing leadership counsel or about what other parties and counsel should be doing to create a process that will lead to a fair and just resolution of the claims.

Professor Marcus added that, with respect to settling individual claims asserted by claimants represented by other lawyers, appointment of leadership counsel is dicey. The subcommittee has given that scenario a lot of thought and discussion, including whether there could be a process by which a judge could "approve" the negotiation process for any settlements that come about. That is also dicey. On page 219 of the agenda book, in item 13, in brackets, another possibility is mentioned, which is to use a master to assist with possible resolution. Another question is: what happens if leadership counsel's own cases are settled—must different leadership counsel be appointed? MDLs involve different situations from Rule 23(e), and there is a "third-rail" aspect to this subject, so it is very valuable to have the Standing Committee's feedback while addressing it.

Judge Bates asked whether special masters have been widely used in managing and reaching settlements in MDLs. A practitioner member said yes, absolutely. In some of the biggest cases, special masters run the whole settlement process. Judge Bates asked if such a master reports to the court. A practitioner member gave an affirmative answer to this question, but remarked that these masters are not typically Rule 53 special masters. They are called "settlement masters" or "court-appointed mediators." It is an ad hoc appointment in terms of the roles and duties, but those

duties do typically include reporting to the court. The extent to which the master can report to the court on the substance of the negotiations is usually worked out among the parties. In the *Opiate* MDL, there were Rule 53 appointments of special masters who ultimately became involved in mediation and settlement. In the *Volkswagen* MDL, Judge Breyer invented a position called "settlement master," which was not based on Rule 53 but had many but not all of the same responsibilities and roles. Judge Breyer made the appointments after requesting input from the parties on whether to appoint a master and, if so, whom. The court need not follow the parties' recommendations, but in the member's experience, this topic is discussed with the parties and the court's determinations do not come as a surprise.

Judge Bates thought that judges who appoint masters would communicate with them. Should the master's reporting duty to the judge be one of the considerations under the rule?

Judge Rosenberg mentioned that the subcommittee had received feedback from some groups that did not like having the words "special master" in the draft rule. It might create a presumption that there should be a special master, even if not everyone wants one. This led to some discussion, and some thought it might be better to have the words "special master" in the rule so that the parties will talk about it, even if they disagree.

Judge Bates asked whether the rulemakers should be careful about referring to the appointment of a "special master." Might the reference be viewed as authorizing something outside of Rule 53? He intended no criticism of what any judge has done in the MDL process, but he asked whether the rulemakers want to give, through a casual reference in item 13 of a laundry list, an imprimatur to the idea that a judge can say, "I want a settlement master. Rule 53 doesn't fit, so I'm just going to create this role on my own."

Judge Rosenberg responded that the subcommittee has discussed this topic but has not yet brought it to the full Advisory Committee. The subcommittee is working on tweaking the language in response to feedback on that issue and others. As another example, in line 570 of the report in the agenda book, there is a reference to a "master complaint." The rules do not provide for a master complaint, but the Supreme Court has referred to master complaints, and so has the subcommittee. One piece of feedback was that the term should not be used. Does using it somehow give credibility to a form of complaint that the rules otherwise do not mention?

Judge Bates commented that one could go pretty far back in this line of thought. The rules do not authorize the appointment of leadership counsel, for example. There are a lot of things that may not have a specific basis in the existing rules.

A judge member noted that the draft rule does not make any reference to the transferor court. It rarely happens that the case is sent back, but the MDL framework does contemplate that the work of the transferee court ends at some point. An item could be added to suggest that the transferee court and lawyers should consider when a case should be sent back to the transferor court.

Professor Cooper commented that a suggestion had arisen that the rule should address remand. But it was unclear whether the suggestion meant addressing motions to remand to state court, in cases plaintiffs thought improperly removed, or remand to transferor courts.

The judge member thought that it sounds like there is a never-ending list of items that could be considered or called into question. At what point do we return to the concept of "first do no harm"? Is there a need for this rule? What is its usefulness?

Professor Marcus commented that there has been a decades-long debate about whether the transferor court, if a case goes back, can simply start from scratch and throw out what the transferee judge did with the case. Putting a time limit on transferee activities might produce some behaviors that should not be encouraged. Also, as Professor Cooper said, remand means two different things here. Under 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") has authority to remand to the transferor court, but the JPML usually awaits a suggestion from the transferee judge that this would be desirable. The transferee judge cannot do this unilaterally.

Judge Bates commented that there are some things, not listed in the draft rules, that might occur later on before the transferee judge, particularly bellwether trials. If the draft rule is viewed as a continuing conference obligation, should it address other items, such as how to manage and sequence any bellwether proceedings?

Judge Rosenberg responded that bellwether management was not included because it is far along in the MDL process and might be outside the realistic scope of what can and should be discussed in the early conferences.

Professor Marcus added that there are also various views about whether bellwethers are useful. It is probably unwise to urge the judge to map out possible use of bellwethers at the start of an MDL. He predicted that any rule will say that, except for extremely simple and small MDLs, one conference is not enough, and the management plan must be revisited as things move forward. So the rule's focus will probably be on the initial exercise, and the expectation will be that judges continue to oversee other events as they become timely. Bellwethers might be in that latter category.

Judge Rosenberg thanked the Standing Committee for its feedback.

*Rule 41(a) (Dismissal of Actions).* Judge Rosenberg reported on this item. The Advisory Committee formed a subcommittee to address a conflict about the scope of Rule 41(a)(1)(A), which allows a plaintiff to voluntarily dismiss without prejudice an "action" without obtaining a court order or the defendants' consent. The subcommittee's research showed that courts approach Rule 41 dismissals in different ways. The primary disagreement is whether Rule 41(a)(1)(A) requires dismissal of an entire action against all parties or whether it may be used to dismiss only certain claims or only claims against certain parties. The subcommittee has not reached a consensus on whether to pursue an amendment or what amendment to propose. An additional wrinkle is Rule 15, through which a plaintiff can amend a complaint to remove certain claims or defendants. The subcommittee is considering whether Rule 15 should be the vehicle by which a party should dismiss something short of the entire action.

Judge Bates remarked that this is a complex issue, and he solicited comments or feedback from the Standing Committee. Hearing none, Judge Rosenberg turned to the remainder of the report, and invited Professor Cooper to present the next item.

***Rule 7.1 (Disclosure Statement).*** Professor Cooper addressed two suggestions made to the Advisory Committee about recusal disclosures. One suggestion, about "grandparent corporations," contemplates a company that owns a stake in a second company, which in turn has a stake in a third company. If, say, Orange Julius is a party to an action, then the current rule requires it to disclose that Dairy Queen is its owner. But the rule does not require Orange Julius to disclose that Berkshire Hathaway owns Dairy Queen. So if the judge in the action owns shares of Berkshire Hathaway, that judge may not have notice of a potential financial interest in the case's outcome. Should something be done to address this in the rule?

The other suggestion proposed a rule directing all parties and their counsel to consult the assigned judge's publicly available financial disclosures. The parties would either flag any interests that may raise a recusal issue or certify that they have checked and do not know of any. The Advisory Committee has not really dived into this. Rule 7.1 covers only nongovernmental corporate parties. There are all sorts of business organizations with complicated ownership structures that may involve interests a judge is not aware of. Should the Advisory Committee just say it is too complicated to try to go further than corporations?

In response to a question posed by Professor Cooper, Judge Bates suggested that, unless the Appellate or Bankruptcy Rules Committees feel otherwise, it makes sense for the Civil Rules Committee to take the lead in considering proposed amendments to Rule 7.1.

***Other Items Considered.*** At this point, Judge Bates opened the floor for any remaining issues raised in the Civil Rules Committee's report. He asked a question about service awards for class-action representatives. Does the Advisory Committee view this issue as a matter of procedure or of substantive law? Judge Rosenberg responded that the issue was not a subject of much discussion at the last Advisory Committee meeting. Professor Marcus thought that there was no need to worry about the issue yet. There was a pending certiorari petition on the issue, so there might be more to learn by waiting.

Professor Marcus turned to Rule 45, about which a question had arisen: what does it mean to "deliver" a subpoena? By hand? By email? It may be that, in civil litigation, counsel can work this out. Is it worth trying to devise specifics on a method of delivery?

A judge member drew attention to the information item on standards and procedures for deciding in forma pauperis ("IFP") status, and suggested that that item warranted action. The member remarked that a *Yale Law Journal* article had described disparate practices on IFP status, which raised important issues of access to justice. The Appellate Rules Committee is looking at a standardized form for IFP status on appeal. The member suggested that someone should review this—if not the rulemakers, then a different committee of the Judicial Conference.

Judge Bates commented that the current view of the Advisory Committee was that it was not going to take any specific action on standards for IFP status. If the Rules Committees are not going to look further at this, should they encourage another Judicial Conference committee to do so? The only other logical Judicial Conference committee is CACM. Judge Rosenberg remarked that there is an Administrative Office pro se working group that may also be appropriate. Judge Bates suggested that perhaps the rulemakers could communicate to these entities that the Advisory Committee is not going to do anything with the topic for now but views it as an important question.

Another judge member informally asked the Advisory Committee to consider whether there is a need to address the Supreme Court decision in *Kemp v. United States*, 142 S. Ct. 1856 (2022), which held that a judge's error of law is a "mistake" under Rule 60(b).

***Items Removed from Agenda.*** Judge Rosenberg concluded by noting items removed from the Advisory Committee's agenda. These included proposed amendments to Rule 63 (Successor Judge), Rule 17(a) (Real Party in Interest) and Rule 17(c) (Minor or Incompetent Person). There were no questions or comments from the Standing Committee on these items.

## REPORT OF THE ADVISORY COMMITTEE ON CRIMINAL RULES

Judge Dever and Professors Beale and King presented the report of the Advisory Committee on Criminal Rules, which last met in Phoenix, Arizona, on October 27, 2022. The Advisory Committee presented two information items and no action items. The Advisory Committee's report and the draft minutes of its last meeting were included in the agenda book beginning at page 297.

*Information Items*

***Rule 49.1 (Privacy Protection for Filings Made with the Court).*** Judge Dever reported on this item. He explained that the Advisory Committee had considered and decided to remove from its agenda a proposal by Judge Furman regarding Rule 49.1. The rule's committee note refers to 2004 guidance from CACM that certain documents should remain confidential and not be made part of the public record. In *United States v. Avenatti*, 550 F. Supp. 3d 36 (S.D.N.Y. 2021), Judge Furman held that the common law and the First Amendment required appropriate disclosure of a defendant's CJA Form 23 and accompanying affidavit. Judge Furman suggested amending Rule 49.1(d) and removing the committee note's reference to the CACM guidance. The Advisory Committee concluded that the original committee note did not produce confusion about the constitutional or common-law rights of access, and it also hesitated to venture into potentially substantive issues through rule amendments.

***Rule 17 (Subpoena).*** Judge Dever reported on this item as well. The Advisory Committee is analyzing a proposal by the New York City Bar to amend Rule 17 to allow defendants to more easily subpoena third parties for documents. As part of this process, the Advisory Committee has appointed a subcommittee, chaired by Judge Nguyen, to gather information about how federal courts apply the rule and how states handle these kinds of subpoenas. The goal is to determine whether there is a problem that warrants a rule change. There have been two Supreme Court cases interpreting the rule, both fairly atypical. The subcommittee has heard from a wide variety of experienced practitioners from the defense bar and the Department of Justice. The process is still in its early stages, and the Advisory Committee will continue to study these issues.

Judge Bates commented that the miniconference on the Rule 17 issue at the most recent Advisory Committee meeting had been very informative and had elicited several different perspectives that should be useful in the committee's ongoing study.

Judge Bates opened the floor to questions or comments regarding the Advisory Committee's report. Hearing none, he invited the Evidence Rules Committee to give its report.

## FEDERAL RULES OF CIVIL PROCEDURE

### *Information Items*

The Advisory Committee on Civil Rules met on October 12, 2022.  The Advisory Committee submitted proposed amendments to Rules 16(b)(3) (Pretrial Conferences; Scheduling; Management) and 26(f)(3) (Duty to Disclose; General Provisions Governing Discovery) regarding privilege logs with a recommendation that they be published for public comment in August 2023.  The proposed amendments would call for early identification of a method to comply with Rule 26(b)(5)(A)'s requirement that producing parties describe materials withheld on grounds of privilege or as trial-preparation materials.  Specifically, the proposed amendment to Rule 26(f)(3)(D) would require the parties to address in their discovery plan the timing and method for complying with Rule 26(b)(5)(A).  The proposed amendment to Rule 16(b) would provide that the court may address the timing and method of such compliance in its scheduling order.  During the Standing Committee meeting, members expressed differing views concerning the length of and level of detail in the committee notes that would accompany the proposed amendments.  The Advisory Committee was asked to reexamine the notes in light of that discussion, and to present the proposed amendments to the Standing Committee at its June 2023 meeting.

In addition, the Advisory Committee continues to consider a potential new rule concerning judicial management of multidistrict litigation proceedings.  The MDL subcommittee has developed a sketch for a new Rule 16.1 directed to MDL proceedings.  The new rule would prompt a meet-and-confer session among counsel before the initial case management conference with the transferee court.  In two alternatives, the sketch of the rule provides various topics for discussion by counsel.  The Advisory Committee continues to discuss the possibility of proposing a new Rule 16.1.

The Advisory Committee also discussed potential amendments to Rule 7.1 (Disclosure Requirement) regarding disclosure of possible grounds for recusal, Rule 41(a) (Dismissal of Actions) regarding the dismissal of some but not all claims or parties, Rule 45(b)(1) (Subpoena) regarding methods for serving a subpoena, and Rule 55 (Default; Default Judgment) regarding the directive that in some circumstances the clerk "must" enter a default or a default judgment.

## FEDERAL RULES OF CRIMINAL PROCEDURE

### *Information Items*

The Advisory Committee on Criminal Rules met on October 27, 2022.  The Advisory Committee removed from its agenda a suggestion regarding Rule 49.1 (Privacy Protection For Filings Made with the Court) and considered a suggestion to amend Rule 17 (Subpoena).

The Advisory Committee considered a suggestion to amend Rule 49.1 by adding the phrase "subject to any applicable right of public access" before Rule 49.1(d)'s authorization permitting the court to order that filings be made under seal.  This change had been proposed to address certain language in an earlier committee note that included a reference to the *Guidance for Implementation of the Judicial Conference Policy on Privacy and Public Access to Electronic Criminal Case Files* (March 2004) issued by the Committee on Court Administration and Case Management (CACM).  As quoted in the committee note, the CACM guidance provides that certain documents—including "financial affidavits filed in seeking representation pursuant to the Criminal Justice Act"—"shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access."  Several reasons factored into the Advisory Committee's decision not to pursue the proposed amendment.  One was the concern that the amendment would be perceived as taking a position on an issue of substantive law (that is, whether such financial affidavits are judicial documents subject to disclosure under the First Amendment or a common law right of access).  Another was the

Draft Minutes
Civil Rules Advisory Committee
October 12, 2022
Page -6-

181     the court involve a common question of law or fact. Combined discovery would be an obvious
182     example.

183           An attempt to integrate Rule 54(b) with Rule 42(a), in short, would have to grapple with
184     the need to address only orders that consolidate two or more cases for all purposes. A satisfactory
185     resolution as a matter of rule text might be within reach, but it would depend on an explicit
186     statement of the purposes of consolidation, either when consolidation is ordered or perhaps when
187     the court comes to believe that complete disposition of an originally independent action is — or is
188     not — a desirable occasion for immediate appeal. The risks of stirring undue complications and
189     confusing appeal doctrine seem too great to be incurred.

190           The Committee concluded without dissent to recommend to the Standing Committee that
191     the joint subcommittee be dissolved without further work.

192                   *Multidistrict Litigation Subcommittee*

193           Judge Rosenberg introduced the report of the Multidistrict Litigation Subcommittee. She
194     noted that, at the time of the meeting last March, the Subcommittee had been working on possible
195     amendments that would address multidistrict litigation through Rule 26(f) party discussions and
196     Rule 16(b) case management orders. After that meeting, however, the Subcommittee came to
197     believe that it would be better to address the possibility of MDL-specific rule provisions in a new
198     rule if there are to be any rule provisions. A draft framed as a new Rule 16.1 was presented to the
199     Standing Committee last June, not for discussion but to illustrate the approach that would be
200     considered with the help of interested groups over the summer. An incidental effect of this
201     approach is that it avoids the need to consider coordination of any Rule 26(f) and 16(b)
202     amendments with the proposals recommended this morning to address privilege log practice.

203           The core of the Rule 16.1 approach is to prompt a meet-and-confer of the parties before
204     the initial MDL case management conference. Over the summer the Subcommittee had separate
205     remote meetings with lawyers designated by the American Association for Justice and Lawyers
206     for Civil Justice. The focus was on alternative versions of subdivision (c). Alternative 1 provides
207     a lengthy list of matters the court might direct the parties to discuss as a basis for a report to the
208     court. Alternative 2 provides a much condensed list, at points drawn in more general terms. Both
209     groups preferred Alternative 2, and each provided a "redlined" version that would revise
210     Alternative 2. As might be expected, the redlined versions differed from each other. The
211     Subcommittee discussed the redlined versions, and Professor Marcus undertook to annotate the
212     rule draft with explanations of the issues that have been identified by the Subcommittee and the
213     redline suggestions. This expanded version appears at page 179 in the agenda materials.

214           Further review of the draft will be sought by presenting it to a group of MDL judges at the
215     upcoming conference of MDL judges in early November. It will be quite different from the
216     proposal considered in the same setting four years ago. The proposal then focused on issues, such
217     as expanded opportunities for interlocutory appeals, that now are on the back burner.

Draft Minutes
Civil Rules Advisory Committee
October 12, 2022
Page -7-

218    Discussions of MDL procedure always are complicated by the proposition that not only do
219 the cases consolidated in the many different proceedings comprise a large part of the federal
220 docket; they range across a broad range of case numbers, from only a few to thousands or even
221 tens of thousands. Many of them are readily managed under the general Civil Rules. But the small
222 number of outsized consolidations, perhaps 20 or 25 of them at any one time, present enormous
223 challenges.

224    The potential value of a rule specifically framed for the MDL proceedings that are too
225 complicated for easy management under ordinary practices is enhanced by several factors. The
226 Judicial Panel on Multidistrict Litigation is actively seeking to draw new judges into MDL
227 assignments. New MDL judges need to be educated in MDL management. Education is often
228 provided, and to good effect, by the experienced MDL lawyers who regularly appear in MDL
229 proceedings. But less interested guidance also may be important. MDL judges, moreover, are
230 actively engaged in efforts to draw new lawyers into the MDL world. The new lawyers also will
231 benefit from guidance on the distinctive management needs of the more complex MDL
232 aggregations.

233    One approach can be to resist the temptation to propose any new MDL-specific rule.
234 Reliance might be placed on other sources of best practices, including the Manual for Complex
235 Litigation. The Manual, however, although a great resource, is not keyed solely to MDL
236 proceedings and is no longer up to date. A project to update the Manual has recently been launched,
237 but several years will be required for completion. The Judicial Panel works hard to support MDL
238 judges, including the annual conference at which the Rule 16.1 proposal will be presented in
239 November.

240    The question is whether these alternative sources of support for MDL judges should be
241 bolstered by new provisions in the Civil Rules. The Rule 16.1 proposal reflects the possibility that
242 much can be gained by a rule that prompts lawyers and the court to consider the distinctive and
243 often complex issues that arise in the more challenging MDL consolidations.

244    Rule 16.1(a) provides for an early management conference to develop a management plan
245 for orderly pretrial activity.

246    Rule 16.1(b) provides for designating "coordinating counsel" to act on behalf of the parties
247 — plaintiffs, and perhaps defendants — in the conference provided for by subdivision (c). It further
248 provides that designation as coordinating counsel does not weigh in the future determination of
249 appointments as leadership counsel.

250    Rule 16.1(c) is presented in alternative versions. As noted, Alternative 1 is more extensive
251 and detailed. Alternative 2 is condensed, identifying such core subjects as early exchanges of
252 information; whether to appoint leadership counsel, including the process for appointment and
253 leadership responsibilities and common benefit funds to support leadership work; and schedules
254 for sequencing discovery or deciding disputed legal issues.

Draft Minutes
Civil Rules Advisory Committee
October 12, 2022
Page -8-

255        At many points, the draft offers choices for the words of command. "Must" and "may" are
256 the more common alternatives, but "should" also figures in some alternatives. The Subcommittee
257 has shied away from "must" at many steps, recognizing that lawyers are creative and may develop
258 better ways of doing things than can fit within a mandatory rule text. At the same time, the "must"
259 command may be appropriate at some points.

260        Judge Dow noted that, in addition to the sessions with AAJ and LCJ lawyers, suggestions
261 have been received from other observers. Professors Morrison and Transgrud joined in one, and
262 another provided by John Rabiej offers detailed commentary. More will be learned from MDL
263 judges at the upcoming conference. It seems that judges are more interested than lawyers in having
264 a new rule. In part, that reflects the fact that "not everyone reads the Manual" or other sources of
265 best practices advice. But "everyone reads the Civil Rules." A good rule could be an important
266 guide that helps utilize the immense staffing required for a big MDL. The Rule 16.1 draft is
267 dramatically different from the drafts considered four years ago. "There will be a lot of eyes on
268 this." The Subcommittee deserves full compliments for its work.

269        Professor Marcus added two observations. Some participants are wary of using "may" in
270 rule text as a discretionary word that may not seem adequately mandatory. Quite separately, the
271 Rule 16.1(b) provision for coordinating counsel has seemed a "which should come first"
272 conundrum to some observers. Organizing the proceedings will require leadership counsel with
273 authority to engage with the court on behalf of others. How can there be lead counsel to advise on
274 who should become lead counsel? Even if designated as "interim" leadership, how is the court to
275 know whom to designate — does there have to be a coordinated presentation, or can the court
276 solicit applications and perhaps entertain comments on the applicants as a way to sort out
277 coordinating counsel?

278        A committee member provided a reminder of "how we got here." Many MDL judges and
279 lawyers have said we do not need a rule. No one-size-fits-all procedure can be set for all MDLs.
280 But we also hear that there is a need. We should look for a balance that does not constrain, but
281 points to key topics that should be considered. A rule can be designed to focus attention and prompt
282 discussion.

283        Another member observed that initial proposals for adopting an MDL rule came from
284 groups, one or another, looking for advantage. The proposal to expand opportunities for
285 interlocutory appeals is an example. Proponents looked for rules that would place a thumb on the
286 scales. The discussion with MDL judges in 2018 was on these topics. With this new proposal, "we
287 need to hear from these judges again." The question about interim coordinating counsel is an
288 example of the competing fears: plaintiff-side counsel fear that however described, an initial
289 designation of interim coordinating counsel will give an advantage that risks ripening into a full
290 leadership designation, and also fear that a rule may give defendants a voice in designating plaintiff
291 leadership. Defendants' counsel also have partisan views on these issues. "Organizations can be
292 more vociferous." We need to hear from those on the ground in settings that are not filtered through
293 their organizations.

Draft Minutes
Civil Rules Advisory Committee
October 12, 2022
Page -9-

294       This member continued by suggesting that "today I would favor (c) Alternative 1." It is a
295  long and helpful list of the things that must be considered to successfully start an MDL. "If you
296  start well, you're likely to finish successfully."

297       A different member said that the process of generating successive rules drafts has been
298  informative. "I am not really persuaded there should be a rule." We need to hear from lawyers who
299  engage in all types of MDLs. And we need to be careful about how many items we include in a
300  rule. Many of the details might better be shifted to the Committee Note.

301       The same member continued to observe that in designating leadership it is important that
302  the judge learn not only who wants to be a leader, but who the leaders really are. Early candidates
303  may be useful members of the final team, but others must be considered as well. Gathering input
304  from the MDL judges at their upcoming meeting will be useful.

305       A judge said that sometimes the initial process is useful because some lawyers shine, while
306  others flop — perhaps because they do not play well with others. The authority conferred on lead
307  counsel limits the role of the other lawyers, but virtual proceedings can enlarge the number of
308  nonlead lawyers who can participate effectively.

309       Another judge expressed worries about "mission creep." Relying on an extended
310  committee note to guide practice may be a mistake. The note may be too long. And these are rules,
311  not Federal Suggestions for Civil Procedure. A note that suggests thinking about this, thinking
312  about that, thinking about another thing might accomplish nothing more than a rule that advises
313  judges and lawyers to consult the Manual for Complex Litigation. "This doesn't feel like a rule."
314  Reliance on "may" provisions illustrates the lack of a need for such rule provisions. "No one doubts
315  the authority to do what we might include in a list of things the court 'may' do." So the
316  organizations that advised the Subcommittee over the summer prefer the shorter list in (c)
317  alternative 2.

318       Another participant suggested a broader context for the concern about reliance on
319  Committee Note discussion in place of more detailed guidance in rule text. The discussion earlier
320  this morning about the Committee Note for the privilege log proposal was a beginning.
321  Historically, the advisory committees have resisted extended checklists, often described as
322  "laundry lists," in rule text. Earlier explorations of class-action questions included a draft that
323  proceeded through more than a dozen paragraphs of factors to be considered in evaluating a
324  proposed settlement. That approach was abandoned; the general formula that emerged, and that
325  was polished in more recent Rule 23 amendments, seemed better. One of the grounds for resisting
326  multifactor lists in rule text is the fear that lawyers will feel compelled to address every factor in
327  every case, even though only a few — and perhaps none — may be useful or even relevant in a
328  particular case. At the same time, detailed rule text can provide the intended guidance for judges
329  and lawyers, especially those newly come to MDL practice. It will be important to make sure that
330  either alternative of Rule 16.1(c) is drafted to make it clear that the lawyers are directed to consider
331  only the elements that the court selects from the list that follows.

Draft Minutes
Civil Rules Advisory Committee
October 12, 2022
Page -10-

332   A judge noted that the Subcommittee has been hearing from "the high end of the MDL bar
333   and judges." The choice between a manual and a rule troubles lawyers because a rule passes some
334   control from the lawyers to the judge. That may be why lawyers have resisted the more detailed
335   (c) alternative 1. The lawyers have long had a powerful role in educating new MDL judges in the
336   practices that the concentrated MDL bar has developed across many years of experience in many
337   MDLs, from small to the largest. They do not want to give up this advantage. "We want to give
338   judges what they need."

339   Another judge noted that lawyers prefer (c) alternative 2 because it is more concise. They
340   assert that it will better enable judges to manage the proceedings.

341   Professor Marcus provided a reminder that the first proposals for MDL rules were made
342   by lawyers involved in defending the small number of very large MDLs. "They did not like the
343   direction of the prevailing winds."

344   A third judge noted that at one of the conferences arranged for the Subcommittee, Judge
345   Chhabria described his experience as a newcomer to a very large MDL. He and his clerks
346   researched MDL practices extensively. But he believed that he had gone wrong in establishing
347   provisions for a common-benefit fund. He could have done better "if I knew then what I know
348   now." He has suggested that an explicit Civil Rule for MDL proceedings would help judges. So it
349   will help if we get lawyers involved at the beginning in informing the judge about what needs to
350   be considered in initially organizing the MDL. And "it seems better to make clear that the judge
351   controls what is to be discussed."

352   A fourth judge observed that "we hear a lot about how different MDLs are" from one
353   another. There is a wide variety. But the federal courts deal with a wide variety of cases, and the
354   Civil Rules address an equally wide range. The Subcommittee process has been great. Subdivision
355   (c) alternative 1 may be safer than alternative 2, because it addresses more elements that may be
356   important in managing one or another variety of MDLs. And there is a visible danger in adopting
357   an extensive Committee Note. There may be a temptation, encountered elsewhere in the
358   rulemaking process, to use a note to address matters that seem too sensitive to address in rule text.
359   An example is settlement. Could a note say simply that settlement plays a very important role in
360   most MDLs? Could it go on to suggest what the judge may and may not do? If it says anything,
361   the risks are saying too much or too little. Another example is the interplay between Rule 23 class
362   actions and MDLs. "There are some real issues there." Framing the note "will not be an easy
363   process."

364   Judge Dow echoed this observation. "Settlement has been a difficult question all along."
365   Academics have proposed adopting for MDLs the settlement review procedures that Rule 23
366   adopts for class actions. But we have come to understand that judges cannot become involved in
367   the merits of settlement proposals in MDLs that are not resolved as class actions. At the same time,
368   judges may have an important role in managing the process of settlement. One example might be
369   a case management order provision that any lawyer who has more than XY cases in the MDL must
370   show up in court to explain the process that led to an impending settlement.

Draft Minutes
Civil Rules Advisory Committee
October 12, 2022
Page -11-

371    Judge Dow concluded the discussion by noting that the Rule 16.1 proposal "needs and will
372 get more attention from all sides."

*Rule 41 Subcommittee*

374    Judge Bissoon delivered the report of the Rule 41 Subcommittee. The first questions
375 presented to the Committee arise from the word "action" in Rule 41(a)(1)(A): "the plaintiff may
376 dismiss an *action*" without court order and without prejudice. Most circuits that have considered
377 one set of questions have ruled that a single plaintiff who dismisses all claims against one of plural
378 defendants has dismissed the action. So if one of two plaintiffs dismisses all claims against all
379 defendants, that dismisses the action. Some circuits, however, have taken different positions. And
380 district courts remain divided on a parallel question: if one plaintiff wants to dismiss fewer than
381 all claims against a single defendant, does that dismiss the action? A majority say it does not,
382 relying on the "plain meaning" of "the action." That view seems to contradict the meaning
383 attributed to "action" in the cases that address complete dismissal as to only one defendant or
384 plaintiff. But other district courts have ruled that Rule 41 authorizes a plaintiff to dismiss without
385 prejudice a single claim against a single defendant.

386    The Subcommittee has not yet worked its way through to a recommendation. It hopes to
387 be guided by any lessons from experience that can be provided by Committee discussion. Should
388 there be an amendment? Should it aim only to adopt the majority views announced in the cases,
389 without attempting to search out underlying policies that have not been articulated in the opinions?
390 Should it undertake to consider other aspects of Rule 41 that may deserve attention?

391    Professor Marcus suggested that there are too many Rule 41 balls in the air to count.
392 Rule 41 remains largely unchanged since its adoption in 1938. It was intended to move away from
393 the variety of state court practices incorporated through the Conformity Act; some states allowed
394 unilateral dismissal without prejudice at an advanced stage of an action, even into trial. The
395 purpose to require court approval after an early point in the proceedings has been accomplished.
396 It would be possible to go further to require court approval for any voluntary dismissal without
397 prejudice, but that has not been proposed.

398    These themes were expanded upon. Rule 41 could be amended by a simple process that
399 does no more than achieve uniformity by adopting the majority views of what it means to dismiss
400 the action. A somewhat more ambitious approach would look behind the tacitly conflicting views
401 of plain meaning to ask what underlying policies might, for example, distinguish between
402 dismissal of only some claims between a pair of adversary parties and dismissal of all claims
403 between them. Still greater ambition might suggest that if Rule 41 is to be taken on, other nagging
404 questions also might be considered. One prominent question is whether the provision that
405 terminates the plaintiff's right to dismiss on an answer or a motion for summary judgment should
406 be expanded to include motions under Rule 12(b), (e), or (f), in parallel with the provision in
407 Rule 15(a)(1)(B) that uses those motions to trigger the time limit for amending a pleading once as
408 a matter of course. The provisions in Rule 41(c) that address dismissal of claims by parties other
409 than the plaintiff might also deserve some consideration.

**8.    Proposed New Rule 16.1 on MDL proceedings – recommendation to publish for public comment**

The MDL Subcommittee was originally appointed in 2017. It has had three chairs (two of whom went on to become Chairs of the Advisory Committee). It has now reached a consensus on the appropriate way to address MDL proceedings in the Civil Rules – adoption of new Rule 16.1, addressed particularly to those proceedings.

Because the process of development involved consideration of a wide variety of issues and took a long time, it seems useful to introduce the current proposal with some background on the evolution of the Subcommittee's work. The initial submissions to the Committee raised a wide variety of issues. At the Committee's April 2018 meeting, the MDL Subcommittee made its first report to the full Committee, listing ten discussion issues:

(1) The scope of any rule;

(2) The handling of master complaints and answers;

(3) Use of plaintiff fact sheets or requiring particularized pleading or requiring immediate submission of evidence by plaintiffs;

(4) Requiring each plaintiff to pay a full filing fee, with possible effect on Rule 20 joinder;

(5) Sequencing discovery;

(6) Requiring disclosure of third party litigation funding;

(7) Handling of bellwether trials, and requiring consent to holding such trials:

(8) Expanding interlocutory review of certain decisions in certain MDL proceedings;

(9) Coordinating MDL proceedings with parallel proceedings in state courts or other federal courts; and

(10) Formation of leadership counsel for plaintiffs and common fund arrangements.

A great deal of effort was spent examining the proposal to require disclosure of third party litigation funding. Eventually, the conclusion was that this topic, while perhaps very important, was not particularly salient in MDL proceedings. So TPLF remains on the Committee's agenda, and disclosure of such arrangements has been endorsed in some bills introduced in Congress, but it is no longer a feature of the MDL Subcommittee's work.

Even more effort was spent examining the possibility of expanded interlocutory review. As it developed, the proposal was to emulate Rule 23(f) on immediate review of class certification decisions. Very helpful submissions favoring and opposing such a rule change were submitted, and Subcommittee members participated in a large number of conferences and meetings with bar groups about this possibility. Eventually the decision was made that there was

247  not such a need for expanded review in light of existing methods (including certification under
248  28 U.S.C. § 1292(b)), and that idea was put aside.

249       Attention focused, instead, on adding provisions specifically calibrated to MDL
250  proceedings to Rule 26(f) and Rule 16(b), which were included in the agenda book for the full
251  Committee's March 2022 meeting. By the time that meeting occurred, however, further outreach
252  by the Subcommittee (including a conference involving transferee judges, plaintiff attorneys and
253  defense attorneys organized by the Emory University's Institute for Complex Litigation and
254  Mass Claims) had pointed out some difficulties with relying on Rule 26(f) as a vehicle for
255  managing MDL proceedings. In particular:

256       (1) It might often happen that a Rule 26(f) conference had already occurred in some
257       actions before a Panel transfer order centralizing them in the transferee court, and perhaps
258       that a schedule for activity in those actions had already been adopted in the transferor
259       court. There would ordinarily be no occasion under Rule 26(f) for a second planning
260       conference or report to the court. And after transfer by the Panel, there might not be any
261       Rule 26(f) conferences in actions in which they had not already occurred before transfer.

262       (2) It increasingly seemed valuable to provide the transferee court in MDL proceedings
263       with the opportunity to appoint "coordinating counsel" to oversee the initial organization
264       of the proceedings and assist the court in making its initial management order to guide
265       the future course of the MDL proceedings.

266       These issues prompted the idea of a new Rule 16.1 to address MDL proceedings. Such a
267  rule could assist the transferee court in addressing a variety of matters that often proved
268  important in MDL proceedings. It could also provide a substitute for MDL proceedings for the
269  Rule 26(f) meeting that is to occur in ordinary litigation. Initial sketches of such a rule, including
270  alternative versions, were appended to the agenda book for the Standing Committee's June 2022
271  meeting.

272       After that Standing Committee meeting, these Rule 16.1 sketches were the focus of
273  several further conferences. Both the American Association for Justice and the Lawyers for Civil
274  Justice arranged for representatives of the Subcommittee to participate in conferences with
275  members of their organizations about the Rule 16.1 ideas. Importantly, three judicial
276  representatives of the Subcommittee also attended the transferee judges conference, put on by the
277  Judicial Panel. At that conference there was a special session with the transferee judges to
278  receive feedback about the Rule 16.1 sketches, including the question which alternative approach
279  seemed most suitable.

280       With this extensive information base, the Subcommittee went to work refining the Rule
281  16.1 proposal. This work included multiple meetings via Zoom and many more exchanges of
282  email about evolving drafts. Eventually, the Subcommittee reached consensus on a proposal to
283  recommend for public comment, which is presented below.

284 **Rule 16.1.** **Multidistrict Litigation Management**

285      **(a)**      **Initial MDL Management Conference**. After the Judicial Panel on Multidistrict
286      Litigation orders the transfer of actions to a transferee court, the transferee court
287      should schedule an initial management conference to develop a management plan
288      for orderly pretrial activity in the MDL proceedings.

289      **(b)**      **Designation Of Coordinating Counsel For Initial MDL Management**
290      **Conference.** The transferee court may designate coordinating counsel to assist the
291      court with the initial management MDL conference under Rule 16.1(a) and to
292      work with plaintiffs or defendants to prepare for any conference and to prepare
293      any report ordered pursuant to Rule 16.1(c).

294      **(c)**      **Preparation Of Report For Initial MDL Management Conference.** The
295      transferee court should order the parties to meet and confer to prepare and submit
296      a report to the court prior to the initial MDL management conference. The report
297      must address any matter designated by the court, which may include any matter
298      addressed in Rule 16.1(c)(1)-(12) or in Rule 16. The report may also address any
299      other matter the parties desire to bring to the court's attention.

300      **(1)**      Whether leadership counsel should be appointed, and if appointed:

301      **(A)**      The procedure for selecting leadership counsel, and whether the
302      appointment should be reviewed periodically during the MDL
303      proceedings;

304      **(B)**      The structure of leadership counsel, including the responsibilities
305      and authority of leadership counsel in conducting pretrial
306      activities;

307      **(C)**      The role of leadership counsel regarding any settlement activities;

308      **(D)**      Proposed methods for leadership counsel to communicate with and
309      report regularly to the court and non-leadership counsel;

310      **(E)**      Any limits on activity by non-leadership counsel; and

311      **(F)**      Whether, and if so when, to establish a means for compensating
312      leadership counsel;

313      **(2)**      Identification of any previously entered scheduling or other orders and
314      whether they should be vacated or modified;

315      **(3)**      Identification of the principal factual and legal issues likely to be
316      presented in the MDL proceedings;

317      **(4)**      How and when the parties will exchange information about the factual
318      bases for their claims and defenses;

319      **(5)**     Whether consolidated pleadings should be prepared to account for
320                multiple actions filed in the MDL proceedings;

321      **(6)**     A proposed plan for discovery, including methods to handle discovery
322                efficiently in the MDL proceedings;

323      **(7)**     Any likely pretrial motions, and a plan for addressing them;

324      **(8)**     A schedule for additional management conferences with the court;

325      **(9)**     Whether the court should consider measures to facilitate settlement by the
326                parties of some or all actions before the court, including measures
327                identified in Rule 16(c)(2)(I);

328      **(10)**    How to manage the filing of new actions in the MDL proceedings;

329      **(11)**    Whether related actions have been filed or are anticipated to be filed in
330                other courts, and whether to consider possible methods for coordinating
331                with any related actions; and

332      **(12)**    Whether matters should be referred to a magistrate judge or a master.

333    **(d)**    **Initial MDL Management Order.** After the initial MDL management
334            conference under Rule 16.1(a), the court should enter an initial MDL management
335            order addressing the matters designated under Rule 16.1(c), and any other matters
336            in the court's discretion. This order controls the course of the MDL proceedings
337            until the court modifies it.

338                              DRAFT COMMITTEE NOTE

339       The Multidistrict Litigation Act, 28 U.S.C. § 1407, was adopted in 1968. It empowers the
340 Judicial Panel on Multidistrict Litigation to transfer one or more actions for coordinated or
341 consolidated pretrial proceedings, to promote the just and efficient conduct of such actions. The
342 number of civil actions subject to transfer orders from the Panel has increased significantly since
343 the statute was enacted. In recent years, these actions have accounted for a substantial portion of
344 the federal civil docket. There previously was no reference to multidistrict litigation in the Civil
345 Rules and, thus, the addition of Rule 16.1 is designed to provide a framework for the initial
346 management of MDL proceedings.

347       Not all MDL proceedings present the type of management challenges this rule addresses.
348 On the other hand, other multiparty litigation that did not result from a Judicial Panel transfer
349 order may present similar management challenges. For example, multiple actions in a single
350 district (sometimes called related cases and assigned by local rule to a single judge) may exhibit
351 characteristics similar to MDL proceedings. In such situations, courts may find it useful to
352 employ procedures similar to those Rule 16.1 identifies for MDL proceedings in their handling
353 of those multiparty proceedings. In both MDL proceedings and other multiparty litigation, the
354 Manual for Complex Litigation also may be a source of guidance.

355       **Rule 16.1(a).** Rule 16.1(a) recognizes that the transferee judge regularly schedules an
356 initial MDL management conference soon after the Judicial Panel transfer occurs to develop a
357 management plan for the MDL proceedings. That initial MDL management conference
358 ordinarily would not be the only management conference held during the MDL proceedings.
359 Although holding an initial MDL management conference in MDL proceedings is not mandatory
360 under Rule 16.1(a), early attention to the matters identified in Rule 16.1(c) may be of great value
361 to the transferee judge and the parties.

362       **Rule 16.1(b).** Rule 16.1(b) recognizes the court may designate coordinating counsel –
363 perhaps more often on the plaintiff than the defendant side – to ensure effective and coordinated
364 discussion during the Rule 16.1(c) conference and to provide an informative report for the court
365 to use during the initial MDL management conference under Rule 16.1(a).

366       While there is no requirement that the court designate coordinating counsel, the court
367 should consider whether such a designation could facilitate the organization and management of
368 the action at the initial MDL management conference. The court may designate coordinating
369 counsel to assist the court before appointing leadership counsel. In some MDL proceedings,
370 counsel may be able to organize themselves prior to the initial MDL management conference
371 such that the designation of coordinating counsel may not be necessary.

372       **Rule 16.1(c).** The court ordinarily should order the parties to meet and confer to provide
373 a report to the court about the matters designated in the court's Rule 16.1(c) order prior to the
374 initial MDL management conference under Rule 16.1(a). This should be a single report, but it
375 may reflect the parties' divergent views on these matters. The court may select which matters
376 listed in Rule 16.1(c) or Rule 16 should be included in the report submitted to the court, and may
377 also include any other matter, whether or not listed in those rules. Rules 16.1(c) and 16 provide a
378 series of prompts for the court and do not constitute a mandatory checklist for the transferee
379 judge to follow. Experience has shown, however, that the matters identified in Rule 16.1(c)(1)-
380 (12) are often important to the management of MDL proceedings. In addition to the matters the
381 court has directed counsel to address, the parties may choose to discuss and report about other
382 matters that they believe the transferee judge should address at the initial MDL management
383 conference.

384       **Rule 16.1(c)(1).** Appointment of leadership counsel is not universally needed in MDL
385 proceedings. But, to manage the MDL proceedings, the court may decide to appoint leadership
386 counsel. This provision calls attention to a number of topics the court might consider if
387 appointment of leadership counsel seems warranted.

388       The first is the procedure for selecting such leadership counsel, addressed in
389 subparagraph (A). There is no single method that is best for all MDL proceedings. The transferee
390 judge has a responsibility in the selection process to ensure that the lawyers appointed to
391 leadership positions are capable and experienced and that they will responsibly and fairly
392 represent all plaintiffs, keeping in mind the benefits of different experiences, skill, knowledge,
393 geographical distributions, and backgrounds. Courts have considered the nature of the actions
394 and parties, the qualifications of each individual applicant, litigation needs, access to resources,
395 the different skills and experience each lawyer will bring to the role, and how the lawyers will
396 complement one another and work collectively.

397       MDL proceedings do not have the same commonality requirements as class actions, so
398   substantially different categories of claims or parties may be included in the same MDL
399   proceeding and leadership may be comprised of attorneys who represent parties asserting a range
400   of claims in the MDL proceeding. For example, in some MDL proceedings there may be claims
401   by individuals who suffered injuries, and also claims by third-party payors who paid for medical
402   treatment. The court may sometimes need to take these differences into account in making
403   leadership appointments.

404       Courts have selected leadership counsel through combinations of formal applications,
405   interviews, and recommendations from other counsel and judges who have experience with
406   MDL proceedings. If the court has appointed coordinating counsel under Rule 16.1(b),
407   experience with coordinating counsel's performance in that role may support consideration of
408   coordinating counsel for a leadership position, but appointment under Rule 16(b) is primarily
409   focused on coordination of the Rule 16.1(c) meeting and preparation of the resulting report to the
410   court for use at the initial MDL management conference under Rule 16.1(a).

411       The rule also calls for a report to the court on whether appointment to leadership should
412   be reviewed periodically. Periodic review can be an important method for the court to manage
413   the MDL proceeding.

414       In some MDL proceedings it may be important that leadership counsel be organized into
415   committees with specific duties and responsibilities. Subparagraph (B) of the rule therefore
416   prompts counsel to provide the court with specifics on the leadership structure that should be
417   employed.

418       Subparagraph (C) recognizes that, in addition to managing pretrial proceedings, another
419   important role for leadership counsel in some MDL proceedings is to facilitate possible
420   settlement. Even in large MDL proceedings, the question whether the parties choose to settle a
421   claim is just that – a decision to be made by those particular parties. Nevertheless, leadership
422   counsel ordinarily play a key role in communicating with opposing counsel and the court about
423   settlement and facilitating discussions about resolution. It is often important that the court be
424   regularly apprised of developments regarding potential settlement of some or all actions in the
425   MDL proceeding. In its supervision of leadership counsel, the court should make every effort to
426   ensure that any settlement process is fair.

427       One of the important tasks of leadership counsel is to communicate with the court and
428   with non-leadership counsel as proceedings unfold. Subparagraph (D) directs the parties to report
429   how leadership counsel will communicate with the court and non-leadership counsel. In some
430   instances, the court or leadership counsel have created websites that permit non-leadership
431   counsel to monitor the MDL proceedings, and sometimes online access to court hearings
432   provides a method for monitoring the proceedings.

433       Another responsibility of leadership counsel is to organize the MDL proceedings in
434   accord with the court's management order under Rule 16.1(d). In some MDLs, there may be
435   tension between the approach that leadership counsel takes in handling pretrial matters and the
436   preferences of individual parties and non-leadership counsel. As subparagraph (E) recognizes, it
437   may be necessary for the court to give priority to leadership counsel's pretrial plans when they

438   conflict with initiatives sought by non-leadership counsel. The court should, however, ensure
439   that non-leadership counsel have suitable opportunities to express their views to the court, and
440   take care not to interfere with the responsibilities non-leadership counsel owe their clients.

441   Finally, subparagraph (F) addresses whether and when to establish a means to
442   compensate leadership counsel for their added responsibilities. Courts have entered orders
443   pursuant to the common benefit doctrine establishing specific protocols for common benefit
444   work and expenses. But it may be best to defer entering a specific order until well into the
445   proceedings, when the court is more familiar with the proceedings.

446   **Rule 16.1(c)(2).** When multiple actions are transferred to a single district pursuant to 28
447   U.S.C. § 1407, those actions may have reached different procedural stages in the district courts
448   from which cases were transferred ("transferor district courts"). In some, Rule 26(f) conferences
449   may have occurred and Rule 16(b) scheduling orders may have been entered. Those scheduling
450   orders are likely to vary. Managing the centralized MDL proceedings in a consistent manner may
451   warrant vacating or modifying scheduling orders or other orders entered in the transferor district
452   courts, as well as any scheduling orders previously entered by the transferee judge.

453   **Rule 16.1(c)(3).** Orderly and efficient pretrial activity in MDL proceedings can be
454   facilitated by early identification of the principal factual and legal issues likely to be presented.
455   Depending on the issues presented, the court may conclude that certain factual issues should be
456   pursued through early discovery, and certain legal issues should be addressed through early
457   motion practice.

458   **Rule 16.1(c)(4).** Experience has shown that in certain MDL proceedings early exchange
459   of information about the factual bases for claims and defenses can facilitate the efficient
460   management of the MDL proceedings. Some courts have utilized "fact sheets" or a "census" as
461   methods to take a survey of the claims and defenses presented, largely as a management method
462   for planning and organizing the proceedings.

463   The level of detail called for by such methods should be carefully considered to meet the
464   purpose to be served and avoid undue burdens. Whether early exchanges should occur may
465   depend on a number of factors, including the types of cases before the court. For example, it is
466   widely agreed that discovery from individual class members is often inappropriate in class
467   actions, but with regard to individual claims in MDL proceedings exchange of individual
468   particulars may be warranted. And the timing of these exchanges may depend on other factors,
469   such as whether motions to dismiss or other early matters might render the effort needed to
470   exchange information unwarranted. Other factors might include whether there are legal issues
471   that should be addressed (e.g., general causation or preemption) and the number of plaintiffs in
472   the MDL proceeding.

473   **Rule 16.1(c)(5).** For case management purposes, some courts have required consolidated
474   pleadings, such as master complaints and answers in addition to short form complaints. Such
475   consolidated pleadings may be useful for determining the scope of discovery and may also be
476   employed in connection with pretrial motions, such as motions under Rule 12 or Rule 56. The
477   relationship between the consolidated pleadings and individual pleadings filed in or transferred
478   to the MDL proceeding depends on the purpose of the consolidated pleadings in the MDL

479   proceedings. Decisions regarding whether to use master pleadings can have significant
480   implications in MDL proceedings, as the Supreme Court noted in *Gelboim v. Bank of America*
481   *Corp.*, 574 U.S. 405, 413 n.3 (2015).

482      **Rule 16.1(c)(6).** A major task for the MDL transferee judge is to supervise discovery in
483   an efficient manner. The principal issues in the MDL proceedings may help guide the discovery
484   plan and avoid inefficiencies and unnecessary duplication, addressed in Rule 16.1(c)(11).

485      **Rule 16.1(c)(7).** Early attention to likely pretrial motions can be important to facilitate
486   progress and efficiently manage the MDL proceedings. The manner and timing in which certain
487   legal and factual issues are to be addressed by the court can be important in determining the most
488   efficient method for discovery.

489      **Rule 16.1(c)(8).** The Rule 16.1(a) conference is the initial MDL management conference.
490   Although there is no requirement that there be further management conferences, courts generally
491   conduct management conferences throughout the duration of the MDL proceedings to effectively
492   manage the litigation and promote clear, orderly, and open channels of communication between
493   the parties and the court on a regular basis.

494      **Rule 16.1(c)(9).** Even if the court has not appointed leadership counsel, it may be that
495   judicial assistance could facilitate the settlement of some or all actions before the transferee
496   judge. Ultimately, the question whether parties reach a settlement is just that – a decision to be
497   made by the parties. But as recognized in Rule 16(a)(5) and 16(c)(2)(I), the court may assist the
498   parties in settlement efforts. In MDL proceedings, in addition to mediation and other dispute
499   resolution alternatives, the court's use of a magistrate judge or a master, focused discovery
500   orders, timely adjudication of principal legal issues, selection of representative bellwether trials,
501   and coordination with state courts may facilitate settlement. Should the court be called upon to
502   approve a settlement, as in any class actions filed within the MDL, or when the court is asked to
503   appoint a settlement administrator, the court should ensure that all parties have reasonable notice
504   of the process that will be used to determine the division of the proceeds, that the process of
505   allocation has integrity, and that monies be held safely and distributed appropriately.

506      **Rule 16.1(c)(10).** Actions that are filed in or removed to federal court after the Judicial
507   Panel has created the MDL proceedings are treated as "tagalong" actions and transferred from
508   the district where they were filed to the transferee court.

509      When large numbers of tagalong actions are anticipated, some parties have stipulated to
510   "direct filing" orders entered by the court to provide a method to avoid the transferee judge
511   receiving numerous cases through transfer rather than direct filing. If a direct filing order is
512   entered, it is important to address matters that can arise later, such as properly handling any
513   jurisdictional or venue issues that might be presented, identifying the appropriate transferor
514   district court for transfer at the end of the pretrial phase, how time limits such as statutes of
515   limitations should be handled, and how choice of law issues should be addressed.

516      **Rule 16.1(c)(11).** On occasion there are actions in other courts that are related to the
517   MDL proceedings. Indeed, a number of state court systems (e.g., California and New Jersey)
518   have mechanisms like § 1407 to aggregate separate actions in their courts. In addition, it may

519 sometimes happen that a party to an MDL proceeding may become a party to another action that
520 presents issues related to or bearing on issues in the MDL proceeding.

521       The existence of such actions can have important consequences for the management of
522 the MDL proceedings. For example, avoiding overlapping discovery is often important. If the
523 court is considering adopting a common benefit fund order, consideration of the relative
524 importance of the various proceedings may be important to ensure a fair arrangement. It is
525 important that the MDL transferee judge be aware of whether such proceedings in other courts
526 have been filed or are anticipated.

527       **Rule 16.1(c)(12).** MDL transferee judges may refer matters to a magistrate judge or a
528 master to expedite the pretrial process or to play a part in settlement negotiations. It can be
529 valuable for the court to know the parties' positions about the possible appointment of a master
530 before considering whether such an appointment should be made. Rule 53 prescribes procedures
531 for appointment of a master.

532       **Rule 16.1(d).** Effective and efficient management of MDL proceedings benefits from a
533 comprehensive management order. A management order need not address all matters designated
534 under Rule 16.1(c) if the court determines the matters are not significant to the MDL proceedings
535 or would better be addressed at a subsequent conference. There is no requirement under Rule
536 16.1 that the court set specific time limits or other scheduling provisions as in ordinary litigation
537 under Rule 16(b)(3)(A). Because active judicial management of MDL proceedings must be
538 flexible, the court should be open to modifying its initial management order in light of
539 subsequent developments in the MDL proceedings. Such modification may be particularly
540 appropriate if leadership counsel were appointed after the initial management conference under
541 Rule 16.1(a).