**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: FTX CRYPTO CURRENCY**                          **MDL No. 3076**
**EXCHANGE COLLAPSE LITIGATION**

*Lahav v. Binance Holdings Ltd. et al.*, N.D. California
Case No. 3:23-cv-05038-TLT

_____/

**DEFENDANTS BAM TRADING SERVICES INC. AND BAM MANAGEMENT US
HOLDINGS INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
VACATE CONDITIONAL TRANSFER ORDER DATED JANUARY 3, 2024 (CTO-4)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

    A.  The Lahav Complaint ................................................................................................3

    B.  The FTX MDL ................................................................................................6

ARGUMENT ................................................................................................9

    A.  There Are No Common Questions of Fact Between *Lahav* and the Cases Pending in the FTX MDL. ................................................................................................10

        1.  *Lahav* Is Premised Solely on Binance's Actions ................................................10

        2.  Different Classes ................................................................................................12

        3.  Limited Overlap Regarding Fall of FTX Is Insufficient to Warrant Transfer .............13

    B.  Transfer to the FTX MDL Would Be Inefficient and Would Inconvenience the Parties ................................................................................................14

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABA L. Sch. Accreditation Litig.*,
  325 F. Supp. 3d 1377 (J.P.M.L. 2018) ....................................................................9

*In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*,
  431 F. Supp. 906 (J.P.M.L. 1977) .........................................................................17

*In re Auction Rate Sec. (ARS) Mktg. Litig.*,
  581 F. Supp. 2d 1371 (J.P.M.L. 2008) .....................................................12, 14, 17

*In re BMW Reverse Transmission Prods. Liab. Litig.*,
  543 F. Supp. 2d 1382 (J.P.M.L. 2008) .....................................2, 12, 13, 16

*In re Boeing Co. Emp. Pracs. Litig. (No. II)*,
  293 F. Supp. 2d 1382 (J.P.M.L. 2003) .............................................10, 12

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  482 F. Supp. 3d 1360 (J.P.M.L. 2020) .............................................15, 16

*In re Credit Suisse VelocityShares Daily Inverse VIX Short Term Exch. Traded
  Notes Sec. Litig.*,
  326 F. Supp. 3d 1379 (J.P.M.L. 2018) ..................................................................14

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*,
  446 F.Supp. 242 (J.P.M.L. 1978) .........................................................................15

*In re Env't Prot. Agency Pesticide Listing Confidentiality Litig.*,
  434 F. Supp. 1235 (J.P.M.L. 1977) .........................................................................9

*In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*,
  325 F. Supp. 3d 1367 (J.P.M.L. 2018) .....................................2, 13, 18, 20

*In re Georgeson S'holder Commc'ns, Inc., Share Exch. Litig.*,
  277 F. Supp. 2d 1372 (J.P.M.L. 2003) .........................................9, 10, 15

*In re Grain Shipments*,
  319 F. Supp. 533 (J.P.M.L. 1970) ..........................................................................6

*In re Grand Funk R.R. Trademark Litig.*,
  371 F. Supp. 1084 (J.P.M.L. 1974) .......................................................................17

*In re Highway Acc. Near Rockville*,
  388 F. Supp. 574 (J.P.M.L. 1975) .........................................................................13

ii

*In re Nat'l Credit Union Admin. Bd. Mortg.-Backed Sec. Litig.*,
  996 F. Supp. 2d 1374 (J.P.M.L. 2014) ............................................................12, 14

*In re Prop. Assessed Clean Energy (Pace) Programs Litig.*,
  764 F. Supp. 2d 1345 (J.P.M.L. 2011)...........................................................14, 19

*In re Prospect Mortg., LLC, Fair Lab. Standards Act (FLSA) & Wage & Hour*
  *Litig.*,
  987 F. Supp. 2d 1383 (J.P.M.L. 2013) ....................................................................16

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
  273 F. Supp. 3d 1360 (J.P.M.L. 2017) ...........................................................17, 18

*In re Real Est. Transfer Tax Litig.*,
  895 F. Supp. 2d 1350 (J.P.M.L. 2012) ...........................................................15, 19

*In re Starbucks Corp. Mktg. & Sales Pracs. Litig.*,
  222 F. Supp. 3d 1348 (J.P.M.L. 2016) ....................................................................16

*In re Student-Athlete Name & Likeness Litig.*,
  763 F. Supp. 2d 1379 (J.P.M.L. 2011)....................................................................15

*In re Tobacco/Governmental Health Care Costs Litig.*,
  76 F. Supp. 2d 5 (D.D.C. 1999) ........................................................................9, 10

*In re Truck Acc. Near Alamagordo*,
  387 F. Supp. 732 (J.P.M.L. 1975) ...........................................................................10

*In re TrueCar, Inc., S'holder Derivative Litig.*,
  412 F. Supp. 3d 1353 (J.P.M.L. 2019) ....................................................................14

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
  No. MDL 3084, 2024 WL 41889 (J.P.M.L. Jan. 4, 2024)........................3, 9, 10, 14

*In re UPS Supply Chain Sols., Inc., Fair Lab. Standards Act (FLSA) Litig.*,
  729 F. Supp. 2d 1356 (J.P.M.L. 2010) ....................................................................10

*In re Westec Corp.*,
  307 F. Supp. 559 (J.P.M.L. 1969) ...........................................................15, 16, 20

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................5

15 U.S.C. § 78u-4(b)(3)(b) ..........................................................................................5

28 U.S.C. § 1407..................................................................................................*passim*

28 U.S.C. § 1407(a) .......................................................................................3, 9, 10, 14

iii

Cal. Unfair Competition Law ............................................................................................4

Private Securities Litigation Reform Act of 1995................................................................5, 17

Securities Act of 1933 ......................................................................................................4

Securities and Exchange Act of 1934 ...............................................................................4

**Other Authorities**

H.R. Rep. No. 90-1130, 1968 U.S.C.C.A.N. ...................................................................10

Manual for Complex Litigation, Fourth, § 20.14 (2004)..................................................15

Rules of Proc. for the Jud. Panel on Multidistrict Litig. R. 7.1(f) ....................................1

Pursuant to Rule 7.1(f) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Defendants BAM Trading Services Inc. ("BAM Trading") and BAM Management US Holdings Inc. ("BAM Management," and together with BAM Trading, "Binance.US") move to vacate the Conditional Transfer Order dated January 3, 2024 (CTO-4), transferring a case filed against them in the Northern District of California captioned *Lahav v. Binance Holdings Limited et al.*, No. 3:23-cv-05038 (N.D. Cal.) ("*Lahav*" or the "*Lahav* Action"), to the multidistrict litigation *In re FTX Cryptocurrency Exchange Collapse Litigation*, No. 1:23-md-3076 (S.D. Fla.) (the "FTX MDL," and the cases consolidated therein, the "MDL Actions"). The plaintiff in *Lahav* and Binance.US oppose transfer to the FTX MDL. *See* Dkt. Nos. 240, 242.

## PRELIMINARY STATEMENT

The Panel should vacate the Conditional Transfer Order because consolidation of *Lahav* with the FTX MDL is unwarranted under the plain language of 28 U.S.C. § 1407. Under § 1407, transfer may be granted where the party requesting transfer demonstrates that (1) the actions present complex and unresolved "common questions of fact" and (2) consolidation will serve the convenience of parties and witnesses and "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407; *see infra* at pp. 14-15. Neither criterion is satisfied here.

***First***, *Lahav* shares no common questions of fact with the MDL Actions, and the proceedings are based on entirely different—and contradictory—factual theories. Plaintiff Lahav alleges that Binance's CEO made purportedly false and misleading statements regarding Binance's interest in potentially acquiring FTX's trading platforms. The crux of the Lahav allegations is that Binance's CEO never intended to acquire FTX but rather "disseminated" those statements to "hurt" FTX, ultimately leading to its demise. *See infra* at p. 4. Unlike *Lahav*, which relates solely to Binance's conduct, the MDL Actions all "revolve around the conduct of FTX's [founder] Samuel

Bankman-Fried, the relationship with another Bankman-Fried company known as Alameda Research, and Alameda's Caroline Ellison" and allege "a conspiracy between Bankman-Fried and other alleged FTX insiders to" falsely prop up FTX while mismanaging assets deposited on the FTX platform. The *Lahav* Action refers to FTX's founder only once, and never mentions Alameda Research, or Caroline Ellison. Simply put, there is no factual overlap between the actions, other than the fact that FTX failed. *See infra* at pp. 13-14. The sole undisputed fact that FTX collapsed is a "superficial factual commonality" that is insufficient to satisfy the requirements of § 1407. *In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018). *See infra* at p. 13.

**Second**, *Lahav* and the MDL Actions assert vastly different proposed classes and do not involve common defendants. *Lahav* premises liability on a three-day class period that is limited to individuals and entities who "had any fiat or cryptocurrency deposited or invested through an FTX trading platform" between November 6, 2022, and November 8, 2022. Lahav Compl. ¶¶ 46–47. On the other hand, the MDL Actions are premised on widespread misconduct starting with the inception of the FTX entities in 2019 and spanning hundreds of misrepresentations by the MDL Defendants—none of which overlap with the misrepresentations alleged in *Lahav*. *See, e.g.*, MDL Litigation Dkt. Nos. 178 ¶¶ 45–52, 88, 96, 112; 179 ¶¶ 82–83, 89–95, 132, 162; 182 ¶¶ 43–44, 47–57, 92. The MDL Actions assert their allegations against approximately *45* separate defendants but do not name any of the defendants in *Lahav*. *Id.* The distinct classes and lack of defendant overlap is an independent reason transfer should be denied. *See In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F. Supp. 2d 1382, 1382–83 (J.P.M.L. 2008) (denying transfer because actions with "distinct separate classes" do not have "common questions of fact [that] are sufficiently complex and/or numerous to justify Section 1407 transfer").

**Third**, consolidation of the actions would not "serve the convenience of parties and witnesses," nor would it "promote the just and efficient conduct of such actions"—two prerequisites for transfer under § 1407.  *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. MDL 3084, 2024 WL 41889, at *1 (J.P.M.L. Jan. 4, 2024) (internal quotations omitted) (quoting 28 U.S.C. § 1407(a)).  Such interests will be ill-served by centralization because (1) both Plaintiff *Lahav* and Defendant Binance.US oppose transfer; (2) there are no common parties between *Lahav* and the FTX MDL; (3) the actions involve distinct proposed classes and class periods; (4) the actions are based on different contradictory theories of liability and distinct misrepresentations; and (5) the actions are in different procedural postures.  *See infra* at p. 15.  This Panel routinely finds that these factors preclude transfer under § 1407 because the cases present little potential for common discovery, and consolidation would likely cause delay and confusion.  *See infra* at p. 17.

For these and the reasons explained below, consolidation of *Lahav* and the MDL Actions is unwarranted under § 1407.  Accordingly, the Panel should vacate the Conditional Transfer Order.

## FACTUAL BACKGROUND

### A.  The Lahav Complaint

On October 2, 2023, Plaintiff Nir Lahav filed a proposed class action in the Northern District of California captioned *Lahav v. Binance Holdings Limited et al.*, No. 3:23-cv-05038 (N.D. Cal.) (the "Lahav Complaint"),[1] against Binance Holdings Ltd. ("Binance"), Binance's then CEO Changpeng Zhao ("Zhao"), and Binance.US (together with Binance and Zhao, the "Lahav Defendants").

Binance, which was founded by Zhao in 2017, is a global company that operates the largest

---

[1] The Lahav Complaint is attached as Exhibit 1.

3

digital-asset exchange in terms of daily trading volume of digital assets. Recognizing the unique regulatory landscape of the United States, Binance launched Binance.US as a separate entity in 2019, in order to cater specifically to U.S. residents. Binance.US was designed to comply with U.S. regulations and serves as a trading platform through which customers can sell or purchase digital assets in exchange for other digital assets. FTX was a competing digital-asset exchange that also had both global and U.S. digital-asset trading platforms.

The Lahav Complaint primarily alleges violations of the federal securities laws—the Securities Act of 1933 and the Securities and Exchange Act of 1934—as well as pendent state-law claims for negligent and intentional misrepresentation, unjust enrichment, and violation of California's Unfair Competition Law. Specifically, Plaintiff Lahav alleges that Zhao made purportedly false and misleading statements regarding Binance's holdings of rival FTX's token, FTT, and Binance's interest in potentially acquiring FTX's trading platforms. *See* Lahav Compl. ¶¶ 1–8, 27–31.

The *Lahav* allegations center on three statements Zhao made on social media platform X (formerly known as Twitter) during the three-day class period of November 6 to November 8, 2022, in which Zhao reported on Binance's actions that reflected poorly on its competitor FTX, and alerted investors to FTX's poor financial condition. The core of the Lahav Complaint is that Zhao never intended to acquire FTX but rather "disseminated" those statements to "hurt" FTX. *Id.* ¶ 32; *see also id.* ¶¶ 29 (Zhao "never had a good faith intention to actually acquire FTX Entities"), 37 (alleging a "bait and switch"). The Lahav Complaint does not name as a defendant FTX or any related entities or insiders, nor does it include any allegations pertaining to FTX's demise unrelated to Zhao's statements. Similarly, the Lahav Defendants are not alleged to have been conspirators with FTX or any related entity or individual. Indeed, the Lahav Complaint's

sole factual theory of liability is that Zhao disseminated statements to hurt FTX, and that such statements "ultimately le[]d to a rushed and unprecedented collapse of FTX Entities."  Lahav Compl. ¶ 7.

Based on this alleged theory, the Lahav Complaint asserts federal securities claims, which are governed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  The PSLRA imposes a number of unique requirements including a heightened pleading standard, an automatic stay of discovery prior to complete resolution of motions to dismiss, limitation on damages, a unique process for the appointment of lead plaintiff and counsel, and strict disclosure and notice requirements.  *See* 15 U.S.C. §§ 77z-1, 78u-4.

Given the unique PSLRA procedures, *Lahav* is still at the early stages of litigation.  On December 4, 2023, Plaintiff Lahav filed a motion for appointment of lead plaintiff and lead counsel.  *Lahav* Dkt. No. 29.  The Court has not yet ruled on the motion.  After the lead plaintiff is appointed, Defendants will file motions to dismiss pursuant to a Court-entered briefing schedule.  *Lahav* Dkt. No. 38.  As noted, the PSLRA requires that discovery be stayed until the Court rules on the motions to dismiss and the lead plaintiff decides to move forward with its complaint (rather than amend).  *See* 15 U.S.C. §§ 77z-1(b)(1), 78u-4(b)(3)(b).

On December 29, 2023, plaintiffs in the FTX MDL noticed *Lahav* to be added as a tag-along action to the FTX MDL.  Dkt. No. 229.  On January 3, 2024, a conditional transfer order ("CTO") was issued.[2]  On January 10, 2024, Plaintiff Lahav and Defendant Binance.US filed

---

[2] A CTO is "an administrative device used to expeditiously transfer apparently related cases where there is no opposition to such a transfer.  It should not be considered by counsel as a decision or judgment by the Panel which must be reversed before such an order can be vacated.  It is simply an administrative act of the Clerk which can be and will be vacated upon the showing of good cause by any party."  *In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970).

oppositions to the CTO.  Dkt. Nos. 240, 242.

### B.  The FTX MDL

Unlike the Lahav Complaint—which relates solely to Binance's actions—the FTX MDL centralizes over 22 actions against "individuals and entities that allegedly facilitated FTX's wrongful conduct," by "conspiring" to prop up FTX.  *See* Dkt. No. 138, June 5, 2023 Transfer Order, at 1–2; *See also* Dkt. No. 222, Dec. 6, 2023 Transfer Order, at 1 (the MDL Actions are against "FTX's former executives and professional service firms and celebrity promoters who worked with FTX and allegedly were complicit in [FTX's] alleged fraudulent scheme"); Dkt. No. 233, Jan. 3, 2024 Conditional Transfer Order (CTO-4) ("On June 5, 2023, the Panel transferred 5 civil action(s) to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings . . . . Since that time, 17 additional action(s) have been transferred to the Southern District of Florida.").

As this Panel recognized, the MDL Actions "all rest on the same core set of facts concerning the alleged fraud that led to FTX's collapse and, in particular, revolve around the conduct of FTX's [founder], Samuel Bankman-Fried, the relationship with another Bankman-Fried company known as Alameda Research, and Alameda's Caroline Ellison."  Dkt. No. 138, at 2.  All the MDL Actions "allege that there was a conspiracy between Bankman-Fried and other alleged FTX insiders to make misrepresentations to consumers and investors to induce them to invest in FTX products and use the FTX exchange."  *Id.*  Each of the MDL Actions alleges that "FTX mismanaged customer assets deposited on the FTX platform and that the individuals who enabled the alleged misconduct bear responsibility."  Dkt. No. 216, at 1.

The MDL Actions assert these allegations against approximately 45 separate defendants who are alleged to have played different roles in propping up FTX, which ultimately resulted in the plaintiffs' losses when FTX's fraud was exposed.  *See* Administrative Class Action Compls.

("ACACs") FTX MDL Dkt. Nos. 153 ("Law Firms"), 155 ("Bank Defendants"), 157 ("Domestic Venture Capital Funds"), 158 ("Auditor Defendants"), 178 ("FTX Insider Defendants"), 179 ("Promoters and Digital Creator Defendants"), 182 ("Multinational VC Defendants") (collectively, the "MDL Defendants").  The MDL Actions emphasize that "every single MDL Defendant is responsible for the damages that Class Members have sustained . . . . [E]very MDL Defendant was a necessary player in pushing the FTX fraud to the unprecedented extent it reached, and all made exorbitant amounts of money in the process of doing so."  FTX MDL Dkt. No. 158 ¶ 11.  The MDL Actions are so intertwined with Bankman-Fried's broader liability that the U.S. Government sought to intervene in the MDL Actions and obtained a stay of all proceedings as to one of the actions and a stay of discovery in all other proceedings until the conclusion of Bankman-Fried's criminal trial in the Southern District of New York.  FTX MDL Dkt. No. 318.

The MDL Actions bring claims on behalf of an international and nationwide class of "[a]ll persons or entities in the United States who, within the applicable limitations period, purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT."  FTX MDL Dkt. No. 158 ¶ 335; *see also* FTX MDL Dkt. Nos. 153 ¶ 220; 155 ¶ 318; 157 ¶ 630; 178 ¶ 287; 179 ¶ 752; 182 ¶ 391.  The allegations made in the MDL Actions span over a period of three years from FTX's inception in 2019 to its bankruptcy in 2022.  *See e.g.,* FTX MDL Dkt. No. 178 ¶¶ 393, 401.

None of the Lahav Defendants (Binance, Binance.US, and Zhao) are named as defendants in any of the MDL Actions.  Nor are the Lahav Defendants alleged to have sold, promoted, advertised FTX's services or products, or to have contributed in any way to the alleged losses suffered by the plaintiffs in the MDL Actions.

Unsurprisingly, the Binance entities and Zhao are mentioned in only a handful of passing allegations in the ACACs.  And to the extent they are mentioned, it is in the limited context of Binance's ultimate decision to decline to purchase FTX based on its "findings during due diligence, as well as reports of mishandled customer funds and the possibility of a federal investigation." FTX MDL Dkt. No. 178 ¶ 126; *see also* FTX MDL Dkt. Nos. 153 ¶ 127; 155 ¶ 124; 157 ¶ 136; 158 ¶ 131; 179 ¶ 176; 182 ¶ 130.  These statements are alleged to have had the opposite effect of the alleged statements made by the MDL Defendants.  Rather than inducing FTX consumers and investors to invest in FTX products and use the FTX exchange, Zhao uncovered the issues that the MDL Defendants are accused of concealing, alerting the public to what was yet to come.  *See* FTX MDL Dkt. No. 178 ¶ 126; *see also* FTX MDL Dkt. Nos. 153 ¶ 127; 155 ¶ 124; 157 ¶ 136; 158 ¶ 131; 179 ¶ 176; 182 ¶ 130.  Nowhere in the MDL Actions do Plaintiffs allege that any of the Lahav Defendants caused the demise of FTX.  *Compare generally* MDL Compls., *with* Lahav Compl. ¶ 7 (alleging that Defendant Zhao's public statements "ultimately lead [sic] to a rushed and unprecedented collapse of FTX Entities").

The FTX MDL was instituted in June 2023 and has moved expeditiously.  To date, several defendants have settled their claims.  *See* FTX MDL Dkt. No. 245.  Other defendants have filed motions to dismiss, which are now fully briefed and pending before the court.  FTX MDL Dkt. Nos. 262–283.  The FTX MDL parties have already litigated several discovery issues, including motions to compel and motions to quash, motions for jurisdictional discovery, and motions to expedite discovery.  *See, e.g.*, FTX MDL Dkt. Nos. 447–450, 455, 458.  On January 17, 2024, the FTX MDL court conducted a discovery hearing and issued an order addressing eight different discovery issues that were then pending.  FTX MDL Dkt. No. 478.

## **ARGUMENT**

Multidistrict litigation is a method for consolidation of similar cases during the pretrial and discovery phase of litigation.  28 U.S.C. § 1407(a).  Under § 1407(a), the Panel may transfer an action to a MDL only where (1) the proceedings present complex and unresolved "common questions of fact" and (2) consolidation will serve the convenience of parties and witnesses and "will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a); *see In re Uber Techs.*, 2024 WL 41889, at *1 (panel may "transfer civil actions pending in two or more districts to a single district for coordinated or consolidated pretrial proceedings if the actions involve 'one or more common questions of **fact**'") (emphasis added) (quoting U.S.C. § 1407(a)).  The moving party has the burden to demonstrate that the transfer of a "tag along" case will further the purposes of § 1407.  *See In re Tobacco/Governmental Health Care Costs Litig.*, 76 F. Supp. 2d 5, 7 (D.D.C. 1999).  The "moving party" is the party requesting transfer of the action to MDL.  *Id.*

To that end, movants are required to show that there are common questions between a conditionally transferred case and cases pending in a MDL that are predominantly *factual*; "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."  *In re ABA L. Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378–79 (J.P.M.L. 2018); *see also In re Env't Prot. Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) (denying centralization and noting that "the predominant, and perhaps only, common aspect in these actions is a legal question of statutory interpretation").  These common questions must also be "sufficiently complex, unresolved and/or numerous to justify . . . transfer."  *In re Georgeson S'holder Commc'ns, Inc., Share Exch. Litig.*, 277 F. Supp. 2d 1372, 1372–73 (J.P.M.L. 2003); *In re UPS Supply Chain Sols., Inc., Fair Lab. Standards Act (FLSA) Litig.*, 729 F. Supp. 2d 1356, 1356 (J.P.M.L. 2010).

Further, "a mere showing that common questions of fact exist amongst the actions for which Section 1407 treatment is proposed is not sufficient, in and of itself, to warrant transfer by the Panel.  The other criteria of the statute must also be satisfied."  *In re Truck Acc. Near Alamagordo*, 387 F. Supp. 732, 733 (J.P.M.L. 1975).  Accordingly, "transfer can only be made if the Panel determines that it would serve the convenience of parties and witnesses and that it will promote the just and efficient conduct of such actions." *In re Uber Techs.*, 2024 WL 41889, at *1 (internal quotations omitted) (quoting 28 U.S.C. § 1407(a)).  Indeed, Congress intended for consolidation to be ordered "only where significant economy and efficiency in judicial administration may be obtained."  H.R. Rep. No. 90-1130, 1968 U.S.C.C.A.N. at 1900.

As set forth below, these principles apply with equal force here and mandate that the Panel vacate the Conditional Transfer Order ordering transfer of *Lahav* to the FTX MDL.

## A. There Are No Common Questions of Fact Between *Lahav* and the Cases Pending in the FTX MDL.

### 1. *Lahav* Is Premised Solely on Binance's Actions

The Panel should vacate the CTO because *Lahav* and the MDL Actions do not involve common questions of fact.  The MDL plaintiffs seeking transfer of *Lahav* as a tag-along action "ha[ve] the burden to demonstrate that the transfer" will "further the purposes of [§] 1407." *Tobacco/Governmental Health Care Costs*, 76 F. Supp. 2d at 7.  They cannot do so.

Under § 1407 "common questions of fact and law" between *Lahav* and the MDL must be "sufficiently complex, unresolved and/or numerous to justify" transfer.  *See Georgeson*, 277 F. Supp. 2d at 1372–73.  Where, as here, "unique questions of fact" predominate "over any common questions of fact," transfer must be denied.  *See In re Boeing Co. Emp. Pracs. Litig. (No. II)*, 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003) (denying transfer because "movants have failed" to show that actions "involve sufficient common questions of fact").

In the initial centralization of the MDL Actions, this Panel concluded that centralization was appropriate because "all [MDL Actions] . . . revolve around the conduct of FTX's Samuel Bankman-Fried, the relationship with another Bankman-Fried company known as Alameda Research, and Alameda's Caroline Ellison," and "allege there was a conspiracy between Bankman-Fried and other alleged FTX insiders."  Dkt. No. 138, at 2.  Indeed, Bankman-Fried and Ellison were defendants in seven of the eight actions on the initial transfer motion and are "central figures in all of the related actions before the Panel."  *Id.*

The Panel concluded that these cases shared the following common factual issues:

(1)  whether FTX executives and their representatives misled customers about FTX's practices for safeguarding customer funds;

(2)  whether FTX executives and their representatives misrepresented the financial condition of the FTX entities;

(3)  whether FTX and Alameda executives embezzled customer assets;

(4)  the existence and scope of a conspiracy; and

(5)  the nature of FTX products, such as Yield-Bearing Accounts and FTT tokens.

*Id.* at 3.  ***None of these issues are present in* Lahav.**

Simply put, *Lahav* does not involve FTX's practices or the actions of FTX's executives, insiders, promoters, and alleged co-conspirators.  The Lahav Complaint also does not allege or even refer to any conspiracy between Bankman-Fried and others to misrepresent FTX's financial condition and misappropriate customer funds.  The Lahav Complaint references Bankman-Fried only *once*, in passing by providing his title (Lahav Compl. ¶ 3), and does not refer to Alameda or Ellison at all.  Nor does the Lahav Complaint involve, or even discuss, the nature of FTX products and services such as Yield-Bearing Accounts.  And, unlike the MDL Actions, *Lahav* does not allege a conspiracy between any Lahav Defendant and any MDL defendant.  Rather, *Lahav* relates solely to three statements of Zhao regarding Binance's conduct.  *Id.* ¶¶ 4–7.

The factual theory in the Lahav Complaint is directly contrary to the MDL Actions' "core set of facts." Dkt. No. 138, at 2. According to the Lahav Complaint, the conspiracy among Bankman-Fried, Ellison, and others did not cause FTX's collapse. Rather, *Lahav* alleges that it was the Lahav Defendants—through Zhao's statements—that caused FTX's downfall. Lahav Compl. ¶ 7. Specifically, the Lahav Complaint asserts that FTX entities were "unfairly hurt" by the Lahav Defendants' conduct, and that Zhao's "bait and switch" was "the proximate cause of [FTX's] hastened bankruptcy." *Id.* at 10, ¶ 37.

Because *Lahav* (which relates solely to Binance's actions) and the MDL Actions (which relate to conspiracy between FTX and its promoters) present unique factual issues, transfer must be denied. *See In re Nat'l Credit Union Admin. Bd. Mortg.-Backed Sec. Litig.*, 996 F. Supp. 2d 1374, 1375–76 (J.P.M.L. 2014) (denying transfer despite cases involving "common factual questions as to several RMBS offerings" because "they involved different RMBS certificates purchased by different credit unions from defendants" and, as such, "different representations made to different purchasers of RMBS will be at issue"); *In re Auction Rate Sec. (ARS) Mktg. Litig.*, 581 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008) (denying transfer despite "some general common factual questions" because "the actions involve different representations made to each purchaser of ARS"); *Boeing*, 293 F. Supp. 2d at 1383.

### 2. <u>Different Classes</u>

Transfer should also be denied because *Lahav* and the MDL Actions are "two purported class actions with distinctly separate classes." *BMW Reverse Transmission*, 543 F. Supp. 2d at 1382–83 (denying transfer because actions with "distinct separate classes" do not have "common questions of fact [that] are sufficiently complex and/or numerous to justify Section 1407 transfer").

The purported classes in *Lahav* and the FTX MDL are vastly different. As noted, *Lahav* premises liability on three statements made in the span of three days in November 2022. Lahav

Compl. ¶¶ 4–7, 27–32.  This three-day period forms the basis for the proposed *Lahav* class, which is limited to individuals and entities who "had any fiat or cryptocurrency deposited or invested through an FTX trading platform" between November 6, 2022, and November 8, 2022.  *Id.* ¶¶ 46–47.  On the other hand, the MDL Actions are premised on widespread alleged misconduct starting with the inception of the FTX entities in 2019 and spanning hundreds of misrepresentations by the MDL Defendants—none of which overlaps with the misrepresentations alleged in *Lahav*.  *See, e.g.*, MDL Litigation Dkt. Nos. 178 ¶¶ 45–52, 88, 96, 112; 179 ¶¶ 82–83, 89–95, 132, 162; 182 ¶¶ 43–44, 47–57, 92.  Transfer should be denied for this reason.  *See BMW Reverse Transmission*, 543 F. Supp. 2d at 1382–83.

### 3.   <u>Limited Overlap Regarding Fall of FTX Is Insufficient to Warrant Transfer</u>

The fact that *Lahav* and the MDL Actions both involve the bankruptcy of FTX is not sufficient to warrant transfer.  The **only** common (and undisputed) fact between *Lahav* and the MDL Actions is that FTX collapsed and the plaintiffs in both allege that they suffered losses as a result of FTX's bankruptcy.  But "[t]he fact that these two actions arise from the same disaster does not ipso facto mean that their coordination or consolidation under Section 1407 is appropriate." *In re Highway Acc. Near Rockville*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) (denying motion to transfer under § 1407 where the common facts between the actions were based primarily on the same automobile accident); *see also Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d at 1368 (denying transfer where "the[] actions possess[ed] only a superficial factual commonality— all plaintiffs allege that they suffered property damage as a result of one or another of several hurricanes, and that their respective insurance companies breached the terms of plaintiffs' policies"); *In re Prop. Assessed Clean Energy (Pace) Programs Litig.*, 764 F. Supp. 2d 1345, 1346–47 (J.P.M.L. 2011) (denying centralization where common factual issues were "largely undisputed and primarily common legal questions [were] left to be decided"); *see also In re*

13

*TrueCar, Inc., S'holder Derivative Litig.*, 412 F. Supp. 3d 1353, 1354 (J.P.M.L. 2019) (denying transfer of securities case despite "the actions shar[ing] factual issues arising from plaintiffs' allegations that the defendants breached their fiduciary duties (or aided and abetted such breaches) to TrueCar by causing the company to issue false and misleading statements in 2017"); *In re Credit Suisse VelocityShares Daily Inverse VIX Short Term Exch. Traded Notes Sec. Litig.*, 326 F. Supp. 3d 1379, 1380 (J.P.M.L. 2018) (denying transfer despite the "actions unquestionably shar[ing] common factual allegations arising from the February 5, 2018, collapse in value of Credit Suisse's VelocityShares Daily Inverse VIX Short Term Exchange Trade Notes").

Finally, where, as here, there are such limited and general common factual questions, "no single action is against more than one defendant entity," and "the actions involve different representations," centralization is not appropriate. *Auction Rate Sec. (ARS) Mktg.*, 581 F. Supp. 2d at 1372 (denying centralization of securities-fraud actions arising out of widespread failure in the market for auction rate securities); *see also Nat'l Credit Union Admin. Bd.*, 996 F. Supp. 2d at 1376.

## B. Transfer to the FTX MDL Would Be Inefficient and Would Inconvenience the Parties.

Even if the cases present common questions of fact (they do not), transfer should still be denied because it would be inconvenient and inefficient. Under the plain language of § 1407(a), "[s]uch transfer can *only* be made if the Panel determines that it would serve the convenience of parties and witnesses" and that it would "promote the just and efficient conduct of such actions." *In re Uber Techs.*, 2024 WL 41889, at *1 (internal quotation marks omitted). Additionally, the Panel routinely holds that even when there are common questions of fact, "alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings." *Georgeson*, 277 F. Supp. 2d at 1373; *In re Eli Lilly & Co.*

14

*(Cephalexin Monohydrate) Patent Litig.*, 446 F.Supp. 242, 244 (J.P.M.L. 1978) (same); *see also* Manual for Complex Litigation, Fourth, § 20.14 (2004).

In consideration of whether just and efficient conduct of an action would be furthered by its transfer, the Panel evaluates a variety of factors, including whether the parties are agreeable to the transfer, the existence of common questions of fact, whether the parties and their witnesses would best be served by the transfer based on location, common defendants, and the cases' procedural postures. *See, e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360 (J.P.M.L. 2020); *In re Real Est. Transfer Tax Litig.*, 895 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012); *In re Westec Corp.*, 307 F. Supp. 559, 562 (J.P.M.L. 1969).

Here, all factors militate against centralization because (1) Plaintiff Lahav and Defendant Binance.US oppose transfer; (2) there are no common parties, *supra* at pp. 4-5; (3) the actions involve distinct proposed classes and class periods, *supra* at p. 12-13; (4) the actions are based on different (and indeed contradictory) factual theories of liability and are premised on different alleged representations, *supra* at p. 12; and (5) the actions are in different procedural postures, *supra* at p. 8.

**First**, both the plaintiff in *Lahav* and Defendant Binance.US oppose transfer of the *Lahav* Action to the FTX MDL. Where parties in the action oppose transfer, it can hardly be said that transfer would serve the convenience of those same parties and their witness. *See In re Student-Athlete Name & Likeness Litig.*, 763 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) ("We find most persuasive that, of all responding parties, those who would be most affected by centralization—the . . . plaintiffs and the defendant . . .—do not believe that centralization would be beneficial."); *In re Prospect Mortg., LLC, Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 987 F. Supp. 2d 1383, 1383 (J.P.M.L. 2013) (rejecting multidistrict consolidation where all plaintiffs opposed

centralization and individualized factual disputes would predominate); *Westec Corp.*, 307 F. Supp. at 562 (declining to transfer for consolidated proceedings because, inter alia, the "parties in [those] actions vigorously oppose[d] the transfer").

**Second**, there are no common parties between *Lahav* and any of the MDL Actions, and the actions are premised on contradictory factual theories (*supra* at pp. 4-5). It is "particularly significant that [the *Lahav* Defendants] were [not] named as defendants or co-conspirators in the [FTX MDL]." *See Westec Corp.*, 307 F. Supp. at 562 (declining transfer). Because "[t]here is no common defendant in these actions," any common questions will "share only a superficial commonality," and there "is little potential for common discovery across the litigation," thus "centralization . . . will not serve the convenience of the parties and witnesses or further the just and efficient conduct of th[e] litigation." *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d at 1362.

**Third**, the actions involve distinct proposed classes and class periods. *Lahav* premises liability on a three-day class period between November 6, 2022, and November 8, 2022 (*Lahav* Compl. ¶¶ 46–47), while the MDL Actions assert misconduct going back to 2019 and spanning years (*See e.g.,* FTX MDL Dkt. No. 178 ¶¶ 393, 401). *See BMW Reverse Transmission*, 543 F. Supp. 2d at 1382–83 (holding that centralization was not warranted where litigation involved "two purported class actions with distinctly separate classes"); *see also In re Starbucks Corp. Mktg. & Sales Pracs. Litig.*, 222 F. Supp. 3d 1348, 1349 (J.P.M.L. 2016) (where cases "involve different factual theories of liability . . . [the] factual dissimilarities likely will result in discovery, pretrial motions, and class certification issues that are not shared across the beverage categories").

**Fourth**, discovery in *Lahav* will predominantly focus on Defendant Zhao's purported misstatements and the Lahav Defendants' alleged motives to harm FTX, a premise that is entirely

unrelated to the allegations in the MDL Actions.  *See supra* at pp. 11–12.  Correspondingly, discovery in the MDL Actions is focused on the theory that FTX executives perpetrated "the largest financial fraud in US history," a scheme that is not alleged to involve any of the Lahav Defendants or any common representations (*see supra* at p. 7).  Thus, transfer is unwarranted.  *See In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (declining transfer where "a significant amount of the discovery in these actions appears almost certain to be defendant–specific"); *Auction Rate Sec. (ARS) Mktg.*, 581 F. Supp. 2d at 1371 (where, as here, the actions do not share common defendants and "involve different representations," centralization does not promote efficiency in adjudication); *In re Grand Funk R.R. Trademark Litig.*, 371 F. Supp. 1084, 1085 (J.P.M.L. 1974) (consolidation inappropriate where discovery "will focus on localized factual issues").

This issue is exacerbated here because *Lahav* is governed by the PSLRA, which imposes different requirements for federal securities cases, including an automatic stay of discovery while a motion to dismiss is pending (15 U.S.C. §§ 77z-1, 78u-4).  *See In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) (transfer improper because multi-plaintiff actions with unrelated would complicate discovery and interfere with completion of assigned deadlines).

*In re Proton-Pump Inhibitor Prods. Liab. Litig.* 273 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2017), which denied transfer, is instructive on a number of these and other relevant considerations. In *Proton-Pump*, movants sought to transfer fifteen actions to an MDL, along with another 24 tag along actions.  273 F. Supp. 3d at 1361–62.  The Panel denied transfer despite "recogniz[ing] that the[] actions share certain factual issues" because several "fatal" considerations "undercut the case of centralization."  *Id.* at 1361.  First, as here, "the named defendants varied from action to action"

and "[c]entralization thus appears unlikely to serve the convenience of … the defendants and their witnesses." *Id.* at 1361–62.

Second, as here, the defendants in the different actions were competitors. *Id.* at 1362. The Panel held that it was "typically hesitant to centralize litigation against multiple, competing defendants" and "[c]entralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential information." *Id.*

Third, and as here, "a significant amount of the discovery in the[] actions appears almost certain to be defendant–specific." *Id.* Thus, "a multi-defendant MDL may prolong pretrial proceedings, because of, inter alia, the possible need for separate discovery and motion tracks, as well as the need for" separate trials. *Id.*

The Panel was not persuaded that the sheer number of actions—15 initial cases, 24 tag along cases, and potentially "hundreds if not thousands" more—warranted transfer. *Id.* Rather, each of the "fatal" considerations—all of which are present here—were sufficient cause to deny transfer. *Id.*

***Finally***, the "widely varying procedural posture of the cases further weighs against centralization." *Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d at 1369. As explained above, the MDL was initiated over half a year ago; it has moved expeditiously; and the parties have completed briefing of motions to dismiss and have been litigating numerous complex discovery disputes, including third-party discovery, jurisdictional discovery, and motions to expedite discovery. *See supra* at pp. 8-9. *Lahav* on the other hand, is in the very initial stages of litigation. *See supra* at p. 5. The parties have yet to file responsive pleadings, and discovery will not commence until the court has resolved the yet-to-be-filed motions to dismiss pursuant to PSLRA's automatic stay of discovery while a motion to dismiss is pending. *See supra* at p. 5. In

fact, the court's scheduling order in *Lahav* provides that fact discovery will not be completed until at least August 25, 2025.  *See supra* at p. 5.

In *In re Property Assessed Clean Energy (Pace) Programs Litigation*, the Panel denied centralization because of analogously distinct procedural postures.  764 F. Supp. 2d at 1347.  The Panel found that because the "[California actions] [were] already proceeding apace with key issues presented in defendants' motion to dismiss already briefed in a coordinated manner" while "remaining actions [were] at their earliest stages," "[c]entralization could disrupt, or at least delay, the progress of the California actions."  *Id.*  This holding applies squarely here.  Consolidation will indisputably disrupt the FTX MDL, where motions to dismiss have been fully briefed and the court is already conducting hearings on discovery issues.  Therefore, "[t]here are insufficient potential efficiencies to be obtained with regard to discovery and motions practice to outweigh the inconvenience to the parties and the courts of centralizing litigation with so few, disputed factual questions and such disparate postures."  *Real Est. Transfer Tax Litig.*, 895 F. Supp. 2d at 1351 (holding that centralization was not warranted where "actions have varied procedural postures," including cases where dispositive rulings have been granted, as opposed to actions that "are in their infancy").

*     *     *

The lack of any substantive overlap between *Lahav* and the MDL Actions demonstrates that "the just and efficient conduct of these . . . actions would not be furthered by their transfer under section 1407."  *Westec Corp.*, 307 F. Supp. at 562.  As detailed, the "very nature of the cases ensures that unique issues concerning each plaintiff's loss, claim, investigation, and claim handling will predominate, and will overwhelm any efficiencies that centralization might achieve."  *Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d at 1368–69.  Transfer should be denied.

19

## **CONCLUSION**

For the forgoing reasons, transfer is unwarranted.  Binance.US respectfully submits that the Panel should vacate the CTO issued on January 3, 2024.

Dated: January 24, 2024                                    Respectfully submitted,

                                                                            */s/ Daniel T. Stabile*
                                                                            WINSTON & STRAWN LLP

                                                                            Daniel T. Stabile, Esq.
                                                                            Fla. Bar No. 1010193
                                                                            200 S. Biscayne Blvd., Suite 2400
                                                                            Miami, FL 33131
                                                                            Tel: (305) 910-0646
                                                                            DStabile@winston.com

                                                                            Jeffrey L. Steinfeld, Esq.
                                                                            Cal. Bar No. 294848
                                                                            333 S. Grand Ave.
                                                                            Los Angeles, CA 90071
                                                                            Tel: (213) 615-1700
                                                                            JLSteinfeld@winston.com

                                                                            Thania (Athanasia) Charmani, Esq.
                                                                            NY Bar No. 5171822
                                                                            200 Park Avenue
                                                                            New York, NY 10166
                                                                            Tel: (212) 294-4623

                                                                            *Attorneys for Defendants BAM Trading*
                                                                            *Services Inc. and BAM Management US*
                                                                            *Holdings Inc.*